1   ROBERT D. EASSA (Cal. Bar No. 107970)   *E-filing*
        robert.eassa.service@filicebrown.com
2   PAUL R. JOHNSON (Cal. Bar No. 115817)
        paul.johnson.service@filicebrown.com
3   FILICE BROWN EASSA & McLEOD LLP
    1999 Harrison Street, 18th Floor
4   Oakland, CA 94612
    Tel: (510) 444-3131
5   Fax: (510) 839-7940

6   Attorneys for Defendant
    PHELPS DODGE INDUSTRIES, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10          OAKLAND DIVISION or SAN FRANCISCO DIVISION

11

12

13

14

15  HELEN HUTCHISON, Individually, and as        No. C07-02824
    Successor-in-Interest to the Estate of WILLIAM
16  ALBERT HUTCHISON, Deceased,
    MICHELLE STUART, and Does 1-10,              NOTICE OF REMOVAL OF ENTIRE
17  inclusive,                                   CASE PURSUANT TO 28 U.S.C. § 1442

18                  Plaintiffs,                  DEMAND FOR JURY TRIAL

19          v.                                   CERTIFICATION OF INTERESTED
                                                 ENTITIES OR PERSONS
20  A.W. CHESTERTON COMPANY;
    ALLIED PACKING & SUPPLY, INC.;
21  ALLIS CHALMERS PRODUCTS LIABILITY
        TRUST, individually and as parent, alter
22      ego, and successor-in-interest to ALLIS
        CHALMERS;
23  AMCHEM PRODUCTS, INC.;
    AMERICAN ASBESTOS COMPANY;
24  AMETEK, INC., individually and as parent,
        alter ego and successor-in-interest to
25      HAVEG CORPORATION and HAVEG
        INDUSTRIES;
26  ASBESTOS CORPORATION LTD.;
    CBS CORPORATION, a Delaware corporation,
27      f/k/a Viacom, Inc. successor by merger to
        CBS Corporation, a Pennsylvania
28      corporation, f/k/a Westinghouse Electric

                                    -1-

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

NOTICE OF REMOVAL OF ENTIRE CASE PURSUANT TO 28 U.S.C. § 1442;
DEMAND FOR JURY TRIAL; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  | Corporation;
CRANE COMPANY;

2  | CROWN CORK & SEAL is sued herein not
   only in its own capacity but also as

3  | successor in interest to MUNDET CORK
   CORPORATION;

4  | EATON CORPORATION, individually and as
   parent, alter ego, and successor in interest

5  | and/or successor by merger to CUTLER-
   HAMMER;

6  | EATON ELECTRICAL, INC., individually and
   as parent, alter ego, and successor in interest

7  | and/or successor by merger to EATON
   CORPORATION and CUTLER-

8  | HAMMER;
EDO CORPORATION;

9  | GARLOCK, INC.;
GENERAL ELECTRIC COMPANY;

10 | GRAYBAR ELECTRIC COMPANY, INC.;
HILL BROTHERS CHEMICAL COMPANY;

11 | HONEYWELL INTERNATIONAL, INC., f/k/a
   Allied Signal Inc., successor-in-interest to

12 | The Bendix Corporation;
IMO INDUSTRIES, INC. is sued herein not

13 | only in its own capacity but also as parent,
   alter ego, and entities fka IMO DELAVAL,

14 | INC., WORTHINGTON TURBINE, INC.,
   IMO DELAVAL, INC., DELAVAL

15 | TURBINES, DELAVAL PUMPS, and/or
   WORTHINGTON TURBINE, INC.;

16 | ITT INDUSTRIES, INC., as parent and
   successor-in-interest to GOULD PUMPS,

17 | INC.;
J.T. THORPE & SON, INC.;

18 | KENTILE FLOORS, INC.;
M. SLAYEN & ASSOCIATES;

19 | METALCLAD INSULATION CORP.;
MOTOROLA COMMUNICATIONS AND

20 | ELECTRONICS, INC., individually and as
   parent, alter ego, and successor in interest to

21 | MOTOROLA CORPORATION;
OCCIDENTAL PETROLEUM

22 | CORPORATION, individually and as
   parent, alter ego, and successor in interest

23 | and/or successor by merger to DUREZ
   PLASTICS;

24 | OWENS-ILLINOIS, INC.;
PHELPS DODGE/CYPRUS AMAX

25 | MINERALS CO., individually, and as
   parent, alter ego, successor in interest and

26 | equitable trustee to CYPRUS MINES
   CORPORATION, SIERRA TALC &

27 | CHEMICAL COMPANY, UNITED
   SIERRA DIVISION, and PAUL W. WOOD

28 | COMPANY;

-2-

FBE&M
LAKE MERRITT PLAZA
999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

NOTICE OF REMOVAL OF ENTIRE CASE PURSUANT TO 28 U.S.C. § 1442;
DEMAND FOR JURY TRIAL; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1  PLANT INSULATION CO., individually and
         as successor-in-interest to PLANT
2        ASBESTOS COMPANY;
   PLASTICS ENGINEERING COMPANY;
3  QUINTEC INDUSTRIES, INC., successor in
         interest to WESTERN FIBROUS GLASS
4        COMPANY a.k.a. WESTGLAS;
   RAYTHEON CORPORATION;
5  RCA CORPORATION, individually and as
         parent, alter ego and successor in interest to
6        RCA VICTOR;
   SCHNEIDER ELECTRIC, INC., individually
7        and as parent, alter ego, and successor in
         interest and/or successor by merger to
8        SQUARE D COMPANY;
   THORPE INSULATION CO.;
9  UNION CARBIDE CORPORATION;
   UNIROYAL, INC.;
10 WESTERN MACARTHUR CO. is used herein
         not only in its own capacitybut also as
11       successor-in-interest to WESTERN
         ASBESTOS CO. and BAY CITIES
12       ASBESTOS; and
   Does 11-500, inclusive,
13
                    Defendants.
14

15

16       TO THE CLERK OF THE COURT:

17       PLEASE TAKE NOTICE that defendant Phelps Dodge Industries, Inc. (PDI) removes to

18  this Court the state-court action described below:

19       1.      On January 8, 2007, plaintiffs Helen Hutchison (individually and as successor-in-

20  interest to the estate of William Albert Hutchison, deceased) and Michelle Stuart filed in the

21  Superior Court of the State of California for the County of Alameda a complaint entitled *Helen*

22  *Hutchison, etc., et al. v. A.W. Chesterton Company, et al.*, which was assigned case number

23  RG07305255.  This is a civil action by which plaintiffs seek to recover damages claimed with

24  regard to illness and death of William Albert Hutchison alleged to have resulted from exposure to

25  asbestos.

26       2.      On May 2, 2007, PDI's agent for service of process was served with various

27  documents, a copy of which is attached hereto as Exhibit A, including a summons, the complaint,

28  an alternative dispute resolution information package, an amendment to complaint substituting the

FBE&M
AXE MERRITT PLAZA
199 HARRISON STREET
EIGHTEENTH FLOOR
,KLAND CA 94612-3541
PHONE 510.444.3131

NOTICE OF REMOVAL OF ENTIRE CASE PURSUANT TO 28 U.S.C. § 1442;
DEMAND FOR JURY TRIAL; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

fictitious name of "Doe 11" with "PHELPS DODGE INDUSTRIES, INC., individually and [which PDI denies] as parent, alter ego, sii [*sic*] and equitable trustee to CYPRUS MINES CORP., SIERRA TALC & CHEMICAL CO., UNITED SIERRA DIVISION, PAUL W. WOOD COMPANY and CYPRUS AMAX," a civil cover sheet, a statement of damages, a notice of case management conference, and "PLAINTIFF'S [*sic*] STATEMENT, LOCAL RULES OF COURT RULE 4.2" (personal data identifiers redacted pursuant to Civil L.R. 3-17).

      3.     This petition is being filed within 30 days of May 2, 2007, the date of service of the summons and plaintiffs' complaint on PDI.

      4.     Plaintiffs' complaint and their local rules "statement" allege that their decedent, William Albert Hutchison, died from lung cancer claimed to have resulted from his occupational exposure to asbestos. Plaintiffs allege that this occurred during the decedent's service in the United States Navy from 1950 to 1974 as a result of asbestos-containing equipment in various ships.[1]

      5.     The only asbestos-containing products for which PDI is responsible that were sold to the United States Navy are Navy shipboard cable manufactured by PDI's predecessor, Phelps Dodge Copper Products Corporation, pursuant to contracts with the United States Navy. Such Navy shipboard cable was manufactured in strict compliance with detailed government specifications, including marking and labeling specifications. The United States Navy had superior knowledge about potential health hazards. As a result, PDI is immune from suit under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and under the doctrine enunciated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).

      6.     This Court has jurisdiction under the provisions of 28 U.S.C. § 1442(a)(1) because this is a civil action brought against a person acting under color of an officer or agency of the United States.

      7.     Plaintiffs allege at paragraph 3 of their complaint that federal courts lack jurisdiction of this action on the ground (among others asserted) that plaintiffs disclaim any claim based on an act or omission by a person acting under an officer of the United States under color of such office.

---

[1] Plaintiffs also allege that the decedent was exposed to asbestos while working at Inspiration Copper Company in Miami, Arizona, during 1953 to 1954.

FBE&M

LAKE MERRITT PLAZA
999 HARRISON STREET
EIGHTEENTH FLOOR
ARLAND CA 94612-3563
PHONE 510.444.3131

NOTICE OF REMOVAL OF ENTIRE CASE PURSUANT TO 28 U.S.C. § 1442;
DEMAND FOR JURY TRIAL; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

1    Plaintiffs' argument erroneously assumes, however, that the courts of the United States lack

2    jurisdiction to determine whether the government contractor defense applies.  Rather, this Court

3    has jurisdiction to decide when claims are indeed barred by the defense.  Removal is proper where

4    supported by the assertion of a "colorable" federal defense.  *See Durham v. Lockheed Martin*

5    *Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).  Because plaintiffs have asserted claims against PDI,

6    including allegations that the decedent was exposed to asbestos while serving in the United States

7    Navy, PDI has a right to have its federal defense determined by this Court.  PDI is not required to

8    wait for a state court to decide whether plaintiffs' claims against PDI are barred by the federal

9    defense and, therefore, fall within the scope of plaintiffs' purported disclaimer (which is, in effect,

10   no more than an acknowledgement that such a defense exists under federal law).

11       8.    This action was originally filed by plaintiffs in the Superior Court of the State of

12   California for the County of Alameda.  Therefore, venue is proper in the United States District

13   Court for the Northern District of California, Oakland Division or San Francisco Division, pursuant

14   to 28 U.S.C. §§ 84(a), 1441(a), 1446(a) and Civil L.R. 3-2(d).

15       9.    Written notice of the filing of this notice of removal will be provided promptly to all

16   parties who have appeared, but have not been dismissed, in the state court action, together with a

17   copy of this notice of removal, and such written notice will be filed with the Superior Court of the

18   State of California for the County of Alameda pursuant to 28 U.S.C. § 1446(d).

19

20   DATED: May 31, 2007                FILICE BROWN EASSA & McLEOD LLP

21

22                           By

23                             ROBERT D. EASSA

                          PAUL R. JOHNSON

24                             Attorneys for Defendant

                          PHELPS DODGE INDUSTRIES, INC.

25

26

27

28

FBE&M

LAKE MERRITT PLAZA
999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

-5-

NOTICE OF REMOVAL OF ENTIRE CASE PURSUANT TO 28 U.S.C. § 1442;
DEMAND FOR JURY TRIAL; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

**DEMAND FOR JURY TRIAL**

Defendant Phelps Dodge Industries, Inc., demands trial by jury of all issues that may be tried to a jury.

DATED: May 31, 2007                         FILICE BROWN EASSA & McLEOD LLP

By: _____
ROBERT D. EASSA
PAUL R. JOHNSON
Attorneys for Defendant
PHELPS DODGE INDUSTRIES, INC.

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Defendant Phelps Dodge Industries, Inc., while a subsidiary of Phelps Dodge Corporation, is a separate and distinct corporate entity.

DATED: May 31, 2007                         FILICE BROWN EASSA & McLEOD LLP

By: _____
ROBERT D. EASSA
PAUL R. JOHNSON
Attorneys for Defendant
PHELPS DODGE INDUSTRIES, INC.

FBE&M
.AKE MERRITT PLAZA
199 HARRISON STREET
EIGHTEENTH FLOOR
.KLAND CA 94612-3541
PHONE 510.444.3131

NOTICE OF REMOVAL OF ENTIRE CASE PURSUANT TO 28 U.S.C. § 1442;
DEMAND FOR JURY TRIAL; CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Exhibit A





# SUMMONS
## (CITACION JUDICIAL)

May 2007 11:25
MA17

POR CO
(SOLO PAR

*5353066*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
A.W. Chesterton Company, et al.,

**F I L E D**
ALAMEDA COUNTY

JAN 0 8 2007

CLERK OF THE SUPERIOR COURT
By _____
Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HELEN HUTCHISON, Individually and as Successor-in-Interest to the Estate of WILLIAM ALBERT HUTCHISON,
Deceased, MICHELLE STUART, and Does 1-10, inclusive

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF ALAMEDA COUNTY<br>1225 Fallon Street<br><br>Oakland, CA 94612<br>Rene C. Davidson | CASE NUMBER:<br>*(Número del Caso):*<br>R G 0 7 3 0 5 2 5 5 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
AUDREY A. SMITH, ESQ.    SBN 118411                                415.489.7426
BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800
San Francisco, CA 94104

DATE:                      PAT S. SWEETEN    Clerk, by  , Deputy
*(Fecha)* JAN 0 8 2007          *(Secretario)*                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify):* PHELPS DODGE INDUSTRIES, INC. individually, and as parent, alter ego, successor in interest and equitable trustee to CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION, and PAUL W. WOOD COMPANY
   under: ☒ CCP 416.10 (co      )
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465

SUMMONS ATTACHMENT

*Hutchison v. A. W. Chesterton Company, et al.*
Alameda County Superior Court

A.W. CHESTERTON COMPANY; ALLIED PACKING & SUPPLY, INC.; ALLIS CHALMERS PRODUCTS LIABILITY TRUST, individually and as parent, alter ego, and successor-in-interest to ALLIS CHALMERS; AMCHEM PRODUCTS, INC.; AMERICAN ASBESTOS COMPANY; AMETEK, INC., individually as parent, alter ego and successor in interest to HAVEG CORPORATION and HAVEG INDUSTRIES; ASBESTOS CORPORATION LTD.; CBS CORPORATION, a Delaware corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation; CRANE COMPANY; CROWN CORK & SEAL is sued herein not only in its own capacity but also as successor in interest to MUNDET CORK CORPORATION; EATON CORPORATION, individually and as parent, alter ego, successor in interest and/or successor by merger to CUTLER-HAMMER; EATON ELECTRICAL INC., individually and as parent, alter ego, successor in interest and/or successor by merger to EATON CORPORATION and CUTLER-HAMMER; EDO CORPORATION; GARLOCK SEALING TECHNOLOGIES, INC. is sued herein not only in its own capacity but also as parent, alter ego, and successor in interest to GARLOCK, INC. ; GARLOCK, INC.; GENERAL ELECTRIC COMPANY; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL COMPANY; HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal Inc., successor-in-interest to The Bendix Corporation; IMO INDUSTRIES, INC. is sued herein not only in its own capacity but also as parent, alter ego, and entities fka IMO DELAVAL, INC., WORTHINGTON TURBINE, INC., IMO DELAVAL, INC., DELAVAL TURBINES, DELAVAL PUMPS, and/or WORTHINGTON TURBINE, INC.; ITT INDUSTRIES INC., as parent and successor-in-interest to GOULDS PUMPS, INC.; J.T. THORPE & SON, INC.; KENTILE FLOORS, INC. ; M. SLAYEN & ASSOCIATES; METALCLAD INSULATION CORP.; MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., individually and as the parent, alter ego and successor in interest to MOTOROLA CORPORATION; OCCIDENTAL PETROLEUM CORPORATION, individually and as parent, alter ego, successor in interest and/or successor by merger to DUREZ PLASTICS; OWENS-ILLINOIS, INC.; PHELPS DODGE/CYPRUS AMAX MINERALS CO., individually, and as parent, alter ego, successor in interest and equitable trustee to CYPRUS MINES CORPORATION, SIERRA TALC & CHEMICAL COMPANY, UNITED SIERRA DIVISION, and PAUL W. WOOD COMPANY; PLANT INSULATION CO., individually and as successor-in-interest to PLANT ASBESTOS COMPANY; PLASTICS ENGINEERING COMPANY; QUINTEC INDUSTRIES, INC., successor in interest to WESTERN FIBROUS GLASS COMPANY a.k.a. WESTGLAS; RAYTHEON CORPORATION; RCA CORPORATION, individually and as parent, alter ego and successor in interest to RCA VICTOR; SCHNEIDER ELECTRIC, INC., individually and as parent, alter ego, successor in interest and/or successor by merger to SQUARE D COMPANY; THORPE INSULATION CO.; UNION CARBIDE CORPORATION; UNIROYAL, INC.; VIACOM, INC. is sued herein not only in its own capacity but also as parent, alter ego, successor in interest and/or successor by merger to CBS CORPORATION, formerly known as WESTINGHOUSE ELECTRIC CORP.; WESTERN MACARTHUR CO. is sued herein not only in its own capacity but also as successor-in-interest to WESTERN ASBESTOS CO. and BAY CITIES ASBESTOS;

1 | Cheryl L. White, Esq. (SBN 164352)
Audrey A. Smith, Esq. (SBN 118411)
2 | BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800
3 | San Francisco, CA 94104
Telephone: 415.489.7420
4 | Facsimile: 415.489.7426

5 | Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY

JAN 0 8 2007

CLERK OF THE SUPERIOR COURT
By Esther Coleman, Deputy

8 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF ALAMEDA

10 | R G 0 7 3 0 5 2 5 5

11 | HELEN HUTCHISON, Individually, and as Successor-in-  Case No.
12 | Interest to the Estate of WILLIAM ALBERT
HUTCHISON, Deceased, MICHELLE STUART, and
13 | Does 1-10, inclusive,

14 |                    Plaintiffs,

15 |        vs.

16 |

17 | A.W. CHESTERTON COMPANY; ALLIED PACKING
& SUPPLY, INC.; ALLIS CHALMERS PRODUCTS
18 | LIABILITY TRUST, individually and as parent, alter ego,
and successor-in-interest to ALLIS CHALMERS;
19 | AMCHEM PRODUCTS, INC.; AMERICAN ASBESTOS
20 | COMPANY; AMETEK, INC., individually and as parent,
alter ego and successor in interest to HAVEG
21 | CORPORATION and HAVEG INDUSTRIES;
22 | ASBESTOS CORPORATION LTD.; CBS
CORPORATION, a Delaware corporation, f/k/a Viacom,
23 | Inc. successor by merger to CBS Corporation, a
Pennsylvania corporation, f/k/a Westinghouse Electric
24 | Corporation; CRANE COMPANY; CROWN CORK &
25 | SEAL is sued herein not only in its own capacity but also
as successor in interest to MUNDET CORK
26 | CORPORATION; EATON CORPORATION, individually
and as parent, alter ego, successor in interest and/or
27 | successor by merger to CUTLER-HAMMER; EATON
28 | ELECTRICAL INC., individually and as parent, alter ego,

**COMPLAINT FOR DAMAGES
(WRONGFUL DEATH)**

**NEGLIGENCE; STRICT LIA-
BILITY; FAILURE TO WARN;
BREACH OF WARRANTIES;
FRAUD AND CONSPIRACY;
ENTERPRISE LIABILITY;
FALSE REPRESENTATION
UNDER RESTATEMENT
TORTS SECTION 402-B;
ENTERPRISE LIABILITY;
SURVIVAL ACTION;
PUNITIVE DAMAGES**

1

*Hutchison v. A.W. Chesterton, et al.*            COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

| | |
|---|---|
| 1 | successor in interest and/or successor by merger to EATON CORPORATION and CUTLER-HAMMER; |
| 2 | EDO CORPORATION; GARLOCK SEALING |
| 3 | TECHNOLOGIES, INC. is sued herein not only in its own capacity but also as parent, alter ego, and successor in |
| 4 | interest to GARLOCK, INC.; GARLOCK, INC.; |
| 5 | GENERAL ELECTRIC COMPANY; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS |
| 6 | CHEMICAL COMPANY; HONEYWELL |
| 7 | INTERNATIONAL INC., f/k/a AlliedSignal Inc., successor-in-interest to The Bendix Corporation; IMO |
| 8 | INDUSTRIES, INC. is sued herein not only in its own capacity but also as parent, alter ego, and entities fka IMO |
| 9 | DELAVAL, INC., WORTHINGTON TURBINE, INC., IMO DELAVAL, INC., DELAVAL TURBINES, |
| 10 | DELAVAL PUMPS, and/or WORTHINGTON |
| 11 | TURBINE, INC.; ITT INDUSTRIES INC., as parent and successor-in-interest to GOULDS PUMPS, INC.; J.T. |
| 12 | THORPE & SON, INC.; KENTILE FLOORS, INC. ; M. SLAYEN & ASSOCIATES; METALCLAD |
| 13 | INSULATION CORP.; MOTOROLA |
| 14 | COMMUNICATIONS AND ELECTRONICS, INC., individually and as the parent, alter ego and successor in |
| 15 | interest to MOTOROLA CORPORATION; |
| 16 | OCCIDENTAL PETROLEUM CORPORATION, individually and as parent, alter ego, successor in interest |
| 17 | and/or successor by merger to DUREZ PLASTICS; |
| 18 | OWENS-ILLINOIS, INC.; PHELPS DODGE/CYPRUS AMAX MINERALS CO., individually, and as parent, alter |
| 19 | ego, successor in interest and equitable trustee to CYPRUS MINES CORPORATION, SIERRA TALC & |
| 20 | CHEMICAL COMPANY, UNITED SIERRA DIVISION, and PAUL W. WOOD COMPANY; PLANT |
| 21 | INSULATION CO., individually and as successor–in-interest to PLANT ASBESTOS COMPANY; PLASTICS |
| 22 | ENGINEERING COMPANY; QUINTEC INDUSTRIES, INC., successor in interest to WESTERN FIBROUS |
| 23 | GLASS COMPANY a.k.a. WESTGLAS; RAYTHEON |
| 24 | CORPORATION; RCA CORPORATION, individually and as parent, alter ego and successor in interest to RCA |
| 25 | VICTOR; SCHNEIDER ELECTRIC, INC., individually and as parent, alter ego, successor in interest and/or |
| 26 | successor by merger to SQUARE D COMPANY; |
| 27 | THORPE INSULATION CO.; UNION CARBIDE CORPORATION; UNIROYAL, INC.; WESTERN |
| 28 | MACARTHUR CO. is sued herein not only in its own |

2

capacity but also as successor-in-interest to WESTERN
ASBESTOS CO. and BAY CITIES ASBESTOS; and
Does 11-500, inclusive,

Defendants.

Plaintiffs HELEN HUTCHISON, Individually and as Successor-in-Interest to WILLIAM ALBERT HUTCHISON, Deceased, and MICHELLE STUART, complain of all defendants, and each of them, and alleges:

## FIRST CAUSE OF ACTION

### (Negligence)

1.    (a)    Plaintiffs are the legal heirs of WILLIAM ALBERT HUTCHISON, Deceased (hereinafter referred to as the "Decedent"). The decedent, WILLIAM ALBERT HUTCHISON, died from asbestos related lung cancer on January 11, 2006. The name of each plaintiff and the relationship to Decedent is as follows:

| Name | Relationship |
| --- | --- |
| HELEN HUTCHISON | Wife/Widow |
| MICHELLE STUART | Daughter |

(b)    HELEN HUTCHISON brings this action on her own behalf and as Successor-in-Interest to WILLIAM ALBERT HUTCHISON, Deceased.

(c)    Plaintiffs are collectively referred to as "plaintiff" herein. Plaintiff knows of no other parties who should be named as a plaintiff herein.

2.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 11 through 500, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named defendants are, through their negligence, intentional torts, and/or conduct giving rise to strict liability, responsible or liable in some manner for the occurrences herein alleged, and that the injuries herein alleged were the direct and legal result of said negligence, intentional torts, and/or conduct giving rise to strict liability.

3

3.      At all times mentioned in this complaint each of the defendants was the agent and employee of each of the remaining defendants, and by their actions as alleged in this complaint each defendant was acting within the course and scope of this agency and employment, and each defendant has ratified and approved the acts of the remaining defendants.   The Federal Courts lack subject matter jurisdiction over this action, as there is no federal question and incomplete diversity of citizenship exists due to the presence of one or more California defendants.  Removal is improper.  Every claim arising under the constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission of a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office).  No claim of admiralty or maritime law is raised.  Plaintiff sues no foreign state or agency.  Venue is proper in Alameda County.

4.      A.W. CHESTERTON COMPANY; ALLIED PACKING & SUPPLY, INC.; ALLIS CHALMERS PRODUCTS LIABILITY TRUST, individually and as parent, alter ego, and successor-in-interest to ALLIS CHALMERS; AMCHEM PRODUCTS, INC.; AMERICAN ASBESTOS COMPANY; AMETEK, INC., individually and as parent, alter ego and successor in interest to HAVEG CORPORATION and HAVEG INDUSTRIES; ASBESTOS CORPORATION LTD.; CBS CORPORATION, a Delaware corporation, f/k/a Viacom, Inc. successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation; CRANE COMPANY; CROWN CORK & SEAL is sued herein not only in its own capacity but also as successor in interest to MUNDET CORK CORPORATION; EATON CORPORATION, individually and as parent, alter ego, successor in interest and/or successor by merger to CUTLER-HAMMER; EATON ELECTRICAL INC., individually and as parent, alter ego, successor in interest and/or successor by merger to EATON CORPORATION and CUTLER-HAMMER; EDO CORPORATION; GARLOCK SEALING TECHNOLOGIES, INC. is sued herein not only in its own capacity but also as parent, alter ego, and successor in interest to GARLOCK, INC. ; GARLOCK, INC.; GENERAL ELECTRIC COMPANY; GRAYBAR ELECTRIC COMPANY, INC.; HILL BROTHERS CHEMICAL COMPANY; HONEYWELL INTERNATIONAL INC., f/k/a AlliedSignal Inc., successor-in-interest to The Bendix Corporation; IMO INDUSTRIES, INC.

4

1    is sued herein not only in its own capacity but also as parent, alter ego, and entities fka IMO

2    DELAVAL, INC., WORTHINGTON TURBINE, INC., IMO DELAVAL, INC., DELAVAL

3    TURBINES, DELAVAL PUMPS, and/or WORTHINGTON TURBINE, INC.; ITT INDUSTRIES

4    INC., as parent and successor-in-interest to GOULDS PUMPS, INC.; J.T. THORPE & SON, INC.;

5    KENTILE FLOORS, INC. ; M. SLAYEN & ASSOCIATES; METALCLAD INSULATION

6    CORP.; MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., individually and as

7    the parent, alter ego and successor in interest to MOTOROLA CORPORATION; OCCIDENTAL

8    PETROLEUM CORPORATION, individually and as parent, alter ego, successor in interest and/or

9    successor by merger to DUREZ PLASTICS; OWENS-ILLINOIS, INC.; PHELPS

10   DODGE/CYPRUS AMAX MINERALS CO., individually, and as parent, alter ego, successor in

11   ~~interest and equitable trustee to CYPRUS MINES CORPORATION, SIERRA TALC &~~

12   CHEMICAL COMPANY, UNITED SIERRA DIVISION, and PAUL W. WOOD COMPANY;

13   PLANT INSULATION CO., individually and as successor–in-interest to PLANT ASBESTOS

14   COMPANY; PLASTICS ENGINEERING COMPANY; QUINTEC INDUSTRIES, INC.,

15   successor in interest to WESTERN FIBROUS GLASS COMPANY a.k.a. WESTGLAS;

16   RAYTHEON CORPORATION; RCA CORPORATION, individually and as parent, alter ego and

17   successor in interest to RCA VICTOR; SCHNEIDER ELECTRIC, INC., individually and as

18   parent, alter ego, successor in interest and/or successor by merger to SQUARE D COMPANY;

19   THORPE INSULATION CO.; UNION CARBIDE CORPORATION; UNIROYAL, INC.;

20   WESTERN MACARTHUR CO. is sued herein not only in its own capacity but also as successor-

21   in-interest to WESTERN ASBESTOS CO. and BAY CITIES ASBESTOS; and Does 11-500,

22   inclusive, are at all times herein mentioned, and were corporations or other business entities

23   organized and existing under the laws of the state of California and/or qualified to do business in

24   this State.

25         5.     At all times mentioned herein defendants, and each of them, were engaged in the

26   business of mining, milling, manufacturing, testing, developing, processing, importing, converting,

27   compounding, assembling, fabricating, modifying, designing, specifying, approving, supplying,

28   distributing, delivering, packaging, labeling, advertising, marketing, warranting, applying,

5

1    installing, and inspecting asbestos, and products produced therefrom, for sale to and use by

2    members of the general public, as well as for sale to and use by other parties to manufacture,

3    assemble, supply, distribute, label, apply and install products made therefrom, or both.

4         6.     The defendants, and each of them, acting through their agents, servants and/or

5    employees, cause, and have caused in the past, certain asbestos-containing products and asbestos-

6    related insulation, refractory materials, fireproofing, gasket and packing materials, bulkhead

7    insulation, decking materials, rope, cloth, tile flooring, boiler and turbine covers, as well as various

8    automotive gaskets, brakes, clutch and other materials to be placed on the market and in the stream

9    of interstate commerce with the result that said products and materials came into use by plaintiff

10    and those working in close proximity to plaintiff at relevant times herein.

11         7.     Decedent WILLIAM ALBERT HUTCHISON was exposed to asbestos during the

12    course of his life during the employment in which he was engaged, and during the time periods set

13    forth below:

14         1950-1974     United States Navy

15         Decedent lived and worked on board ships and submarines.

16         He was a radio repairman and sonar technician; and

17         1953-1954     Inspiration Copper Company, Arizona

18         Decedent worked as a labourer.

19    During the course and scope of his employment, Decedent continually worked with and in close

20    proximity to others who were working with asbestos and asbestos-containing products. He

21    routinely and regularly worked in close proximity to asbestos and asbestos-containing products,

22    and was continually exposed to asbestos fibers which were released from asbestos and asbestos-

23    containing products which were mined, milled, manufactured, processed, imported, converted,

24    compounded, applied, installed, designed, specified, inspected, approved, supplied, distributed and

25    sold by defendants, and each of them.

26         8.     Decedent's exposure to asbestos was the direct and legal cause of his development

27    of an asbestos-related lung cancer and other illnesses and disabilities whose relationship to asbestos

28    is as yet unknown to plaintiff herein.

*Hutchison v. A.W. Chesterton, et al.*     COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

9.    At all times relevant herein, defendants and each of them, owed a duty of due care which required them to exercise ordinary care to protect against an unreasonable risk of harm. This duty was owed to Decedent and plaintiff.

10.    Decedent's development of lung cancer and related conditions is the direct and legal result of the conduct of the defendants, and each of them, in that they negligently and carelessly researched, tested or failed to test, manufactured, designed, specified, developed, labeled, advertised, marketed, warranted, inspected, fabricated, modified, applied, installed, distributed and supplied asbestos and asbestos-containing products. Defendants, and each of them, without any adequate warning to the consumer or user, produced, sold, and otherwise put into the stream of interstate commerce the foregoing materials which said defendants and each of them knew, or in the exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to plaintiff's body, lungs, respiratory system, skin and health. Further, defendants and each of them knew, or through the exercise of ordinary care should have known, that exposure to asbestos is, and at all times relevant herein has been, associated with terminal and incurable diseases which have caused and continue to cause death.

11.    During the time period when Decedent was exposed to asbestos in the manner described above, he had no knowledge that said exposure placed him at risk for developing the diseases described herein and therefore had no opportunity, nor can he be charged with a duty or breach of duty, to protect himself against said harmful asbestos exposure. Plaintiff had no knowledge that the alleged conduct, misconduct and culpability of defendants, and each of them, were actionable at law when they were committed and cannot be charged with knowledge or inquiry thereof.

12.    The lung cancer, asbestosis, pleural plaques, and related conditions that afflicted Decedent developed at a microscopic and undetectable level over an extended period of time, without noticeable trauma, and was therefore unknown and unknowable to Decedent until his physicians diagnosed him with lung cancer, asbestosis, pleural plaques and related conditions within the pertinent statute of limitations. Prior to his diagnosis, Decedent did not know, nor through the exercise of reasonable diligence could he have known, that his disease and related

7

1   conditions were caused by his exposure to the defendants' asbestos and asbestos-containing

2   products.

3       13.    As a direct and legal result of the conduct of the defendants, and each of them,

4   Decedent developed a disease known and designated as lung cancer, asbestosis, pleural plaques and

5   related conditions, from which he died.

6       14.    (a)    And as a further direct and legal result it was necessary for Decedent to

7   retain the services of physicians, hospitals, hospice, and other health care professionals to diagnose,

8   treat, and provide palliative care for Decedent from when he first experienced symptoms related to

9   his asbestos-caused conditions until the end of his life. Plaintiff does not yet know the full extent

10  of treatment rendered to Decedent nor the reasonable value of medical services rendered to

11  Decedent herein and therefore requests leave to amend this complaint when that sum is determined.

12          (b)    As a direct and legal result of the conduct of the defendants, and each of

13  them, and of Decedent's diagnosis of, and death from, lung cancer, asbestosis, pleural plaques and

14  related conditions, Decedent was unable to follow his normal or any gainful occupation for certain

15  periods of time preceding his diagnosis and until Decedent's death. Plaintiff and Decedent

16  incurred, and will incur, loss of income, wages, pensions, earning potential, profits and

17  commissions, and other pecuniary losses. Plaintiff does not know the amount of said past losses

18  and therefore request leave to amend this complaint when that sum is determined.

19      15.    As a further, direct and proximate result of the conduct of defendants, and each of

20  them, Plaintiff buried Decedent and incurred damages for consequential costs of Decedent's

21  funeral, burial and related expenses in a sum to be subsequently determined.

22      16.    As a further direct and legal result of the conduct of the defendants, and each of

23  them, plaintiff sustained the loss of Decedent's love, companionship, comfort, care, assistance,

24  protection, affection, society, support, teaching and tutelage, all to plaintiff's damage in an amount

25  of at least $50,000.

26      17.    The foregoing acts of the defendants, and each of them, were done wantonly,

27  willfully, oppressively, and in conscious disregard of the safety of Decedent herein, by the

28  defendants, and each of them, in that the defendants, and each of them, prior to and at the time of

8

1  sale of the aforementioned products to Decedent s employer or to others who in turn sold to

2  Decedent's employers, and to other persons relevant herein, knew that the foregoing asbestos fibers

3  released from said products during the foreseeable operations of applying and removing same, were

4  dangerous when inhaled. The defendants, and each of them, either did not warn or insufficiently

5  warned regarding the dangerous nature of said products, nor placed a sufficient warning on the said

6  product or package thereof regarding said dangerous nature, despite knowing that said products

7  would be used by Decedent and others who had no knowledge of the dangerous and hazardous

8  nature thereof, and therefore plaintiff is entitled to an award of punitive damages.

9  　　　　WHEREFORE, plaintiff prays judgment as hereinafter set forth.

10  　　　　　　　　　　　　**SECOND CAUSE OF ACTION**

11  　　　　　　　　　　　　**(Strict Products Liability)**

12  　　　　AS AND FOR A SECOND CAUSE OF ACTION, plaintiff complains of the defendants,

13  and each of them, and alleges:

14  　　　　18.　　Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

15  fully set forth herein, each and every allegation contained in the First Cause of Action herein,

16  except allegations pertaining to negligence.

17  　　　　19.　　(a)　　At all times mentioned herein defendants, and each of them, during the

18  ordinary course of business, mined, milled, manufactured, imported, supplied, distributed,

19  delivered, packaged, labeled, advertised, sold, marketed, distributed, delivered, installed, applied

20  and otherwise introduced into the stream of commerce asbestos and asbestos-containing products

21  which were defective due to their design, manufacture, sufficiency or lack of warning, and/or

22  failure to meet ordinary use or consumer expectations of safety when used in an intended or

23  reasonably foreseeable manner

24  　　　　　　(b)　　The asbestos and asbestos-containing products were defective when the

25  defendants, and each of them, marketed and introduced them into the stream of commerce.

26  Defendants, and each of them, knew that the aforementioned products would be used without

27  inspection for defects by the user thereof

28  　　　　　　(c)　　At all times herein mentioned Decedent, Decedent's employer, and other

*Hutchison v. A.W. Chesterton, et al.*　　　　　COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

1   persons relevant herein, purchased from defendants, and each of them, asbestos and asbestos-

2   containing products.

3        21.    *Defective Design*: The products were defectively designed in that:

4             (a)    The products failed to perform as safely as an ordinary consumer would

5   expect in their intended or reasonably foreseeable use or manner of operation, or,

6             (b)    The products had inherent risks of danger that outweighed their benefits;

7   alternate and safer substitute products existed and the state-of-the-art required their use given the

8   seriousness of the potential danger, likelihood of its occurrence, feasibility, cost and adverse

9   consequences to the product and to the consumer of a safer alternative design.

10            (c)    *Failure to Warn*: Defendants knew or reasonably should have known of the

11   dangerous propensities of their products but nonetheless distributed and marketed their products

12   with inadequate warning of its dangers.

13            (d)    Each of Defendants' products reached Decedent without substantial change

14   in its condition.

15            (e)    The aforementioned products were used by Decedent and those in close

16   proximity to Decedent in a foreseeable manner, and in the manner for which they were intended.

17   Defendants' products were used in a manner reasonably foreseeable by Defendants, which

18   Defendants intended or knew they would be used, or for which they marketed them or knew they

19   were marketed to be used.

20            (f)    At all times mentioned herein, plaintiff and Decedent were unaware of the

21   dangerous nature of the aforementioned products.

22        22.    (a)    The defective design of Defendants' products and failure to warn were the

23   proximate causes of Plaintiff's injuries and death.

24            (b)    As a direct and legal result of the conduct of the defendants, and each of

25   them, Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

26   conditions and disabilities as previously set forth, from which he died.

27        23.    The conduct of the Defendants, and each of them, was motivated by their financial

28   interests. In this financial pursuit, Defendants consciously disregarded the safety of users, and

                                            10

1  persons exposed to their products, and were consciously willing to permit their products and

2  premises to injure workers and others, including Decedent in order to maximize profits. They

3  consciously disregarded the well-publicized risks of asbestos exposure because to have kept

4  consumers and end users like Decedent safe would have required said defendants to make less

5  money or limit distribution of their products. Defendants' conduct was and is willful, malicious,

6  outrageous, and in conscious disregard and indifferent to the safety and health of workers and

7  others exposed to asbestos, including Decedent. Defendants, and each of them, prior to and at the

8  time of sale of the aforementioned products to Decedent's employer or to others who in turn sold to

9  Decedent's employers, and to other persons relevant herein, knew that the asbestos which Decedent

10 and others around him were exposed to was dangerous. The defendants, and each of them, either

11 did not warn or insufficiently warned regarding the dangerous nature of said products, nor placed a

12 sufficient warning on the said product or package thereof regarding said dangerous nature, despite

13 knowing that said products would be used by Decedent and others around him who had no

14 knowledge of the dangerous and hazardous nature thereof, and therefore Plaintiff is entitled to an

15 award of punitive damages.

16      WHEREFORE, plaintiff prays judgment as hereinafter set forth.

17                              **THIRD CAUSE OF ACTION**

18                                  **(Failure to Warn)**

19      AS AND FOR A THIRD CAUSE OF ACTION, plaintiff complains of the defendants, and

20 each of them, and alleges:

21      24.    Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

22 fully set forth herein, each and every allegation contained in the First Cause of Action herein,

23 except allegations pertaining negligence, and each and every allegation contained in the Second

24 Cause of Action, except those allegations pertaining to design and manufacturing defect.

25      25.    At all relevant times, the asbestos and asbestos-containing products which were

26 mined, milled, manufactured, tested, developed, processed, imported, converted, compounded

27 assembled, fabricated, modified, designed, specified, approved, sold, supplied, distributed,

28 delivered, packaged, labeled, advertised, marketed, warranted, applied, installed, and inspected by

*Hutchison v. A.W. Chesterton, et al.*          COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

1  defendants, and each of them, were defective as a result of defendants' failure to warn or give

2  adequate warning that the particular risk of developing an asbestos-related disease, and risk of

3  death from an asbestos-related disease resulting from exposure to asbestos, rendered the product

4  unsafe for its intended or reasonably foreseeable use.

5      26.    At all relevant times, the defendants and each of them had specific knowledge of

6  these risks or could have known of these risks by the application of scientific knowledge available

7  at the time of mining, manufacturing, selling, supplying, distributing, marketing, specifying,

8  approving, inspecting, applying and installing the asbestos and asbestos-containing products.

9      27.    As a direct and legal result of the conduct of the defendants, and each of them,

10  Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

11  conditions and disabilities as previously set forth, and has incurred damages in excess of

12  $50,000.00 in addition to the special damages alleged herein.

13      WHEREFORE, plaintiff prays judgment as hereinafter set forth.

14                    **FOURTH CAUSE OF ACTION**

15                    **(Breach of Implied Warranties)**

16      AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of defendants, and

17  each of them, and alleges:

18      28.    Plaintiffs, by this reference, hereby incorporate and make a part hereof, as though

19  fully set forth herein, each and every allegation contained in the First, Second and Third Causes of

20  Action herein, except allegations pertaining to negligence.

21      29.    (a)    The defendants, and each of them, sold, supplied, delivered or otherwise

22  distributed to Decedent, or to another purchaser or user who subsequently sold, supplied, delivered

23  or otherwise distributed to Decedent, or to others working in close proximity to Decedent, the

24  above-described asbestos and asbestos-containing products to which Decedent was exposed.

25          (b)    The defendants, and each of them, knew the intended purpose of the asbestos

26  and asbestos-containing products prior to marketing said products, and knew or should have known

27  that dangerous levels of asbestos fiber would be released during the process of applying, installing

28  and removing these products.

12

1        (c)    The defendants, and each of them, placed said asbestos and asbestos-

2    containing products on the market without any warning, or with an inadequate warning, and by so

3    doing impliedly warranted that said products were of good and merchantable quality and fit for

4    their intended purpose.

5        (d)    Defendants, and each of them, impliedly warranted that their products were

6    of merchantable quality and safe, fit and proper for the uses which Defendants knew or intended

7    were to be made of them at the time of selling them.

8       30.    Plaintiff reasonably relied on the skill, knowledge and judgment of defendants, and

9    each of them, in Plaintiff's use of the products as a basis of the bargain under which such products

10   were bought and used.

11      31.    The products were neither safe for their intended use nor of merchantable quality or

12   fit for use as warranted by defendants, and each of them, in that said products had dangerous

13   propensities when put to the use for which each of these Defendants knew or intended they were

14   marketed or sold, and would cause severe injury to users or bystanders, such as Plaintiff.

15      32.    The defendants, and each of them, breached the implied warranties of

16   merchantability and fitness for an intended purpose by marketing asbestos and asbestos-containing

17   products without a warning, or with an inadequate warning, advising Decedent and others working

18   in close proximity to Decedent that dangerous levels of asbestos fiber would be released during the

19   process of applying, installing and removing said products.

20      33.    As a direct and legal result of the conduct of the defendants, and each of them,

21   Decedent developed an asbestos-related disease known and designated as asbestos related lung

22   cancer, from which he died. Plaintiff has incurred damages in excess of $50,000.00 in addition to

23   the special damages alleged herein.

24      WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

25

26   **FIFTH CAUSE OF ACTION**

27   **(Fraud and Conspiracy)**

28   AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of the defendants, and

13

*Hutchison v. A.W. Chesterton, et al.*                COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

1   each of them, and alleges:

2       34.     Plaintiff, by this reference, hereby incorporates and makes a part hereof, as though

3   fully set forth herein, each and every allegation contained in the First through Fourth Causes of

4   Action herein.

5       35.     Pursuant to Section 1708 of the Civil Code of California, the defendants and each of

6   them, owed a duty to Decedent at all times relevant herein to abstain from injuring the Decedent or

7   infringing upon any of his rights.

8       36.     The defendants, and each of them, breached the duty they owed to Decedent and

9   plaintiff pursuant to Section 1708 of the Civil Code of California by willfully deceiving him with

10  the intent to induce him to alter his position to his injury or risk. The defendants, and each of them,

11  deceived the Decedent and committed actionable fraud pursuant to Section 1709 and Section 5

12  1710 of the Civil Code of California.

13      37.     The defendants, and each of them, as more fully set forth below, suggested as fact

14  that which was not true, and that which defendants, and each of them, did not believe was true.

15      38.     The defendants, and each of them, as more fully set forth below, asserted as fact that

16  which was not true, and that which defendants, and each of them, had no reasonable grounds for

17  believing was true.

18      39.     The defendants, and each of them, as more fully set forth below, suppressed facts

19  which they were obligated to disclose, and gave information of other facts which were likely to

20  mislead for want of communication of the undisclosed facts.

21      40.     The defendants, and each of them, made promises without any intention of keeping

22  those promises.

23      41.     Since 1924, the defendants, and each of them, have known and have possessed the

24  true facts of medical and scientific data and other knowledge which clearly indicated that the

25  materials and products referred to herein were and are hazardous to the health and safety of the

26  Decedent, and others in plaintiff's position working in close proximity with such materials. The

27  defendants, and each of them, have known of the dangerous propensities of the aforementioned

28  materials and products since before that time, and with intent to deceive Decedent, and others in his

*Hutchison v. A.W. Chesterton, et al.*                    COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

1  position, and with intent that he and such others should be and remain ignorant of such facts, and

2  with intent to induce Decedent and such others to alter his and their positions to his and their injury

3  and/or risk and in order to gain advantages did do the following acts:

4        A.     Defendants, and each of them, did not label any of the aforementioned asbestos-

5  containing materials and products regarding the hazards of such materials and products to

6  the health and safety of Decedent and others in Decedent's position working in close

7  proximity with such materials until 1964, when certain of such materials were labeled by

8  some, but not all, of the defendants herein, despite the fact that the knowledge of such

9  hazards existed and was known to defendants, and each of them, since 1924. By not

10  labeling such materials as to their said hazards, defendants, and each of them, caused to be

11  suggested as a fact to Decedent and Decedent's employer that it was safe for Decedent to

12  work in close proximity to such materials when in fact it was not true and defendants did

13  not believe it to be true;

14        B.     Defendants, and each of them, suppressed information relating to the danger of the

15  use of the aforementioned materials by requesting the suppression of information to the

16  Decedent and the general public concerning the dangerous nature of the aforementioned

17  materials to workers and by not allowing such information to be disseminated in a manner

18  which would give general notice to the public and knowledge of the hazardous nature

19  thereof, when defendants were bound to disclose such information;

20        C.     Defendants, and each of them, sold the aforementioned products and materials

21  Decedent's employer and others without advising such employers and others of dangers of

22  the use of such materials to persons working in close proximity thereto, when defendants

23  knew of such dangers, as set forth herein, and, as set forth above, had a duty to disclose

24  such dangers. Thereby, defendants caused to be positively asserted to Decedent's employer

25  that which was not true and which defendants had no reasonable ground for believing to be

26  true, and in a manner not warranted by the information possessed by said defendants, and

27  each of them, to wit, that it was safe for Decedent to work in close proximity to such

28  materials;

15

D.      Defendants, and each of them, suppressed and continue to suppress from everyone, including Decedent and Decedent's employer, medical and scientific data and knowledge of the results of studies including, but not limited to, the information and knowledge of the contents of the Lanza report. Although bound to disclose it, defendants, and each of them, influenced A. J. Lanza to change his report, the altered version of which was published in Public Health Volume at page I in 1935, thereby causing Decedent to be and remain ignorant thereof.   Defendants, and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

E.      Defendants, and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, and on behalf of defendants, and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Decedent and Decedent's employer by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enjoined to study the subject of dust control.   Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and the suppression of such information from 1946 to a date unknown to plaintiff at this time;

F.      Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of workers at Raybestos- Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and lung cancer, asbestosis, pleural plaques, and related conditions which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other defendants, and each of them, herein. Between 1942 and 1950, the defendants, and each of them, acquired medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information disseminated through the

16

1    Asbestos Textile Institute and other industry organizations to all other defendants herein.

2    Thereby, defendants suggested as a fact that which is not true and disseminated other facts

3    likely to mislead Decedent and Decedent's employer and which did mislead them by

4    withholding afore described medical and scientific data and by not giving Decedent or

5    Decedent's employer the true facts concerning such knowledge of danger, when defendants

6    were bound to disclose it;

7    G.    Defendants, and each of them, failed to warn Decedent and Decedent's employer

8    that said materials were dangerous when breathed and caused pathological effects without

9    noticeable trauma, despite the fact that defendants possessed knowledge and were under a

10    duty to disclose that such material was dangerous and a threat to the health of persons

11    coming into contact therewith;

12    H.    Defendants, and each of them, failed to provide Decedent with information

13    concerning adequate protective masks and devices to be used when applying and installing

14    the products of the defendants, and each of them, despite the knowledge of defendants and a

15    duty to disclose that such protective measures were necessary and would result in injury to

16    the Decedent and others applying and installing such materials if not so advised;

17    I.    Defendants, and each of them, concealed from Decedent the true nature of the

18    industrial and construction exposure of Decedent, and knew that Decedent and anyone

19    similarly situated, upon inhalation of asbestos would, in time, develop irreversible

20    conditions of either pneumoconiosis, asbestosis or cancer, or all, and that the materials to

21    which he was exposed would cause pathological effects without noticeable trauma despite

22    the fact that defendants were under a duty to and bound to disclose it; and

23    J.    Defendants, and each of them, failed to provide information to the public at large

24    and buyers, users, and physicians employed by Decedent and Decedent's employer for the

25    purpose of conducting physical examinations of Decedent and others working with or near

26    asbestos of the true nature of the hazards of asbestos, and that exposure to these materials

27    would cause pathological effects without noticeable trauma to the public, including buyers,

28    users, and physicians employed by Decedent and Decedent's employer so that said

17

physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that defendants, and each of them, were under a duty to so inform and said failure was misleading.

42.    Defendants, and each of them, having the aforementioned knowledge of facts and knowing that the Decedent did not possess such knowledge, acted falsely and fraudulently and with full intent to cause Decedent to remain unaware of those facts and to induce Decedent to work with and around unsafe products in a dangerous environment, all in violation of Section 1710 of the Civil Code of the State of California.

43.    At all times mentioned, the defendants, and each of them, knowingly and willfully conspired and agreed among themselves to perpetrate upon Decedent the unlawful acts complained of in the First and Fifth Causes of Action.

44.    The defendants, and each of them, and at least one of them, did the acts herein alleged in Paragraph 43 of this Cause of Action in furtherance of the conspiracy and agreement as herein alleged, and also acted in furtherance of a conspiracy and agreement between and among the defendants, and each of them, to violate State and Federal laws and regulations, the exact nature and extent of which are unknown at this time, but known full well to defendants, and each of them. These actions were done maliciously, wantonly, and in reckless disregard for the health and safety of others, including Decedent herein.

45.    Decedent reasonably relied upon the misrepresentations of the defendants, and each of them, and in reliance on same continued to work with and around asbestos and asbestos-containing products. Decedent would have taken steps to protect his health and life had he known the facts, which were known to the defendants, and each of them, about exposure to asbestos and asbestos-containing products. Decedent would not have knowingly continued to work in an unsafe environment. He had no knowledge of the foregoing facts and actions of the defendants, and each of them, at the time when they were committed, and cannot be charged with knowledge or inquiry thereof.

46.    As a direct and legal result of the conduct of the defendants, and each of them, Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

18

1  conditions and disabilities as previously set forth, from which he died.  Plaintiff has incurred

2  damages in excess of $50,000.00 in addition to the special damages alleged.

3      WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

### SIXTH CAUSE OF ACTION

#### (Enterprise Liability)

6      AS AND FOR A SIXTH CAUSE OF ACTION, plaintiff complains of the defendants, and each

7  of them, and alleges:

8      47.    Plaintiff incorporates by reference as though fully set forth herein, each and every

9  allegation of the First, Second, Third, and Fifth Causes of Actions herein.

10     48.    The defendants, and each of them, mined, milled, manufactured, tested, developed,

11 processed, imported, converted, compounded, assembled, fabricated, modified, designed, specified,

12 approved, sold, supplied, distributed, delivered, packaged, labeled, advertised, marketed,

13 warranted, applied, installed, inspected and otherwise marketed asbestos and asbestos-containing

14 products. These products were defective and carried with them an inadequate warning, or no

15 warning at all, regarding the health hazards associated with asbestos exposure. The defendants, and

16 each of them, knew or should have known of the defective and hazardous nature of the asbestos

17 and asbestos-containing products at the time that said products were placed in the stream of

18 commerce.

19     49.    Decedent, at all times pertinent herein, was unaware and cannot be charged with

20 knowledge of the health hazards associated with exposure to asbestos fibers released from the afore

21 alleged asbestos and asbestos-containing products of the defendants, and each of them. On the

22 other hand, the defendants, and each of them, introduced these products into the market where

23 Decedent worked and were in a position to prevent harmful exposures to all persons therein,

24 including the Decedent.

25     50.    Decedent, at all times pertinent herein, was exposed to asbestos fibers released from

26 asbestos and asbestos-containing products which are and were fungible in color, size, shape,

27 texture, and function. Said products were similar in appearance and composition, and indistinct one

28 from the others, and through no fault of the Decedent these products cannot be traced to a particular

1    defendant or other entity.

2        51.    In this action, plaintiff has joined as defendants a substantial share of the

3    manufacturers and suppliers of the asbestos and asbestos-containing products which comprised the

4    relevant market within which Decedent was exposed to asbestos fibers. At trial, plaintiff will prove

5    the respective market share of the defendants, and each of them, during all times relevant herein.

6    The liability of the defendants, and each of them, is proportional to their respective market share

7    percentage, consistent with the rules set forth in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d

8    588, *cert. denied* (1980) 449 U.S. 912.

9        52.    As a direct and legal result of the conduct of the defendants, and each of them,

10   Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

11   conditions and disabilities as previously set forth, from which he died. Plaintiff has incurred

12   damages in excess of $50,000.00 in addition to the special damages alleged herein.

13        WHEREFORE, plaintiff prays judgment as hereinafter set forth.

14                    **SEVENTH CAUSE OF ACTION**

15        **(False Representation Under Restatement Torts Section 402-B)**

16        AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff complains of the defendants,

17   and each of them, and alleges:

18        53.    Plaintiff incorporates by reference as though fully set forth herein, each and every

19   allegation of the First, Second, Third, Fourth, Fifth, and Sixth Causes of Actions herein.

20        54.    At the aforementioned time when defendants, and each of them, researched,

21   manufactured, tested or failed to test, warned or failed to warn, designed, labeled, distributed,

22   advertised, marketed, warranted, inspected, repaired, offered for sale and sold the said asbestos and

23   asbestos-containing products, as hereinabove set forth, the defendants, and each of them, expressly

24   and impliedly represented to members of the general public, including the purchasers and users of

25   said product, and including Decedent WILLIAM ALBERT HUTCHISON herein and his

26   employers, that asbestos and asbestos-containing products were of merchantable quality, and safe

27   for the use for which they were intended.

28        55.    The purchasers and users of said asbestos and asbestos-containing products,

                                20

1  including Decedent and his employers, relied upon said representations of defendants and each of

2  them, in the selection, purchase and use of asbestos and asbestos-containing products.

3      56.    Said representations by defendants, and each of them, were false and untrue, in that

4  the asbestos and asbestos-containing products were not safe for their intended use, nor were they of

5  merchantable quality as represented by defendants, and each of them, in that asbestos and asbestos

6  containing products have very dangerous properties and defects whereby said products cause lung

7  cancer, asbestosis, pleural plaques, and other diseases, and have other defects that cause injury and

8  damage to the users of said products, including the Decedent herein, thereby threatening the health

9  and life of Decedent.

10      57.    As a direct and legal result of the conduct of the defendants, and each them

11  Decedent developed an asbestos-related lung cancer, asbestosis, pleural plaques, and related

12  conditions and disabilities as previously set forth, from which he died.  Plaintiff has incurred

13  damages in excess of $50,000.00 in addition to the special damages alleged herein.

14      WHEREFORE, plaintiff prays judgment as hereinafter set forth.

15             **EIGHTH CAUSE OF ACTION**

16                  **(Survival Action)**

17      AS AND FOR A NINTH CAUSE OF ACTION, plaintiff complains of defendants, and

18  each of them, as follows:

19      58.    Plaintiff HELEN HUTCHISON, Individually and as Successor-in-Interest to

20  WILLIAM ALBERT HUTCHISON, Deceased, hereby incorporates each allegation contained in

21  each and every paragraph of the General Allegations and the First through Seventh Causes of

22  Action, inclusive, as though fully realleged in respect to this cause of action.

23      59.    Prior to his death, Decedent WILLIAM ALBERT HUTCHISON had a cause of

24  action against defendants herein for personal injuries arising from his exposure to asbestos.

25  Subsequent to the arisal of this cause of action and within the pertinent statutes of limitation,

26  WILLIAM ALBERT HUTCHISON, Decedent who would have been the plaintiff in this action if

27  he had lived, died.

28      60.    As a proximate result of the conduct of defendants, and each of them, Decedent was

*Hutchison v. A.W. Chesterton, et al.*           COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

1    required to, and did, employ physicians and surgeons to examine, treat and care for him and did

2    incur medical and incidental expenses in a sum to be subsequently determined.

3        61.    As a further, direct and proximate result of the conduct of defendants, and each of

4    them, Decedent was prevented from attending to his usual occupation for a period of time and

5    thereby incurred damages for loss of earnings in a sum to be subsequently determined.

6        62.    As a further, direct and proximate result of the conduct of defendants, and each of

7    them, Plaintiff buried Decedent and incurred damages for consequential costs of Decedent's funeral

8    and burial in a sum to be subsequently determined.

9        63.    As a direct and legal result of the conduct of the defendants, and each of them, prior

10   to Decedent's death, Decedent sustained the damages alleged herein, in an amount of at least

11   $50,000.

12       WHEREFORE, plaintiffs HELEN HUTCHISON and MICHELLE STUART pray

13   judgment as follows:

14   **First through Seventh Causes of Action**

15       1.    General damages in an amount in excess of $50,000.00 in accordance with proof;

16       2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

17   accordance with proof;

18       3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

19   in accordance with proof;

20       4.    Special damages in accordance with the proof;

21       5.    Prejudgment interest and post-judgment interest in accordance with law;

22       6.    Costs of suit; and,

23       7.    Such and other and further relief as the Court deems just and proper.

24   **Eighth Cause of Action**

25       1.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

26   accordance with proof;

27       3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

28   in accordance with proof;

*Hutchison v. A.W. Chesterton, et al.*                    COMPLAINT FOR DAMAGES (WRONGFUL DEATH)

1      4.     Special damages in accordance with the proof;

2      5.     Prejudgment interest and post-judgment interest in accordance with law;

3      6.     Costs of suit; and,

4      7.     Such and other and further relief as the Court deems just and proper.

5

DATED: January 4, 2007           BRENT COON & ASSOCIATES

By: _____

AUDREY A. SMITH

Attorneys for Plaintiffs

23

## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION PACKAGE
### Effective April 15, 2005

### Instructions to Plaintiff / Cross-Complainant

In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the complaint, an Alternative Dispute Resolution (ADR) information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.**

Rev 4/05

## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- **ADR can be speedier.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorney fees, and expert witness fees can be saved.

- **ADR can permit more participation.** With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR can be flexible.** The parties can choose the ADR process that is best for them.

- **ADR can be cooperative.** In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

Rev 4/05

# Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

## Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

## Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

## Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Provider in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the Court's Web site.** The Alameda County Superior Court maintains a list of court-connected mediators, neutral evaluators, and private arbitrators at http://www.co.alameda.ca.us/courts/adr.htm.

- **Contact the Small Claims Court Legal Advisor.** The small claims legal advisor for Alameda County is located at the Wiley W. Manuel Courthouse, Self-Help Center. The phone number is 510-268-7665.

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediati1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages** of your telephone book under "Arbitrators" or "Mediators."

- **Automotive Repair, Smog Check:** The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Attorney Fees:** The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Mediation Services**
**222278 Redwood Road, Castro Valley, CA 94546**
Phone: (510) 733-4940   fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teel Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

**East Bay Community Mediation**
**1968 San Pablo Avenue, Berkeley, CA 94702-1612**
Phone: (510) 548-2377   fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

**Catholic Charities of the East Bay: Oakland – Main Office**
**433 Jefferson Street, Oakland, CA 94607**
Phone: (510) 768-3100   fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**1789 Barcelona Street, Livermore, CA 94550**
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**California Lawyers for the Arts: Oakland Office**
**1212 Broadway Street, Suite 837, Oakland, CA 94612**
Phone: (510) 444-6351   fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

# ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Benjamin D. Stough, Berkeley Trial Court Administrator, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

#### Appointment of Arbitrator (must be appointed within 30 days after referral per *CRC 1605*).
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per *CRC 1605a*)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

#### Assignment of Case *(CRC 1605a(4))*
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

#### Hearings *(CRC 1611)*
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

#### Award of Arbitrator *(CRC 1615b & c)*
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator is cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

#### Return of Case to Court
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94707 | Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

Plaintiff

vs.

Defendant

Case No.: _____

## STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

_____

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

Rev 4/05

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, telephone number, and attorney State Bar number):*

Richard A. Brody, Esq. (SBN 100379)
BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800

San Francisco, CA 94104

ATTORNEY FOR *(Name):* PLAINTIFFS, HELEN HUTCHISON, et al.

*Reserved for Clerk's File Stamp*

ENDORSED
FILED
ALAMEDA COUNTY

APR 2 6 2007

By L Weist
Exec. Off./Clerk

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

COURT ADDRESS: 1225 Fallon Street

Oakland, CA 94612

PLAINTIFF HELEN HUTCHISON, Ind., and as successor-in-interest
to the Estate of WILLIAM ALBERT HUTCHISON,

DEFENDANT A.W. CHESTERTON COMPANY, et al.,

## AMENDMENT TO COMPLAINT
### (Fictitious/Incorrect Name)

| CASE NUMBER |
| --- |
| RG 07 305255 |

---

[X] **FICTITIOUS NAME** *(No order required)*

Upon filing the complaint in this case, the plaintiff, being ignorant of the true name of a defendant and having desig-
nated the defendant in the complaint by the fictitious name of: DOE 11

and having discovered the defendant's true name to be: PHELPS DODGE INDUSTRIES, INC., individually and as
parent, alter ego, sii and equitable trustee to CYPRUS MINES CORP., SIERRA TALC & CHEM. CO., UNITED
SIERRA DIVISION, PAUL W. WOOD COMPANY and CYPRUS AMAX
amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

[ ] **INCORRECT NAME** *(Order required)*

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

and having discovered the true name of the defendant to be:

amends the complaint by inserting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE |
| --- | --- | --- |
| 4.25.07 | Richard A. Brody, Esq, (SBN | |

## ORDER

THE COURT ORDERS the amendment approved and filed.

Date:

_____

[ ] Judge   [ ] Commissioner

---

FORM NO. AC-001 (New 4-00)

**AMENDMENT TO COMPLAINT**
**(Fictitious/Incorrect Name)**

C.C.P. §§471.5, 472, 473, 474

AL-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
AUDREY A. SMITH, ESQ.  SBN 118411
BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800

San Francisco, CA 94104
TELEPHONE NO.:                    FAX NO.  415.489.7426
ATTORNEY FOR *(Name):* PLAINTIFFS, HELEN HUTCHISON, et al.
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson

CASE NAME:  Hutchison, et al., v. A.W. Chesterton
Company, et al.

**FILED**
ALAMEDA COUNTY

JAN 0 8 2007

CLERK OF THE SUPERIOR COURT
By _____
Deputy

*5353056*

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | RG07305253 |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[X] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive

4. Number of causes of action *(specify):*

5. This case [ ] is   [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 4, 2007
AUDREY A. SMITH, ESQ.  SBN 118411
*(TYPE OR PRINT NAME)*                    ▶ _____
                              *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 3.220, 3.400–3 403;
Standards of Judicial Administration, § 19

| Short Title: Hutchison, et al., v. A.W. Chesterton Company, et al. | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

### THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

[X] Oakland, Rene C. Davidson Alameda County Courthouse (446)

[ ] Hayward Hall of Justice (447)

[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) |
|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 Auto tort (G) <br> Is this an uninsured motorist case ? [ ] yes [ ] no |
| Other PI /PD / WD Tort | Asbestos (04) <br> Product liability (24) <br> Medical malpractice (45) <br> Other PI/PD/WD tort (23) | [X] 75 Asbestos (D) <br> [ ] 89 Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) <br> [ ] 97 Medical malpractice (G) <br> [ ] 33 Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) <br> Civil rights (08) <br> Defamation (13) <br> Fraud (16) <br> Intellectual property (19) <br> Professional negligence (25) <br> Other non-PI/PD/WD tort (35) | [ ] 79 Bus tort / unfair bus. practice (G) <br> [ ] 80 Civil rights (G) <br> [ ] 84 Defamation (G) <br> [ ] 24 Fraud (G) <br> [ ] 87 Intellectual property (G) <br> [ ] 59 Professional negligence - non-medical (G) <br> [ ] 03 Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) <br> Other employment (15) | [ ] 38 Wrongful termination (G) <br> [ ] 85 Other employment (G) <br> [ ] 53 Labor comm award confirmation <br> [ ] 54 Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) <br> Collections (09) <br> Insurance coverage (18) <br> Other contract (37) | [ ] 04 Breach contract / Wrnty (G) <br> [ ] 81 Collections (G) <br> [ ] 86 Ins. coverage - non-complex (G) <br> [ ] 98 Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) <br> Wrongful eviction (33) <br> Other real property (26) | [ ] 18 Eminent domain / Inv Cdm (G) <br> [ ] 17 Wrongful eviction (G) <br> [ ] 36 Other real property (G) |
| Unlawful Detainer | Commercial (31) <br> Residential (32) <br> Drugs (38) | [ ] 94 Unlawful Detainer - commercial   Is the deft. in possession <br> [ ] 47 Unlawful Detainer - residential   of the property? <br> [ ] 21 Unlawful detainer - drugs   [ ] Yes [ ] No |
| Judicial Review | Asset forfeiture (05) <br> Petition re: arbitration award (11) <br> Writ of Mandate (02) <br><br> Other judicial review (39) | [ ] 41 Asset forfeiture <br> [ ] 62 Pet. re: arbitration award <br> [ ] 49 Writ of mandate <br> Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No <br> [ ] 64 Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) <br> Construction defect (10) <br> Claims involving mass tort (40) <br> Securities litigation (28) <br> Toxic tort / Environmental (30) <br> Ins covrg from cmplx case type (41) | [ ] 77 Antitrust / Trade regulation <br> [ ] 82 Construction defect <br> [ ] 78 Claims involving mass tort <br> [ ] 91 Securities litigation <br> [ ] 93 Toxic tort / Environmental <br> [ ] 95 Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 Enforcement of judgment <br> [ ] 08 Confession of judgment |
| Misc. Complaint | RICO (27) <br> Partnership / Corp. governance (21) <br> Other complaint (42) | [ ] 90 RICO (G) <br> [ ] 88 Partnership / Corp. governance (G) <br> [ ] 68 All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 Change of name <br> [ ] 89 Other petition |

202-19 (5/1/00)

AL20219

**- DO NOT FILE WITH THE COURT -**                                                    **CIV-050**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: **415.489.7420** | FOR COURT USE ONLY |
|---|---|---|

RICHARD A. BRODY, ESQ. (SBN 100379)
BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800

San Francisco, CA 94104

ATTORNEY FOR (name): PLAINTIFFS, HELEN HUTCHISON, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson

PLAINTIFF: HELEN HUTCHISON, Ind., and as successor-i
DEFENDANT: A.W. CHESTERTON COMPANY, et al.,

| STATEMENT OF DAMAGES (Personal Injury or Wrongful Death) | CASE NUMBER: RG07 305255 |
|---|---|

To (name of one defendant only): See attached list of defendants
Plaintiff (name of one plaintiff only): Helen Hutchison
seeks damages in the above-entitled action, as follows:

**1. General damages**                                                                    **AMOUNT**

  a. ☐ Pain, suffering, and inconvenience ............................................. $ _____

  b. ☐ Emotional distress ............................................................. $ _____

  c. ☒ Loss of consortium ............................................................ $ 5,000,000

  d. ☒ Loss of society and companionship (wrongful death actions only) .............. $ 5,000,000

  e. ☐ Other (specify) ................................................................ $ _____

  f. ☐ Other (specify) ................................................................ $ _____

  g. ☐ Continued on Attachment 1.g.

**2. Special damages**

  a. ☒ Medical expenses (to date) ..................................................... $ 500,000

  b. ☐ Future medical expenses (present value) ........................................ $ _____

  c. ☒ Loss of earnings (to date) ..................................................... $ 1,000,000

  d. ☒ Loss of future earning capacity (present value) ................................ $ 1,000,000

  e. ☐ Property damage ............................................................... $ _____

  f. ☒ Funeral expenses (wrongful death actions only) ................................. $ 50,000

  g. ☒ Future contributions (present value) (wrongful death actions only) ............. $ 5,000,000

  h. ☒ Value of personal service, advice, or training (wrongful death actions only) .. $ 5,000,000

  i. ☐ Other (specify) ................................................................ $ _____

  j. ☐ Other (specify) ................................................................ $ _____

  k. ☐ Continued on Attachment 2.k.

**3. ☒ Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of (specify) $ 10,000,000
when pursuing a judgment in the suit filed against you.

Date: April 20, 2007

RICHARD A. BRODY, ESQ. (SBN 100379)
_____
(TYPE OR PRINT NAME)                    ▶        (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)                                                          Page 1 of 2

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**                    Code of Civil Procedure, §§ 425.11, 425.115

Legal Solutions Plus

Smith, Audrey Anne
44 Montogomery St
Ste. # 800
San Francisco, CA   94104

A.W. Chesterton Company

---

### Superior Court of California, County of Alameda

| Hutchison | |
|---|---|
| | Plaintiff/Petitioner(s) |
| | VS. |
| A.W. Chesterton Company | |
| | Defendant/Respondent(s) |
| | (Abbreviated Title) |

No. RG07305255

**NOTICE OF CASE MANAGEMENT
CONFERENCE AND ORDER**
Unlimited Jurisdiction

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.**
Notice is given that a Case Management Conference has been scheduled as follows:

| Date: 05/25/2007 | Department: 20 | Judge: **Robert Freedman** |
|---|---|---|
| Time: 09:00 AM | Location: **Administration Building** | Clerk: **Hollie M. Adamic** |
| | **Fourth Floor** | Clerk telephone: **(510) 272-6165** |
| | **1221 Oak Street, Oakland CA 94612** | E-mail: |
| | | **Dept.20@alameda.courts.ca.gov** |
| | Internet: **http://www.alameda.courts.ca.gov** | Fax: **(510) 267-1576** |

### ORDERS

1.  You must:
    a.  **Serve all named defendants and file proofs of service** on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
    b.  **Give notice** of this conference to any party not included in this notice and file proof of service;
    c.  **Meet and confer,** in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 calendar days before the date set for the Case Management Conference;
    d.  **File and serve** a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is <u>mandatory</u>) at least 15 days before the Case Management Conference (CRC 3.725)

2.  If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3.  You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4.  The Case Management judge will issue orders at the conclusion of the conference that should include:
    a.  Referring to ADR and setting an ADR completion date
    b.  Dismissing or severing claims or parties
    c.  Setting a trial date.

5.  The Case Management judge may be the trial judge in this case.

     **\*Telephonic appearances** at Case Management Conferences may be available by contacting **CONFERENCE CALL SERVICES,** an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1 (888) 527-7327, or faxing a service request to 1(800) 833-5133. This service is subject to charges by the vendor.

---

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/10/2007.

By _____

Deputy Clerk

1  Cheryl L. White, Esq. (SBN 164352)
   Richard A. Brody, Esq. (SBN 100379)
2  Yvonne Huggins McLean (SBN 188204)
   BRENT COON & ASSOCIATES
3  44 Montgomery Street, Suite 800
   San Francisco, CA  94104
4  Telephone:  415.489.7420
   Facsimile:  415.489.7426
5
   Attorneys for Plaintiffs
6

7

8
                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                      IN AND FOR THE COUNTY OF ALAMEDA
10

11

12  | HELEN HUTCHISON, Individually, and | Case No. |
    | as Successor-in-Interest to the Estate of | |
13  | WILLIAM ALBERT HUTCHISON, | **PLAINTIFF'S STATEMENT, LOCAL RULES** |
    | Deceased, MICHELLE STUART, and | **OF COURT RULE 4.2** |
14  | Does 1-10, inclusive, | |

15                      Plaintiffs,

16          vs.

17  ALLIED PACKING, et al.,

18          Defendants

19

20  **PLAINTIFFS' STATEMENT, LOCAL RULES OF COURT, RULE 4.2**

21  **A.      Biographical Information**

22          1.      William Albert Hutchison (deceased).

23          2.      Mr. Hutchison was born ███████ 1932 and died January 11, 2006.  His Social

24  Security number is ███████

25          3.      Mr. Hutchison is survived by Helen Hutchison, his widow, and his stepdaughter,

26  Michelle Stuart.

27  **B.      Damage Information**

28          1.      General Damages and Loss of Consortium:

                                        1

*Hutchison v. A.W. Chesterton Co., et al.*                    LOCAL RULES 4.2 STATEMENT

2.    Current Status: Decedent died on January 11, 2006 from lung cancer.

3.    Special Damages: Economic damages according to proof, including medical costs, and out-of-pocket expenses.

4.    General Damages: Plaintiff claims loss of consortium, anxiety, mental distress and other non-economic damages in an amount to be awarded by a trier of fact.

5.    Employment Records:

| Location of exposure | Employer | Job Title | Dates of exposure |
|---|---|---|---|
| U.S. Navy Various Ships | U.S. Navy | Radio repairman/ Sonar technician | 1950-1974 |
| Inspiration Copper Co. Miami, AZ | Inspiration Copper Co. | Laborer | 1953-1954 |

Decedent died from lung cancer which developed due to his direct occupational exposure to asbestos. Decedent was exposed to asbestos during his career in the United States Navy from 1950 to 1971 as a radio repairman and sonar technician, serving aboard the USS NICHOLAS, the USS STODDARD and the USS COONTZ, where he was exposed to the asbestos-containing equipment present in the ships. Decedent was further exposed to asbestos during his occupation as a laborer at Inspiration Copper Company.

6. Social Security Records.

Plaintiff has not yet received decedent's Social Security records.

C.    **Medical Information**

1. Diagnosis:

Decedent was diagnosed with lung cancer in June, 2005.

2. Treating Health Care Providers:

Physicians at Banner Mesa Medical Center, Mesa, Arizona.

D.    **Medical Records**

Plaintiff has requested copies of decedent's medical records, and those will be provided to defense liaison counsel Berry & Berry as soon as they are received.

///

///

2

1    **E.  Work History Summary**

2            Decedent, WILLIAM ALBERT HUTCHISON, was exposed to asbestos during the

3    course of his life in the manner and during the time periods set forth in B.5, above.

4    DATED:  April 19, 2007

5                                        BRENT COON & ASSOCIATES

6

7

8    By: _____

9        for YVONNE HUGGINS McLEAN

10       Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

**E.  Work History Summary**

Decedent, WILLIAM ALBERT HUTCHISON, was exposed to asbestos during the course of his life in the manner and during the time periods set forth in B.5, above.

DATED:  April 19, 2007

BRENT COON & ASSOCIATES

By: _____

*for* YVONNE HUGGINS McLEAN

Attorneys for Plaintiffs

*Hutchison  v. A.W. Chesterton Co., et al.*                LOCAL RULES 4.2 STATEMENT