## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**IN RE: ASBESTOS PRODUCT
LIABILITY LITIGATION (NO. VI)**     MDL Docket No. 875

This Document Relates to:

HELEN HUTCHISON, etc., et al.,
v.
A.W. CHESTERTON COMPANY, et al.

Northern District of California
Oakland Division
Docket No. C 07-02824 SBA
(CTO-281)

## DECLARATION OF PAUL R. JOHNSON IN
## OPPOSITION TO MOTION TO REMAND TO STATE COURT

I, Paul R. Johnson, declare that:

1.      I am an attorney at law duly admitted to practice before the courts of the

State of California. I am a member of the bars of a number of federal courts, including

the United States District Court for the Northern District of California. I am a partner in

the law firm of Filice Brown Eassa & McLeod LLP. I am one of the attorneys of record

in this action for defendant Phelps Dodge Industries, Inc. (PDI). The facts set forth in

this declaration are based on my personal knowledge, on matters of which I am informed

as counsel, and on my review of the firm's papers and records. If sworn as a witness, I

could and would testify competently to these facts.

2.      Except for redaction of personal data identifiers, attached hereto as

Exhibit A is a true copy of Plaintiff's Statement, Local Rules of Court, Rule 4.2, served

on behalf of plaintiffs while this action was pending in the Superior Court of California for the County of Alameda.

3.    Attached hereto as Exhibit B are true copies of excerpts of verified responses by PDI to standard interrogatories in asbestos litigation then pending in the Superior Court of California for the County of Los Angeles.

4.    Attached hereto as Exhibit C are true copies of excerpts of verified responses by PDI (with errata) to standard interrogatories in asbestos litigation then pending in the Superior Court of California for the County of San Francisco.

5.    Attached hereto as Exhibit D is a document reflecting the merger of Phelps Dodge Copper Products Corporation and other specified entities with and into Phelps Dodge Industries, Inc., effective December 31, 1971.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 21, 2007.

Paul R. Johnson

Submitted by:

Robert D. Eassa
    robert.eassa.service@filicebrown.com
Paul R. Johnson
    paul.johnson.service@filicebrown.com
Filice Brown Eassa & McLeod LLP
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel:  (510) 444-3131
Fax: (510) 839-7940

Attorneys for Defendant
Phelps Dodge Industries, Inc.

# Exhibit A

Cheryl L. White, Esq. (SBN 164352)
Richard A. Brody, Esq. (SBN 100379)
Yvonne Huggins McLean (SBN 188204)
BRENT COON & ASSOCIATES
44 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: 415.489.7420
Facsimile: 415.489.7426

Attorneys for Plaintiffs

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| HELEN HUTCHISON, Individually, and as Successor-in-Interest to the Estate of WILLIAM ALBERT HUTCHISON, Deceased, MICHELLE STUART, and Does 1-10, inclusive,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLIED PACKING, et al.,<br><br>Defendants | Case No.<br><br>**PLAINTIFF'S STATEMENT, LOCAL RULES OF COURT RULE 4.2** |

**PLAINTIFFS' STATEMENT, LOCAL RULES OF COURT, RULE 4.2**

A.  **Biographical Information**

    1.    William Albert Hutchison (deceased).

    2.    Mr. Hutchison was born ████ 1932 and died January 11, 2006. His Social Security number is ████

    3.    Mr. Hutchison is survived by Helen Hutchison, his widow, and his stepdaughter, Michelle Stuart.

B.  **Damage Information**

    1.    General Damages and Loss of Consortium:

1

1    2.    Current Status: Decedent died on January 11, 2006 from lung cancer.

2    3.    Special Damages: Economic damages according to proof, including medical costs,

3    and out-of-pocket expenses.

4    4.    General Damages:  Plaintiff claims loss of consortium, anxiety, mental distress and

5    other non-economic damages in an amount to be awarded by a trier of fact.

6    5.    Employment Records:

| Location of exposure | Employer | Job Title | Dates of exposure |
|---|---|---|---|
| U.S. Navy Various Ships | U.S. Navy | Radio repairman/ Sonar technician | 1950-1974 |
| Inspiration Copper Co. Miami, AZ | Inspiration Copper Co. | Laborer | 1953-1954 |

Decedent died from lung cancer which developed due to his direct occupational exposure to asbestos.  Decedent was exposed to asbestos during his career in the United States Navy from 1950 to 1971 as a radio repairman and sonar technician, serving aboard the USS NICHOLAS, the USS STODDARD and the USS COONTZ, where he was exposed to the asbestos-containing equipment present in the ships.  Decedent was further exposed to asbestos during his occupation as a laborer at Inspiration Copper Company.

6. Social Security Records.

Plaintiff has not yet received decedent's Social Security records.

**C.    Medical Information**

1. Diagnosis:

Decedent was diagnosed with lung cancer in June, 2005.

2. Treating Health Care Providers:

Physicians at Banner Mesa Medical Center, Mesa, Arizona.

**D.    Medical Records**

Plaintiff has requested copies of decedent's medical records, and those will be provided to defense liaison counsel Berry & Berry as soon as they are received.

///

///

2

*Hutchison v. A.W. Chesterton Co., et al.*                    LOCAL RULES 4.2 STATEMENT

1  **E.  Work History Summary**

2         Decedent, WILLIAM ALBERT HUTCHISON, was exposed to asbestos during the

3  course of his life in the manner and during the time periods set forth in B.5, above.

4

5  DATED:  April 19, 2007

6                                    BRENT COON & ASSOCIATES

7

8  By: _____

9       _for_ YVONNE HUGGINS McLEAN

10      Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

*Hutchison v. A.W. Chesterton Co., et al.*                    LOCAL RULES 4.2 STATEMENT

# Exhibit B

1  ROBERT D. EASSA (SBN: 107970)
   PAUL R. JOHNSON (SBN: 115817)
2  VALERIE C. SHELTON (SBN: 181907)
   FILICE BROWN EASSA & McLEOD LLP
3  1999 Harrison Street, 18th Floor
   Oakland, CA 94612
4  Tel: (510) 444-3131
   Fax: (510) 839-7940
5
   Attorneys for Defendant
6  PHELPS DODGE INDUSTRIES INC.

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SAN FRANCISCO

10 IN RE                                No. 828684
11 COMPLEX ASBESTOS LITIGATION
                                        DEFENDANT PHELPS DODGE
12                                      INDUSTRIES, INC.'S RESPONSES TO
                                        PLAINTIFFS' STANDARD
13                                      INTERROGATORIES TO ALL
                                        DEFENDANTS
14
                                        [GENERAL ORDER NO. 129]
15

16

17

18

19 Propounding Party:             Plaintiffs
20 Responding Party:              Phelps Dodge Industries, Inc.
21 Set Number:                    One
22
23        Defendant PHELPS DODGE INDUSTRIES, INC. ("PDI") provides the following
24 responses to Plaintiffs' Standard Interrogatories to All Defendants (G.O. 129).
25                              **INTERROGATORIES**
26 **INTERROGATORY NO. 1:**
27        IDENTIFY the person verifying these answers on YOUR behalf.
28
                                       -1-

**DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD
INTERROGATORIES TO ALL DEFENDANTS**

**RESPONSE TO INTERROGATORY NO. 1:**

Joseph A. Brunner.  Mr. Brunner is the Manager, Discontinued Operations, for Phelps Dodge Industries, Inc.  His current business address is One North Central Avenue, Phoenix, Arizona, 85004.

**INTERROGATORY NO. 2.**

State the date of first employment with YOU, and the dates and titles of each job position the person verifying these interrogatories has held while employed by YOU.

**RESPONSE TO INTERROGATORY NO. 2.**

Mr. Brunner has served as Manager, Discontinued Operations for Phelps Dodge Industries, Inc., since July 2005.

**INTERROGATORY NO. 3.**

State whether or not YOU are a corporation, and if so, state:

A.     YOUR correct corporate name;

B.     YOUR state of incorporation;

C.     The date of YOUR incorporation;

D.     The address of YOUR principal place of business;

E.     Whether or not YOU have ever held a certificate of authority to do business in the State of California, and if so, the inclusive dates of any certificate;

F.     If YOU are wholly owned or the majority interest of YOUR company is owned by another business entity, state the entity's name and principal place of business;

G.     Whether YOU have any business offices in California, and, if so, YOUR principal place of business in California.

**RESPONSE TO INTERROGATORY NO. 3.**

Yes.

A.     Phelps Dodge Industries, Inc.

B.     Delaware

C.     December 19, 1966

D.     One North Central Avenue, Phoenix, Arizona 85004.

-2-

1        E.      Yes.  PDI has been qualified to do business in California from December 27, 1971

2    to the present.

3        F.      PDI is wholly-owned subsidiary of Phelps Dodge Corporation, Phoenix, Arizona.

4        G.      PDI does not have a business office in California.

5

6    **INTERROGATORY NO. 4:**

7        Have YOU ever been identified, known, or done business under any other name in the State

8    of California?

9    **RESPONSE TO INTERROGATORY NO. 4:**

10       Yes.

11   **INTERROGATORY NO. 5:**

12       If your answer to Interrogatory No. 4 is in the affirmative, please state such name or names

13   and the time period during which THIS DEFENDANT was so known or identified.

14   **RESPONSE TO INTERROGATORY NO. 5:**

15       PDI's predecessor, Phelps Dodge Copper Products Corporation ("PDCPC"), operated a

16   manufacturing facility in Los Angeles, California from approximately 1937 until 1971 known as

17   the Inca Division and later the Los Angeles Tube Division.  As of December 31, 1971, PDCPC

18   merged with PDI.  PDI's Los Angeles Tube Division also operated under the names Phelps Dodge

19   Tube Company and the Los Angeles Tube Company.  PDI operated other manufacturing divisions,

20   including:  Phelps Dodge Brass Company, Phelps Dodge Cable & Wire Company, Phelps Dodge

21   Communications Company, and Phelps Dodge Magnet Wire Company.

22   **INTERROGATORY NO. 6:**

23       If YOU are not a corporation, what is YOUR business structure (partnership, joint venture,

24   sole proprietorship, etc.).

25   **RESPONSE TO INTERROGATORY NO. 6:**

26       Not applicable.

27

28

-3-

**DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD
INTERROGATORIES TO ALL DEFENDANTS**

**INTERROGATORY NO. 30:**

Between 1930 and 1985, did YOU ever engage in any of the activities listed below with regard to ASBESTOS-CONTAINING PRODUCTS? If so, state the inclusive dates of such activity:

A.    Supply;

B.    Importing;

C.    Distribution;

D.    Marketing;

E.    Sale;

F.    Labeling;

G.    Manufacturing;

H.    Brokering;

**RESPONSE TO INTERROGATORY NO. 30:**

PDI, the defendant in this action, never engaged in the activities specified in this Interrogatory. However, in the interests of fairness, PDI provides the following response based upon the activities of its predecessor, PDCPC:

A.    Yes, approximately 1939 to the early 1960s.

B.    No.

C.    Yes, approximately 1939 to the early 1960s.

D.    Yes, approximately 1939 to the early 1960s.

E.    Yes, approximately 1939 to the early 1960s.

F.    Yes, approximately 1939 to the early 1960s.

G.    Yes, approximately 1939 to the early 1960s.

H.    No.

-35-

**INTERROGATORY NO. 31:**

If your answer to any subpart of Interrogatory No. 31 (sic) regarding ASBESTOS-CONTAINING PRODUCTS" is in the affirmative, state:

A.    The trade, brand name, and/or generic name of each such ASBESTOS-CONTAINING PRODUCT MARKETED in any form or quantity between 1930 and 1985;

B.    The date(s) each such ASBESTOS-CONTAINING PRODUCT was first placed on the market, including the date(s) each such ASBESTOS-CONTAINING PRODUCT was first MARKETED.

    1.    On an experimental basis;

    2.    On a test basis; or

    3.    For sale.

C.    The date(s) each such ASBESTOS-CONTAINING PRODUCT:

    1.    Ceased to be produced; or

    2.    Was recalled from the market, if ever.

D.    A detailed description of the chemical composition of each such ASBESTOS-CONTAINING PRODUCT, including the type and/or grade of asbestos and/or asbestos fiber contained in each such product and the quantitative percentage of asbestos or asbestos fiber in each such product, and all non-asbestos components of the ASBESTOS-CONTAINING PRODUCT, and if the chemical composition changed over time, the inclusive dates of each formulation;

E.    A description of the physical appearance and nature of each such ASBESTOS-CONTAINING PRODUCT, including any color coding, distinctive marking and/or logo, either on the product or on the packaging;

F.    A detailed description of the intended use of each such ASBESTOS-CONTAINING PRODUCT, including any temperature limits for each such use;

-36-

G.      Whether any such ASBESTOS-CONTAINING PRODUCT was on the U.S. Government's "Qualified Products List," and if so, the inclusive dates it was on such list;

H.      The name and address of the supplier of the RAW ASBESTOS used in each such product and the time period of such supply;

I.      Whether any of THIS DEFENDANT'S RAW ASBESTOS OR ASBESTOS-CONTAINING PRODUCTS have, at any time, been sold, shipped, or otherwise distributed to any COMPANY (including power company or utility), governmental agency or entity, shipyard, distributor, refinery, contractor, supplier, manufacturer, PREMISE owner or occupant, ship owner, or other PREMISE or site in the GEOGRAPHIC AREA. If so, state:

1.      The names of each such COMPANY, governmental agency or entity, shipyard, distributor, supplier, manufacturer, refinery, contractor, PREMISE owner or occupant, ship owner, PREMISE or site;

2.      The inclusive dates of each such sale, shipment, distribution, use or installation and the amount (volume) and the trade or brand name of each such ASBESTOS-CONTAINING PRODUCT sold;

3.      Whether you have any records indicating any such sale, shipment, distribution, use or installation and, if so, the name, address and job classification of each person who currently has possession of such records.

J.      Either (1) attach all DOCUMENTS evidencing the information sought in this Interrogatory and its subparts to your answers to these Interrogatories, or (2) attach disks containing such data, or (3) describe such DOCUMENTS with sufficient particularity that they may be made the subject of a request for production of documents.

///

///

**RESPONSE TO INTERROGATORY NO. 31:**

PDI identifies below categories of cable and wire products manufactured by PDCPC which, in some instances, may have been insulated with asbestos.  However, products within these categories may also have been manufactured without asbestos insulation depending on factors such as applicable manufacturing specifications, customer specifications, and the nature of the intended use, location and/or application of the product.

A.    1.    Navy shipboard cable

2.    Commercial shipboard cable

3.    Power cable

4.    Building wire

5.    Switchboard wire

6.    Flexible cord and fixture wire

B.    PDCPC manufactured asbestos-insulated cable and wire products from the 1930s to 1964.  PDI has reviewed thousands of production orders and has located only one production order after 1964 calling for the manufacture of an asbestos-insulated cable.  That production order, dated August 17, 1965, indicates that a specially ordered paper-insulated power cable, 1800 feet in length, was to be manufactured with an asbestos-neoprene tape applied as bedding underneath a 1/8 inch polyethylene jacket.  That cable was manufactured for the Potomac Electric Company.  Even though PDI has millions of pages of documents in its possession concerning PDCPC's manufacture of cable and wire products, it cannot state with greater specificity the dates of manufacture of products within the categories set forth above.  More than forty years have elapsed since PDI's predecessor last manufactured an asbestos-insulated product.  Undoubtedly, with the passage of time, some documents have been discarded.  PDI has not reviewed every document in its possession, and it is possible that information pertinent to the dates of PDCPC's manufacture of

-38-

asbestos-insulated products within the above-referenced categories may be contained in those documents. PDI will make its documents available for inspection at the location where they are maintained in the ordinary course of business, at a mutually convenient time.

C.    In 1964, PDCPC discontinued the manufacture of shipboard cable, as well as other items, to fulfill the dual purpose of eliminating unprofitable lines and providing space for an increase in the production of profitable items. See bulletin attached as Exhibit 1 hereto. Additionally, former PDCPC employees Harry Schell and Bill Daniels recall that the machines used for applying asbestos-containing insulation to cables were removed from the Glenwood plant in 1964. Although PDCPC held Underwriters' Laboratories approval to manufacture certain designations of flexible cords and fixture wire pursuant to Underwriters' Laboratories Standard for Flexible Cord and Fixture Wire, it is unclear whether PDCPC actually manufactured any flexible cord or fixture wire containing asbestos insulation for sale to its customers during the time period for which this approval was held. PDCPC Engineering Department memoranda indicate that PDCPC did not manufacture, and was not equipped to manufacture, Type AF fixture wire. See PDCPC Engineering Department memoranda attached as Exhibit 2 hereto: (A) Mid-South Electric Fabricators, Inc., 8/4/60; (B) Ebasco International Corp., 10/2/61; (C) J.G. White Engineering Corporation, 12/18/61; and (D) Long Island Abrasives Co., Inc., 9/12/62. PDI has reviewed thousands of production orders and has located only one production order after 1964 calling for the manufacture of an asbestos-insulated cable. That production order was for an 1800 foot specially ordered paper-insulated power cable, and is dated August 17, 1965.

D.    1.    Not all Navy shipboard cable manufactured by PDCPC contained asbestos. Further, as the government specifications and customer requirements changed, and in response to advances in technology, the composition of the PDCPC's cable and wire products changed over time. Where the government specifications required the use of asbestos, PDCPC used only

-39-

1    encapsulated and/or impregnated chrysotile asbestos. If a particular type of Navy shipboard cable

2    required a layer of asbestos insulation, typically an asbestos roving or yarn was used which was

3    saturated with a flame, heat or moisture resistant compound. The spaces between the strands of

4    certain conductors were filled with a compound to prevent water leakage through the cable. Some

5    of the different blocking compounds which may have been used in Navy shipboard cable contained

6    a small percentage of asbestos. Because of the large number of documents in PDI's possession

7    relating to PDCPC, PDI has not reviewed all of the documents and it is possible that additional

8

9    information pertinent to the Navy shipboard cable is contained in those documents. PDI will make

10   its documents available for inspection at the location where they are maintained in the ordinary

11   course of business, at a mutually convenient time.

12         2.    PDCPC manufactured certain types of commercial shipboard cable pursuant

13   to the Recommended Practice For Electrical Installations On Shipboard published by the American

14

15   Institute of Electrical Engineers, No. 45, which was updated and revised from time to time. Certain

16   of this cable required a layer of asbestos insulation consisting of the best quality, long fiber

17   chrysotile asbestos saturated with a flame, heat and/or moisture resistant compound. PDI has

18   millions of pages of documents in its possession concerning PDCPC's manufacture of cable and

19   wire products, and has not reviewed every document. It is possible that additional information

20   pertinent to the Navy shipboard cable is contained in these documents. PDI will make its

21

22   documents available for inspection at the location where they are maintained in the ordinary course

23   of business, at a mutually convenient time.

24         3.    PDCPC manufactured certain types of power cable pursuant to standards and

25   specifications developed by the Insulated Power Cable Engineers Association and the National

26   Electric Manufacturers Association. This cable was typically used to transmit power from a

27   generating station or power plant to substations, from substations to distribution buses or switching

28

-40-

DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD
INTERROGATORIES TO ALL DEFENDANTS

1    yards to service transformers and from service transformers to a final energy consuming device. It

2    was also used for operating switches and other station equipment used for remote control. The

3    term "power cable," however, is typically reserved for those cables transmitting voltages higher

4    than those expected to be found within buildings. It was exceedingly rare for power cable over

5    5,000 volts to use asbestos as insulation; the use of asbestos insulation in such circumstances was

6    impractical due to its higher dielectric loss (dielectric loss generates heat, and as the insulating

7    material heats up, the allowable current flowing through the underling conductor may have to be

8    decreased to avoid overheating the insulation beyond its thermal capacity), its hygroscopic nature

9    (meaning its moisture absorption and retention properties), and its higher relative cost. When the

10   standards and specifications required a layer of asbestos, it was required to be of the best quality,

11   long fiber chrysotile asbestos saturated with a flame, heat and/or moisture resistant compound. In

12   August, 1965, the Potomac Electric Company special ordered a paper insulated power cable, 1800

13   feet long, with an asbestos-neoprene tape applied as bedding underneath a 1/8 inch polyethylene

14   jacket. PDI has millions of pages of documents in its possession concerning PDCPC's

15   manufacture of cable and wire products, and has not reviewed every document. It is possible that

16   additional information pertinent to power cable is contained in those documents. PDI will make its

17   documents available for inspection at the location where they are maintained in the ordinary course

18   of business, at a mutually convenient time.

19          4.      PDCPC's manufacture of non-shipboard asbestos-insulated cable and wire

20   was miniscule in comparison to its manufacture of asbestos-insulated shipboard cable and wire.

21   Moreover, while most building wire used in the interior of buildings did not contain asbestos,

22   PDCPC did manufacture certain types of cable and wire products pursuant to Underwriters'

23   Laboratories Standard for Asbestos and Asbestos-Varnished Cloth Insulated Wires, UL115. When

24   the standards and specifications required a layer of asbestos, it was required to be the best quality,

-41-

long fiber chrysotile asbestos saturated with a flame, heat and/or moisture resistant compound. PDI has millions of pages of documents in its possession concerning PDCPC's manufacture of cable and wire products, and has not reviewed every document. It is possible that additional information pertinent to building wire is contained in those documents. PDI will make its documents available for inspection at the location where they are maintained in the ordinary course of business, at a mutually convenient time.

      5.    PDCPC's manufacture of non-shipboard asbestos-insulated cable and wire was miniscule in comparison to its manufacture of asbestos-insulated shipboard cable and wire. PDCPC manufactured switchboard wire which was used in connections to, from, and between electrical switchboards or panel boards and meters and sometimes to electrical equipment. PDCPC manufactured wire and cable pursuant to the Underwriters' Laboratories Standard for Rubber-Insulated Wires and Cables, UL44 and the Standard for Thermoplastic Insulated Wires, UL83. A small number of wires covered by this standard required asbestos insulation. The form of the asbestos would have been a braid, yarn or felt made of a long fiber chrysotile asbestos saturated with a flame, heat and/or moisture resistant compound. PDI has millions of pages of documents in its possession concerning PDCPC's manufacture of cable and wire products, and has not reviewed every document. It is possible that additional information pertinent to switchboard wire is contained in those documents. PDI will make its documents available for inspection at the location where they are maintained in the ordinary course of business, at a mutually convenient time.

      6.    PDCPC's manufacture of non-shipboard asbestos-insulated cable and wire was miniscule in comparison to its manufacture of asbestos-insulated shipboard cable and wire. PDCPC manufactured flexible cord and fixture wire used to connect portable equipment and appliances to electrical outlets including cable and wire used for interior wiring of lighting fixtures and equipment. This wire and cable was manufactured according to Underwriters' Laboratories

1    Standards for Flexible Cord and Fixture Wire, UL62. A small number of products covered by this

2    standard required asbestos insulation. The asbestos insulation required by this standard was in the

3    form of a yarn, roving or felt composed of the best grade of long-fiber, chrysotile asbestos, with the

4    insulation for fixture wire and flexible braided cord being saturated with a flame-, heat- and

5    moisture-resistant compound. PDCPC held Underwriters' Laboratories approval to manufacture

6    certain designations of flexible cords and fixture wire pursuant to Underwriters' Laboratories

7    Standard for Flexible Cord and Fixture Wire. Despite this approval, it is unclear whether PDCPC

8    actually manufactured any flexible cord or fixture wire containing asbestos insulation for sale to its

9    customers during the time period for which this approval was held. PDCPC Engineering

10    Department memoranda indicate that PDCPC did not manufacture, and was not equipped to

11    manufacture, Type AF fixture wire. See PDCPC Engineering Department memoranda attached as

12    Exhibit 2 hereto: (A) Mid-South Electric Fabricators, Inc., 8/4/60; (B) Ebasco International Corp.,

13    10/2/61; (C) J.G. White Engineering Corporation, 12/18/61; and (D) Long Island Abrasives Co.,

14    Inc., 9/12/62. Former PDCPC-employee Edward Snarski recalls that for a period of time after

15    World War II, PDCPC obtained a small amount of fixture wire from Rockbestos Products

16    Corporation. Rockbestos provided this fixture wire to PDCPC on PDCPC spools for sale to

17    PDCPC customers.

18         E.    PDI has provided the information responsive to this interrogatory, to the extent that

19    it is presently aware of such information, in part D, above. PDI has millions of pages of documents

20    in its possession concerning PDCPC's manufacture of cable and wire products, and has not

21    reviewed every document. It is possible that additional information pertinent to this interrogatory

22    is contained in those documents. PDI will make its documents available for inspection at the

23    location where they are maintained in the ordinary course of business, at a mutually convenient

24    time.

-43-

**DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD
INTERROGATORIES TO ALL DEFENDANTS**

1    F.    PDI has provided the information responsive to this interrogatory, to the extent that

2    it is presently aware of such information, in part D, above.  PDI has millions of pages of documents

3    in its possession concerning PDCPC's manufacture of cable and wire products, and has not

4    reviewed every document.  It is possible that additional information pertinent to this interrogatory

5    is contained in those documents.  PDI will make its documents available for inspection at the

6    location where they are maintained in the ordinary course of business, at a mutually convenient

7

8    time.

9    G.    As set forth above, PDCPC manufactured cable and wire products, some of which

10   contained asbestos, pursuant to specifications promulgated by the United States government.  PDI

11   believes that some of its products were included on the U.S. Government's Qualified Products List.

12   After a reasonable investigation, PDI has been unable to ascertain which of PDCPC's specific

13   products were included on the U.S. Government's Qualified Products List, or the time periods

14   during which such approvals may have been effective.  PDI has millions of pages of documents in

15   its possession concerning PDCPC's manufacture of cable and wire products, and has not reviewed

16   every document.  It is possible that additional information regarding the inclusion of PDCPC

17

18   products on the U.S. Government's Qualified Products List may be contained in those documents.

19   PDI will make its documents available for inspection at the location where they are maintained in

20   the ordinary course of business, at a mutually convenient time.

21

22   H.    PDI currently believes that PDCPC's sources of supply for asbestos insulation

23   products included Johns Manville, Chase, Raybestos Manhattan, and Harco.  However, PDI has

24   millions of pages of documents in its possession concerning PDCPC's manufacture of cable and

25   wire products, and has not reviewed every document.  It is possible that information regarding the

26   names and address of the suppliers of the raw asbestos used in PDCPC's asbestos-insulated cable

27   and wire products may be contained in those documents. PDI will make its documents available

28

-44-

1   for inspection at the location where they are maintained in the ordinary course of business, at a

2   mutually convenient time.

3       I.      After a diligent search and reasonable inquiry, PDI states, upon information and

4   belief, that the following entities distributed some of PDCPC's cable and wire products in various

5   geographic regions of the United States: Graybar, Westinghouse Electric Supply Co., General

6   Electric Supply Co., and/or Noland.  However, PDI has millions of pages of documents in its

7

8   possession concerning PDCPC's manufacture of cable and wire products, and has not reviewed

9   every document.  It is possible that information regarding additional distributors of PDCPC's

10  asbestos-insulated cable and wire products may be contained in those documents.  PDI will make

11  its documents available for inspection at the location where they are maintained in the ordinary

12  course of business, at a mutually convenient time.

13

14      J.      PDI's predecessor, PDCPC, last manufactured any asbestos-insulated cable or wire

15  product over forty years ago.  PDCPC's Habirshaw Division manufactured insulated cable and

16  wire at its Glenwood Plant in Yonkers, New York.  A small percentage of PDCPC-manufactured

17  cable and wire was insulated with encapsulated and/or impregnated chrysotile asbestos.  PDI

18  believes that such manufacture may have commenced as early as 1934 and ceased in 1964.  PDI

19  has reviewed thousands of production orders and has located only one production order after 1964

20  calling for the manufacture of an asbestos-insulated cable.  That production order, dated August 17,

21

22  1965.

23      PDI further states that PDCPC was incorporated under the name of the Eastern Wire

24  and Cable Company on August 11, 1927.  On August 17, 1927, PDCPC purchased the Habirshaw

25  Cable and Wire Corporation.  The Habirshaw Cable and Wire Corporation manufactured insulated

26  cable and wire products at the Glenwood Plant in Yonkers, New York.  PDCPC, through its

27

28

-45-

**DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD
INTERROGATORIES TO ALL DEFENDANTS**

1  Habirshaw Cable and Wire Division, manufactured asbestos-insulated cable and wire at the

2  Glenwood Plant until the mid-1960s.

3          In 1969, the Habirshaw Cable and Wire Division of PDCPC became the Phelps

4  Dodge Cable and Wire Company, a division of PDI. On December 31, 1971, PDCPC merged into

5  PDI. The Phelps Dodge Cable and Wire Company operated the Glenwood Plant until 1984, when

6  Cablec Corporation ("Cablec") acquired the plant through an asset purchase agreement with PDI.

7  Cablec retained many of the individuals previously employed by the Phelps Dodge Cable and Wire

8  

9  Company.

10         In December 1991 (seven years after Cablec acquired the Glenwood plant), during

11 the course of a visit to the Glenwood Plant, counsel for PDI uncovered millions of pages of

12 documents in various pockets throughout different areas of the Glenwood Plant.  These documents

13 were found in a wide variety of conditions.  Some were stored in boxes and file cabinets.  In many

14 instances, documents simply left out in the open, dusty and scattered about.  Some of the areas of

15 the plant in which documents were located were not sealed from the exterior elements.  Some of

16 the file cabinets were in areas of the plant that had standing water on the floor.  Many pages of

17 documents were damp to the touch and/or stuck together.

18         With the permission of Cablec, the documents were shipped to Phoenix, Arizona,

19 where they are currently stored.  PDI states that it is unaware of any document retention/destruction

20 policy that existed at the Glenwood Plant with respect to documents regarding PDCPC's

21 manufacture of asbestos-insulated cable and wire products.  PDI also recognizes that the

22 discontinuance of product lines and the general document destruction practices at the Glenwood

23 Plant prior to the time these documents were secured by counsel and shipped to Phoenix have

24 undoubtedly resulted in the disappearance of documents potentially containing information sought

25 by these interrogatories.

-46-

1    In connection with the defense of PDI in the nationwide asbestos litigation, counsel

2    for PDI have become aware of documents now stored at facilities in Phoenix, Arizona, and

3    possibly other facilities throughout the United States, that may contain information concerning the

4    Glenwood Plant. Counsel for PDI have, however, attempted to obtain and review documents that

5    are most likely to contain information relevant to the issues of the nationwide asbestos litigation,

6    i.e., the manufacture of asbestos-insulated cable and wire. All of these documents, excluding those

7    that are the subject of a privilege or objection, may be made available for inspection at a mutually

8

9    agreeable time in Phoenix, Arizona.

10   **INTERROGATORY NO. 32: (PREMISES DEFENDANTS ONLY)**

11   Did YOU install, remove, or handle or contract to have others install, remove, or handle

12   RAW ASBESTOS or ASBESTOS-CONTAINING PRODUCTS at any PREMISES in the

13   GEOGRAPHIC AREA which PREMISES is at issue as to YOU in San Francisco Superior Court

14

15   asbestos litigation as of the date of your answers to these interrogatories? If so:

16   A.    IDENTIFY the PREMISES.

17   B.    For each of the PREMISES:

18        1.    State the nature of your ownership or possessory interest;

19        2.    State the inclusive date of that interest;

20        3.    IDENTIFY the party from whom that interest was acquired;

21        4.    IDENTIFY the party, if any, to whom that interest was transferred.

22

23   C.    IDENTIFY every contract to which YOU were a party or of which you have

24   knowledge wherein the performance of such contract involved the installation, removal, disturbing

25   or handling of any RAW ASBESTOS or ASBESTOS-CONTAINING PRODUCTS at YOUR

26   PREMISES. For each such contract:

27        1.    IDENTIFY the parties to the contract;

28

-47-

1    PDCPC's products may be contained in those documents.  PDI will make its documents available

2    for inspection at the location where they are maintained in the ordinary course of business, at a

3    mutually convenient time.

4

5    DATED: March 7, 2007                      FILICE BROWN EASSA & McLEOD LLP

6

7                                              By: *Valerie C. Shelt*

8                                                  ROBERT D. EASSA
                                                   PAUL R. JOHNSON
                                                   VALERIE C. SHELTON
9                                                  Attorneys for Defendant
                                                   PHELPS DODGE INDUSTRIES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-64-

## VERIFICATION

STATE OF ARIZONA      )
                             ) ss
County of Maricopa      )

I, Joseph A. Brunner, say:

I am the Manager, Discontinued Operations, of PHELPS DODGE INDUSTRIES, INC., defendant in this action, and am authorized to make this verification for that reason; I have read the foregoing DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD INTERROGATORIES TO ALL DEFENDANTS, and know their contents; I do not possess personal knowledge of the information contained in the responses and, instead, I answer the interrogatories solely in my capacity as a vice president of Phelps Dodge Industries, Inc.; I am informed and believe, and on that ground allege, that the matters stated in the Responses are true.

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing verification is true and correct.

Executed this _23rd_ day of _February_ , 2007, at Phoenix, Arizona.

_Joseph A. Brunner_
Joseph A. Brunner
Manager, Discontinued Operations
Phelps Dodge Industries, Inc.

SWORN TO AND SUBSCRIBED before me, this _23rd_ day of _February_ 2007.

_Carol J. Arnold_
Notary Public

My Commission Expires:

_February 26, 2010_

7505-0001/928527.03

CAROL J. ARNOLD
Notary Public - Arizona
Maricopa County
My Comm. Expires Feb 26, 2010

1

**PROOF OF SERVICE**
*In Re Complex Asbestos Litigation*
**San Francisco County Superior Court No. CGC 828684**

2

3          I am a citizen of the United States, over 18 years of age and not party to the within action. I

am employed in the County of Alameda; my business address is 1999 Harrison Street, 18th Floor,

4   Oakland, CA 94612.

5          On the date listed below, I am serving the within documents:

6   ➢ **DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO**
      **PLAINTIFFS' STANDARD INTERROGATORIES TO ALL DEFENDANTS -**

7      **GENERAL ORDER NO. 129**

8   on all parties in this action, as stated below, by causing a true copy thereof to be distributed as

follows:

9

**ALL COUNSEL VIA ELECTRONIC TRANSMISSION**

10   **(SEE PLAINTIFF'S SERVICE LIST PROVIDED TO LEXIS NEXIS)**

11

⊠   **VIA ELECTRONIC**          I am causing a true and correct copy of such document(s) to

12       **SERVICE**                       be electronically served on counsel of record by

                                                  transmission to Lexis-Nexis File and Serve.

13

14          I declare under penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct.

16          Executed on March 7, 2007, at Oakland, California.

17

18                                                          *Nicole M. Tavis*

19                                                          Nicole M. Tavis

20

21

22

23

24

25

26

27

28

**DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD**
**INTERROGATORIES TO ALL DEFENDANTS**



1  ROBERT D. EASSA (SBN: 107970)
   PAUL R. JOHNSON (SBN: 115817)
2  VALERIE C. SHELTON (SBN: 181907)
   FILICE BROWN EASSA & McLEOD LLP
3  1999 Harrison Street, 18th Floor
   Oakland, CA 94612
4  Tel: (510) 444-3131
   Fax: (510) 839-7940

5
   Attorneys for Defendant
6  PHELPS DODGE INDUSTRIES, INC.

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SAN FRANCISCO

10 In re                                No. 828684
   COMPLEX ASBESTOS LITIGATION
11                                      ERRATA TO
                                        DEFENDANT PHELPS DODGE
12                                      INDUSTRIES, INC.'S RESPONSES TO
                                        PLAINTIFFS' STANDARD
13                                      INTERROGATORIES TO ALL
                                        DEFENDANTS
14
                                        [GENERAL ORDER NO. 129]
15

16

17        Defendant Phelps Dodge Industries, Inc., gives notice of the following errata to its

18 responses to Plaintiffs' Standard Interrogatories to All Defendants (General Order No. 129), which

19 responses were served on March 7, 2007:

20        Attached hereto are Exhibit 1 and Exhibit 2 to the responses. Served concurrently but

21 separately are parts 1, 2, and 3 of Exhibit 3 to the responses.

22        At page 5, lines 4 to 27, in RESPONSE TO INTERROGATORY NO. 10, delete text

23 (duplicative), and at page 6, line 12, replace "Towniship" with "Township."

24        At page 23, line 8, in RESPONSE TO INTERROGATORY NO. 17, insert a comma after

25 the second "Laboratory."

26        At page 35, lines 19 to 28, in RESPONSE TO INTERROGATORY NO. 30, for each of

27 subparts A, C, D, E, F, and G, replace "Yes, approximately 1939 to the early 1960s" with "Yes. It

28 is believed that such activity may have commenced as early as 1934 and ceased in 1964.  PDI has

                                        -1-

reviewed thousands of production orders and has located only one production order after 1964 calling for the manufacture of an asbestos-insulated cable. That production order, dated August 17, 1965, indicates that a specially ordered paper-insulated power cable, 1800 feet in length, was to be manufactured with an asbestos-neoprene tape applied as bedding underneath a 1/8 inch polyethylene jacket. That cable was manufactured for the Potomac Electric Company."

At page 45, lines 21 to 22, in RESPONSE TO INTERROGATORY NO. 31, subpart J, replace the period after "1965" with a comma and add the following: "indicates that a specially ordered paper-insulated power cable, 1800 feet in length, was to be manufactured with an asbestos-neoprene tape applied as bedding underneath a 1/8 inch polyethylene jacket. That cable was manufactured for the Potomac Electric Company."

At page 46, line 15, in RESPONSE TO INTERROGATORY NO. 31, subpart J, after "documents" insert "were."

DATED: April 20, 2007

FILICE BROWN EASSA & McLEOD LLP

By: _____

ROBERT D. EASSA
PAUL R. JOHNSON
VALERIE C. SHELTON
Attorneys for Defendant
PHELPS DODGE INDUSTRIES, INC.

1

**PROOF OF SERVICE**
*In Re Complex Asbestos Litigation*

2

**San Francisco County Superior Court No. 828684**

3

    I am a citizen of the United States, over 18 years of age and not party to the within action. I

4

am employed in the County of Alameda; my business address is 1999 Harrison Street, 18th Floor, Oakland, CA 94612.

5

    On the date listed below, I am serving the within documents:

6

  ➢  **ERRATA TO DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSES TO PLAINTIFFS' STANDARD INTERROGATORIES TO ALL DEFENDANTS**

7

**[GENERAL ORDER NO. 129]**

8

on all parties in this action, as stated below, by causing a true copy thereof to be distributed as follows:

9

10

**ALL COUNSEL VIA ELECTRONIC TRANSMISSION**
**(SEE PLAINTIFF'S SERVICE LIST PROVIDED TO LEXIS NEXIS)**

11

12

☒  **VIA ELECTRONIC SERVICE**

I am causing a true and correct copy of such document(s) to be electronically served on counsel of record by transmission to Lexis-Nexis File and Serve.

13

14

15

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16

    Executed on April 20, 2007, at Oakland, California.

17

18

19

_____
Paul R. Johnson

20

21

22

23

24

25

26

27

28

-3-

# Exhibit C

1  ROBERT D. EASSA (SBN: 107970)
   VALERIE C. SHELTON (SBN: 181907)
2  FILICE BROWN EASSA & McLEOD LLP
   1999 Harrison Street, 18th Floor
3  Oakland, CA 94612
   Tel: (510) 444-3131
4  Fax: (510) 839-7940

5  Attorneys for Defendant
   PHELPS DODGE INDUSTRIES, INC.

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES

10 KELLIE APPLETON-HULTZ,                   No. BC 354037
   Individually and as Successor-in-Interest to
11 WILLIAM ERNEST HULTZ, Decedent; et al.,  RESPONSES OF DEFENDANT
                                            PHELPS DODGE INDUSTRIES, INC.,
12              Plaintiffs,                  TO STANDARD INTERROGATORIES
                                            (Asbestos) (General Order No. 17)
13         v.

14 AMCORD INC., dba RIVERSIDE CEMENT
   COMPANY; et al.,
15
                Defendants.
16

17 PROPOUNDING PARTIES:   Plaintiffs Kellie Appleton-Hultz et al.

18 RESPONDING PARTY:       Defendant Phelps Dodge Industries, Inc.

19 SET NO.:                One

20 **DEFENDANT PHELPS DODGE INDUSTRIES, INC.'S RESPONSE TO PLAINTIFFS'
                         STANDARD INTERROGATORIES**
21

22                        **GENERAL OBJECTIONS**

23

24     These General Objections apply generally to the entire set of discovery requests, including

25 the instructions and definitions.  Therefore, the General Objections will not be raised in each

26 individual discovery request except by reference.

27     PDI objects to these interrogatories on the ground that they are unduly burdensome and

28 oppressive as applied to PDI.

FBE&M
LAKE MERRITT PLAZA
1999 HARRISON STREET
EIGHTEENTH FLOOR
OAKLAND CA 94612-3541
PHONE 510.444.3131

-1-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

3.    PDI objects to this interrogatory because it seeks information that is not in the possession of PDI or requires PDI to obtain information from public sources or from entities unrelated to PDI.

4.    PDI objects to this interrogatory because it seeks information concerning the manufacture or distribution of products in time periods before, or subsequent to, the date plaintiffs allege they were exposed to asbestos and, therefore, it is overly broad, unduly burdensome and oppressive, and seeks information neither relevant to the issues raised by the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

5.    PDI objects to this interrogatory because it is compound, disjunctive, contains impermissible subparts, and/or contains terms that are either vague and undefined or, if defined, contain definitions that conflict with their ordinary meaning and/or seeks to impose additional requirements to PDI's answer to the request, and, therefore, it is overly broad and unduly burdensome and oppressive.

6.    PDI objects to this interrogatory because it requires PDI to identify individual documents and, therefore, it is overly broad and unduly burdensome and oppressive.

7.    PDI objects to this interrogatory because it seeks information regarding products other than those which plaintiffs allege they were exposed to and, therefore, it is overly broad, unduly burdensome and oppressive, and seeks information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

8.    PDI objects to this interrogatory because it is argumentative in that implies, or assumes, that products manufactured by PDI's predecessor were defective, unsafe and/or hazardous.  PDI expressly denies that any of its asbestos-insulated cable or wire products were defective, unsafe and/or hazardous.

**PRELIMINARY COMMENTS**

Phelps Dodge Industries, Inc. ("PDI") is involved in the nationwide asbestos litigation as a result of the manufacture of certain types of cable and wire insulated with encapsulated and/or impregnated chrysotile asbestos by its predecessor, Phelps Dodge Copper Products Corporation ("PDCPC").  Neither PDI nor PDCPC has ever been a miner or a miller of asbestos fiber or a

-4-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

1 manufacturer of the types of thermal insulation products which have been the primary focus of

2 asbestos personal injury litigation throughout the United States. Neither PDI nor PDCPC has ever

3 been a member of the "asbestos industry" as that term has commonly been used in asbestos

4 litigation. Only a small percentage of PDCPC-manufactured cable and wire incorporated asbestos

5 insulation. The asbestos used was encapsulated and/or impregnated chrysotile asbestos.

6          A brief outline of the history of PDI and PDCPC is provided below.

7                              **Phelps Dodge Copper Products Corporation**

8          Phelps Dodge Copper Products Corporation ("PDCPC") was incorporated in Delaware on

9 August 11, 1927. A number of manufacturing divisions were created and operated by PDCPC: the

10 Habirshaw Cable and Wire Division; the British American Tube Division; the Bayway/American

11 Copper Products Division; the Inca Manufacturing Division; the Indiana Rod and Wire Division;

12 the Los Angeles Tube Division; the South Brunswick Tube Division; and the Phelps Dodge

13 International Company Division.

14          In the early 1930s, PDCPC came into control of the cable and wire manufacturing facility

15 formerly operated by the Habirshaw Wire Company. The Habirshaw Wire Company subsequently

16 became the Habirshaw Cable and Wire Division of PDCPC. This division operated five separate

17 plants in Yonkers, New York: the Glenwood Plant, at the Foot of Point Street; the McLean

18 Avenue Plant, which shut down shortly after World War II; the Old Nepperhan Plant, later known

19 as the Telephone Cable Plant, on Saw Mill River Road; the New Nepperhan Plant, also known as

20 the Building Wire Plant, on Saw Mill River Road; and the Main Street Plant, used primarily for

21 drawing and stranding wire, sheath welding and armoring, and plastic extrusion.

22          PDCPC's Bayway/American Copper Products Division produced bare copper wire, non-

23 insulated, stranded copper cable, and copper tubing at a plant in Elizabeth, New Jersey. Some

24 stranded cable was manufactured for use in Navy shipboard cable. Pursuant to military

25 specifications, the stranded cable was "blocked" with a compound to prevent water leakage

26 through the strands comprising the cable. Some of the different blocking compounds which may

27 have been used in Navy shipboard cable contained a small percentage of asbestos.

28

-5-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

**Phelps Dodge Industries, Inc.**

Phelps Dodge Industries, Inc. ("PDI") was incorporated in the State of Delaware on December 16, 1966. As of December 31, 1971, PDCPC, Phelps Dodge Magnet Wire Corporation and Phelps Dodge Electronic Products Corporation merged with PDI. These mergers, combined with restructuring of manufacturing operations, led to the creation of the following operating divisions of PDI: Phelps Dodge Copper Products Company, Phelps Dodge Cable and Wire Company, Phelps Dodge Magnet Wire Company, Phelps Dodge Brass Company, and Phelps Dodge Communications Company. PDI, through its operating divisions, produced numerous types of copper, aluminum and brass products at manufacturing facilities throughout the United States and abroad. These products have included: insulated cable and wire; magnet wire; telephone and communications cable; copper tubes and rods; brass tubes and rods; aluminum rod and wire; and other products for electrical, power and communication distribution. None of these PDI-manufactured products contained asbestos.

**The Glenwood Plant**

PDCPC, through the Habirshaw Cable and Wire Division, manufactured certain types of cable and wire insulated with encapsulated and/or impregnated chrysotile asbestos at its Glenwood Plant in Yonkers, New York. PDI believes that such manufacture may have commenced as early as 1934.

After the attack on Pearl Harbor on December 7, 1941, the Bureau of Ships of the United States Navy began to develop new specifications for watertight, heat and flame resistant cables for shipboard use. Commander H. G. Rickover explained "there had been several instances where ships had been either put out of commission or sunk from water leaking through broken cables in flooded compartments of the ship." Numerous detailed specifications for insulated electric cables for shipboard use were developed by the Bureau of Ships.

During World War II, substantially all the production capacity of the Glenwood Plant was devoted to the manufacture of shipboard cable for the United States Navy. The plant was virtually nationalized; the government brought in machinery it owned to facilitate the manufacture of

-6-

1   shipboard cable for the Navy.  A team of Navy quality control inspectors was stationed at the
2   Glenwood Plant.
3           After World War II, PDCPC continued to manufacture shipboard cable for the United
4   States Navy pursuant to military specifications.  Other products manufactured at the Glenwood
5   Plant in the years immediately following World War II are described in PDI's response to
6   Interrogatory No. 15.
7           Prior to July 1964, PDCPC revamped its product lines to fulfill the dual purposes of
8   eliminating unprofitable lines, and to provide space for an increase in the production of profitable
9   products.  *See* Bulletin attached as Exhibit 1 hereto.  This marked the cessation of PDCPC's
10  manufacture of asbestos-insulated cable and wire products.  Shipboard cables, varnished cambric
11  insulated cables and rubber insulated power and control cables, manufactured at the Glenwood
12  Plant, were discontinued.  The asbestos roving machines at the Glenwood Plant were sold or
13  scrapped.  Additionally, former PDCPC employees Harry Schell and Bill Daniels recall that the
14  machines used for applying asbestos-containing insulation to cables were removed from the
15  Glenwood plant in 1964.
16          PDI has reviewed thousands of existing production orders from the Glenwood Plant for the
17  years 1964-1970.  It has located only one production order in which an asbestos-insulation material
18  was used in the manufacture of cable or wire at the Glenwood Plant after 1964.  The production
19  order is dated August 17, 1965.
20          Following the merger of PDCPC into PDI, the Glenwood Plant was operated by the Phelps
21  Dodge Cable and Wire Company, a division of PDI, until 1984, when PDI entered into an asset
22  purchase agreement with Cablec Cable Corporation.  When Cablec took over the plant, it retained
23  many of the individuals previously employed by the Phelps Dodge Cable and Wire Company.
24          PDCPC discontinued the manufacture of asbestos-insulated products more than forty years
25  ago.  As such, PDI has limited information available to it to allow it to answer many of the
26  interrogatories propounded by plaintiffs.  Counsel for PDI have not located, obtained and reviewed
27  every document in the possession of PDI and related corporations that may be responsive to these
28  overly-broad interrogatories.  Although counsel are aware that there are documents stored at

-7-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

1   facilities throughout the United States that may, or may not be, responsive to some of these overly-

2   broad requests, counsel have, instead, attempted to obtain and review documents that are most

3   likely to contain information relevant to the issues of this litigation.  Counsel have, therefore,

4   focused their efforts on documents formerly stored at the Glenwood Plant in Yonkers, New York,

5   and documents formerly stored at the Bayway Plant in Elizabeth, New Jersey.  Any substantive

6   response provided herein is based in large measure upon a reasonable review of these documents.

7       Without waiving any of its General or Specific Objections, PDI responds as follows:

8

9   **INTERROGATORY NO. 1:**

10      Please state the full name, present business address, present residence, and capacity or title

11  of the individual answering or signing these Interrogatories on behalf of the answering defendant.

12  **RESPONSE TO INTERROGATORY NO. 1:**

13      PDI states that these Interrogatories have been answered by PDI with the assistance of its

14  counsel from information developed during the course of PDI's involvement in the nationwide

15  asbestos litigation, and are verified on behalf of PDI by Joseph A. Brunner,  PDI's Manager –

16  Discontinued Operations.  Mr. Brunner's business address is One North Central Avenue, Phoenix,

17  Arizona, 85004.  PDI further states that it has received information from the following former

18  employees that may have been used in connection with these responses:  Theodore Balaska,

19  deceased; William Brookes, Hendersonville, North Carolina; Edward Cadow, deceased; Bruce

20  Cowles, New Smyrna Beach, Florida; Bill Daniels, Monroe Township, New Jersey; John

21  Kawalchuk, deceased; Albert McGrath, deceased;  John F. McGuire, Mahwah, New Jersey; James

22  A. Moran, Clifton Park, New York; Francis Riordan, Suwanee, Georgia; Harry Schell, Naples,

23  Florida; Edward Snarski, Port Charlotte, Florida; Russell Spring, deceased; and Gus Symnaski,

24  Yonkers, New York.

25  **INTERROGATORY NO. 14:**

26      Have you, at any time, engaged in the processing, marketing, and sale of products

27  containing asbestos fibers?

28

**RESPONSE TO INTERROGATORY NO. 14:**

PDI, the defendant in this action, has never engaged in the activities specified in this Interrogatory. However, as to PDI's predecessor, PDCPC, PDI responds as follows: Yes.

**INTERROGATORY NO. 15:**

If your answer to Interrogatory 14 is in the affirmative, please state:

(a)    The trade or brand name of each such product, mined, manufactured, and/or marketed:

(b)    The dates that each of such products were placed on the market;

(c)    The dates that each of such products were withdrawn from the market;

(d)    A description of the physical (i.e., chemical) composition of each such product including the type of asbestos contained in each such product (i.e., amosite, chrysotile or crocidolite), the quantitative percentage of asbestos in each product, each non-asbestos chemical contained in each such product;

(e)    A description of the physical appearance of each such product;

(f)    A detailed description of the intended use of each such product;

(g)    The name of the manufacturer of each such product;

(h)    The mining or milling concern from which the raw asbestos fiber was obtained.

**RESPONSE TO INTERROGATORY NO. 15:**

PDI objects to this interrogatory on the grounds stated in the General Objections and Specific Objection Nos. 1, 2, 3, 4, 5, 6, 7 and 8. PDI further objects to this interrogatory on the ground that it is unduly burdensome and oppressive because it improperly attempts to shift to PDI the burden of reviewing documents to determine whether any responsive information exists, and, if so, to compile any responsive information. The burden of ascertaining and compiling such information is substantially the same for plaintiff as PDI. Pursuant to California Code of Civil Procedure §2030(f)(2), PDI will make its documents available to plaintiff for inspection at the location where they are maintained in the ordinary course of business at a mutually agreeable time from which the requested information might be able to be ascertained. PDI further objects to this interrogatory on the ground that it seeks information regarding products not at issue in this

-9-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

1   litigation.  By responding to this interrogatory PDI does not admit that any of the products

2   described are at issue in any litigation in the State of California.  Without waiving these objections,

3   PDI responds as follows:

4          PDI refers to and incorporates its Preliminary Comments.  PDI states that neither PDI nor

5   PDCPC ever directly, or indirectly mined, manufactured, produced, processed, compounded,

6   converted, sold, merchandised, supplied, distributed, and/or otherwise placed in the stream of

7   commerce, raw asbestos.  PDI further states that PDI's predecessor, PDCPC, manufactured

8   different types of cable and wire through its Habirshaw Cable and Wire Division, some of which

9   contained encapsulated and/or impregnated chrysotile asbestos as electrical insulation.  PDCPC's

10  wire and cable products were manufactured pursuant to specifications promulgated by the Navy

11  and other armed services branches of the United States Government, and entities such as the

12  American Institute of Electrical Engineers, Insulated Power Cable Engineers Association, National

13  Electric Manufacturers Association ("NEMA"), Underwriters' Laboratories, and others, including

14  individual customers.  PDI further states that alterations and modifications in PDCPC's wire and

15  cable products occurred from time to time in response to advances in cable and wire technology

16  and engineering, marketplace demand, and modifications to the specifications mentioned above.

17         PDI's ability to respond to this Interrogatory is hindered by the fact that because PDCPC

18  ceased manufacturing asbestos-insulated products at the Glenwood Plant more than forty years

19  ago, no individual person has been located who possesses knowledge sufficient to completely

20  respond to this Interrogatory as framed.  Further, although counsel for PDI has located documents

21  related to PDCPC's manufacture of asbestos-containing cable and wire, which will be made

22  available to plaintiffs for review as stated above, the discontinuance of product lines, relocation and

23  closure of manufacturing facilities, and general document retention practices at the manufacturing

24  facilities over the past decades have undoubtedly resulted in the disappearance of documents

25  potentially containing information sought by this Interrogatory.  It is unreasonable to expect that

26  any company would retain all records for each of the products it manufactured during decades of

27  operation, let alone the records of the manufacture of product lines which the company

28  discontinued more than forty years ago.

-10-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

1        In addition to all of the factors discussed above, PDI is simply incapable of describing in

2    detail a product's construction, and the components used therein, without a description of the

3    particular type of cable or wire to which exposure is alleged, the location in which the cable or wire

4    was used, and the intended application of the cable or wire.  This is because any general category

5    or type of cable or wire may have been capable of construction with or without asbestos-containing

6    insulation, depending on a number of factors, including applicable specifications, a customer's

7    wishes, and/or the particular nature of the intended use, location and/or application of the cable or

8    wire.

9        With all of the above considerations in mind, upon information and belief, PDI lists below

10   its cable and wire products that were manufactured at PDCPC's Glenwood Plant and/or sold by

11   PDCPC at various times between the 1930s and 1964, some of which may have been insulated

12   with encapsulated and/or impregnated chrysotile asbestos.  Further, while PDCPC used various

13   trade names from time to time to describe particular types of products, none of the trade names

14   used had any particular applicability to asbestos-insulated products.  Therefore, PDI is incapable of

15   identifying any specific asbestos-insulated product by a name reserved to PDCPC.

16

17   ## NAVY SHIPBOARD CABLE

18       Shipboard cable is designed for the distribution of electrical power, electrical control and

19   communications aboard ships.

20       During World War II, the importance of waterproof and fireproof cable products led to the

21   development of numerous types of Navy shipboard cable which PDCPC manufactured in

22   conformance with military specifications including, but not limited to:  15C1(INT), 15C14, MIL-

23   C-915, MIL-C-2194, and BUSHIPS 660L, and their amendments, supplements, addenda, slash

24   pages, revisions and their incorporated specifications and standards.  These military specifications

25   included precise procedures governing the inspection of cable consisting of numerous quality

26   control elements.  A team of Navy inspectors was stationed at PDCPC's Glenwood Plant.  The

27   cable was inspected during the manufacturing process, and again when the cable was ready to be

28   shipped.  The inspectors also ascertained the correctness of markings on reels and containers prior

-11-

1  to the cable's release for shipment. Navy inspectors released cable for shipment only if the cable

2  complied with all applicable specifications. PDCPC was a recipient of the Army-Navy Production

3  Award For High Achievement in the production of war materials.

4  If a particular type of Navy shipboard cable required a layer of asbestos insulation, the form

5  would typically be an asbestos roving or yarn, saturated with a flame, heat and/or moisture

6  resisting compound. The spaces between the strands of certain conductors were filled with a

7  compound to prevent water leakage through the cable. Some of the different blocking compounds

8  may have contained asbestos. Chrysotile asbestos fiber was required by the Navy for wire and

9  cable products, as set forth in BUSHIPS 17-I-29 (INT) and MIL-I-3053 and their amendments,

10  supplements, addenda, slash pages, revisions and their incorporated specifications and standards.

11  PDCPC ceased manufacturing Navy shipboard cable in 1964.

12

13  **COMMERCIAL SHIPBOARD CABLE**

14  PDCPC manufactured certain types of commercial shipboard cable pursuant to the

15  Recommended Practice For Electric Installations On Shipboard published by the American

16  Institute of Electrical Engineers, No. 45, which was updated and revised from time to time. Certain

17  types of commercial shipboard cable required a layer of asbestos insulation. The AIEE standard

18  for asbestos insulation required the best quality, long-fiber chrysotile asbestos, saturated with a

19  flame, heat and/or moisture resisting compound. PDI is unaware of any valid studies or literature

20  that prove that commercial shipboard cable or wire containing encapsulated and/or impregnated

21  chrysotile asbestos causes any asbestos-related illness.

22

23  **NON-SHIPBOARD CABLE AND WIRE**

24  PDCPC's manufacture of non-shipboard, asbestos-containing cable was minuscule

25  compared to its manufacture of asbestos-containing shipboard cable. PDCPC's limited entry into

26  the field of non-shipboard, asbestos-containing cable and wire after World War II included the

27  manufacture of products pursuant to specifications promulgated by the various branches of the

28  United States Government, and entities such as the American Institute of Electrical Engineers,

-12-

1  **INTERROGATORY NO. 82:**

2    Do you presently have in your possession and document containing the signature or

3  handwritten initials of **the person(s) identified in response to Interrogatory Number 78, above?**

4  If so, please describe each such document(s) in sufficient detail as to satisfy the requirements of a

5  subpoena duces tecum.

6  **RESPONSE TO INTERROGATORY NO. 82:**

7    PDI refers to and incorporates its objections and response to Interrogatory No. 78.

8  **INTERROGATORY NO. 83:**

9    Do you have in your possession any document(s) containing the name of **the person(s)**

10 **identified in response to Interrogatory Number 78, above?** If so, please describe each such

11 document(s) in sufficient detail as to satisfy the requirements of a subpoena duces tecum.

12 **RESPONSE TO INTERROGATORY NO. 83:**

13   PDI refers to and incorporates its objections and response to Interrogatory No. 78.

14 **INTERROGATORY NO. 84:**

15   Do you have in your possession any exemplar or exemplars of the handwriting of **the**

16 **person(s) identified in response to Interrogatory Number 78, above?** If so, please describe

17 each such document(s) in sufficient detail as to satisfy the requirements of a subpoena duces tecum.

18 **RESPONSE TO INTERROGATORY NO. 83:**

19   PDI refers to and incorporates its objections and response to Interrogatory No. 78.

20

21 DATED: March 7, 2007     FILICE BROWN EASSA & McLEOD LLP

22

23         By: *Valerie C. Shelt*

24          ROBERT D. EASSA

         VALERIE C. SHELTON

25          Attorneys for Defendant

         PHELPS DODGE INDUSTRIES, INC.

26

27

28

-50-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

## **VERIFICATION**

I, Joseph A. Brunner, declare:

I am the Manager, Discontinued Operations, of PHELPS DODGE INDUSTRIES, INC., a defendant in this action, and am authorized to make this verification; I have read the foregoing Responses to Plaintiffs' Standard Interrogatories, and know their contents; I do not possess personal knowledge of the information contained in the Responses and, instead, I verify these Responses to Plaintiffs' Standard Interrogatories solely in my capacity as Manager, Discontinued Operations, Phelps Dodge Industries, Inc.; I am informed and believe, and on that ground allege, that the matters stated in the Responses are true.

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing verification is true and correct.

Executed this _1_ day of ~~February~~ *March*, 2007, at Phoenix, Arizona.

Phelps Dodge Industries, Inc.

By: _____
Joseph A. Brunner

SWORN TO AND SUBSCRIBED before me, this _1st_ day of *March* 2007.

_____
Notary Public

My Commission Expires:

_February 26, 2010_
7505-0097-1522649

CAROL J. ARNOLD
Notary Public - Arizona
Maricopa County
My Comm. Expires Feb 26, 2010

**PROOF OF SERVICE**

*Kellie Appleton-Hultz, et al. v. Amcord, Inc. dba Riverside Cement Company, et al.*

**Los Angeles County Superior Court Case No. BC354037**

I am a citizen of the United States, over 18 years of age and not party to the within action. I am employed in the county of Alameda; my business address is 1999 Harrison Street, 18th Floor, Oakland, CA 94612.

On the date listed below, I served the within documents:

> **RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC. TO STANDARD INTERROGATORIES (Asbestos) (General Order No. 17)**

On all parties in this action, as addressed below, by causing a true copy thereof to be distributed as follows:

Stephen M. Fishback, Esq.                     Attorneys for Plaintiffs
Daniel L. Keller, Esq.
KELLER FISHBACK LLP
28720 Roadside Drive, Suite 201
Agoura Hills, CA 91301
T: 818-879-8033
**F: 818-292-8891**

**See Attached Service List for all Other Parties Served**

☐ **VIA FAX:**  I caused such documents to be transmitted via fax to the stated parties at their respective facsimile numbers.

☒ **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter data is more than one day after date of deposit for mailing in affidavit.

☐ **VIA HAND DELIVERY:**  I caused such envelope, to be hand delivered to the stated parties.

☐ **VIA EXPRESS CARRIER:**  I caused such documents to be collected by an agent for _____ to be delivered to the offices of the stated parties.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 7, 2007, at Oakland, California.

_NICOLE M. TAVIS_

05794 33326 PRJ 543761.2

-51-

RESPONSES OF DEFENDANT PHELPS DODGE INDUSTRIES, INC., TO STANDARD INTERROGATORIES

Exhibit D

# Delaware

**PAGE 1**

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

WITH AND INTO "PHELPS DODGE INDUSTRIES, INC." UNDER THE NAME
OF "PHELPS DODGE INDUSTRIES, INC.", A CORPORATION ORGANIZED AND
EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED
AND FILED IN THIS OFFICE THE THIRTIETH DAY OF DECEMBER, A.D.
1971, AT 4 O'CLOCK P.M.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

**0650519   8100M**

**070434629**

**AUTHENTICATION: 5593672**

**DATE: 04-13-07**

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

PHELPS DODGE COPPER PRODUCTS CORPORATION,

PHELPS DODGE MAGNET WIRE CORPORATION

and

LEE BROTHERS CORPORATION

INTO

PHELPS DODGE INDUSTRIES, INC.

(Pursuant to Section 253 of the General
Corporation Law of the State of Delaware)

\*     \*     \*

PHELPS DODGE INDUSTRIES, INC., a corporation
organized and existing under the laws of the State of
Delaware, DOES HEREBY CERTIFY:

FIRST:  That this Corporation was incorporated
on the 19th day of December, 1966 under the General Cor-
poration Law of the State of Delaware.

SECOND:  That this Corporation owns all of the
outstanding shares of stock of PHELPS DODGE COPPER
PRODUCTS CORPORATION, a corporation incorporated on the
11th day of August, 1927 under the General Corporation
Law of the State of Delaware.

THIRD:  That this Corporation owns all of the outstanding shares of stock of PHELPS DODGE MAGNET WIRE CORPORATION, a corporation incorporated on the 9th day of December, 1965 under the General Corporation Law of the State of Delaware.

FOURTH:  That this Corporation owns all of the outstanding shares of stock of LEE BROTHERS CORPORATION, a corporation incorporated on the 12th day of November, 1963 under the General Corporation Law of the State of Delaware.

FIFTH:  That this Corporation, by the following resolutions of its Board of Directors, duly adopted at a meeting held on the 21st day of December, 1971, determined to merge into itself effective at 11:59 P.M. Eastern Standard Time on December 31, 1971, said PHELPS DODGE COPPER PRODUCTS CORPORATION, PHELPS DODGE MAGNET WIRE CORPORATION and LEE BROTHERS CORPORATION:

RESOLVED, that this Corporation merge, effective at 11:59 P.M. on December 31, 1971, Phelps Dodge Copper Products Corporation, Phelps Dodge Magnet Wire Corporation and Lee Brothers Corporation, all Delaware corporations, into itself, and that this Corporation assume, effective at 11:59 P.M. on December 31, 1971, all of the obligations of Phelps Dodge Copper Products Corporation, Phelps Dodge Magnet Wire Corporation and Lee Brothers Corporation, all pursuant to Section 253 of the General Corporation Law of the State of Delaware; and

2

FURTHER RESOLVED, that the President, the Exec-utive Vice President, or any Vice President and the Secretary or any Assistant Secretary of this Corpora-tion be, and they hereby are, authorized and directed to make and execute, in the name of this Corporation, a Certificate of Ownership and Merger setting forth copies of these resolutions to merge Phelps Dodge Cop-per Products Corporation, Phelps Dodge Magnet Wire Corporation and Lee Brothers Corporation into this Corporation and to assume all of their respective obligations, effective at 11:59 P.M. on December 31, 1971, and to cause the same to be filed in the office of the Secretary of the State of Dela-ware and to cause a certified copy thereof to be recorded in the office of the Recorder of Deeds of Kent County, Delaware; and

FURTHER RESOLVED, that the proper officers of this Corporation be, and they hereby are, author-ized to do all acts and things necessary or proper to effect the merger of Phelps Dodge Copper Products Corporation, Phelps Dodge Magnet Wire Corporation and Lee Brothers Corporation into this Corporation and to carry out the transactions contemplated by the foregoing resolutions.

IN WITNESS WHEREOF, Phelps Dodge Industries, Inc. has caused this Certificate to be signed by Douglas C. Lynch, its Executive Vice President, and John E. Masten, its Secretary, this 21st day of December, 1971.

PHELPS DODGE INDUSTRIES, INC.

By _____
Executive Vice President

By _____
Secretary

.ertificate of Ownership of the "PHELPS DODGE INDUSTRIES, INC.", merging "PHELPS DODGE COPPER PRODUCTS CORPORATION," "PHELPS DODGE MAGNET WIRE CORPORATION" and "LEE BROTHERS CORPORATION", pursuant to Section 253 of the General Corporation Law of the State of Delaware, as received and filed in this office the thirtieth day of December, A.D. 1971, at 4 o'clock P.M.