# FIXED PRICE CONTRACT

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS

Negotiated Contract
NXs 6 15462

NSA 503
1/28/42

This is your official copy of the contract. The ORIGINAL contract only is signed by the parties. Signatures are not required on the contractor's copy.

PHELPS DODGE COPPER PRODUCTS CORPORATION, Habirshaw Cable and Wire Division
(CONTRACTOR)

Amount $ 615,260.52

Contract for ELECTRIC CABLE

Place F.O.B. CONTRACTOR'S WORKS YONKERS, NEW YORK

THIS CONTRACT, entered into as of the 26 day of SEPTEMBER , 1942, by and between the UNITED STATES OF AMERICA, hereinafter called the Government, represented by the contracting officer executing this contract, and

PHELPS DODGE COPPER PRODUCTS CORPORATION,
Habirshaw Cable and Wire Division

(i)   a corporation organized and existing under the laws of the state of
(ii)  a partnership consisting of
(iii) an individual trading as

whose address is 40 Wall Street, New York, N. Y.
hereinafter called the Contractor,

WITNESSETH, that the parties hereto do mutually agree as follows:

The Contractor shall furnish and deliver all the articles, and perform all the services, set forth in the Schedule, consisting of      sheets attached hereto, for the consideration stated therein. The parties hereto shall be bound by and be subject to all the terms and conditions contained in the said Schedule and the attached General Provisions.

This negotiated contract is made pursuant to the provisions of the First War Powers Act, 1941.

IN WITNESS WHEREOF the parties hereto have executed this contract as of the day and year first above written.

UNITED STATES OF AMERICA

By _____
PURCHASING OFFICER
BUREAU OF SUPPLIES AND ACCOUNTS
NAVY DEPARTMENT

W. Edwards

PHELPS DODGE COPPER PRODUCTS CORPORATION,
HABIRSHAW CABLE AND WIRE DIVISION
(CONTRACTOR)

(WITNESSES) E.F. Jordan

By _____
W. T. Braxton

Title   Vice President

40 Wall Street, New York, N. Y.
(BUSINESS ADDRESS OF CONTRACTOR)

NOTE: IN CASE OF CORPORATION, WITNESSES NOT REQUIRED BUT CERTIFICATE BELOW MUST BE COMPLETED.

## CERTIFICATE

I, _____, certify that I am the _____ Secretary of the corporation named as contractor herein; that _____ who signed this contract on behalf of the contractor was then _____ of said Corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body.

_____ (CORPORATE SEAL)

PREFERENCE RATINGS ARE HEREBY ASSIGNED TO THE DELIVERIES AS INDICATED IN THIS CONTRACT. PRIORITIES REGULATION NO. 3 AS AMENDED COVERS THE APPLICATION AND EXTENSION OF THE RATINGS SO ASSIGNED. -- ERNEST KANZLER, DIRECTOR GENERAL FOR OPERATIONS -- W B YOUNG, REAR ADMIRAL, SC, USN, PAYMASTER GENERAL OF THE NAVY

PREFERENCE RATING AA-1 DEF 5.00

BY DIRECTION

OFFICIAL COPY
NOT TO BE RETURNED

Lehman Decl.

Exhibit 24

## BILLING INSTRUCTIONS

In order to obtain prompt payment, these Billing Instructions should be carefully followed:

1.  PREPARATIONS OF INVOICES IN GENERAL.

Invoices should be prepared and submitted on the contractor's regular billhead or letterhead, in duplicate. The original must bear the following certificate, duly executed in the name of the contractor over the signature and title of the person signing:

> "I CERTIFY THAT THE ABOVE BILL IS CORRECT AND JUST; THAT PAYMENT
> THEREFOR HAS NOT BEEN RECEIVED; THAT ALL STATUTORY REQUIREMENTS
> AS TO AMERICAN PRODUCTION AND LABOR STANDARDS, AND ALL CONDI-
> TIONS OF PURCHASE APPLICABLE TO THE TRANSACTIONS HAVE BEEN COM-
> PLIED WITH, AND THAT STATE OR LOCAL SALES TAXES ARE NOT INCLUD-
> ED IN THE AMOUNTS BILLED."

The above prescribed certificate shall be printed, typed or stamped on the invoice. If it is physically impossible to execute the certificate on the face of the invoice, it may be executed on the reverse side. An additional or separate sheet containing only the certificate will not be accepted.

2.  ASSIGNMENTS. If there has been an assignment of claims for moneys due or to become due to the contractor pursuant to contract provisions permitting assignment, each invoice must be executed by the contractor in the manner above provided and must also contain an endorsement which authorizes payment to the assignee and states the name and address of the assignee, substantially as follows: "Make payment on this invoice to assignee, (name and address of the assignee)."

*ANY SPECIAL INSTRUCTIONS CONCERNING SUBMISSION OF INVOICES
AND PLACE OF PAYMENT ARE TO BE FOUND IN THE CONTRACT.*

1691-PSC

1633-PIC                                                    2/20/43

## GENERAL PROVISIONS

**ARTICLE 1. Scope of this Contract.** — The Contractor shall furnish and deliver all of the articles, and perform all of the services, set forth in the attached Schedule, for the consideration stated therein, of merchantable quality, free from defects in material or workmanship and in strict accordance with the specifications and drawings attached to or designated in such Schedule, all of which are made a part hereof. "General Specifications for Inspection of Material", issued by the Navy Department July 1, 1941, shall also form a part of this contract. The rights and obligations of the parties hereto shall be subject to the provisions contained in these General Provisions, such "General Specifications for Inspection of Material", and the provisions of the Schedule. In the event of any inconsistency between the provisions of these General Provisions, such "General Specifications for Inspection of Material", and the provisions of the Schedule, the provisions of the Schedule shall be deemed to control to the extent of such inconsistency.

**ARTICLE 2. Changes.** — (a) The specifications, drawings, or designs applicable to any of the items covered by this contract, (and also, in the case of spare parts, the quantities or designations), or any provisions with respect to packaging, may be changed at any time by written order of the chief of the bureau named at the head of the Schedule or his representatives duly authorized in writing, which authorization may be specific or general in its scope. Such changes may be made without authority to the surety, if any, and the Contractor shall give effect to such changes without delay. Changes proposed by the Contractor may, if acceptable to the chief of such bureau or his duly authorized representative, be similarly authorized. Where appropriate, changes ordered or agreed to under this section shall include accompanying revisions of delivery dates. If any such change so ordered shall involve an increase or decrease in the amount or character of the work to be done or the time required for its performance, an equitable adjustment of the price or prices payable shall be made as provided in paragraph (b) hereof.

(b) At intervals of three months, if during such period there have been changes involving a net change in price, or whenever requested by the contracting officer or by the Contractor and assented to by the contracting officer, the Contractor shall submit to the contracting officer via the chief of such bureau in such form and detail as the contracting officer may request, a summary of any changes made since the date of any previous summary, an estimate of the aggregate effect of such changes on the cost of performing the work and a proposal as to an equitable increase or decrease in the contract price. Upon the basis of such information and any other information available to the contracting officer, equitable changes in the contract price and in such other provisions of the contract as may be deemed necessary shall be determined by mutual agreement between the Contractor and the contracting officer and such changes shall be set forth in an amendment to the contract.

(c) Provisions with respect to the method of shipment or place of delivery may be changed by written order of the contracting officer. If any such change involves any increase or decrease in the cost of performing this contract, an equitable adjustment shall be made in the contract price.

(d) Where price changes made as above provided relate to supplies or services previously invoiced, the method of adjustment may increase or decrease in the contract price shall be specified by the amendment. In case an amendment reduces the contract price to less than amounts paid to the Contractor, the Contractor shall forthwith repay such excess to the Government.

**ARTICLE 3. Extras.** — Except as otherwise herein provided, no charge for extras will be allowed unless the same have been ordered in writing by the contracting officer and the price stated in such order.

**ARTICLE 4. Increase or Decrease.** — Unless otherwise specified, any variation in the quantities herein called for, not exceeding 10 per cent, will be accepted as a compliance with the contract, when caused by conditions of loading, shipping, packing, or allowances in manufacturing processes, and payments shall be adjusted accordingly.

**ARTICLE 5. Inspection.** — (a) All material and workmanship shall be subject to inspection and test by the Government during manufacture, where practicable, and at all other times and places. In case any articles are defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles or require their correction or replacement. Rejected articles, or articles requiring correction, shall be removed by and at the expense of the Contractor promptly after notice so to do and shall not be used until corrected, reinspected and passed by the Government. Rejected articles not suitable for correction shall be so segregated by the Contractor as to preclude the possibility of use under this contract. In the event public necessity requires the use of materials or supplies defective in material or workmanship or not in accordance with the specifications, payment therefor shall be made at a proper reduction in price.

(b) All inspections and tests by the Government shall be performed in such a manner as not to delay the work unduly. Special and performance tests shall be as described herein and in the specifications. If any inspection and test is made on the premises of the Contractor or a subcontractor, the Contractor shall provide a complete inspection system acceptable to the Government's inspectors and all reasonable facilities and assistance for the safety and convenience of the inspectors in the performance of their duties. In the event articles are not ready at the time inspection is requested by the Contractor, the Government may charge to the Contractor any additional cost of inspection and test. ☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒☒

**at contractor's plant**

**ARTICLE 6. Responsibility For Supplies Tendered.** — The Contractor shall be responsible for the articles covered by this contract until they are delivered, and the Contractor shall bear all risk on rejected articles after notice of rejection. Where final inspection is at point of origin and delivery by the Contractor is at some other point, the Contractor's responsibility shall continue until delivery is accomplished.

**ARTICLE 7. Transfer of Contract and Assignment of Claims.** — (a) Neither this contract nor any interest herein nor any claim arising hereunder, except as otherwise provided in this Article, shall be transferred by the Contractor to any party or parties.

(b) If this contract is not classified as "confidential" or "secret", and if the contract provides for payments aggregating $1,000 or more, claims for moneys due or to become due to the Contractor from the Government arising out of this contract may be assigned to any bank, trust company or other financing institution, including any Federal lending agency. Any such assignment shall cover all amounts payable under this contract and not already paid, shall not be subject to further assignment, and shall not be made to more than one party, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract. In the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (1) the General Accounting Office of the Government, (2) the contracting officer, (3) the surety or sureties upon the bond or bonds, if any, in connection with this contract, and (4) the disbursing officer designated to make payments under this contract.

(c) Payments to an assignee of any claims arising under this contract shall not be subject to reduction or set-off for any indebtedness of the Contractor to the United States arising independently of this contract.

(d) Information contained in plans, specifications, or any similar document, relating to the work under this contract and marked "secret", "confidential", or "restricted", shall not, in connection with the assignment of any claim under the contract, be communicated, transmitted or disclosed to any person not otherwise entitled to receive it, except with the prior consent of the contracting officer or his duly authorized representative in each instance.

**ARTICLE 8. Walsh-Healey Act.** — If this contract is for a definite amount in excess of $10,000 or for an indefinite amount which may exceed $10,000, there is hereby incorporated herein by reference the representations and stipulations pursuant to Public Act No. 846, 74th Congress, known as the Walsh-Healey Public Contracts Act, as set forth in Article I of Part I of Regulations No. 504, issued by the Secretary of Labor pursuant to such Act, as from time to time amended.

**ARTICLE 9. Officials not to Benefit.** — No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

**ARTICLE 10. Covenant Against Contingent Fees.** — The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.

**ARTICLE 11. Non-discrimination in Employment.** — The Contractor, in performing the work required by this contract, shall not discriminate against any worker because of race, creed, color, or national origin. The Contractor further agrees that each subcontract made under this contract will contain a similar provision with respect to non-discrimination.

**ARTICLE 12. Disputes.** — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the Contractor within 30 days to the Secretary of the Navy or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime the Contractor shall diligently proceed with performance.

**ARTICLE 13. Definitions.** — (a) The term "Secretary of the Navy", as used herein, shall mean the Secretary, Under Secretary or any Assistant Secretary of the Navy, and the term "his duly authorized representative" shall mean any person authorized to act for him other than the contracting officer.

(b) The term "contracting officer", as used herein, shall include the Chief of the Bureau of Supplies and Accounts, the Purchasing Officers in such Bureau, and their duly appointed successors and duly authorized representatives.

```
Lot 758                                                CONTRACT NO. NXss-14492
Requisition No. -        NSF
        Bureau Reqn.:    1153 (All of Items 40 and 59)
        N. Y. Request:   680 (All of Item 57)
        N. Y. Request:   680A (All of Item 8)
        N. Y. Request:   679 (All of Items 23, 24 and 51)
        M. I. Request:   44 (All of Items 92 and 121)
        M. I. Request:   26 (All of Items 108 and 109)
        M. I. Request:   23 (All of Items 72 and 136)
        M. I. Request:   15 (All of Items 83 and 115)


Bureau              Ships

Negotiation No.     Special (1939)              Title: 13-X-1

Appropriation       17X0806 Naval Stock Fund
Ult. Chg.: Bu. Reqn. 1153 - 17X0603, Increase and Replacement of
                    Naval Vessels (C & M) Title 1-A, Account 9999,
                    Class 400
```

OPENING DATE FOR THIS SCHEDULE:

UPON RECEIPT

The articles or services to be furnished under the particular lot
number, the price, the time and place of delivery thereof, the
specifications and preference rating pertaining thereto are as
follows:

Cable, Electric, heat and flame- resisting:

| Item | TYPE | Quantity (Feet) | Unit Price | Total |
|------|------|----------------|-----------|-------|
| 8. | DHFA-3 | 117,500 | $.239 | $28,082.50 |
| 23. | MHFA-10 | 100,000 | .697 | 69,700.00 |
| 24. | MHFA-14 | 108,000 | .879 | 94,932.00 |
| 40. | MDGA-19 (40) | 40,000 | 2.262 | 90,480.00 |
| 51. | THFA-300 | 6,000 | 2.490 | 14,940.00 |
| 57. | DHFA-4 | 57,000 | .380 | 21,660.00 |
| 59. | MDGA-19 (23) | 20,000 | 1.698 | 33,960.00 |
| 72. | MHFF-10 | 40,000 | .447 | 17,880.00 |
| 83. | SBFA-500 | 25,000 | .988 | 24,700.00 |
| 92. | DHFA-4 | 130,000 | .380 | 49,400.00 |
| 108. | MHFF-7 | 16,000  160,000 | .306 | 4,896.00 |
| 109. | MHFF-10 | 6,000 | .447 | 2,682.00 |
| 115. | SBFA-150 | 32,000 | .545 | 17,440.00 |
| 121. | DHFA-60 | 48,000 | .890 | 42,720.00 |
| 136. | MHFF-10 | 4,000 | .447 | 1,788.00 |

```
                                          TOTAL -
                                                       $515,260.50
```

LCT 760

Contract No. DNai-1448

N. Y. Request:   655

Cable, Electric, heat and flame-resisting:

| Item | TYPE | Quantity (Feet) | Unit Price | Total |
|------|------|-----------------|------------|-------|
| 2 | TTHFA-1 | 85,000 | $.175 | $14,960.00 |

(a)  The prices listed above are based on the Contractor's estimated cost of performing this contract in which there has been included an amount of $12,848.55 to cover contingencies such as increase in cost of labor and materials.

(b)  Promptly following completion of the last delivery hereunder the Contractor will submit to the Contracting Officer a statement of all costs incurred by it with respect to the contingencies mentioned in (a) above.  On the basis of such statement and additional data as the Contracting Officer may request, the Contractor and the Contracting Officer shall negotiate such reduction in the contract price as may be appropriate.  Following agreement, the amount of such reduction shall be set forth in a memorandum which shall be signed by the Contracting Officer and the Contractor.

Any reduction in the total contract price set forth in said memorandum shall be promptly refunded by the Contractor to the Government.  In the event of failure to agree, the amount of such deduction shall be determined in accordance with the Article entitled "Disputes".

Price Redetermination

The prices stated in this contract are subject to redetermination to be made by the Contractor prior to October 1, 1943, and prior to the beginning of each three months period thereafter, the prices for all shipments to be made during the ensuing three months shall be redetermined by agreement between the Contractor and the Contracting Officer.  If the prices so revised for each such period shall be incorporated in this contract by amendment.

FREIGHT CHARGES

The Government will reimburse the Contractor for the amounts paid for freight charges on shipments made under the original Letter of Intent (DNai 1448).  The Contractor shall furnish invoices, approved by the Resident Inspector of Naval Material, for such charges.

REELS

Unless otherwise specified, the reels used in the delivery of cable shall be good, substantial reels, suitable for re-use and formerly known as returnable reels.

The cost of the reels on which the cable is delivered is included in the contract price.

The Government may return to the factory at the Government's expense empty reels originally furnished under this contract.  The Contractor will use such returned reels in making future shipments under this contract or other contracts for similar material provided such reels are available at the time first needed in production.

5

Immediately such returned reels are re-shipped by the Contractor,
the Contractor will make refund to the Government of the value
of reels so used in accordance with the prices listed below. The
amount credited for reels which (in the Contractor's opinion) re-
quire repairs, shall be the amount indicated for said reels less
the cost of repairs.

| SIZES (Inches) | UNIT PRICES |
|---|---|
| 24 | $4.00 |
| 30 | 7.00 |
| 36 | 12.00 |
| 42 | 18.00 |
| 48 | 25.00 |
| 54 | 32.00 |
| 60 | 41.00 |
| 66 | 53.00 |
| 72 | 64.00 |
| 78 | 80.00 |
| 84 | 95.00 |

Only the value as salvage shall be paid by the Contractor for the
return of reels which in the contractor's opinion are not worth
repairing.

The Contractor's obligation to accept returned reels under the
foregoing provision, other than empty reels in transit, shall term-
inate upon the declaration of an Armistice, or the cessation of
hostilities, or upon the giving of notice by the Contractor that the
number of returned Navy reels on hand exceeds 75% of the backlog of
Navy Orders for which the reels ordinarily would be used.

In the event the number of returned reels in the custody of the
Contractor exceeds at any time 100% of the backlog of Navy orders,
the Navy will, on demand of the Contractor, promptly remove all such
excess reels from the Contractor's property.

Empty reels to be shipped to Phelps-Dodge Copper Products Corp.,
Habirshaw Cable and Wire Division, Yonkers, New York.

SPECIFICATIONS.

All cable shall be in accordance with BUREAU OF SHIPS AD INTERIM
SPECIFICATION 15-C-1 (INT) for CABLE, ELECTRIC, INSULATED (SHIPBOARD
USE) dated July 1, 1942, remnants will be accepted at the price
reduction (in percentages) appearing in Table XLV of Specification
15-C-1 (INT), provided the amount of such remnants shall not exceed
twenty (20) percent of the total quantity of the contract, and that
the cable complies in all other respects with the specification re-
quirements and is acceptable to the Naval activity for which in-
tended.

In addition to the above specification, Type SODA and Type MCOA cables
shall also be in accordance with the following details:

6

**TYPE MDGA.**

The cable shall be furnished on reels in lengths of 1,000 feet with a tolerance of plus or minus 10 percent.

**Construction.** This cable shall be made up in accordance with Table A herein and the following:

**First.** Each conductor of the cable, before insulating, shall conform to the Standard Conductor (Table IV of Specification 15-C-1 (INT) as designated in the third column of Table A herein.

**Second.** Each conductor shall have:

(a) A wall of felted asbestos (Paragraph C-11 of Specification 15-C-1 (INT) compressed and impregnated with a neutral insulating cement to form a continuous and homogeneous layer.

(b) A wall of varnished cambric insulation (Paragraph C-7) of Specification 15-C-1 (INT) applied over the felted asbestos.

(c) A protective and circuit identification wall in accordance with the following method shall be used:

A fine, closely woven braid of glass fibres (Paragraph C-22-d) of Specification 15-C-1 (INT), rayon or cellulose acetate yarn with a light synthetic resinous impregnant and coating. This braid shall be colored to form the circuit identification (Paragraph D-6) of Specification 15-C-1 (INT).

The diameter over this braid shall be not more than 0.010 inch greater than the diameter over the varnished cambric.

**Third.** Nineteen conductors shall be twisted together with a lay not greater than 24 times the pitch diameter so that the number one conductor is at the center of the cable and with two concentric layers of conductor surrounding this central conductor, the first layer to contain six conductors and the second (outer) layer to contain 12 conductors. Impregnated asbestos fillers, (Paragraph C-10 of Specification 15-C-1 (INT) shall be used to form a solid mass without voids between conductors.

**Fourth.** A binding tape or other means may be used at the option of the Contractor to bind the conductors and fillers prior to application of the impervious sheath. The thickness of this Fourth material, if used, shall be such as to result in strict adherence of the finished cable to specified over-all dimensions. Contractor's identification, in accordance with Paragraph D-5b of Specification 15-C-1 (INT) shall be included under the impervious sheath.

**Fifth.** An impervious sheath in accordance with Paragraph C-21 of Specification 15-C-1 (INT).

**Sixth.** An outer armor consisting of aluminum wire applied in a basket weave in accordance with Paragraph C-17 of Specification 15-C-1 (INT). This armoring shall be suitably imbedded in the underlying impervious sheath. The overall diameter of the finished cable over the armor shall not be greater than the values shown in Column 8 of Table A nor less than 92-1/2 percent of these values.

**Seventh.** The armor shall be painted in accordance with Paragraph C-18 of Specification 15-C-1 (INT).

7

TABLE   A

| | Individual Conductors | | | | Grouped Conductors | | |
|---|---|---|---|---|---|---|---|
| Column 1 Type | Column 2 Area Circular Mils per Conductor | Column 3 Standard Copper Conductor Number Table IV of 15-C-1 (INT) | Column 4 Diameter Over Felted Asbestos | Column 5 Diameter Over Varnished Cambric | Column 6 Diameter of Conductors laid together | Column 7 Diameter Over Impervious Sheath | Column 8 Diameter Over Metal Braids |
| MDGA-19(23) 22820 | 23(7) | 0.213 | 0.283 | This diameter shall be such as to permit strict adherence of the finished cable to the specified overall dimensions. | 1.215 1.450 1.75 | 1.320 |
| MDGA-19(40) 33950 | 40(19) | 0.266 | 0.338 | | 2.030 | 2.100 |

| TYPE | WEIGHT PER 1,000 FEET |
|---|---|
| MDGA-19(23) | 2593 |
| MDGA-19(40) | 3827 |

## REELS

Labels must be securely fastened on each reel, and each label must be protected by a transparent compound to prevent deterioration of the marking.

Each reel shall be plainly marked with the number and date of contract, the type and size of cable, the length of cable, and the item number.

## TESTS

Except as specified herein, the tests of the electric cable shall be made in accordance with the requirements of Specification 15-C-1 (INT)

Qualification Tests. Paragraph E-2 of Specification 15-C-1 (INT) shall apply with the first sentence modified to the following: "The right is reserved to reject any Tenders on Braids of MDGA cable which do not use an impervious sheath of the same type and manufacture as used on the Heat and Flame Resistant (HF) Electric cables which have been subjected to the required tests and found satisfactory.

Applicable to Lot "C" only;

Except as specified below, the Cable under this lot, shall be in accordance with specifications set forth above.

Each Conductor of the TTHFA cable under this lot shall be made of stranded wire having a total approximate area of 640 circular mils. The exterior dimension of the finished cable however, shall be in strict accordance with 15-C-1 (INT).

The Contractor guarantees that the cable furnished conforms to
Specifications and is of first class material and workmanship
throughout, and agrees to replace (1) any length of cable fail-
ing under tests specified or during normal and proper use within
one year of date of installation (the commencement of such year
in any event to be not more than six months from date of shipment
of cable), and (2) any length of cable failing within two years
from date of installation, with above limitation as to commencement
of the two years) which shows defects in material or workmanship,
provided in each case that written notice of such failure is given
to Contractor. All replacements under provisions of this guarantee
shall be made free of charge f.o.b. delivery point given in original
contract. Lengths of cable which have been replaced under provisions
of this guarantee shall become property of the contractor and shall
be returned to Contractor's mill by Government f.o.b. original delivery
point.

All shipments by the contractor shall be marked by the contractor in
accordance with the provisions of "Navy Shipment Marking Handbook",
issued by the Navy Department, Bureau of Supplies and Accounts, dated
1 May 1943, and printed by the United States Government Printing
Office.

## DELIVERIES

The cable shall be delivered f.o.b. cars at or near Contractor's
Plant, Yonkers, New York, 350,000 feet, within 190 days after date of
Contract and the balance at the rate of 250,000 feet per month, until
completion of deliveries. Cable shall be for shipment on Government
Bills of Lading to be issued by the Inspector at the Contractor's
plant. Unless shipping instructions have been received from the
Inspector when the release is authorized, material shall be marked
for the Supply-Officer-in-Command, Naval Supply Depot, Mechanicsburg,
Pa.

Contract No. NXss-14492

## SUBMISSION OF INVOICES AND PLACE OF PAYMENT

Submit invoices, in duplicate, to Naval Inspector.

Public vouchers will be prepared and payment will be made by Disbursing Officer, 3rd Naval District, Federal Office Building, 90 Church Street, New York, New York.

## PRIORITY

Army Navy Munitions Board Preference Rating AA-1 has been assigned this contract.  USN 6.90

## LOCATION FOR INSPECTION

Place of Manufacture and location of the articles to be inspected is Yonkers, New York.

Inspection will be made by Inspector of Naval Material New York, New York.

This contract supersedes Letter of Intent NXss-14492, dated 26 September 1942, and constitutes the entire agreement between the parties.  Any accepted deliveries and payments made under said Letter of Intent shall constitute and be considered accepted deliveries and payments under this contract.

Contract No. NXss-14

### PAYMENT.

Invoices to be dated as of date of shipment except that invoices shall be rendered on any material unshipped after thirty days from date it shall be offered for inspection and against such invoices payment shall be made in accordance with the following:

Payments will be made as the work progresses, at the end of each calendar month, upon presentation of invoices approved by the Naval Inspector for material assembled and in the possession of the contractor, and for work actually performed, but only to the extent of seventy-five per cent (75 per cent) of the amount of such invoices, provided that the aggregate amount of such payment does not exceed seventy-five per cent (75 per cent) of the contract price.

Twenty-five per cent (25 per cent) of the contract price of each item will be paid upon delivery and acceptance of such item. Any remaining balance of the contract price will be paid upon the satisfactory completion of all deliveries to be made and services to be performed by the contractor hereunder.

1477PSC                                        3-12-43

## FEDERAL EXCISE TAXES

(a)   Except as otherwise indicated in this contract, the prices stated herein exclude all Federal excise taxes in effect at the date of this contract and directly applicable to the completed supplies or work covered hereby, and upon the request of the contractor, the Government will issue appropriate tax exemption certificates with respect to such excluded Federal excise taxes.

(b)   The prices stated herein include all other Federal taxes in effect at the date of this contract and incurred in performance hereof, including (1)   all Federal excise taxes upon or with respect to materials entering into the production of such supplies or work, or used or consumed in connection with the production thereof, (ii)   all Federal excise taxes upon transportation charges, and (iii) all other Federal taxes in effect at the date of this contract.  If, after the date of this contract, the Federal Government shall impose or increase the rate of any tax, duty, impost, excise or sale, use, transportation, occupational, gross receipts tax, or any other similar tax or charge, other than a tax upon the income of the contractor, directly applicable to the supplies or work covered hereby or to the materials used in the production of such supplies or work, or to the importation, transportation, production, processing, manufacture, construction, sale or use of such supplies, work or materials, which tax or charge must be borne by the contractor because of a specific contractual obligation or by operation of law, then (1) the prices stated herein will be accordingly increased and  any amount due to the contractor as a result of the increase in such prices will be charged to the Government and entered upon invoices as a separate item, or (2) at its option, the Government in lieu of payment of such increase will issue to the contractor appropriate tax exemption certificates or furnish other proof of exemption with respect to such tax or charge.

(c)   If the contractor is relieved from the payment of any Federal tax or charge or portion thereof included in the prices stated herein, by reason of the decrease or elimination of such tax, the contractor shall promptly submit to the Contracting Officer a statement showing the amount of such decrease or elimination. and the prices shall be adjusted to reflect such decrease or elimination as agreed to, or in the event of failure to agree, as determined by the Contracting Officer, and the contract shall be modified accordingly.

1                                        AA

## LIENS AND IDENTIFICATION.--

(a) <u>Lien on Property under Contract</u>.--Any and all partial or advance payments made hereunder shall be secured, when made, by a lien in favor of the Government upon the articles and things contracted for on account of all payments so made and on all material and other property acquired for or allocated to the performance of this contract, except to the extent that the Government, by virtue of any other provision of this contract, or otherwise, shall have valid title to such articles, things, materials or other property as against other creditors of the contractor. If for any reason such property is not identified by marking or segregation, the Government shall be deemed to have a lien upon any mass of property of which such property constitutes a part to the extent of the portion of such mass represented by such property. Said lien is hereby established and made paramount to all other liens under the provisions of an Act approved August 22, 1911 (Public No. 41, 62nd Congress; 37 Stat. 32; 34 U.S.C. 582).

(b) <u>Identification of Property Subject to Lien</u>.--The contractor agrees that, to the extent determined necessary and practical by the Naval Inspector charged with the duty of inspecting the material under this contract, it will identify by marking or segregation all property which is subjected to a lien in favor of the Government by any provision of this contract in such a way as to indicate that it is subject to such lien and that it has been allocated to this contract. In any event the contractor shall maintain adequate accounting control over such property on its books and records.

## INSURANCE.--

In the event that any partial or advance payments are made to the contractor and in the event that the contractor shall procure or maintain insurance upon any materials, parts, assemblies, sub-assemblies, supplies, equipment and other property upon which a lien exists in favor of the Government pursuant to the terms of this contract, the policy or policies shall contain a loss payable clause making losses payable to the Secretary of the Navy or order. Any payments thereunder shall inure to the benefit of the Government to the extent of any loss suffered by the Government and to the contractor as to any remaining balance. The foregoing provisions shall not be deemed to require that the contractor procure or maintain any such insurance.

A-3

F.P.                                    ALT. #1                            9-10-42

SECTION    Termination –

(a) This contract may be terminated by the Government in whole or in part whenever

(1) The contracting officer shall after the commencement of performance determine that termination is for the best interest of the Government; or

(2) The contractor refuses or fails to make delivery of the articles or materials to be furnished under this contract in accordance with specifications, schedules and drawings within the time specified in this contract, or within any extension of such time, and such refusal or failure is not due to an excusable delay as hereinafter defined; or

(3) The contractor makes any defaults in performance under this contract other than those covered by subparagraph (2) hereof, and fails to proceed to cure such defaults within a period of 10 days after receipt from the contracting officer of a Notice of Default specifying the default.

Termination shall be effected by delivery to the contractor of a Notice of Termination specifying the cause of termination, the extent to which performance of the contract shall be terminated, and the date when such termination shall become effective which date shall not be earlier than 10 days after the date of receipt of the Notice of Termination.

(b) After receipt of Notice of Termination, contractor shall (1) terminate work on the contract on the date and to the extent specified in the Notice of Termination; (2) submit to the contracting officer within ten days after receipt of Notice of Termination or such further period as may be specified by the contracting officer a list of all unperformed orders and subcontracts relating to this contract; (3) place no further orders for materials or facilities except as may be necessary for completion of such portions of the contract as may not be terminated or as directed by the contracting officer; (4) cancel and terminate all orders and subcontracts not necessary for the performance of any work required to be performed under the Notice of Termination; (5) assign to the Government all of the right, title and interest of the contractor under such orders or subcontracts as the contracting officer may direct; (6) transfer title to and deliver to the Government in the manner and at the times directed by the contracting officer, such of the plans, drawings, materials, fabricated parts, work in process and completed work relating to the performance of this contract, as the contracting officer may direct;(7) complete performance of such part of the contract as shall not have been terminated by the Notice of Termination; and (8) take such action as the contracting officer may direct for the protection and preservation of the property in the possession of the contractor and in which the Government has an interest.

(c) In addition to remedies otherwise provided the Government may, with respect to contract terminated for the causes set forth in paragraphs (a)(2) or (a)(3) hereof, purchase in the open market or otherwise obtain supplies of a character similar to those called for by the contract and in a quantity which, together with the articles hitherto completed and delivered to and accepted by the Government, shall not exceed the quantity called for under the contract. If the cost to the Government of articles so procured exceeds the price for such articles under the contract, the contractor shall be liable for such excess.

(d) After termination of this contract in the manner provided in this article, the Government within a reasonable time shall pay to the contractor the following amount;

(1) For articles completed and delivered and accepted by the Government, a sum equivalent to the payment prices for such articles computed in accordance with the unit prices specified in the contract;

(2) For work performed on uncompleted articles in process and materials on hand a sum determined as follows:

(A) Where the contract has been terminated for the causes set forth in paragraph (a)(1) hereof the total of (i) a percentage of the contract price, reduced by the amount of any payments under (1) above, equal to the percentage of completion of such uncompleted articles at the time of termination, or in the event of inability between the Government and the contractor to agree as to the percentage of the completion, the cost of work performed under this contract other than work performed on articles completed and delivered and accepted by the Government, plus a sum not less than 1½% nor more than 6% of such cost as determined by agreement between the contractor and the contracting officer, (ii) the purchase price of unworked and unprocessed materials on hand owned by contractor and purchased for performance of this contract (iii) any reasonable expense incidental to termination under paragraph (b) hereof of orders or subcontracts and (iv) any other reasonable expense incidental to termination of this contract that may be agreed upon between the parties.

(OVER)                                                          1172-P

1172-P

F.P.                    TERMIN. CL.  (ALT. #1) — Contd.

      (B)    Where the contract has been terminated for any of the causes set forth in paragraphs (a)(2) or (a)(3) hereof, the cost of plans, drawings, materials, fabricated parts and work in process transferred to the Government in accordance with the directions of the contracting officer.

      (3)   The reasonable cost of the preservation and protection of property as required under paragraph (b) hereof.

The total sum to be paid the contractor under this paragraph (d) shall not exceed the contract price for such work if completed.

    (e)  The obligation of the Government to make any of the payments required under paragraph (d) hereof shall be subject to (1) any unsettled claims against the contractor for labor or materials, (2) deductions for the excess cost of articles purchased in accordance with paragraph (c) hereof, (3) any claim which the Government may have against the contractor, (4) deductions for any advance payments, progress payments, unit payments or partial payments made to the contractor under or in connection with this contract, and (5) reasonable deductions by the Government on account of defects in the materials or workmanship of completed or partially completed work delivered hereunder or other defaults under this contract.

    (f)  For the purpose of paragraph (d)(2) hereof the cost of work performed shall be determined in accordance with the Explanation of Principles for Determination of Costs under Government Contracts promulgated by the War Department and the Navy Department April, 1942.  Such cost shall include as of the date of termination the cost of materials in process and the expenses of the contractor incurred in the placing of orders for materials not worked on or in process but excluding the purchase price of such materials not worked on or in process.  The contractor shall make available to the Government at all reasonable times at the office of the contractor all of its books, records, documents, and other evidence bearing on the cost to the contractor of the work in process.

    (g)  <u>Excusable Delays</u>.—The contractor shall not be charged with any liability for failure or delay in making deliveries when such failure or delay (herein called an Excusable Delay) of the contractor in making deliveries is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including but not restricted to (1) acts of God or of the public enemy, (2) acts of the Government of the United States or any state or political subdivision thereof, (3) fires, floods, explosions, earthquakes, or other catastrophes, (4) epidemics, (5) quarantine restrictions, (6) strikes, (7) freight embargoes, (8) unusually severe weather, (9) inability of the contractor to obtain equipment or material when the contracting officer determines that such inability is due to the operation of Governmental priorities, preferences or allocations of equipment or material, or (10) delays of a subcontractor or supplier in furnishing material owing to one or more of the foregoing causes, unless the contracting officer shall determine that the materials or supplies to be furnished under the subcontract are procurable from other sources, and shall have ordered the contractor to procure such materials or supplies from other sources.  If the contractor shall fail to notify the contracting officer in writing of the cause of any such excusable failure or delay within ten (10) days from the date it appears that such cause will delay deliveries under this contract or within such longer period as the contracting officer or his duly authorized representative, shall, prior to the date of final settlement of the contract, specify for the giving of such notice, the contractor shall lose all right to an extension of time for delivery by reason of such cause.  Promptly on receipt of such notice, the contracting officer shall ascertain the facts and extent of failure or delay, and if the contracting officer shall find that the failure or delay was occasioned by any one or more of the said causes, he shall revise the delivery schedule accordingly.  The finding of fact of the contracting officer shall be final and conclusive, subject only to appeal within thirty (30) days by the contractor to the Secretary of the Navy or his duly authorized representative, whose decision on such appeal, as to the facts of the failure or delay, shall be final and conclusive.

F.P.                                                                    11-16-42
1171-P

**RENEGOTIATION PURSUANT TO SECTION 403 OF THE 6TH SUPPLEMENTAL NATIONAL DEFENSE APPROPRIA-
TION ACT, 1942, AS AMENDED.**

    (a) Upon the written request of the Secretary of the Navy at such period or
periods when in the judgment of the Secretary of the Navy the profits accruing to the
contractor under this contract can be determined with reasonable certainty, the contract
price shall be renegotiated to eliminate therefrom such amount as is found as a result of
such renegotiation to represent excessive profits.

    (b) Any profits found as a result of such renegotiation to be excessive and not
eliminated through reductions in the contract price hereunder or otherwise, shall, as the
Secretary of the Navy may direct, (1) be retained by the Government from amounts otherwise
due the contractor, or (2) be repaid by the contractor to the Government, if such excessive
profits have been paid to the contractor.

    (c) The contractor shall require the insertion of the following provisions in
each subcontract for an amount in excess of $100,000 directly entered into by the contract-
or under this contract:

    (1) Upon the written request of the Secretary of the Navy at such period or
periods when in the judgment of the Secretary the profits accruing under this con-
tract can be determined with reasonable certainty, the contract price shall be re-
negotiated by the Secretary of the Navy and _____
                                                      (Subcontractor)
to eliminate therefrom such amount as is found as a result of such renegotiation to
represent excessive profits.

    (2) Any profits found as a result of such renegotiation to be excessive and
not eliminated through reductions in the contract price hereunder or otherwise,
shall, as the Secretary of the Navy may direct, (i) be retained by _____
_____for the Government, or (ii) be repaid by
       (Contractor)
_____   _____ to the Government, if such excessive
       (Subcontractor)
profits have been paid to _____.
                                              (Subcontractor)

    (3) _____is hereby relieved from any lia-
                           (Contractor)
bility to _____on account of any amount
                     (Subcontractor)
retained or repaid pursuant to paragraph (2) above.

    (4) _____shall, upon the direction of the
                 (Subcontractor)
Secretary of the Navy, require the insertion in any subcontract made hereunder,
of contract provisions conforming substantially to the provisions of this Section.

    (5) Any renegotiation under this Section shall be conducted pursuant to the pro-
visions of Section 403 of the Sixth Supplemental National Defense Appropriation Act,
1942, as amended.

    (d) Any profits under any subcontract hereunder which are found as a result of
renegotiation to be excessive and which the contractor is directed by the Secretary of the
Navy to withhold from payments otherwise due the subcontractor and actually unpaid at the
time of receipt of such direction, shall, as the Secretary of the Navy may direct, (1) be
retained by the Government from amounts otherwise due the contractor, or (2) be repaid by
the contractor to the Government.

    (e) Any renegotiation under this Section shall be conducted pursuant to the pro-
visions of Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942,
as amended.

    (f) For the purpose of this Section,

    (1) the term "Secretary of the Navy" shall be deemed to include any authorized
representative of the Secretary of the Navy, and

    (2) the term "subcontract" means any purchase order or agreement to perform
all or any part of the work or to make or furnish any article, required for the
performance of another contract or subcontract, unless exempted from the provi-
sions of Section 403, as amended, under subsection (i) thereof. The term "article",
as used in this definition, includes any material, part, assembly, machinery, equip-
ment, or other personal property.

    (g) The contractor agrees that it will keep records and books of account showing
the cost of performing this contract, in accordance with sound accounting practice. The
contracting officer and his authorized representatives shall at all reasonable times have
access to all records, books of account and original evidences of cost of the contractor per-
taining to this contract. The contractor shall preserve all such records, books of account
and original evidences of cost for a period of three years after the completion or other ter-
mination of this contract and, if it is determined to renegotiate the price herein, for such
additional period as may be necessary.

1                                                                    D

1183-P1                    10-17-42

PATENTS.--

      The contractor shall hold and save the Government, its officers, agents, servants, and employees, harmless from patent liability of any nature or kind, including costs and expenses, for or on account of any patented or unpatented invention made or used in the performance of this contract, including the use or disposal thereof by or on behalf of the Government:  Provided, That the foregoing shall not apply to inventions covered by applications for United States Letters Patent which, on the date of execution of this contract, are being maintained in secrecy under the provisions of Title 35, U. S. Code (1940 ed.), Section 42, as amended.

1                                        E

# HABIRSHAW
## CABLE AND WIRE DIVISION
## PHELPS DODGE COPPER PRODUCTS CORPORATION

Date 10-1-42

Bill *U. S. Navy*

Ship to *See below*

Shipping Date

Via

F.O.B. Factory Freight Allowed to

Our Number

Customer's No. *NXss-14492*

Promise

*Letter of Intent*
*dated 9/26/42*

*Negotiation 1939-B*

| Lot | Item | Type | Feet | Destination |
|---|---|---|---|---|
| 758 | 8 (Part) | DHFA-3 | 117,500 | Supply Officer, Navy Yard, Boston, Mass. |
| 758 | 57 (Part) | " 4 | 57,000 | " " " " Norfolk, Va. |
| 758 | 92 (Part) | " 4 | 130,000 | " " " " Puget Sd. Wash |
| 760 | 2 | TTHFA-1 | 85,000 | " " " " Brooklyn, N.Y. |
| 758 | 23 (Part) | MHFA-10 | 100,000 | " " " " " |
| 758 | 24 (Part) | " 14 | 108,000 | " " " " " |
| 758 | 108 | MHFF-7 | 16,000 | " " " " Puget Sd. Wash. |
| 8 | 72 | " 10 | 40,000 | " " " " Mare Isl. Calif. |
| 158 | 109 | " 10 | 6,000 | " " " " Puget Sd. Wash |
| 758 | 136 | " 10 | 4,000 | { Supply Officer, Naval Overseas Fgt. Terminal, Pier-3 San Francisco, Calif. for Navy Yard, Pearl Harbor, T.H. |
| 758 | 59 (Part) | MDGA-19(23) | 20,000 | Supply Officer, Navy Yard, Norfolk, Va. |
| 758 | 40 (Part) | " 19(40) | 40,000 | " " " " Brooklyn, N.Y. |
| 758 | 115 (Part) | SHFA-150 | 32,000 | " " " " Puget Sd. Wash |
| 758 | 121 (Part) | DHFA-60 | 48,000 | " " " " " " |
| 758 | 83 (Part) | SHFA-500 | 25,000 | " " " " Mare Isl. Calif. |
| 758 | 51 | THFA-300 | 6,000 | " " " " Brooklyn, N.Y. |

*Prices Later*

Priority: Items 40 and 59: AA-1  USN 2.33
Balance: 30% AA-1  70% AA-2  USN 6.90

Specification: 15C1 (INT) dated 7/1/42

Item 2, Lot 760 to have stranded conductors, approx. 642 c.m.
See copy of Schedule 1939-B at factory.

Production: 700,000 ft/week — Start 82 days

Customer's No.

WAR ORDER

Signature *PDM*

SHIPPING DATE

ROUTE VIA          SEE ORDER

F.O.B. FACTORY ~~ACT ATLANTA~~ DEST.
REVISED REEL CLAUSE EFFECTIVE
JUNE 16th APPLIES

MARKS            SEE ORDER

SALESMAN    *Wash territory*

REFERENCE CODE NO.

SPECIFICATIONS    *See order*

INSPECTED BY    —

ROYALTY    —    *NONE*

PREFERENCE RATING    *See order*

PREFERENCE RATING ORDER

SERIAL NO.

EXTRA CHARGE FOR CUTTING

CERTIFICATE & USE FORM ATTACHED    ✓

END USE    *See order*

→ *Items 59 & 40* — (24)

*Bal* (32)

TERMS – 1/2 of 1% 10 days net 30 ~~days~~    ✓
          2% 15 prox. net end prox. month.

(COMMISSION
(
(          *NONE*
(

(1) CLAUSE ON RUBBER EXCISE TAX APPLIES

(2) CLAUSE ON ANY ADDITIONAL TAXES    ✓
    APPLIES

(3) 30 DAY PRICE CLAUSE APPLIES

| ROUTINE | INITIALED | DATE |
|---|---|---|
| EDITED | *Jw* | 10/6 |
| CHECKED | | |
| POSTED | | |
| RELEASED | *PBM* | 10/6 |
| CREDIT APPROVED | *GMM* | 10/7 |
| LBS. CU | | .12 ¢ |

*Refer to Serial No 249*

*for copper Contents*

**WAR ORDER**

**(This Form May Not be Reproduced)**

PD-3A
2/2/42

**ORIGINAL**

**War Production Board**

Serial No. **M  777446**

## PREFERENCE RATING CERTIFICATE

1. **Issued to**  **Phelps Dodge Copper Products Corporation, Habirshaw Cable & Wire Div.**
(Contractor)

2. Address ____ **New York, New York**

3. Related contract number of initiating Government Agency **NXss-14492 Letter of Intent dated 9/26/42**

4. Government Agency which placed contract ____ **U S Navy   Bureau of Supplies and Accounts**
(Name and address (if Army or Navy, specify Supply Arm or Bureau))

**(Bureau of Ships)  Washington, D. C.**

5. **Items Covered by This Certificate**—List for each item:

| REQUIRED DELIVERY DATE | QUANTITY EACH SHIPMENT | VALUE EACH SHIPMENT | DESCRIPTION |
|---|---|---|---|
| 82 days after receipt of Letter of Intent at rate of 700,000 feet per week | 978,560 ft. | $707,052.50 | Electric cable, heat and flame resisting<br><br>INSPECTION REQUIRED<br><br>The Inspector of Naval Material<br>30 Church Street<br>New York, New York<br><br>* USN Class 2.33 – Items 59 and 40<br>USN Class 6.90 – All remaining items |

APPROVED FOR ISSUANCE

WPB SIGNING OFFICER              DISTRICT

6. **Authentication:** I hereby certify that the items specified in this Certificate are essential for the completion of the government contract cited herein, and that the quantities and Required Delivery Date(s) specified are not greater nor earlier than necessary for completion on time of said contract.

____
(Signature and title of authorized official of contractor)

____
(Date)

MARSHALL J BEVERLEY Lt SC USNR
By direction of Paymaster General Navy
(Post, camp, or station)

5 October 1942
(Date)

7. Preference Rating    **AA-1**    (ANMB Code No. ____)
is hereby assigned to the items in the quantities covered by this Certificate. If this Certificate covers machine tools, cite
Urgency Standing No. (if any) ____

**\* See above**

This Certificate is not valid unless Authentication is signed by the Contractor to whom issued and countersigned by the appropriate United States Government Official.

(E.O. 9024, Jan. 16, 1942, 7 F. R. 329; E.O. 9040, Jan. 24, 1942, 7 F. R. 537; Sec. 2(a), Public No. 671, 76th Congress, Third Session, as amended by Public No. 89, 77th Congress, First Session.)

Director of Industry Operations.

**ORIGINAL TO BE ISSUED TO AND RETAINED BY CONTRACTOR**

C O P Y

J40/QM(Phelps Dodge
(N1-2-E1-2) Copper Prod.)            NAVY DEPARTMENT
                          OFFICE OF INSPECTOR OF NAVAL MATERIAL

                              30 CHURCH ST., NEW YORK, N. Y.


                                  November 16, 1942


          Subject:     Approval of expenditures related to Contract
                       Number NXss-14492 covering electric, heat and
                       flame resistance cable.

      Gentlemen:

               Your letter dated November 4, 1942 requests
      the Inspector of Naval Material to approve expenditures
      totaling $278,600 in connection with the subject contract,
      in accordance with the terms of Letter of Intent to you
      dated September 26, 1942.

               This is your authority to proceed with the
      purchase of equipment covered by your letter of November 4,
      1942 totaling $278,600.

                                  Very truly yours,

                                    (signed)

                                  H. L. BRINSER
                                  Rear Admiral, USN

C O P Y

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS
WASHINGTON, 25, D.C.

NXss-14492 (SPM2)

14 September 1943

Phelps Dodge Copper Products Corp.
Habirshaw Cable & Wire Div.
40 Wall St.
New York, N.Y.

SUBJECT:     Contract NXss-14492 – Electric Cable

S i r s:

The payment provision of the subject contract
is hereby revised to read as follows:

Submit invoices in duplicate to Naval Inspector.

Public vouchers will be prepared and payment will
be made by the Disbursing Officer, Bureau of Supplies
and Accounts, Navy Department, Washington, D.C.

Very truly yours

R. C. WINTER
Purchasing Officer
Bureau of Supplies and Accounts

8/16/43

Correspondence, if any, should
be addressed not to the signer
of this order, but to the Bu-
reau of Supplies and Accounts,
Attention of SPM—

**NAVY DEPARTMENT**
**BUREAU OF SUPPLIES AND ACCOUNTS**
WASHINGTON, D. C.

DELIVERY AND SHIPMENT ORDER

Contract NXs 14492          25 September 1943

| VIA Resident Inspector of Naval Material<br>c/o Habirshaw Cable & Wire Division<br>Phelps Dodge Copper Products Corp<br>Yonkers, N. Y. | TO Phelps Dodge Copper Products Corp.<br>Habirshaw Cable & Wire Division<br>40 Wall Street<br>New York, New York |

You are hereby directed to make delivery and/or shipment under the subject contract
as follows:

Information has been received in this office that shipment of 5,705 feet of
type MHFA-10 cable covered by Item 23, Lot 758 was shipped to the Navy Yard
Pearl Harbor, T. H.  This cable was assigned the Navy Yard Brooklyn in the
original contract.

This shipment to the Navy Yard Pearl Harbor is in accordance with general
instructions that all type HF, GP, COP, or COS previously assigned the Navy
Yard New York is to be shipped to activities requested by the Naval Supply
Depot, Mechanicsburg, or to the Naval Supply Depot, Mechanicsburg.  These
instructions are now cancelled and the cable is to be shipped in accordance
with instructions furnished you direct by the Bureau of Ships.

CC TO:
BuShips (3)
Cert    Appn
GAO-Audit
ST
NSD Mechanicsburg
NYd Brooklyn
NYd Pearl Harbor
SPG-2
SGP-K2300
SPG16-1

Date 9/29/43 1st Endorsement   File: NXs - 14492
(SI)

From: Inspector of Naval Material
30 Church Street, New York

1.  Forwarded.

W. B. WOODS
ENSIGN USNR
FOR I.N.M.

If the foregoing results in a change in the contractor's cost of delivery and/or shipment, invoices
should show the contractor's cost of delivery and shipment to the delivery point called for in the
contract and, as a separate item, the increase or decrease in the delivery and/or shipment cost of
the contractor resulting from such change. Thereupon an equitable adjustment in the contract price
will be made.

Purchasing Officer
Bureau of Supplies & Accounts

1737-PSC

## INTER-OFFICE CORRESPONDENCE

**HABIRSHAW**

**BLE AND WIRE DIVISION**

**NEW YORK**

FROM MR.  **E. F. Gordon**

TO MR.  **C. M. Filer**

[ OMIT ALL UNNECESSARY WORDING ]

October 1, 1943

SUBJECT     U. S. Navy Contract NXs-14492

*6789-6804/42*



*6793/42*

In connection with the above contract herewith Navy Department Change Order dated September 25, 1943, reading as follows:

"Information has been received in this office that shipment of 5,705 feet of type MHFA-10 cable covered by Item 23, Lot 758 was shipped to the Navy Yard Pearl Harbor, T.H.  This cable was assigned the Navy Yard Brooklyn in the original contract.

This shipment to the Navy Yard Pearl Harbor is in accordance with general instructions that all type HF, CP, COP, or COS previously assigned the Navy Supply Yard New York is to be shipped to activities requested by the Naval Supply Depot, Mechanicsburg, or to the Naval Supply Depot, Mechanicsburg.  These instructions are now cancelled and the cable is to be shipped in accordance with instructions furnished you direct by the Bureau of Ships."

You will note the Change Order states that all instructions in regard to shipment will be supplied us by the Bureau of Ships.

Please bring this Change Order to the attention of the Navy Inspector when we are again ready to make shipment against this contract.

EFG:OW

cc: Mr. James Powers
    Mr. G. F. Morrissey

E. F. Gordon

*#933*