CONTRACTOR'S COPY
NOT TO BE DETACHED

This is your official copy
of the contract. The ORIGINAL
us a  contract only is signed by the
parties. Signatures are not
6 / 26  required on the contractor's
copy.

**FIXED PRICE CONTRACT**

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS

Negotiated Contract
NXsr–11574

PHELPS DODGE COPPER PRODUCTS CORPORATION,
HABIRSHAW CABLE AND WIRE DIVISION
(CONTRACTOR)

Amount $1,145,670.00

Contract for ELECTRIC CABLE

Place   F.O.B. CONTRACTOR'S WORKS, YONKERS, NEW YORK

THIS CONTRACT, entered into as of the 15 day of August , 192 , by and be-
tween the UNITED STATES OF AMERICA, hereinafter called the Government, represented by the
contracting officer executing this contract, and PHELPS DODGE COPPER PRODUCTS CORP.,
HABIRSHAW CABLE AND WIRE DIVISION

[1]   a corporation organized and existing under the laws of the state of DELAWARE

whose address is 40 Wall Street, New York, N.Y.
hereinafter called the Contractor,

WITNESSETH, that the parties hereto do mutually agree as follows:

The Contractor shall furnish and deliver all the articles, and perform all the ser-
vices, set forth in the Schedule, consisting of       sheets attached hereto, for the con-
sideration stated therein.  The parties hereto shall be bound by and be subject to all the
terms and conditions contained in the said Schedule and the attached General Provisions.

This negotiated contract is made pursuant to the provisions of the First War Pow-
ers Act, 1941.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day
and year first above written.

UNITED STATES OF AMERICA

By_____
PURCHASING OFFICER
BUREAU OF SUPPLIES AND ACCOUNTS
NAVY DEPARTMENT

PHELPS DODGE COPPER PRODUCTS CO. PRODUCTS
HABIRSHAW CABLE AND DIVISION
(CONTRACTOR)

By_____
B. T. Brinton
Title   Vice President

WITNESSES:  W. Edwards

E.F. Gordon

NOTE:  IN CASE OF CORPORATION, WITNESSES
NOT REQUIRED BUT CERTIFICATE BELOW MUST
BE COMPLETED.

40 Wall Street, New York, N. Y.
(BUSINESS ADDRESS OF CONTRACTOR)

CERTIFICATE

I, Wm. E. Pierson      , certify that I am the      Assistant Secretary of the
corporation named as contractor herein; that  B. T. Brinton    who signed this contract
on behalf of the contractor was then Vice President of said corporation; that said con-
tract was duly signed for and in behalf of said corporation by authority of its governing
body.

_____(CORPORATE SEAL)

Preference Rating AA-1

PREFERENCE RATINGS ARE HEREBY ASSIGNED TO THE DELIVERIES AS
INDICATED IN THIS CONTRACT, PRIORITIES REGULATION NO. 3 AS
AMENDED COVERS THE APPLICATION AND EXTENSION OF THE RATINGS
SO ASSIGNED. -- ERNEST KANZLER, DIRECTOR GENERAL FOR OPERA-
TIONS -- W D YOUNG, REAR ADMIRAL, SC, USN, PAYMASTER GENERAL
OF THE NAVY

BY DIRECTION

Lehman Decl.

Exhibit 25

## BILLING INSTRUCTIONS

In order to obtain prompt payment, these Billing Instructions should be carefully followed:

### 1.    PREPARATIONS OF INVOICES IN GENERAL.

Invoices should be prepared and submitted on the contractor's regular billhead or letterhead, in duplicate. The original must bear the following certificate, duly executed in the name of the contractor over the signature and title of the person signing:

> "I CERTIFY THAT THE ABOVE BILL IS CORRECT AND JUST; THAT PAYMENT THEREFOR HAS NOT BEEN RECEIVED; THAT ALL STATUTORY REQUIREMENTS AS TO AMERICAN PRODUCTION AND LABOR STANDARDS, AND ALL CONDITIONS OF PURCHASE APPLICABLE TO THE TRANSACTIONS HAVE BEEN COMPLIED WITH, AND THAT STATE OR LOCAL SALES TAXES ARE NOT INCLUDED IN THE AMOUNTS BILLED."

The above prescribed certificate shall be printed, typed or stamped on the invoice. If it is physically impossible to execute the certificate on the face of the invoice, it may be executed on the reverse side. An additional or separate sheet containing only the certificate will not be accepted.

### 2.    ASSIGNMENTS.

If there has been an assignment of claims for moneys due or to become due to the contractor pursuant to contract provisions permitting assignment, each invoice must be executed by the contractor in the manner above provided and must also contain an endorsement which authorizes payment to the assignee and states the name and address of the assignee, substantially as follows: "Make payment on this invoice to assignee, (name and address of the assignee)."

*ANY SPECIAL INSTRUCTIONS CONCERNING SUBMISSION OF INVOICES AND PLACE OF PAYMENT ARE TO BE FOUND IN THE CONTRACT.*

# GENERAL PROVISIONS

**ARTICLE 1. Scope of this Contract.** — The Contractor shall furnish and deliver all of the articles, and perform all of the services, set forth in the attached Schedule, for the consideration stated therein, of merchantable quality, free from defects in material or workmanship, and in strict accordance with the specifications and drawings attached to or designated in the Schedule...

**ARTICLE 2. Changes.** — (a) The specifications, drawings, or designs applicable to any of the items covered by this contract...

**ARTICLE 3. Extras.** — Except as otherwise herein provided...

**ARTICLE 4. Variations in Quantity or Weight.** — Unless otherwise specified...

**ARTICLE 5. Inspection.** — (a) All...

**ARTICLE 6. Responsibility for the Supplies Delivered.** — The Contractor shall be responsible for the articles covered by this contract until they are delivered...

**ARTICLE 7. Transfer of Contract and Assignment of Claims.** — (a) Neither this contract nor any interest herein nor any claim arising thereunder...

**ARTICLE 8. Nothing to...** — If this contract is for a definite amount in excess of $10,000...

**ARTICLE 9. Officials not to Benefit.** — No Member of or Delegate to Congress or Resident Commissioner shall be admitted...

**ARTICLE 10. Covenant Against Contingent Fees.** — The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement...

**ARTICLE 11. Non-discrimination in Employment.** — The Contractor, in the performance of the work required by this contract, shall not discriminate against any worker because of race, creed, color, or national origin...

**ARTICLE 12. Disputes.** — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer...

**ARTICLE 13. Definitions.** — (a) The term "Secretary of the Navy," as used herein, shall mean the Secretary, Under Secretary, or any Assistant Secretary of the Navy, and the term "his duly authorized representative" shall mean any person authorized to act for him other than the contracting officer.
(b) The term "contracting officer," as used herein, shall include the Chief of the Bureau of Supplies and Accounts, the Purchasing Officers in each Bureau, and their duly appointed successors and duly authorized representatives.

Negotiation No. SPECIAL                              Title: 13-X-1

Appropriation:  17X0603 Naval Stock Fund

App's Ult. Chg.:  17X0603 IRNV C&M Title 1-A,
                  Acct. 999 Class 400          OPENING DATE FOR THIS
                  Special Class 401            SCHEDULE:  Upon receipt
                  Project Order of vessels concerned

The articles or services to be furnished under the particular lot
number, the price, the time and place of delivery thereof, the specifi-
cations and preference rating pertaining thereto are as follows:

| Item | Articles or Services | Quantity | Unit | Unit Price | Total |
|------|---------------------|----------|------|-----------|-------|
| | Cable, electric, heat and flame-resisting | | | | |
| | TYPE | | | | |
| 1. | SDGA-500 | 30,000 | feet | $ .956 | $28,680.00 |
| 2. | MDGA-19(6) | 40,000 | feet | 1.031 | 41,240.00 |
| 3. | SDGA-19(14) | 150,000 | feet | 1.329 | 199,350.00 |
| 4. | MDGA-19(23) | 150,000 | feet | 1.698 | 254,700.00 |
| 5. | MDGA-19(40) | 100,000 | feet | 2.262 | 226,200.00 |
| 6. | HDGA-19(23) | 60,000 | feet | 1.698 | 101,880.00 |
| 7. | MDGA-19(14) | 60,000 | feet | 1.329 | 79,740.00 |
| 8. | MDGA-19(6) | 100,000 | feet | 1.031 | 103,100.00 |
| 9. | SDGA-1000 | 50,000 | feet | 1.456 | 72,800.00 |
| 10. | MDGL-19(14) | 30,000 | foot | 1.266 | 37,980.00 |

                                        TOTAL    $1,145,670.00

### Price Redetermination

The prices stated in this contract shall be applicable to all ship-
ments made by the contractor prior to October 1, 1943.  Prior to
October 1, 1943, and prior to the beginning of each three months'
period thereafter, the prices for all shipments to be made during the
ensuing three months shall be redetermined by negotiation between
the contractor and the contracting officer and the prices so re-
vised for each such period shall be incorporated into this contract
by amendment.

(a) The prices listed above are based on the Contractor's estimated cost of
performing this contract in which there has been included an amount of
$27,791.53 to cover contingencies such as increase in cost of labor and
materials.

(b) Promptly following completion of the last delivery hereunder the Contractor
will submit to the Contracting Officer a statement of all costs incurred by
it with respect to the contingencies mentioned in (a) above.  On the basis
of such statement and additional data as the Contracting Officer may request,
the Contractor and the Contracting Officer shall negotiate such reduction
in the contract price as may be appropriate.  Following agreement, the
amount of such reduction shall be set forth in a memorandum which shall be
signed by the Contracting Officer and the Contractor.

Any reduction in the total contract price set forth in such memorandum
shall be promptly refunded by the Contractor to the Government.  In the
event of failure to agree, the amount of such deduction shall be determined
in accordance with the Article entitled "Disputes."

### REELS

Unless otherwise specified, the reels used in the delivery of the cable
shall be good, substantial reels, suitable for repeated use, commonly known
as returnable reels.

The cost of the reels on which the cable is delivered is included in the
contract price.

The government may return to the factory at the Government's expense empty
reels originally furnished under this contract.  The contractor will use
such returned reels in making future shipments under this contract or other
contracts for similar material whenever such reels are available at the
time first needed in production.

Immediately such returned reels are re-shipped by the contractor, the
contractor will make refund to the Government of the value of reels so

reels which (in the contractor's opinion) require repairs, it will be the amount indicated for said reels less the cost of repairs.

| SIZE | UNIT PRICE |
|------|-----------|
| 54" | $32.00 |
| 60" | 41.00 |
| 78" | 80.00 |

Only the value as salvage shall be paid by the contractor for the return of reels which in the contractor's opinion are not worth repairing.

The contractor's obligation to accept returned reels under the foregoing provisions, other than empty reels in transit, shall terminate upon the declaration of an armistice, or the cessation of hostilities, or upon the giving of notice by the contractor that the number of returned Navy reels on hand exceeds 75% of the backlog of Navy orders for which the reels ordinarily would be used.

In the event the number of returned reels in the custody of the contractor exceeds at any time 100% of the backlog of Navy orders, the Navy will, on demand of the contractor, promptly remove all such excess reels from the contractor's property.

Empty reels to be shipped to Phelps-Dodge Copper Products Corp.
Habirshaw Cable and Wire Div.
Yonkers, New York

Freight Charges
The Government will reimburse the Contractor for any amounts paid for freight charges on shipments made by the contractor under Letter of Intent NXsn-11574 (SPX-6). The contractor shall present separate invoices, approved by the Resident Inspector of Naval Material for such amounts.

Applicable to all Items, except Item 10.

SPECIFICATIONS

All cable shall be in accordance with BUREAU OF SHIPS AN INTERIM SPECIFICATION 15-C-1 (INT) for CABLE, ELECTRIC, INSULATED (SHIPBOARD USE) dated July 1, 1942. Remnants will be accepted at the price reduction (in percentages) appearing in Table XLV of Specification 15-C-1 (INT), provided the amount of such remnants shall not exceed twenty (20) percent of the total quantity of the contract, and that the cable complies in all other respects with the specification requirements and is acceptable to the Naval activity for which intended.

In addition to the above specification, Type SGA and Type MDGA cables shall also be in accordance with the following details:

TYPE SGA:

The type SGA cable shall be suitable for continuous operation at a maximum conductor temperature of 90 degrees Centigrade. The cable shall be furnished on reels in lengths of 1,000 feet with a tolerance of plus or minus ten percent (10%).

Construction: Type SGA cable shall be made in accordance with Table A herein and the following:

First: The conductor, before insulating, shall conform to the standard TABLE IV of Specification 15-C-1 (INT) as designated in the third column of Table A.

Second: A wall of felted asbestos, compressed and impregnated with a neutral insulating cement, to form a continuous and homogeneous layer (C-11).

A suitable thin separator (C-23), at manufacturer's option.

**Third:** A wall of varnished cambric insulation (C-7). A suitable thin separator (C-23) at the manufacturer's option, provided the total wall thickness does not exceed 0.004 inch.

**Fourth:** A wall of felted asbestos applied as in "Second" above (C-11). This wall of felted asbestos may be omitted at the manufacturer's option. Provided the thickness of felted asbestos applied next to the conductor under "Second" above and/or the thickness of varnished cambric under "Third" above and/or impervious sheath under "Fifth" below are increased so that the specified overall dimensions and tolerances of the finished cable are adhered to. A suitable thin separator (C-23) may be applied at the manufacturer's option over this asbestos wall, if used, or over the varnished cambric if the asbestos is omitted.

**Fifth:** An impervious sheath (C-21). Manufacturer's identification shall be included under the impervious sheath.

**Sixth:** Basket weave metal armoring (C-17). This armoring shall be suitably imbedded in the underlying impervious sheath. The overall dimensions of the finished cable shall not exceed the value shown in the last column of Table A nor be less than 92-1/2 percent of these dimensions.

**Seventh:** Painting (C-18).

**Thickness of Varnished Cambric:** The requirements of Paragraph C-6h of Specification 15-C-1 (INT), are modified to permit less than three thicknesses of varnished cambric, provided the minimum thickness of varnished cambric at any point is not less than one-half of the specified total thickness of varnished wall.

**Qualification Tests:** Paragraph H-2 of Specification 15-C-1 (INT), shall apply with the first sentence modified to the following:

"The right is reserved to reject any tenders on brands of Type SDJA cable which do not use an impervious sheath of the same type and manufacture as used on Heat and Flame Resistant '(HF)' Electric cables which have been subjected to the required tests and found satisfactory."

**Cold Bend:** The finished cable shall satisfactorily meet the cold bend test (0 degrees Centigrade, 32 degrees Fahrenheit) specified in Paragraph F-1 of Specification 15-C-1 (INT).

**Flame Resistance:** The finished cable shall meet the flame tests specified in paragraph F-23 of Specification 15-C-1 (INT).

**Dielectric Strength:** The dielectric strength shall be not less than 1,000 volts, alternating current, on full length reels, to be shipped.

**Drip and Exudation:** The finished cable shall meet the drip and exudation tests specified in paragraph (F-12 and F-13) of Specification 15-C-1 (INT).

**Insulation Resistance:** The insulation resistance between conductor and ground, at 15.5 degrees Centigrade on full reel lengths to be shipped, per 100 feet, shall be not less than the following:

TABLE A

| | Standard Copper Conductor Number | Diameter Over Felted Asbestos | Diameter Over Varnished Cambric and Acetate Tape if used | Diameter Over Second Felted Asbestos | Diameter Over Impervious Sheath | Diameter Over Metal |
|---|---|---|---|---|---|---|
| Type Area (Table IV) | (C-10) | (C-6) | | (C-10) | (C-21) | Armoring |

| | | | | | | The thickness of this | 1.285 | 1.355 |
|---|---|---|---|---|---|---|---|---|
| SDGA 500 | 521,970 | 500(127) | 0.883 | 0.945 | | felted wall shall be | 1.639 | 1.709 |
| SDGA 1000 | 1,046,000 | 1000(127) | 1.237 | 1.299 | | such as to permit strict adherence of the finished cable to the specified overall dimensions. | | |

| TYPE | WEIGHT PER 1,000 FEET |
|---|---|
| SDGA 500 | 2201 |
| SDGA 1000 | 4021 |

## TYPE MDGA:

The cable shall be furnished on reels in lengths of 1,000 feet with a tolerance of plus or minus 10 percent.

Construction: This cable shall be made up in accordance with Table A herein and the following:

First: Each conductor of the cable, before insulating, shall conform to the Standard Conductor (Table IV of Specification 15-C-1 (INT) as designated in the third column of Table A herein, except that the following addition is made for individual conductor in Types MDGA-19(6).

| Standard Size Designation Copper Conductor | Number of Strands | Nominal Strand Diameter Inches | Diameter Over Stranded Conductor Inches | Area of Stranded Conductor (circular mils) | Ohms per foot at 25 degrees Centigrade | Weight per foot pounds |
|---|---|---|---|---|---|---|
| 6(7) | 7 | 0.0305 | 0.092 | 6512 | 0.001726 | 0.02019 |

Second: Each conductor shall have:

(a)  A wall of felted asbestos (Paragraph C-11 of Specification 15-C-1 (INT) compressed and impregnated with a neutral insulating cement to form a continuous and homogeneous layer.

(b)  A wall of varnished cambric insulation (Paragraph C-7) of Specification 15-C-1 (INT) applied over the felted asbestos.

(c)  A protective and circuit identification wall in accordance with the following method shall be used:

A fine, closely woven braid of glass fibers (Paragraph C-22-d) of Specification 15-C-1 (INT), rayon or cellulose acetate yarn with a light synthetic resinous impregnant and coating. This braid shall be colored to form the circuit identification (Paragraph D-6) of Specification 15-C-1 (INT).

The diameter over this braid shall be not more than 0.010 inch greater than the diameter over the varnished cambric.

Third:  Nineteen conductors shall be twisted together with a lay not greater than 24 times the pitch diameter so that the number one conductor is at the center of the cable and with two concentric layers of conductor surrounding this central conductor, the first layer to contain six conductors and the second (outer) layer to contain 12 conductors.  Impregnated asbestos fillers, Paragraph C-10 of Specification 15-C-1 (INT) shall be used to form a solid mass without voids between conductors.

Fourth:  A binding tape or other means may be used at the option of the Contractor to bind the conductors and fillers prior to application of the impervious sheath.  The thickness of this Fourth material, if used, shall be such as to result in strict adherence of the finished cable to specified over-all dimensions.  Contractor's identification, in accordance with Paragraph D-5b of Specification 15-C-1 (INT) shall be included under the impervious sheath.

Fifth:  An impervious sheath in accordance with Paragraph C-21 of Specification 15-C-1 (INT).

7

Sixth: An outer armor consisting of aluminum wire applied in a basket weave in accordance with Paragraph C-17 of Specification 15-C-1 (INT). This armoring shall be suitably imbedded in the underlying impervious sheath. The overall diameter of the finished cable over the armor shall not be greater than the values shown in Column 8 of Table A nor less than 92-1/2 percent of these values.

Seventh: The armor shall be painted in accordance with Paragraph C-18 of Specification 15-C-1 (INT).

## TABLE A

| Individual Conductors | | | | Grouped Conductors | | | |
|---|---|---|---|---|---|---|---|
| Column 1 Type | Column 2 Area Circular Mils per Conductor | Column 3 Standard Copper Conductor Number Table IV of 15-C-1 (INT) | Column 4 Diameter Over Felted Asbestos | Column 5 Diameter Over Varnished Cambric | Column 6 Diameter of Conductors laid together | Column 7 Diameter Over Impervious sheath | Column 8 Diameter Over Metal Braids |
| MDGA-19(6) | 6512 | 6(7) | 0.122 | 0.170 | This diameter shall be such as to permit strict adherence of the finished cable to the specified overall dimensions. | 1.215 | 1.285 |
| MDGA-19(14) | 14350 | 14(7) | 0.166 | 0.226 | | 1.450 | 1.520 |
| MDGA-19(23) | 22820 | 23(7) | 0.211 | 0.283 | | 1.75 | 1.820 |
| MDGA-19 (40) | 38950 | 40(19) | 0.266 | 0.338 | | 2.030 | 2.100 |

| TYPE | WEIGHT PER 1,000 FEET |
|---|---|
| MDGA-19(6) | 1036 |
| MDGA-19(14) | 1716 |
| MDGA-19(23) | 2593 |
| MDGA-19(40) | 3827 |

REELS:~ Applicable to all items

Labels must be securely fastened on each reel, and each label must be protected by a transparent compound to prevent deterioration of the markings.

Each reel shall be plainly marked with the number and date of contract, the type and size of cable, the length of cable, and the item number.

Applicable to Item 10 only:

GENERAL: Except where otherwise indicated herein, the cable shall be in accordance with BUREAU OF SHIPS AD INTERIM SPECIFICATION 15-C-1 (INT) for CABLES, ELECTRIC, INSULATED, dated July 1, 1942. Wherever paragraph references are noted herein, they refer particularly to the above specification. The cable shall be suitable for continuous operation at a maximum copper temperature of ninety degrees Centigrade and it shall be in accordance with Table A herein and the following:

FIRST: Each conductor before insulating shall conform to the standard copper conductor size (Table IV) as designated in Table A.

SECOND: A wall of felted asbestos (C-11), compressed and impregnated with a neutral insulating cement to form a continuous and homogeneous layer. A suitable thin separator (C-23) at manufacturer's option.

THIRD: A wall of varnished cambric insulation (C-7) applied over the wall of felted asbestos.

FOURTH: A fine closely woven braid of glass fibers (C-22), rayon or cellulose acetate (C-15). The braid shall be color coded (D-6) and it shall be coated with a light synthetic resinous impregnant. The diameter over the braid

8

shall be now manufactured into a length ... in the ... material of the fin-
nished sample:

FIFTH: Nineteen insulated conductors shall be cabled concentrically with a
lay not greater than 24 times the pitch diameter of the layers. Impregnated
asbestos fillers (C-10) shall be used to eliminate voids and to obtain
firmness and circularity of cross-section.

SIXTH: A binding tape or other means, at the option of the manufacturer,
may be used to bind the conductors and fillers. The thickness of the mat-
erial used shall be such as to permit strict adherence of the finished
cable to the specified over-all dimensions.

SEVENTH: A soft lead sheath (C-19) shall be applied over the core. Man-
ufacturer's identification (D-5) shall be included under the sheath.

EIGHTH: Over the lead sheath shall be applied an outer protective covering
of duck tape, or a saturated tape and braid. Duck tape shall conform to
Section 4 of PICRA Specifications for Metallic Covering for Insulated
Electric Cables dated January 1940. Braid shall conform to requirements
for outer cotton braids (C-15).

TESTS (Inspection): The finished cable shall satisfactorily meet the cold
bend test (E-40c), the flame resistant test (E-40d), the drip and exudation
test (E-40e), the dielectric strength test (E-40f) and the insulation re-
sistance test (E-40g).

SHIPPING LENGTHS: The cable shall be delivered on suitable reels each
containing only one continuous length. The length per reel shall be 1000
feet nominal, 1100 feet maximum and 400 feet minimum. Not more than twenty
(20) percent of the total footage of each type and size of cable on contract
may be shipped in short and/or remnant lengths. Short lengths are defined
as any lengths between the minimum and ninety (90) percent of the nominal
lengths specified. Remnant lengths are defined, as any lengths less than
the minimum specified. Remnant lengths, within the above limitations, will
be accepted in accordance with the appropriate reductions in price as shown
in Table XLV.

### TABLE A

| Cable Designation | Standard Conductor Number | Dia. over Felted asb. | Dia. over V.C. | Dia. over Binder | Dia. over Sheath | Dia. over Covering |
|---|---|---|---|---|---|---|
| Type | Table IV | Inch | Inch | Inches | Inches | Inches |
| NPSL-19(14) | 14(7) | 0.166 | 0.226 | (1) | (1) | 1.520 |

NOTE: (1): The diameter over the binder tape or other material over
the cabled conductors and diameter over the lead sheath
shall be such as to permit strict adherence of the finished
cable to the specified overall dimensions.

## DUPLICATION OF DESIGN:

The contract is on the express condition that the Government has the right
without further compensation to the contractor, to construct or have con-
structed for Government use according to the design or drawings, plans, and
specifications forming a part of this contract any number of articles or
parts, and to use and/or sell said articles or parts according to law as
condensed material.

GUARANTEE.-- The contractor guarantees that the cable furnished conforms to specifications and is of first class material and workmanship throughout and agrees to replace (1) any length of cable failing under tests specified or during normal and proper use within one year of date of installation (the commencement of such year in any event to be not more than six months from date of shipment of cable), and (2) any length of cable failing within two years from date of installation (with above limitation as to commencement of the two years) which shows defects in material or workmanship, provided in each case that written notice of such failure is given to contractor. All replacements under provisions of this guarantee shall be made free of charge f.o.b. delivery point given in original contract. Lengths of cable which have been replaced under provisions of this guarantee shall be come property of the contractor and shall be returned to contractor's mill by Government f.o.b. original delivery point.

## MARKING HANDBOOK INSTRUCTIONS

All shipments by the contractor shall be marked by the contractor in accordance with the provisions of "Navy Shipment Marking Handbook" issued by the Navy Department, Bureau of Supplies and Accounts, dated 1 May 1943 and printed by the United States Government Printing Office.

"Material shall be delivered f.o.b. cars at or near contractor's works, Yonkers, N.Y., with 470,000 feet in 150 days from date of contract and continue at the rate of 60,000 feet per week until completion of deliveries, exclusive of time for inspection and acceptance, for shipment on Government Bills of Lading to be issued by the Inspector at the contractor's plant. Unless shipping instructions have been received from the Inspector of Naval Material when the release is authorized, material shall be marked for the Supply Officer-in-Command, Naval Supply Depot, Mechanicsburg, Pa.

Invoices to be dated as of date of shipment except that invoices shall be rendered on any material unshipped after thirty days from date it shall be offered for inspection and against such invoices payment shall be made in accordance with the following:

Payments will be made as the work progresses, at the end of each calendar month, upon presentation of invoices approved by the Naval Inspector for material assembled and in the possession of the contractor, and for work actually performed, but only to the extent of seventy-five per cent (75%) of the amount of such invoices, provided that the aggregate amount of such payment does not exceed seventy-five (75%) of the contract price.

Twenty-five per cent (25%) of the contract price of each item will be paid upon delivery and acceptance of such item. Any remaining balance of the contract price will be paid upon the satisfactory completion of all deliveries to be made and services to be performed by the contractor hereunder.

## SUBMISSION OF INVOICES AND PLACE OF PAYMENT

The contractor shall submit invoices to Naval Inspector who will securely staple thereto Reports of Material Shipped and forward them to Disbursing Officer, Third Naval District, New York, N.Y. for preparation of public vouchers. Payment will be made by Disbursing Officer, Third Naval District, New York, N.Y.

## PRIORITY

Army Navy Munitions Board Preference Rating AA-1 has been assigned this contract. USN 2.80

## LOCATION FOR INSPECTION

Place of Manufacture and location of the articles to be inspected is Yonkers, New York
Inspection will be made by Inspector of Naval Material, New York, N.Y.

## LIENS AND IDENTIFICATION.--

(a)  Lien on Property under Contract.--Any and all partial or advance payments made hereunder shall be secured, when made, by a lien in favor of the Government upon the articles and things contracted for on account of all payments so made and on all material and other property acquired for or allocated to the performance of this contract, except to the extent that the Government, by virtue of any other provision of this contract, or otherwise, shall have valid title to such articles, things, materials or other property as against other creditors of the contractor.  If for any reason such property is not identified by marking or segregation, the Government shall be deemed to have a lien upon any mass of property of which such property constitutes a part to the extent of the portion of such mass represented by such property.  Said lien is hereby established and made paramount to all other liens under the provisions of an Act approved August 22, 1911 (Public No. 41, 62nd Congress; 37 Stat. 32; 34 U.S.C. 582).

(b)  Identification of Property Subject to Lien.--The contractor agrees that, to the extent determined necessary and practical by the Naval Inspector charged with the duty of inspecting the material under this contract, it will identify by marking or segregation all property which is subjected to a lien in favor of the Government by any provision of this contract in such a way as to indicate that it is subject to such lien and that it has been allocated to this contract.  In any event the contractor shall maintain adequate accounting control over such property on its books and records.

## INSURANCE.--

In the event that any partial or advance payments are made to the contractor and in the event that the contractor shall procure or maintain insurance upon any materials, parts, assemblies, sub-assemblies, supplies, equipment and other property upon which a lien exists in favor of the Government pursuant to the terms of this contract, the policy or policies shall contain a loss payable clause making losses payable to the Secretary of the Navy or order.  Any payments thereunder shall inure to the benefit of the Government to the extent of any loss suffered by the Government and to the contractor as to any remaining balance.  The foregoing provisions shall not be deemed to require that the contractor procure or maintain any such insurance.



## LETTER OF INTENT

This contract supersedes Letter of Intent NXss-11574, dated 15
August 1942, and constitutes the entire agreement between the
parties. Any accepted deliveries and payments made under said
Letter of Intent shall constitute and be considered accepted
deliveries and payments under this contract.

## FEDERAL EXCISE TAXES

(a) Except as otherwise indicated in this contract, the prices stated herein exclude all Federal excise taxes in effect at the date of this contract and directly applicable to the completed supplies or work covered hereby, and upon the request of the contractor, the Government will issue appropriate tax exemption certificates with respect to such excluded Federal excise taxes.

(b) The prices stated herein include all other Federal taxes in effect at the date of this contract and incurred in performance hereof, including (i) all Federal excise taxes upon or with respect to material, ... ... into the production of such supplies or work, or used or consumed in connection with the production thereof, (ii) all Federal excise taxes ... upon transportation charges, and (iii) all other Federal taxes in ... ct at the date of this contract. If, after the date of this c...... the Federal Government shall impose or increase the rate of any tax ... duty, impost, excise or sale, use, transportation, occupational, gross receipts tax, or any other similar tax or charge, other than a tax upon the income of the contractor, directly applicable to the supplies or work covered hereby or to the materials used in the production of such supplies or work, or to the importation, transportation, production, processing, manufacture, construction, sale or use of such supplies, work or materials, which tax or charge must be borne by the contractor because of a specific contractual obligation or by operation of law, then (1) the prices stated herein will be accordingly increased and  any amount due to the contractor as a result of the increase in such prices will be charged to the Government and entered upon the prices as a separate item, or (2) at its option, the Government in lieu of payment of such increase will issue to the contractor appropriate tax exemption certificates or furnish other proof of exemption with respect to such tax or charge.

(c) If the contractor is relieved from the payment of any Federal tax or charge or portion thereof included in the prices stated herein, by reason o.... decrease or elimination of such tax, the contractor shall promptly submit to the Contracting Officer a statement showing the amount of such decrease ... ... ....imination, and the prices shall be adjusted to reflect such decrease or elimination as agreed to, or in the event of failure to agree, as determined by the Contracting Officer, and the contract shall be modified accordingly.

1                              AA

F.P.                                                          ALT. #1                    9-10-42

## SECTION  Termination.-

(a) This contract may be terminated by the Government in whole or in part whenever

(1) The contracting officer shall, after the commencement of performance, determine that termination is for the best interest of the Government; or

(2) The contractor refuses or fails to make delivery of the articles or materials to be furnished under this contract in accordance with specifications, schedules and drawings within the time specified in this contract, or within any extension of such time, and such refusal or failure is not due to an excusable delay as hereinafter defined; or

(3) The contractor makes any defaults in performance under this contract other than those covered by subparagraph (2) hereof, and fails to proceed to cure such defaults within a period of 10 days after receipt from the contracting officer of a Notice of Default specifying the default.

Termination shall be effected by delivery to the contractor of a Notice of Termination specifying the cause of termination, the extent to which performance of the contract shall be terminated, and the date upon which termination shall become effective which date shall not be earlier than 10 days after the date of receipt of the Notice of Termination.

(b) After receipt of Notice of Termination, contractor shall (1) terminate work on the contract on the date and in the manner specified in the Notice of Termination; (2) submit to the contracting officer within ten days after receipt of Notice of Termination or such further period as may be fixed by the contracting officer a list of all unperformed orders and subcontracts relating to this contract; (3) place no further orders for materials or facilities except as may be necessary for completion of such portions of the contract as may not be terminated or as directed by the contracting officer; (4) cancel and terminate all orders and subcontracts not necessary for the performance of any work required to be performed under the Notice of Termination; (5) assign to the Government all of the right, title and interest of the contractor under such orders or subcontracts as the contracting officer may direct; (6) transfer title and deliver to the Government in the manner and at the times directed by the contracting officer, each of the plans, drawings, materials, fabricated parts, work in process and completed work relating to the performance of this contract, or the contracting officer may direct; (7) complete performance of such part of the contract as shall not have been terminated by the Notice of Termination; and (8) take such action as the contracting officer may direct for the protection and preservation of the property in the possession of the contractor and in which the Government has an interest.

(c) In addition to the remedies otherwise provided the Government may, with respect to contracts terminated for the causes set forth in paragraphs (a)(2) or (a)(3) hereof, purchase in the open market or otherwise obtain, in respect of a character similar to those called for by the contract and of a quality similar to the articles hitherto completed and delivered to and accepted by the Government, shall not exceed the quantity called for under the contract.  If the cost to the Government of articles so procured exceeds the price for such articles under this contract, the contractor shall be liable for such excess.

(d) After termination of this contract in the manner provided in this article, the Government within a reasonable time shall pay to the contractor the following amount:

(1) For articles completed and delivered to and accepted by the Government, a sum equivalent to the corresponding price for such articles computed in accordance with the unit price named in the contract;

(2) For work performed on uncompleted or work in process and materials on hand a sum determined as follows:

(A) Where the contract has been terminated for the cause set forth in paragraph (a)(1) hereof the total of (i) a percentage of the contract price, reduced by the amount of any payments under (1) above, equal to the percentage of completion of such incompleted articles at the time of termination, or in the event of inability between the Government and the contractor to agree as to the percentage of the completion, the cost of work performed under this contract other than work performed on articles completed and delivered and accepted by the Government, plus a sum not less than 1⅓% nor more than 6% of such cost as determined by agreement between the parties or in the case of contracting officer, (ii) the purchase price of unworked and unprocessed materials on hand owned by contractor and purchased for performance of this contract (iii) any reasonable expense incidental to termination under paragraph (b) hereof of orders or subcontracts and (iv) any other reasonable expense incidental to termination of this contract that may be agreed upon between the parties.

(OVER)                                                                    1172-P

(B) Where the contract has been terminated for any of the causes set forth in paragraph (a)(2) or (a)(3) hereof, the cost of plans, drawings, materials, fabricated parts and work in process transferred to the Government in accordance with the directions of the contracting officer.

(3) The reasonable cost of the preservation and protection of property as required under paragraph (b) hereof.

The total sum to be paid the contractor under this paragraph (c) shall not exceed the contract price for such work if completed.

(d) The obligation of the Government to make any of the payments required under paragraph (d) hereof shall be subject to (1) any unsettled claims against the contractor for labor or materials, (2) deductions for the excess cost of articles purchased in accordance with paragraph (e) hereof, (3) any claim which the Government may have against the contractor, (4) deductions for any advance payments, progress payments, unit payments or partial payments made to the contractor or not in connection with this contract, and (5) reasonable deductions by the Government on account of defects in the materials or workmanship of completed or partially accepted work delivered hereunder or other defaults under this contract.

(f) For the purpose of paragraph (d)(2) hereof the cost of work performed shall be determined in accordance with the Explanation of Principles for Determination of Costs under Government Contracts promulgated by the War Department and the Navy Department April, 1942. Such cost shall include as of the date of termination the cost of materials in process and the expenses of the contractor incurred in the placing of orders for materials not worked on or in process but excluding the purchase price of such materials not worked on or in process. The contractor shall make available to the Government at all reasonable times at the office of the contractor all of its books, records, documents, and other evidence bearing on the cost to the contractor of the work in process.

(g) Excusable Delays.—The contractor shall not be charged with any liability for failure or delay in making delivery when such failure or delay (herein called an Excusable Delay) of the contractor in making deliveries is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including but not restricted to (1) acts of God or of the public enemy, (2) acts of the Government of the United States or any state or political subdivision thereof, (3) fires, floods, explosions, earthquakes, or other catastrophes, (4) epidemics, (5) quarantine restrictions, (6) strikes, (7) freight embargoes, (8) unusually severe weather, (9) inability of the contractor to obtain equipment or material when the contracting officer determines that such inability is due to the operation of Governmental priorities, preferences or allocations of equipment or material, or (10) delays of a subcontractor or supplier in furnishing material owing to one or more of the foregoing causes, unless the contracting officer shall determine that the materials or supplies to be furnished under the subcontract are procurable from other sources, and shall have ordered the contractor to procure such materials or supplies from other sources. If the contractor shall fail to notify the contracting officer in writing of the cause of any such excusable failure or delay within ten (10) days from the date it appears that such cause will delay deliveries under this contract or within such longer period as the contracting officer or his duly authorized representative, prior to the date of final settlement of the contract, specify for the giving of such notice, the contractor shall lose all right to an extension of time for delivery by reason of such cause. Promptly on receipt of such notice, the contracting officer shall ascertain the facts and extent of failure or delay, and if the contracting officer shall find that the failure or delay was occasioned by any one or more of the said causes, he shall revise the delivery schedule accordingly. The finding of fact of the contracting officer shall be final and conclusive, subject only to appeal within thirty (30) days by the contractor to the Secretary of the Navy or his duly authorized representative, whose decision on such appeal, as to the facts of the failure or delay, shall be final and conclusive.

Case 4:07-cv-02824-SBA    Document 34-26    Filed 09/21/2007    Page 15 of 52

Case 4:07-cv-02824-SBA    Document 34-26    Filed 09/21/2007    Page 16 of 52

RENEGOTIATION PURSUANT TO SECTION 403 OF THE 6TH SUPPLEMENTAL NATIONAL DEFENSE APPROPRIA-
TION ACT, 1942, AS AMENDED.

(a) Upon the written request of the Secretary of the Navy at such period or
periods when in the judgment of the Secretary of the Navy the profits accruing to the
contractor under this contract can be determined with reasonable certainty, the contract
price shall be renegotiated to eliminate therefrom such amount as is found as a result of
such renegotiation to represent excessive profits.

(b) Any profits found as a result of such renegotiation to be excessive and not
eliminated through reductions in the contract price hereunder or otherwise, shall, as the
Secretary of the Navy may direct, (1) be retained by the Government from amounts otherwise
due the contractor, or (2) be repaid by the contractor to the Government, if such excessive
profits have been paid to the contractor.

(c) The contractor shall require the insertion of the following provisions in
each subcontract for an amount in excess of $100,000 directly entered into by the contract-
or under this contract:

(1) Upon the written request of the Secretary of the Navy at such period or
periods when in the judgment of the Secretary, the profits accruing under this con-
tract can be determined with reasonable certainty, the contract price shall be re-
negotiated by the Secretary of the Navy and _____
                                                      (Subcontractor)
to eliminate therefrom such amount as is found as a result of such renegotiation to
represent excessive profits.

(2) Any profits found as a result of such renegotiation to be excessive and
not eliminated through reductions in the contract price hereunder or otherwise,
shall, as the Secretary of the Navy may direct, (i) be retained by _____
_____ for the Government, or (ii) be repaid by _____
        (Contractor)
_____ _____ to the Government, if such excessive
        (Subcontractor)
profits have been paid to _____.
                                        (Subcontractor)

(3) _____ is hereby relieved from any lia-
                    (Contractor)
bility to _____ on account of any amount
                    (Subcontractor)
retained or repaid pursuant to paragraph (2) above.

(4) _____ shall, upon the direction of the
              (Subcontractor)
Secretary of the Navy, require the insertion in any subcontract made hereunder,
of contract provisions conforming substantially to the provisions of this Section.

(5) Any renegotiation under this Section shall be conducted pursuant to the pro-
visions of Section 403 of the Sixth Supplemental National Defense Appropriation Act,
1942, as amended.

(d) Any profits under any subcontract hereunder which are found as a result of
renegotiation to be excessive and which the contractor is directed by the Secretary of the
Navy to withhold from payments otherwise due the subcontractor and actually unpaid at the
time of receipt of such direction, shall, as the Secretary of the Navy may direct, (1) be
retained by the Government from amounts otherwise due the contractor, or (2) be repaid by
the contractor to the Government.

(e) Any renegotiation under this Section shall be conducted pursuant to the pro-
visions of Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942,
as amended.

(f) For the purpose of this Section,

(1) the term "Secretary of the Navy" shall be deemed to include any authorized
representative of the Secretary of the Navy, and

(2) the term "subcontract" means any purchase order or agreement to perform
all or any part of the work or to make or furnish any article, required for the
performance of another contract or subcontract, unless exempted from the provi-
sions of Section 403, as amended, under subsection (i) thereof. The term "article",
as used in this definition, includes any material, part, assembly, machinery, equip-
ment, or other personal property.

(g) The contractor agrees that it will keep records and books of account showing
the cost of performing this contract, in accordance with sound accounting practice. The
contracting officer and his authorized representatives shall at all reasonable times have
access to all records, books of account and original evidences of cost of the contractor per-
taining to this contract. The contractor shall preserve all such records, books of account
and original evidences of cost for a period of three years after the completion or other ter-
mination of this contract and, if it is determined to renegotiate the price herein, for such
additional period as may be necessary.

1                                                        D

Case 4:07-cv-02824 SBA    Document 34-26    Filed 09/21/2007    Page 17 of 52

PATENTS.—

The contractor shall hold and save the Government, its officers, agents, servants, and employees, harmless from patent liability of any nature or kind, including costs and expenses, for or on account of any patented or unpatented invention made or used in the performance of this contract, including the use or disposal thereof by or on behalf of the Government; Provided, That the foregoing shall not apply to inventions covered by applications for United States Letters Patent which, on the date of execution of this contract, are being maintained in secrecy under the provisions of Title 35, U. S. Code (1940 ed.), Section 42, as amended.

1                                        E

Case 4:07-cv-02824-SBA    Document 34-26    Filed 09/21/2007    Page 18 of 52

# HABIRSHAW
## CABLE AND WIRE DIVISION
### PHELPS DODGE COPPER PRODUCTS CORPORATION

Date  August 26, 1942

Navy Department, Bureau of Supplies & Accounts

Our Number

Customer's No.    Contract:  NXs-11574, (9596)

Ship to

Telephone Date.

C.O.B. Freight Allowed to

Order for the following material is entered per Navy Department Contract
of intent dated August 15, 1942 (received in New York August 24, 1942) under
which copy of which is attached.

| Item | Quantity |
|---|---|
| 1. Cable, Type SHDA-530 | 30,000 ft. |
| 2. Cable, Type MDSA-19(6) | 40,000 ft. |
| 3. Cable, Type MDSA-19(14) | 150,000 ft. |
| 4. Cable, Type MDGA-19(23) | 50,000 ft. |
| 5. Cable, Type MDGA-19(40) | 100,000 ft. |

Material is for immediate production.

Routing is as follows:  Wb-1-d(3) (U.S.N. No. 33)

Delivery is to be made as follows:

To the Supply Officer, Navy Yard, Mare Island

20,000 ft. of Item 1

10,000 ft. of Item 1

20,000 ft. of Item 2

99,000 ft. of Item 3

125,000 ft. of Item 4

100,000 ft. of Item 5

To the Supply Officer, Navy Yard, Puget Sound:

10,000 ft. of Item 1

20,000 ft. of Item 2

60,000 ft. of Item 3

45,000 ft. of Item 4

30,000 ft. of Item 5

25,000 ft. of Item 2

To the Supply Officer, Navy Yard, New York:

20,000 ft. of Item 3

25,000 ft. of Item 4

21,000 ft. of Item 5

(continued)

SIGNATURE

# HABIRSHAW
## CABLE AND WIRE DIVISION
# PHELPS DODGE COPPER PRODUCTS CORPORATION

Date    August 26, 1942            Our Number
                                   Customer's No.

Sold Navy Department, Bureau of Supplies & Accounts
to

Ship to
Via
Shipping Date                                    Promise

F.O.B. Factory Freight Allowed to        Page #2.

We are instructed to give preference first to 25,000 feet NDSA-19(23)
and then to 25,000 feet NDSA-19(4D). Shipments of remaining material to
follow and the order for these items will be submitted as promptly as received.

The Navy are particularly anxious to make shipments of 19(23) by
September 1st.

In view of the rating U.S.M. 2.33 copper is automatically allocated for
this order.

Original of H.P.A. Preference Rating Certificate Serial NXSXX, XXXXXXX
this material is attached indicating Preference Rating AA-1-f, U.S.M. Class
2.33.

We have retained photostatic copies of the Certificate in our file.

NAVY DEPARTMENT

BUREAU OF SUPPLIES AND ACCOUNTS          NXs-11574(SZR6)

WASHINGTON, D.C.

15 August 1942

Phelps-Dodge Copper Products
Habirshaw Wire & Cable Division
40 Wall Street
New York, New York

Sirs:

This is to confirm the advice given you that it is anticipated that
the Navy Department will enter into a contract with you for the manufacture
by you of the following:

| Item | Cable, Type | | | Quantity |
|------|-------------|---|---|----------|
| 1. | " | " | SICGA-500 | 50,000 ft. |
| 2. | " | " | MDGA-336 | 40,000 ft. |
| 3. | " | " | MDGA-19(14) | 250,000 ft. |
| 4. | " | " | MDGA-19(23) | 150,000 ft. |
| 5. | " | " | MDGA-19(40) | 100,000 ft. |

The Secretary of the Navy has determined that, in the interest of the
successful prosecution of the war, it is necessary that the manufacture of
the foregoing should not be delayed pending consummation of the aforementioned
contract. Accordingly, you are hereby authorized to purchase such materials as
are necessary for the manufacture of the foregoing items and to proceed with
the manufacture thereof in anticipation of the contract, subject to the
following stipulations and conditions:

(a) You may assume that upon acceptance of this letter of intent a
preference rating will be assigned to this project, as follows:

AA-1-d(3) (U.S.N. 2.53)

(b) You will submit to the Purchasing Officer, or his duly authorized
representative, a statement or statements of any materials which you propose to
purchase and of any work you propose to have performed by subcontractors, with
estimated maximum prices, and secure his written approval before making commit-
ments therefor. In lieu of complete itemization of the materials to be pur-
chased, you may summarize or group materials of the same category under general
headings, with the estimated maximum prices of the groups, or you may submit
copies of the proposed purchase orders.

NCa-11574(SFR6).

(c) In the event that the contract is not entered into within a period of sixty (60) days from the date hereof or any extension hereof, or in the event that this Letter of Intent shall be cancelled by you, the Government will, upon demand made within sixty (60) days after the expiration of such period or such termination, reimburse you for the expenditures made by you in purchasing materials and in performing such other acts as are necessary for the purposes of the articles referred to hereto, and assume the commitments made by you for such purposes, provided that expenditures and commitments shall not be reimbursed or assumed unless they have been approved by subcontractors shall not be reimbursed or assumed unless they have been approved in writing by the Purchasing Officer, or its duly authorized representative, or do not exceed the estimated maximum amounts contained in statements thereof which have been so approved.

(d) Upon reimbursement for such expenditures and assumption of such commitments by the Government, all rights acquired by you as a result of such expenditures or commitments, including title to all materials purchased, shall vest in the Government.

(e) All contract clauses required by law to be incorporated in contracts for supplies of the kind herein described are by this reference incorporated in this Letter of Intent. You further agree that in purchasing materials and in other action taken by you pursuant to this Letter of Intent you will comply with all applicable laws. Your attention is invited to the clauses relating to disclosure of information, employment of aliens, and reports of espionage now inclosed if classified Navy contracts.

(f) insofar for those supplies will be made from funds now appropriated, with such made available, for use by the Navy Department.

If the foregoing is acceptable to you, please so indicate by signing the three copies of this Letter and returning them to the Purchasing Officer immediately. This Letter will thereupon constitute an agreement between you and the Government until the execution of the aforementioned proposed contract, or the expiration or termination hereof, whereupon this Letter of Intent will become null and void.

Respectfully,

GERARD C SMITH
Purchasing Officer
Bureau of Supplies and Accounts

APPROVED:

R. J. CARTER
Acting Chief of Bureau
W. B. YOUNG
Rear Admiral, SC, U.S. Navy
Paymaster General of the Navy
1942

ACCEPTED:

PHELPS-DODGE COPPER PRODUCTS
Habirshaw Wire & Cable Division
By

(Title)

Enc. (1)

15 August 1942

NXs-11574(S7N6)

## ENCLOSURE (A)

(1) The material covered by this Letter of Intent is ultimately chargeable to the appropriation "17X0605, Increase and Replacement of Naval Vessels, Construction and Machinery."

(2) Delivery is to be made as follows:

To the Supply Officer, Navy Yard, Norfolk:
20,000 ft. of Item 1
17,000 ft. of Item 2
50,000 ft. of Item 3
125,000 ft. of Item 4
100,000 ft. of Item 5

To the Supply Officer, Navy Yard, Puget Sound:
10,000 ft. of Item 1
15,000 ft. of Item 2
50,000 ft. of Item 5

To the Supply Officer, Navy Yard, New York:
8,000 ft. of Item 2
50,000 ft. of Item 3
25,000 ft. of Item 4

(3) Paragraph (c) of this Letter of Intent sets the expiration date at sixty (60) days from the date hereof. Inasmuch as extensions of Letters of Intent are made as of the first day of the month, the expiration date of this Letter of Intent will be the first day of the month next following the expiration of the sixty (60) day period.

NAVY DEPARTMENT

BUREAU OF SUPPLIES AND ACCOUNTS

WASHINGTON, D. C.

22 August 1942

NXs-1157l. (SEP)

In reply address the Chief of the Bureau of Supplies and Accounts, and refer to No. 24.

From: Bureau of Supplies and Accounts
To: Copper Products
    American Brass & Metals Division:
    40 Rector Street, New York, N.Y.
Subject: Letter of Intent NXs-1157l - Cable - USN 2.33

Enclosure:    Preference Rating Certificate K-753134,
              original of

S i r :    Preference Rating Certificate    K-753134,    is enclosed herewith to
substantiate the A&1.    preference rating assigned the subject contract.

        This rating may be extended by a Class I manufacturer, as defined in
Priorities Regulation No. 3, as amended, if a PD-25A application has been filed,
until the application has been approved and returned by the War Production Board.
A manufacturer, other than Class I, who has not filed application under the Pro-
duction Requirements Plan, may extend the rating by a certified purchase order.
To either case the certification on the purchase order should be that shown below
as specified in Priorities Regulation No. 3, as amended.

        "The undersigned purchaser hereby represents to the seller and to
the War Production Board that he is entitled to apply or extend the
preference rating indicated opposite the items shown on this purchase
order, and that such application or extension is in accordance with
Priorities Regulation No. 3, as amended, with the terms of which the
undersigned is familiar.

_____        _____
(Name of purchaser)                    (Address)

By _____        _____
(Signature and title of                (Date)
duly authorized official)

        Additional information concerning Rating, Allocation Symbol, and Con-
tract Number should be added to certification on purchase orders and copies
forwarded to your Naval Inspector.

                                        Respectfully,

                                        W B YOUNG
                                        Rear Admiral SC US Navy
                                        Paymaster General of the Navy
                                        By direction

LCES-P

Case 4:07-cv-02824-SBA    Document 34-26    Filed 09/21/2007    Page 24 of 52

(This Form May Not be Reproduced)
War Production Board

**PREFERENCE RATING CERTIFICATE**

Serial No. M 753134

ORIGINAL

1. Issued to ...... Phelps-Dodge Copper Products Corporation, Habirshaw Wire & Cable Division

2. Address ...... New York, New York

3. Government number of Mailing Government Agency which placed contract ...... Navy Dept., Bureau of Supplies and Accounts

4. Related contract number of purchasing Government Agency ...... U.S. Navy, Bureau of Supplies and Accounts, dated 8/15/42

Government Agency which placed contract ...... Navy Dept., (Bureau of Ships) Washington, D.C.

| Item No. | Items Covered by this Certificate | Quantity | Unit | Preference Rating Assigned to this Certificate | Delivery Date |
|---|---|---|---|---|---|
| | | 475,000 ft. | $3,185,370.00 | Cable | |

INSPECTION REQUIRED

The Inspector of Naval Material
90 Church Street
New York, New York

ORIGINAL TO BE ISSUED TO AND RETAINED BY CONTRACTOR

INSTRUCTIONS FOR EXTENSION OF PREFERENCE RATING

**CERTIFICATION**

The undersigned represents to the Director of Industry Operations that Preference Rating .................. (AME Code No.) .................. is and is hereby assigned pursuant to Preference Regulation No. 5, WITH which I hereby I have complied, Government Agency (No) ...................... and in accordance with the provisions thereof to the purchase order or Contract No. .......................... placed with Prime Contractor(s).

SHIPPING DATE

SHIPS VIA    SEE ORDER

F.O.B. FACTORY — FRT. ALLOWED TO DEST.
REVISED REG. CLAUSE EFFECTIVE
JULY 24th APPLIES

WATCO    SEE ORDER

SALESMAN    *Wade Lindsay*

REFERENCE CODE NO. 24

SPECIFICATION'S

INSPECTED BY    U.S.NAVY

ROYALTY

PREFERENCE RATING    AA1-D

SERIAL NO.

EXTRA CHARGE FOR CUTTING

CERTIFICATE & USE FORM ATTACHED

3RD USE USN X 33

THINK – 1/2 of 14 13 say
28 15 prox. net end prox. month.

CONCESSION    NONE

(1) CLAUSE ON RUBBER EXCISE TAX APPLIES

(2) CLAUSE ON ANY ADDITIONAL TAXES APPLIES

(3) 30 DAY PRICE CLAUSE APPLIES

| ROUTINE | INITIAL | DATE |
|---|---|---|
| ENTERED | | |
| CHECKED | | |
| POSTED | | |
| RELEASED | | |
| CREDIT APPROVED | | |
| USE. OU | | |

DUPLICATE

1269-P



NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS
WASHINGTON, D. C.

IN REPLY ADDRESS NOT THE SIGNER
OF THIS ORDER, BUT THE BUREAU
OF SUPPLIES AND ACCOUNTS AND
REFER TO SPN-7

# CHANGE ORDER

Contract NXs- 11574
5 December 1942

VIA:
THE INSPECTOR OF NAVAL MATERIAL
30 Church Street – 10th Floor
New York New York

TO:
Phelps Dodge Copper Products Corp
40 Wall Street
New York City

You are authorized to proceed with the following changes(s) and/or modification(s), subject to the conditions given below:

Under date of 14 November 1942 the Inspector was requested by the Bureau of Ships to release 3,605 feet type MDGA-19(23) cable under Item 4 of the subject contract on manufacturer's certified test reports in lieu of Government laboratory tests.

The above action is hereby confirmed.

This action is made necessary by the present war emergency.

It is requested that you indicate your acceptance of the above by signing in the space provided on the attached copies of this order and returning them to this office.

Accepted for the contractor

By_____
     (Authorized Signature)
Title          Date

R P PAGE III
Purchasing Officer
Bureau of Supplies and Accounts

NXs-11574                    1st Endorsement                    Date Dec. 9, 1942
(D-1)                                                                  fvc

From:     Inspector of Naval Material, New York
To:       Phelps Dodge Copper Products Corp.
          40 Wall Street,  New York
          1. Forwarded

F. SAPHIR
Lieutenant, USNR
For the INM

In reply address not the signer of this letter, but the Bureau of Supplies and Accounts and Refer to No.

NAVY DEPARTMENT

BUREAU OF SUPPLIES AND ACCOUNTS                    NXs-11574 (SPM7)

WASHINGTON, D. C.

5 December 1942

Phelps Dodge Copper Products
40 Wall St., New York City

VIA:        THE INSPECTOR OF NAVAL MATERIAL
            30 Church St, 10th Floor, New York, N.Y.

Subject:    Contract NXs-11574 - Cable.

Enclosure:  Change Order Sheet dated 5 December 1942

S I R S:

The enclosed Change Order is your authority  to
proceed with the Change(s) and/or modification(s) enumerated therein.

This new Change Order form has been adopted as a means
of making all authorizations for changes and modifications more uniform
and in order to reduce, to the minimum, the amount of correspondence in
connection therewith.  It is also believed that, with the adoption of
this form, delays heretofore experienced in receiving authorizations for
changes and modifications will be reduced to the minimum.

While it will still be necessary in some cases to
authorize changes in letter form where the nature of the changes is
such that the Change Order form can not be effectively used, it is
expected that the Change Order form will be used in most cases, and
both methods will bear the same weight of authority.

Hereafter Change Orders issued against this contract
will not be accompanied by letters of transmittal.

Very truly yours,

R P PAGE III
Purchasing Officer
Bureau of Supplies and Accounts

FOR VICTORY
BUY
UNITED STATES
WAR
BONDS
AND
STAMPS

1302-P-

# HABIRSHAW
## CABLE AND WIRE DIVISION
### PHELPS DODGE COPPER PRODUCTS CORPORATION

Date     November 9, 1942          Our Number

Bill    Navy Department            Customer's No.  NXss-11574(SPN6)
        Bureau of Supplies and Accounts
Ship to

Shipping Date                      Promise
Via
F.O.B. Factory Freight Allowed to

_____ CHANGE ORDER _____

The above contract covers 440,000 feet MDGA cable and 30,000 feet SDGA cable.

As an addition to this contract enter order for the following items:

    43    1.  Type MDGA-19(6)      100,000 feet      AD 626
    45    2.  Type MDGA-19(14)      60,000 feet      AD 628
    45    3.  Type MDGA-19(23)      60,000 feet      AD 629

Delivery of the above items to be made as follows:

            25,000 feet of Item 1
            15,000 feet of Item 2
            15,000 feet of Item 3

to the Supply Officer at each of the following four Navy Yards:

            New York
            Norfolk
            Mare Island
            Puget Sound

Deliveries to follow delivery of similar material on the original contract.

Preference Rating – AA-1

End Use Classification – USN 2.33.

Copy of Navy Departments letter dated October 30, 1942, covering this additional
award is attached.

CUSTOMER'S NO. _____          SIGNATURE _____

    EFG:RB
    Att.

SHIPPING DATE

ROUTE VIA     SEE ORDER

F.O.B. FACTORY FRT. ALLOWED TO DEST.
REVISED REEL CLAUSE EFFECTIVE
JUNE 16th APPLIES

MARKS     SEE ORDER

SALESMAN     Wash Territory

REFERENCE CODE NO.     24

SPECIFICATIONS     see order

INSPECTED BY

ROYALTY

PREFERENCE RATING     AA-1

PREFERENCE RATING ORDER

SERIAL NO.

EXTRA CHARGE FOR CUTTING

CERTIFICATE & USE FORM ATTACHED

END USE     USNY.33

TERMS - 1/2 of 1% 10 days ~~~~~~~~~.
          2% 15 prox. net end prox. month.

(COMMISSION
(
(          NONE
(

(1) CLAUSE ON RUBBER EXCISE TAX APPLIES

(2) CLAUSE ON ANY ADDITIONAL TAXES
    APPLIES

(3) 30 DAY PRICE CLAUSE APPLIES

| ROUTINE | INITIALED | DATE |
|---|---|---|
| EDITED | JV | 11/9 |
| CHECKED | | |
| POSTED | | |
| RELEASED | EM | 11/9 |
| CREDIT APPROVED | EM | 4/11 |
| LBS. CU | | 12 & |

Refer to Serial NO 258
for copper contents

# PHELPS DODGE COPPER PRODUCTS CORPORATION

40 WALL STREET, NEW YORK, N. Y.

November 9, 1942

Navy Department
Bureau of Supplies and Accounts
Washington, D. C.

Subject: NXss-11574(SPS6)

Gentlemen:

References: Navy Department
Bureau of Supplies and Accounts
Letter dated October 30, 1942.

We are pleased to acknowledge your letter dated
October 30, 1942 amending Navy Departments letter of Intent
dated 15 August 1942, to provide for the following additional
cable:

1. Type MBGA-19(6)          100,000 feet
2. Type MDGA-19(14)          60,000 feet
3. Type MDGA-19(23)          60,000 feet

In accordance with your instructions, we return
herewith three properly signed copies of your letter of October
30, 1942.

Very truly yours,

HABIRSHAW CABLE AND WIRE DIVISION
PHELPS DODGE COPPER PRODUCTS CORPORATION

By

E. F. Gordon

EFG:RB
Att.

C O P Y

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS
WASHINGTON, D.C.

NXss-11574(SPN6)

30 October 1942

Phelps Dodge Copper Products
Habirshaw Wire and Cable Division
40 Wall Street
New York, N. Y.

SIRS:

By the Navy Department's letter of Intent dated 15 August 1942, you were advised of an anticipated order for 30,000 feet of Type SDGA cable, and 440,000 feet of Type MDGA cable.

It is now desired to amend that Letter of Intent to provide for additional cable, as follows:

|   |   |   |
|---|---|---|
| 1. | Type MDGA-19(6) | 100,000 feet |
| 2. | Type MDGA-19(14) | 60,000 feet |
| 3. | Type MDGA-19(23) | 60,000 feet |

Delivery is to be made of 25,000 feet of Item 1, 15,000 feet of Item 2, and 15,000 feet of Item 3 to the Supply Officers at each of the following four Navy Yards: New York, Norfolk, Mare Island, and Puget Sound. Delivery is to follow delivery of the quantity covered by the original Letter of Intent, at the same rate.

A preference rating of AA-1, End Use classification USN 2.33, will be assigned to this cable.

All other terms and conditions of the original Letter of Intent are to remain in full force and effect.

If the foregoing is acceptable to you, please so indicate by signing the enclosed three copies of this letter and return them to the Purchasing Officer immediately, thereby constituting this letter an amendment to Letter of Intent NXss-11574 of 15 August 1942.

Respectfully,

C. G. Jaquette
Purchasing Officer
Bureau of Supplies and Accounts

**HABIRSHAW**
CABLE AND WIRE DIVISION

## PHELPS DODGE COPPER PRODUCTS CORPORATION

Date    December 30, 1942                Our Number

Bill          Navy Department                Customer's No. NXss-11574(SPN6)
Ship to          Bureau of Supplies & Accounts
Shipping Date                                    Promise
Via
F. O. B. Factory Freight Allowed to

---

### CHANGE ORDER

The above contract originally covered 440,000 feet of MDGA cable and
30,000 feet of SDGA cable.

Contract was subsequently revised to cover an additional 220,000 feet
of MDGA cable.

As a further addition to this contract, enter order for the following item:

50,000 feet Type SDGA 1000 cable.

Cable is to be delivered as follows:

15,000 feet - Supply Officer, Navy Yard, New York

15,000 feet - Supply Officer, Navy Yard, Puget Sound

10,000 feet - Supply Officer, Navy Yard, Norfolk

10,000 feet - Supply Officer, Navy Yard, Mare Island

Preference Rating - AA-1

End Use Classification USN 2.33.

Photostat of Navy Departments letter dated November 30, 1942, covering this
additional award is attached.

Also attached is copy of our acknowledgment of this additional award.

---

Customer's No.                          Signature
    KFG:RB
    Att.

SHIPPING DATE

ROUTE VIA        SEE ORDER

F.O.B. ~~FACTORY~~ ~~FRT.~~ ~~ALLOWED~~ ~~TO~~ DEST.
REVISED REEL CLAUSE EFFECTIVE
JUNE 16th APPLIES

MARKS        SEE ORDER

SALESMAN        *Wash territory*

REFERENCE CODE NO. *24*

SPECIFICATIONS        *see order*

INSPECTED BY        *NAVY*

ROYALTY

PREFERENCE RATING        *AA1*

PREFERENCE RATING ORDER

SERIAL NO.

EXTRA CHARGE FOR CUTTING

CERTIFICATE & USE FORM ATTACHED

END USE        *USN X-33*

TERMS ~ 1/2 of 1% 10 days net 30 D.O.I.
       2% 15 prox; net end prox; month.

(COMMISSION
(
(        *NONE*
(

(1) CLAUSE ON RUBBER EXCISE TAX APPLIES

(2) CLAUSE ON ANY ADDITIONAL TAXES
    APPLIES

(3) 30 DAY PRICE CLAUSE APPLIES

| ROUTINE | INITIALED | DATE |
|---|---|---|
| EDITED | *JW* | *1/7/43* |
| CHECKED | | |
| POSTED | | ✓ |
| RELEASED | *GM* | *1/7* |
| CREDIT APPROVED | *GM* | *1/9* |
| LBS. CU | *166500"* | *12¢* |

*Feb*

COPY

December 28, 1942

Navy Department
Bureau of Supplies & Accounts
Washington, D.C.

Gentlemen:

Re: Contract NXss-11574 (SPN-6)

We return herewith three executed copies of

Letter of Intent covering extension to Contract

NXss-11574.

Very truly yours,

RTB:MB
Att.

ORIGINAL

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS
WASHINGTON, D. C.

NXss-11574 (BPN-6)

30 November 1942

Phelps Dodge Copper Products Corp.
Habirshaw Wire & Cable Division
40 Wall Street
New York, N. Y.

S i r s :

By the Navy Department's Letter of Intent dated
15 August 1942 you were advised of an anticipated order for
30,000 feet of Type SDGA cable and 440,000 feet of Type MDGA cable.
On 30 October 1942 this Letter of Intent was amended to provide
for 220,000 additional feet of MDGA-19 cable.

It is now desired to increase the quantities of
cable covered by this Letter of Intent further to include
50,000 feet of Type SDGA-1000 cable.

This cable is to be delivered as follows: 15,000
feet each to the Supply Officers in the Navy Yards, New York and
Puget Sound; 10,000 feet each to the Supply Officers at the
Navy Yards, Norfolk and Mare Island.

A preference rating of AA-1 will be extended to this
cable.

All other terms and conditions of the original Letter
of Intent are to remain in full force and effect.

If the foregoing is acceptable to you, please so
indicate by signing the enclosed three copies of this letter and return
them to the Purchasing Officer immediately, thereby constituting this
letter a amendment to Letter of Intent NXss-11574 of 15 August
1942.

ACCEPTED: Dec. 28, , 1942

PHELPS DODGE COPPER PRODUCTS CORP.
HABIRSHAW WIRE & CABLE DIVISION

By _H. D. Brinton_
     H. T. Brinton
     Vice President
        (Title)

Respectfully

C. G. Jaquette

C. G. JAQUETTE
Purchasing Officer
Bureau of Supplies and Accounts

I. N. M. No. 3

CORRESPONDENCE (IN DUPLICATE) SHOULD
BE ADDRESSED TO THE INSPECTOR OF
NAVAL MATERIAL, NOT TO SIGNER OF THIS
LETTER, AND REFER TO NO.

Telephone RRector 2-6460

NXss-11574
(N1-2-El-2)

## NAVY DEPARTMENT
### OFFICE OF INSPECTOR OF NAVAL MATERIAL

ED/pmg

30 CHURCH ST., NEW YORK, N. Y.

### January 21, 1943

Subject:    Approval of Expenditures under
Letter of Intent dated 8-15-42
and amended 10-30-42 for Contract
NXss-11574(SPN6)

Reference:
(a)        Phelps Dodge Copper Products Corp.
ltr. HTB:MB dated 1-13-43 to INM NY
(b)        Photostatic copy of BuS&A ltr. dated
11-30-42 amending reference (c)
(c)        Letter of Intent NXss-11574 dated
8-15-42

Gentlemen:

Reference (a) requests this office
to approve expenditures to cover the purchase of
materials in the sum of $51,200.00 necessary to
produce 50,000 feet of cable as required in the
addendum, reference (b).

In compliance with paragraph (b) of
reference (c), you may use this letter as your
authority to proceed at once with the expenditure
of $51,200.00 for the materials required for the
fabrication of the 50,000 feet of cable.

Very truly yours,

H. L. BRINSER
Rear Admiral, USN



Phelps Dodge Copper Products Corp.
40 Wall Street
New York, N. Y.
Attention: Mr. H. T. Brinton

COPY

January 13, 1943

Navy Department
Office of Inspector of Naval Material
30 Church Street
New York, New York

Subject: NXss-11574(SPN-6)

Gentlemen:

For your convenience we attach copy of Navy Department letter dated November 30, 1942 extending Letter of Intent dated August 15, 1942 to include 50,000 feet of Type SDGA-1000 cable.

Copy of the Letter of Intent dated August 15, 1942 was sent with our letter of December 10, 1942.

In accordance with paragraph (b) of the Letter of Intent written approval is requested to cover the purchase of the following materials necessary to produce the additional cable called for in Navy Department letter of November 30, 1942.

| Material | Approximate Quantity | Estimated Maximum Price |
|---|---|---|
| Copper | 183,000 lbs. | $30,200.00 |
| Varnished Cambric | 9,900 " | 5,600.00 |
| Asbestos | 3,800 " | 2,350.00 |
| Sheath | 21,000 " | 5,550.00 |
| Wire | 5,400 " | 2,900.00 |
| Tapes | 4,000 " | 2,100.00 |
| Saturants | 10,000 " | 2,500.00 |
| | | $51,200.00 |

We do not plan to have any work performed by sub-contractors.

Very truly yours,

HTB:MB
Enc.

# ORIGINAL

NAVY DEPARTMENT
Bureau of Supplies and Accounts
WASHINGTON, D. C.

NXss-11574 (SPN-6)

7 January 1943

Phelps Dodge Copper Products Corp.
Habirshaw Wire & Cable Division
40 Wall Street
New York, New York

S i r s :

Advice was given in Letter of Intent NXss-11574 of 15 August 1942, as amended by letters of 30 October 1942 and 30 November 1942, that it was anticipated that the Navy Department would enter into a contract with you for MDGA and SDGA cable.

Letter of Intent NXss-11574 is further amended to include 30,000 feet of electric cable, type HIGH-19(14). Specifications for this cable are attached hereto as Enclosure A. The contractor shall use his best efforts to deliver this cable prior to 1 February 1943 to the following destinations:

          10,000 ft. to Norfolk Navy Yard
          10,000 ft. to Mare Island Navy Yard
           5,000 ft. to New York Navy Yard
           5,000 ft. to Puget Sound Navy Yard

The cost of this cable is chargeable to the appropriation 17X0636, Naval Stock Fund, and is ultimately chargeable to 17X0603, Increase and Replacement of Naval Vessels (CAS).

Preference rating AA-1 is assigned this material.

If the foregoing is acceptable to you, please so indicate by signing the enclosed three copies of this letter and return them to the Purchasing Officer immediately, thereby constituting this letter an amendment to Letter of Intent NXss-11574 of 15 August 1942.

Respectfully,

C. G. Jaquette

C. G. JAQUETTE
Purchasing Officer
Bureau of Supplies and Accounts

PHELPS DODGE COPPER PRODUCTS CORP.
HABIRSHAW WIRE & CABLE DIV.

ACCEPTED:_____1943

By_____

_____
          (Title)

# SPECIFICATIONS

## CABLE, MULTI-CONDUCTOR, NAVY DEGAUSSING, TYPE MDGL

**GENERAL:**   Except where otherwise indicated herein, the cable shall be in accordance with BUREAU OF SHIPS AD INTERIM SPECIFICATION 15C1 (INT) for CABLES, ELECTRIC, INSULATED, dated July 1, 1942, copies of which may be obtained upon application to the Bureau of Supplies and Accounts. Wherever paragraph references are noted herein, they refer particularly to the above specification. The cable shall be suitable for continuous operation at a maximum copper temperature of ninety degrees Centigrade and it shall be in accordance with Table A herein and the following:

**FIRST:**   Each conductor before insulating shall conform to the standard copper conductor size (Table IV) as designated in Table A.

**SECOND:**   A wall of felted asbestos (C-11), compressed and impregnated with a neutral insulating cement to form a continuous and homogeneous layer. A suitable thin separator (C-23) at manufacturer's option.

**THIRD:**   A wall of varnished cambric insulation (C-7) applied over the wall of felted asbestos.

**FOURTH:**   A fine closely woven braid of glass fibers (C-22), rayon or cellulose acetate (C-15). The braid shall be color coded (D-6) and it shall be coated with a light synthetic resinous impregnant. The diameter over the braid shall be not more than 0.015 inch greater than the diameter over the varnished cambric.

**FIFTH:**   Nineteen insulated conductors shall be cabled concentrically with a lay not greater than 24 times the pitch diameter of the layer. Impregnated asbestos fillers (C-10) shall be used to eliminate voids and to obtain firmness and circularity of cross-section.

**SIXTH:**   A binding tape or other means, at the option of the manufacturer, may be used to bind the conductors and fillers. The thickness of the material used shall be such as to permit strict adherence of the finished cable to the specified over-all dimensions.

**SEVENTH:**   A soft lead sheath (C-19) shall be applied over the core. Manufacturer's identification (D-5) shall be included under the sheath.

**EIGHTH:**   Over the lead sheath shall be applied an outer protective covering of duck tape, or a saturated tape and braid. Duck tape shall conform to Section 4 of IPCEA Specifications for Metallic Covering for Insulated Electric Cables dated January 1940. Braid shall conform to requirements for outer cotton braids (C-15).

## SPECIFICATIONS

TESTS (Inspection): The finished cable shall satisfactorily meet the cold bend test (E-40c), the flame resistant test (E-40d), the drip and exudation test (E-40e), the dielectric strength test (E-40f) and the insulation resistance test (E-40g).

SHIPPING LENGTHS: The cable shall be delivered on suitable reels each containing only one continuous length. The length per reel shall be 1000 feet nominal, 1100 feet maximum and 400 feet minimum. Not more than twenty (20) percent of the total footage of each type and size of cable on contract may be shipped in short and/or remnant lengths. Short lengths are defined as any lengths between the minimum and ninety (90) percent of the nominal lengths specified. Remnant lengths are defined, as any lengths less than the minimum specified. Remnant lengths, within the above limitations, will be accepted in accordance with the appropriate reductions in price as shown in Table XLV.

### TABLE A

| Cable Designation | Standard Conductor Number | Dia. over Felted Asb. | Dia. over V.C | Dia. over Binder | Dia. over Sheath | Dia. over Covering |
|---|---|---|---|---|---|---|
| Type | Table IV | Inch | Inch | Inches | Inches | Inches |
| MDGL-19(14) | 14(7) | 0.166 | 0.226 | (1) | (1) | 1.520 |

NOTE: (1):    The diameter over the binder tape or other material over the cabled conductors and diameter over the lead sheath shall be such as to permit strict adherence of the finished cable to the specified overall dimensions.

HABIRSHAW CABLE AND WIRE DIVISION
PHELPS DODGE COPPER PRODUCTS CORPORATION
40 WALL STREET. NEW YORK. N. Y.

January 11, 1943

Navy Department
Bureau of Supplies & Accounts
Washington, D. C.

Subject: Contract NXss-11574(SPN6)

Gentlemen:

We return herewith three properly signed and
executed copies of Letter of Intent dated January 7, 1943,
covering an extension to Contract NXss-11574.

Very truly yours,

HABIRSHAW CABLE AND WIRE DIVISION
PHELPS DODGE COPPER PRODUCTS CORPORATION

By

E. F. Gordon

EFG:SB
Att.

C O P Y

Navy Department
Office of Inspector of Naval Material
30 Church Street, New York, N.Y.

JJ40/QM (Habirshaw Cable
(N1-2-E1-2) & Wire Div.)

December 24, 1942

Subject:      Approval of Expenditures under Letter of Intent
              dated 8/15/42 and amended 10/30/42 for Contract
              NXs-11574(SPN6).

Reference:
   (a)        INM NY ltr NXs-11574 (N1-2-E1-2) dated
              12/16/42 to Habirshaw Cable & Wire Div.

Gentlemen:

              Reference (a) extended to your company authority to
proceed with the expenditure of $142,300.00 for the production of 220,000
feet of cable required by the amendment dated October 30, 1942 to the subject
basic Letter of Intent.

              This is to advise you that it is the intent of the last
paragraph of reference (a) to authorize you to make expenditures not exceeding
$142,300.00 for the materials required for the fabrication of the 220,000 feet
of cable.

                         Very truly yours

                         H. L. BRINSER
                         Rear Admiral, USN


Habirshaw Cable & Wire Div.
Phelps Dodge Copper Products Corp.
40 Wall Street
New York, New York

C O P Y

NAVY DEPARTMENT
Office of Inspector of Naval Material
30 Church St. New York, N.Y.

NXs-11574
(N1-2-E1-2)

December 16, 1942

Subject:    Approval of Expenditures under Letters of
Intent dated 8/15/42 and amended 10/30/42
for Contract NXs-11574(SPN6).

Gentlemen:

Your letter dated December 10,1942 advises this office that
your company received approval from the Bureau of Supplies and Accounts on
October 2, 1942 to make expenditures not to exceed $391,600.00 to cover
470,000 feet of cable designated in Letter of Intent dated August 15,1942,
Contract NXs-11574(SPN6).

Your letter of December 7, 1942 requests this office to
approve expenditures to cover the purchase of materials in the sum of
$142,300.00 necessary to produce 220,000 feet of cable as detailed in the
addendum dated October 30, 1942 to the original Letter of Intent.

You may use this letter as your authority to proceed at once
with the expenditure of $142,300.00, it being understood that your expenditures
will not exceed this amount and further that the $142,300.00 will be the
total sum allowed your company for the production of the 220,000 feet of cable
covered by the addendum dated October 30, 1942 to the original Letter of Intent.

Very truly yours,

H. L. BRINSER
Rear Admiral, USN

Habirshaw Cable & Wire Div.
Phelps Dodge Copper Products Corp.
40 Wall Street
New York, N.Y.
Attention: Mr.E.F.Gordon

**(This Form May Not be Reproduced)**

PD-8A
2/2/42    **ORIGINAL**

**War Production Board**

Serial No. **Q 112500**

## PREFERENCE RATING CERTIFICATE

1. Issued to  Phelps Dodge Copper Products
   Habirshaw Wire & Cable Division    (Division)
2. Address  40 Wall Street
   New York  New York                                  NXss-11574 Letter of Intent
3. Related contract number of initiating Government Agency ___ dated 30 October 1942
4. Government Agency which placed contract ___ U S Navy  Bureau of Supplies & Accounts
   (Name and address of Army or Navy, usually Supply Arm or Bureau)
   (Bureau Ships)  Washington D C

5. Items Covered by This Certificate—List for each item:

| REQUIRED DELIVERY DATE | QUANTITY EACH SHIPMENT | VALUE EACH SHIPMENT | DESCRIPTION |
|---|---|---|---|
| By 1 March, 1943 | 220,000 feet | $406,320.00 | Cable |
| | | | Inspection required. |
| | | | The Inspector of Naval Material 30 Church Street New York  New York |
| | | | AMENDMENT |
| | | | Additional material covered by Letter of Intent, dated 30 October, 1942 |

APPROVED FOR ISSUANCE

J.A. Kunkel  Wash

WPB SIGNING OFFICER    DISTRIC

6. **Authentication:** I hereby certify that the items specified in this Certificate are essential for the completion of the government contract cited herein, and that the quantities and Required Delivery Date(s) specified are not greater nor earlier than necessary for completion on time of said contract.

_____
(Signature and title of authorized official of contractor)

_____
(Date)

MARSHALL, J BEVERLEY  Lt. (SC) USNR
By direction of Paymaster General Navy
(Post, camp, or station)
30 November 1942

7. Preference Rating  [ AA-1 ]  (ANMB Code No. ___ )
   is hereby assigned to the items in the quantities covered by this Certificate. If this Certificate covers machine tools, cite Urgency Standing No. (if any) . ___

This Certificate is not valid unless Authentication is signed by the Contractor to whom issued and countersigned by the appropriate United States Government Official.

(E.O. 9024, Jan. 16, 1942, 7 F.R. 329; E.O. 9040, Jan. 24 1942, 7 F.R. 527; Sec. 2(a), Public No. 671, 76th Congress Third Session, as amended by Public No. 89, 77th Congress First Session.)

_____
Director of Industry Operations.

**ORIGINAL TO BE ISSUED TO AND RETAINED BY CONTRACTOR**

PD-3A
2/2/42

# INSTRUCTIONS FOR EXTENSION OF PREFERENCE RATING

**Priorities Regulation No. 3 Governs the Issuance of This Certificate and the Preference Rating Assigned. All of Its Terms Must Be Observed. The Following Instructions Are Provided To Assist in Extension of Preference Ratings.**

1. The Preference Rating assigned by this Certificate may be extended only to:

   (a) Deliveries of material which will be physically incorporated into material to be ultimately delivered to the original recipient of the Preference Rating, or to deliveries of material which itself will be ultimately delivered to the original recipient of the Preference Rating, or which will be used, within the limitations of paragraph (e) of Priorities Regulation No. 3, to restore inventory to a practicable working minimum.

   (b) Material which is neither greater in quantity nor to be delivered on dates earlier than required to make on schedule a rated delivery or, within the limitations of Priorities Regulation No. 3, to restore inventory to a practicable working minimum.

2. The person to whom this Certificate is issued and each related Supplier and Subsupplier must send a certified copy of all purchase orders on which the rating is extended as prescribed in the form of Certification below.

3. Section 35 (A) of the United States Criminal Code, 18 U.S.C.A. 80, makes it a criminal offense to make a false statement or representation to any department or agency of the United States as to any matter within its jurisdiction.

4. The person to whom this Certificate is issued shall retain it, and he and each related Supplier and Subsupplier may extend the Preference Rating assigned herein to his purchase order (s) by executing and transmitting to his Supplier (s) by endorsement on purchase order or other equivalent document, the following form of Certification, which shall constitute a representation to the Director of Industry Operations:

   If Certificate is issued for machine tools, cite Urgency Standing Number in a footnote addition to the Certification; if Certificate is issued under a letter of intent, insert reference to a footnote addition to the Certification in the space provided for the Contract No(s). Such footnote shall state the Supply Arm or Bureau of the Army or Navy (or other Government Agency which issued letter of intent), the date of the letter and identification symbols appearing thereon.

   ### "CERTIFICATION

   The undersigned represents to the Director of Industry Operations that Preference Rating _____ (ANMB Code No. _____) is hereby applied pursuant to Certificate PD-3A, Serial No(s). _____ and initiating Government Agency (ies) _____ Contract No(s). _____ placed with Prime Contractor(s), _____ in accordance with Priorities Regulation No. 3, with which I certify I have complied. The person extending this rating must send a certified copy of his purchase order to _____ or, if purchase involves several orders, to the inspector named on the order having the greatest value.

   _____ (Address)          _____ (Name of purchaser)

   _____ (Date)          _____ (Signature and title of official)

   16—26353—1 .   ☆   U. S. GOVERNMENT PRINTING OFFICE : 1942

PD-3A
2/2/42

**ORIGINAL**

(This Form May Not be Reproduced)

**War Production Board**

Serial No. **Q** **76183**

## PREFERENCE RATING CERTIFICATE

1. Issued to __Phelps Dodge Copper Products Corporation__
   __Habirshaw Wire and Cable Division__

2. Address __40 Wall Street__
   __New York, New York__

3. Related contract number of initiating Government Agency __NXss-11574 Letter of Intent dated 30 November 1942__

4. Government Agency which placed contract __U. S. Navy Bureau of Supplies and Accounts__
   (Name and address of Army or Navy activity therein form or Bureau)
   (Bu Ships)                                      __Washington, D. C.__

5. **Items Covered by This Certificate**—List for each item:

| REQUIRED DELIVERY DATE | QUANTITY EACH SHIPMENT | VALUE EACH SHIPMENT | DESCRIPTION |
|---|---|---|---|
| By May 1943 | 50,000 feet | $86,700.00 | Cable SDGA-1000 |
| | | | Inspection required |
| | | | The Inspector of Naval Material 30 Church Street New York, New York |
| | | | AMENDMENT |
| | | | Additional material covered by Letter of Intent dated 30 November 1942 |

APPROVED FOR ISSUANCE

WPB SIGNING OFFICER                    DISTRICT

6. **Authentication:** I hereby certify that the items specified in this Certificate are essential for the completion of the government contract cited herein, and that the quantities and Required Delivery Dates specified are not greater nor earlier than necessary for completion on time of said contract.

(Signature and title of authorized official of contractor)

(Date)

MARSHALL      BEVERLY  LT  SC  USNR
By direction of Paymaster General, Navy
(Position, name or station)          (Date)
31 December 1942

7. Preference Rating [ AA-1 ] (ANMB Code No. _____)
   is hereby assigned to the items in the quantities covered by this Certificate. If this Certificate covers machine tools, cite Urgency Standing No. (if any) _____

   **USN 2.00**

This Certificate is not valid unless Authentication is signed by the Contractor to whom issued and countersigned by the appropriate United States Government official.
(P.O. 9024, Jan. 24, 1942; 7 F. R. 279; Public No. 671, 76th Congress 1942, F. R. 2621 Sec. 2(a); Public No. 671, 76th Congress Third Session, as amended by Public No. 89, 77th Congress First Session)

Director of Industry Operations.

ORIGINAL TO BE ISSUED TO AND RETAINED BY CONTRACTOR

PD-3A.
2/3/42

# INSTRUCTIONS FOR EXTENSION OF PREFERENCE RATING

ACM 3*30

**Priorities Regulation No. 3 Governs the Issuance of This Certificate and the Preference Rating Assigned. All of Its Terms Must Be Observed. The Following Instructions Are Provided To Assist in Extension of Preference Ratings.**

1. The Preference Rating assigned by this Certificate may be extended only to:

    (a) Deliveries of material which will be physically incorporated into material to be ultimately delivered to the original recipient of the Preference Rating, or to deliveries of material which itself will be ultimately delivered to the original recipient of the Preference Rating, or which will be used, within the limitations of paragraph (e) of Priorities Regulation No. 3, to restore inventory to a practicable working minimum.

    (b) Material which is neither greater in quantity nor to be delivered on dates earlier than required to make on schedule a rated delivery or, within the limitations of Priorities Regulation No. 3, to restore inventory to a practicable working minimum.

2. The person to whom this Certificate is issued and each related Supplier and Subsupplier must send a certified copy of all purchase orders on which the rating is extended as prescribed in the form of Certification below.

3. Section 35 (A) of the United States Criminal Code, 18 U.S.C.A. 80, makes it a criminal offense to make a false statement or representation to any department or agency of the United States as to any matter within its jurisdiction.

4. The person to whom this Certificate is issued shall retain it, and he and each related Supplier and Subsupplier may extend the Preference Rating assigned herein to his purchase order(s) by executing and transmitting to his Supplier(s) by endorsement on purchase order or other equivalent document, the following form of Certification, which shall constitute a representation to the Director of Industry Operations:

    If Certificate is issued for machine tools, cite Urgency Standing Number in a footnote addition to the Certification; if Certificate is issued under a letter of intent, insert reference to a footnote addition to the Certification in the space provided for the Contract No(s). Such footnote shall state the Supply Arm or Bureau of the Army or Navy (or other Government Agency which issued letter of intent), the date of the letter and identification symbols appearing thereon.

## "CERTIFICATION

The undersigned represents to the Director of Industry Operations that Preference Rating _____ (ANMB Code No. _____) is hereby applied pursuant to Certificate PD-3A, Serial No(s) _____ and initiating Government Agency(ies) _____ Contract No(s). _____ placed with Prime Contractor(s),

in accordance with Priorities Regulation No. 3, with which I certify I have complied. The person extending this rating must send a certified copy of his purchase order to _____ or, if purchase involves several orders, to the inspector named on the order having the greatest value.

_____          _____
(Address)                        (Name of purchaser)

_____          _____ "
(Date)                           (Signature and title of official)

16—25352-1    ☆ u. s. Government printing office : 1942

1269-P

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS
WASHINGTON, D. C.

IN REPLY ADDRESS NOT THE SIGNER
OF THIS ORDER, BUT THE BUREAU
OF SUPPLIES AND ACCOUNTS AND
REFER TO SPM-7

# CHANGE ORDER

Contract NXs-11574

6 January 1943

VIA:

INSPECTOR OF NAVAL MATERIAL
30 CHURCH STREET
NEW YORK, N. Y.

TO:

PHELPS DODGE COPPER PRODUCTS CORP.
40 WALL STREET
NEW YORK, N. Y.

You are authorized to proceed with the following changes(s) and/or modification(s), subject to the conditions given below:

1. The Inspector was requested by telephone on 14 December 1942 by the Bureau of Ships to divert delivery of approximately 63,500 feet of type MDGA-19(40) cable to the Navy Yard, New York instead of delivery being made to the Navy Yard, Norfolk, Va. as orginally provided.

2. It is assumed that shipment of this quantity of cable has been completed as this material was urgently needed at the Navy Yard, New York.

This action is made ne
It is requested tha
vided on the atta

I. N. M. No. 5

D-LT

CORRESPONDENCE (IN DUPLICATE) SHOULD
BE ADDRESSED TO THE INSPECTOR OF
NAVAL MATERIAL, NOT TO SIGNER OF THIS
LETTER, AND REFER TO NO.

Telephone REctor 2-6460

NXss-11574/
(N1-2-E1-2)
Ԑ

## NAVY DEPARTMENT

OFFICE OF INSPECTOR OF NAVAL MATERIAL

30 Church St., New York, N.Y.    February 17, 1943

Subject:    Approval of Expenditures under Letter
of Intent dated 8/15/42 - amended 10/30/42
and 11/30/42 - extended 1/7/43 for Contract
NXss-11574.

Reference:    (a)    Phelps Dodge Copper Products Corp. ltr.
HTB:RB of 2/10/43 to INM NY.
(b)    Photostatic cy. of BuS&A ltr. dated
1/7/43 extending ref.(c).
(c)    Letter of Intent NXss-11574 dated
8/15/42.

Gentlemen:

Reference (a) requests this office to
approve expenditures to cover the purchase of materials
amounting to $22,355.00 necessary to produce 30,000
feet of cable as called for in reference (b).

In compliance with paragraph (b) of
reference (c), you may use this letter as your authority
to proceed at once with the expenditure of $22,355.00.

Very truly yours,

H. L. BRINSER
Rear Admiral, U.S.N.



FOR VICTORY
BUY
UNITED
STATES
WAR
BONDS
AND
STAMPS

Phelps Dodge Copper Products Corp.
40 Wall Street
New York, New York

Att: Mr. H. T. Brinton

COPY

NAVY DEPARTMENT
OFFICE OF INSPECTOR OF NAVAL MATERIAL
30 CHURCH STREET
NEW YORK, N.Y

February 17, 1943

NXss-11574
(N1-2-E1-2)

Subject:     Approval of Expenditures under Letter
             of Intent dated 8/15/42 – amended 10/30/42
             and 11/30/42 – extended 1/7/43 for Contract
             NXss-11574.

Reference:   (a)  Phelps Dodge Copper Products Corp. ltr.
                  HTB:NB of 2/10/43 to INM NY
             (b)  Photostatic cy. of BuS&A ltr. dated
                  1/7/43 extending ref. (c).
             (c)  Letter of Intent NXss-11574 dated
                  8/15/42

Gentlemen:

        Reference (a) requests this office to approve
expenditures to cover the purchase of materials amounting to
$22,355.00 necessary to produce 30,000 feet of cable as called
for in reference (b).

        In compliance with paragraph (b) of reference
(c), you may use this letter as your authority to proceed at once
with  the expenditure of $22,355.00.

                              Very truly yours,

                              H. L. BRINSER
                              Rear Admiral, U.S.N.

## NAVY DEPARTMENT

BUREAU OF SUPPLIES AND ACCOUNTS

WASHINGTON, D. C.

In Reply Address not the Signer
of this Order, but the Bureau
of Supplies and Accounts and
Refer to SPN– 7

# CHANGE ORDER

CONTRACT NXs- 11574

17 February 1943

VIA:

THE INSPECTOR OF NAVAL MATERIAL
30 CHURCH STREET 10TH FLOOR
NEW YORK NEW YORK

TO:

Phelps Dodge Copper Products Corp
Habirshaw Cable & Wire Division
40 Wall Street
New York New York

You are authorized to proceed with the following change(s) and/or modification(s), subject to the conditions given below:

The remaining material due under the subject contract which
was assigned the Navy Yard, New York is now to be delivered to:

Supply Officer
Supply Department Annex
Building #2
31st Street & 3rd Avenue
Brooklyn, New York.



This act
facil;
I+

From.
To:

(D1)

C O P Y

NAVY DEPARTMENT
BUREAU OF SUPPLIES AND ACCOUNTS
WASHINGTON, 25, D.C.

NXss-11574 (SPM2)

21 September 1943

Phelps Dodge Copper Products Corp.
Habirshaw Cable & Wire Div.
40 Wall St.
New York, N. Y.

SUBJECT:        Contract NXss-11574 - Electric Cable

S i r s:

            The payment provision of the subject contract
is hereby revised to read as follows:

        Submit invoices in duplicate to Naval Inspector.

        Public vouchers will be prepared and payment will
be made by the Disbursing Officer, Bureau of Supplies
and Accounts, Navy Department, Washington, D.C.

                                Very truly yours,

                                E. M. SAUERWEIN
                                Purchasing Officer
                                Bureau of Supplies and Accounts