CONTRACTOR'S COPY
NOT TO BE RETURNED

This is your official copy
of the contract. The ORIGINAL
which is signed by the
Government and the
Contractor's

# FIXED PRICE CONTRACT

### NAVY DEPARTMENT
#### BUREAU OF SUPPLIES AND ACCOUNTS

Negotiated Contract
NXs _____

PHELPS DODGE COPPER PRODUCTS CORPORATION
HABIRSHAW CABLE AND WIRE DIVISION

Contract for ____ ELECTRIC CABLE ____

Place ____ AT CONTRACTOR'S WORKS, YONKERS, NEW YORK ____

THIS CONTRACT, entered into as of the 27th day of NOVEMBER , 194 , by and between the UNITED STATES OF AMERICA, hereinafter called the Government, represented by the contracting officer executing this contract, and PHELPS DODGE COPPER PRODUCTS CORPORATION HABIRSHAW CABLE AND WIRE DIVISION

[ ] a corporation organized and existing under the laws of the state of NEW YORK

whose address is 40 WALL STREET, NEW YORK, NEW YORK.
hereinafter called the Contractor,

WITNESSETH, that the parties hereto do mutually agree as follows:

The Contractor shall furnish and deliver all the articles, and perform all the services, set forth in the Schedule, consisting of        sheets attached hereto, for the consideration stated therein.  The parties hereto shall be bound by and be subject to  all the terms and conditions contained in the said Schedule and the attached General Provisions.

This negotiated contract is made pursuant to the provisions of the First War Powers Act, 1941.

IN WITNESS WHEREOF the parties hereto have executed  this  contract as of the day and year first above written.

UNITED STATES OF AMERICA

By _____
PURCHASING OFFICER
BUREAU OF SUPPLIES AND ACCOUNTS
NAVY DEPARTMENT

PHELPS DODGE COPPER PRODUCTS CORP
HABIRSHAW CABLE AND WIRE
(CONTRACTOR)

By _____

Title_____ Vice President ____

40 Wall Street, New York, N. Y.
(BUSINESS ADDRESS OF CONTRACTOR)

W. E_____

_____
(WITNESSES)

IF THIS IS CASE OF CORPORATION, WITNESSES
NOT REQUIRED, BUT CERTIFICATE BELOW MUST
BE COMPLETED.

CERTIFICATE

I, _____ , certify that I am the _____ Secretary of the corporation named as contractor herein; that _____ who signed this contract in behalf of the contractor was then Vice President of said Corporation;  that said contract was duly signed for and in behalf of said corporation by authority of its governing body.

_____ (CORPORATE SEAL)

PREFERENCE RATING:   AA-2

PRIORITY RATINGS ARE HEREBY ASSIGNED TO THE DELIVERIES AS
INDICATED IN THIS CONTRACT, PRIORITIES REGULATION NO. 3 AS
AMENDED AND THE APPLICATION AND EXTENSION OF THE RATINGS
GOVERNED -- ERNEST KANZLER, DIRECTOR GENERAL FOR OPERA-
TIONS AND W.H.P. BLANDY, REAR ADMIRAL, SC, USN, PAYMASTER GENERAL
OF THE NAVY.

BY DIRECTION

Lehman Decl.    Exhibit 26

RECEIVED
AUG 25 1943

## BILLING INSTRUCTIONS

In order to obtain prompt payment, these Billing Instructions should be carefully followed:

1.   PREPARATIONS OF INVOICES IN GENERAL.

Invoices should be prepared and submitted on the contractor's regular billhead or letterhead, in duplicate.  The original must bear the following certificate, duly executed in the name of the contractor over the signature and title of the person signing:

> "I CERTIFY THAT THE ABOVE BILL IS CORRECT AND JUST; THAT PAYMENT
> THEREFOR HAS NOT BEEN RECEIVED; THAT ALL STATUTORY REQUIREMENTS
> AS TO AMERICAN PRODUCTION AND LABOR STANDARDS, AND ALL CONDI-
> TIONS OF PURCHASE APPLICABLE TO THE TRANSACTIONS HAVE BEEN COM-
> PLIED WITH, AND THAT STATE OR LOCAL SALES TAXES ARE NOT INCLUD-
> ED IN THE AMOUNTS BILLED."

The above prescribed certificate shall be printed, typed or stamped on the invoice.  If it is physically impossible to execute the certificate on the face of the invoice, it may be executed on the reverse side.  An additional or separate sheet containing only the certificate will not be accepted.

2.   ASSIGNMENTS.  If there has been an assignment of claims for moneys due or to become due to the contractor pursuant to contract provisions permitting assignment, each invoice must be executed by the contractor in the manner above provided and must also contain an endorsement which authorizes payment to the assignee and states the name and address of the assignee, substantially as follows:  "Make payment on this invoice to assignee, (name and address of the assignee)."

*ANY SPECIAL INSTRUCTIONS CONCERNING SUBMISSION OF INVOICES
AND PLACE OF PAYMENT ARE TO BE FOUND IN THE CONTRACT.*

Alt.

1822-PIC                                                    5/30/43

# GENERAL PROVISIONS

**ARTICLE 1. Scope of this Contract.** — The Contractor shall furnish and deliver all of the articles, and perform all of the services, set forth in the attached Schedule, for the consideration stated therein, of merchantable quality, free from defects in material or workmanship and in strict accordance with the specifications and drawings attached to or designated in such Schedule, all of which are made a part hereof. "General Specifications for Inspection of Material", issued by the Navy Department July 1, 1941, shall also form a part of this contract. The rights and obligations of the parties hereto shall be subject to the provisions contained in these General Provisions, such "General Specifications for Inspection of Material", and the provisions of the Schedule. In the event of any inconsistency between the provisions of these General Provisions, such "General Specifications for Inspection of Material", and the provisions of the Schedule, the provisions of the Schedule shall be deemed to control to the extent of such inconsistency.

**ARTICLE 2. Changes.** — (a) The specifications, drawings, or designs applicable to any of the items covered by this contract, (and also, in the case of spare parts, the quantities or designations), or any provisions with respect to packaging, may be changed at any time by written order or the chief of the bureau named at the head of the Schedule or his representative duly authorized in writing, which authorization may be specific or general in its scope. Such changes may be made without notice to the surety, if any, and the Contractor shall give effect to such changes without delay. Changes proposed by the Contractor may, if acceptable to the chief of such bureau or his duly authorized representative, be similarly authorized. Where appropriate, changes ordered or agreed to under this section shall include accompanying revisions of delivery dates. If any such change so ordered shall involve an increase or decrease in the amount or character of the work to be done or the time required for its performance, an equitable adjustment of the price or prices payable shall be made as provided in paragraph (b) hereof.

(b) At intervals of three months, if during such period there have been changes involving a net change in price, or whenever requested by the contracting officer at any time the Contractor not assented to by the contracting officer, the Contractor shall submit to the contracting officer via the chief of such bureau in such form and detail as the contracting officer may request, a summary of any changes made since the date of any previous summary, an estimate of the aggregate effect of such changes on the cost of performing the work and a proposal as to an equitable increase or decrease in the contract price. Upon the basis of such information and any other information available to the contracting officer, equitable changes in the contract price and in such other provisions of the contract as may be deemed necessary shall be agreed upon between the Contractor and the contracting officer and such changes shall be set forth in an amendment to the contract.

(c) Provisions with respect to the method of shipment or place of delivery may be changed by written order of the contracting officer. If any such change involves any increase or decrease in the cost of performing this contract, an equitable adjustment shall be made as the contract price.

(d) Where price changes made as above provided relate to supplies or services previously invoiced, the method of adjusting any increase or decrease in the contract price shall be specified by the amendment. In case an amendment reduces the contract price to less than amounts paid to the Contractor, the Contractor shall forthwith repay such excess to the Government.

**ARTICLE 3. Extras.** — Except as otherwise herein provided, no charge for extras will be allowed unless the same have been ordered in writing by the contracting officer and the price stated in such order.

**ARTICLE 4. Increase or Decrease.** — Unless otherwise specified, any variation in the quantities herein called for, not exceeding 10 per cent, will be accepted as a compliance with the contract, when caused by conditions of loading, shipping, packing, or allowances in manufacturing processes, and payments shall be adjusted accordingly.

**ARTICLE 5. Inspection.** — (a) All material, subject to inspection and test by the Government during manufacture, when practicable, ................... in case any articles are defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles or require their correction or replacement. Rejected articles, or articles requiring correction, shall be removed by and at the expense of the Contractor promptly after notice so to do and shall not be used until corrected, reinspected and passed by the Government. Rejected articles, not suitable for correction shall be so segregated by the Contractor as to preclude the possibility of use under this contract. In the event public necessity requires the use of materials or supplies defective in material or workmanship or not in accordance with the specifications, payment therefor shall be made at a proper reduction in price.

(b) All inspections and tests by the Government shall be performed in such a manner as not to delay the work unduly. Special and performance tests shall be as described herein and in the specifications. If any inspection and test is made at the premises of the Contractor or a subcontractor, the Contractor shall provide a complete inspection system acceptable to the Government's inspectors and all reasonable facilities and assistance for the safety and convenience of the inspectors in the performance of their duties. In the event articles are not ready at the time inspection is requested by the Contractor, the Government may charge to the Contractor any additional cost of inspection and test.

.................................................................................................

**ARTICLE 6. Responsibility For Supplies Tendered.** — The Contractor shall be responsible for the articles covered by this contract until they are delivered, and the Contractor shall bear all risk on rejected articles after notice of rejection. Where final inspection is at point of origin but delivery by the Contractor is at some other point, the Contractor's responsibility shall continue until delivery is accomplished.

**ARTICLE 7. Transfer of Contract and Assignment of Claims.** — (a) Neither this contract nor any interest herein nor any claim arising hereunder, except as otherwise provided in this Article, shall be transferred by the Contractor to any party or parties.

(b) If this contract is not classified as "confidential" or "secret", and if the contract provides for payments aggregating $1,000 or more, claims for moneys due or to become due to the Contractor from the Government arising out of this contract may be assigned to any bank, trust company or other financing institution, including any Federal lending agency. Any such assignment shall cover all amounts payable under this contract and not already paid, shall not be subject to further assignment, and shall not be made to more than one party, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract. In the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (1) the General Accounting Office of the Government, (2) the contracting officer, (3) the surety or sureties upon the bond or bonds, if any, in connection with this contract, and (4) the disbursing officer designated to make payments under this contract.

(c) Payments to an assignee of any claims arising under this contract shall not be subject to reduction or set-off for any indebtedness of the Contractor to the United States arising independently of this contract.

(d) Information contained in plans, specifications, or any similar document, relating to the work under this contract and marked "secret", "confidential", or "restricted" shall not, in connection with the assignment of any claim under the contract, be communicated, transmitted or disclosed to any person not otherwise entitled to receive it, except with the prior consent of the contracting officer or his duly authorized representative in each instance.

**ARTICLE 8. Walsh-Healey Act.** — If this contract is for a definite amount in excess of $10,000 or for an indefinite amount which may exceed $10,000, there is hereby incorporated herein by reference the representations and stipulations pursuant to Public Act No. 846, 74th Congress, known as the Walsh-Healey Public Contracts Act, as set forth in Article 1 of Part I of Regulations No. 504, issued by the Secretary of Labor pursuant to such act, as from time to time amended.

**ARTICLE 9. Officials not to Benefit.** — No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

**ARTICLE 10. Covenant Against Contingent Fees.** — The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fee. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business.

**ARTICLE 11. Non-discrimination in Employment.** — The Contractor, in performing the work required by this contract, shall not discriminate against any worker because of race, creed, color, or national origin. The Contractor further agrees that each subcontract made under this contract will contain a similar provision with respect to non-discrimination.

**ARTICLE 12. Disputes.** — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the Contractor within 30 days to the Secretary of the Navy or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime, the Contractor shall diligently proceed with performance.

**ARTICLE 13. Definitions.** — (a) The term "Secretary of the Navy", as used herein, shall mean the Secretary, Under Secretary or any Assistant Secretary of the Navy, and the term "his duly authorized representative" shall mean any person authorized to act for him other than the contracting officer.

(b) The term "contracting officer", as used herein, shall include the Chief of the Bureau of Supplies and Accounts, the Purchasing Officers in such Bureau, and their duly appointed successors and duly authorized representatives.

3

Requisition No. See * NSF Bureau Ships                 Contract NAss-16589

Negotiation No. SPECIAL (2208)                         Title: 1 -X-1

Appropriation  17X0806 Naval Stock Fund
Ult. Chg.:   Bu. Reqn. 1962 - NSG-17X0603 - Increase and Replacement of
Naval Vessels (C and M), Title 1-A, Account 9999 Class 400.
N.Y. Reqn. 3798 NSF - 17X0603 - Increase and Replacement of Naval Vessels
(C and M), Title 1-A
Account 10. Project Order No. 1162/IRNV

OPENING DATE FOR THIS SCHEDULE:
Upon Receipt

The articles or services to be furnished under the particular lot
number, the price, the time and place of delivery thereof, the specifications
and preference rating pertaining thereto are as follows:

## LOT 75

* N. Y. Request 679:   (All of Items 3,5,7,13,15,16,18,19,43,46,48 and 52,
and 118,000 feet of Item 11).

N. Y. Request 607:   (All of Item 27)

N. Y. Reqn. 3798:    (4,000 feet of Item 11).

N. Y. Reqn. 2147:    (All of Item 70).

Bu. Reqn. 1926:      (All of Items 74 and 76).

Cable, Electric, heat and flame-resisting, as follows:

| | TYPE | | | | |
|---|---|---|---|---|---|
| 3. | DHFA-3 | 285,000 | feet | $ .239 | $68,115.00 |
| 5. | DHFA-9 | 250,000 | feet | .417 | 104,250.00 |
| 7. | DHFA-23 | 182,000 | feet | .537 | 97,734.00 |
| 11. | THFA-14 | 122,000 | feet | .548 | 66,856.00 |
| 13. | FHFA-3 | 540,000 | feet | .305 | 164,700.00 |
| 15. | MHFA-7 | 114,000 | feet | .541 | 61,674.00 |
| 16. | MHFA-10 | 196,000 | feet | .697 | 136,612.00 |
| 18. | MHFA-19 | 201,000 | feet | 1.073 | 215,673.00 |
| 19. | MHFA-22 | 99,000 | feet | 1.215 | 120,285.00 |
| 27. | MHFF-14 | 183,000 | feet | .587 | 107,421.00 |
| 43. | DHFA-50 | 61,500 | feet | .752 | 46,248.00 |
| 46. | DHFA-125 | 28,000 | feet | 1.266 | 35,448.00 |
| 48. | DHFA-200 | 6,000 | feet | 1.689 | 10,134.00 |
| 52. | THFA-60 | 65,000 | feet | 1.013 | 65,845.00 |
| 70. | SRIB-3(7) | 32,000 | feet | .0105 | 336.00 |
| 74. | SDGA-1000 | 20,000 | feet | 1.461 | 29,220.00 |
| 76. | SDGA-2000 | 1,000 | feet | 2.412 | 2,412.00 |

TOTAL LOT 75                $1,333,963.00

## LOT 76

* Bureau Reqn. 1962

Cable, Electric, heat and flame-resisting, as follows:

| | TYPE | | | | |
|---|---|---|---|---|---|
| 50. | SDGA-1000 | 20,000 | feet | $1.461 | $29,220.00 |
| 56. | SDGA-1000 | 9,000 | feet | 1.461 | 13,149.00 |
| 58. | SDGA-2000 | 20,000 | feet | 2.412 | 48,240.00 |

TOTAL LOT 76                $90,609.00

page 2

| ITEM NO. | ARTICLES OR SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT DOLLARS | CENTS |
|---|---|---|---|---|---|---|
| | **LOT 78** | | | | | |
| * | N. Y. Request 693 | | | | | |
| | Cable, Electric, heat and flame-resisting, as follows: | | | | | |
| | **TYPE** | | | | | |
| 1. | TTHFA-1 | 270,000 | feet | $ .174 | $46,980.00 | |
| 5. | TTHFA-15 | 111,000 | feet | .380 | 42,180.00 | |
| | | TOTAL LOT 78 | | | $89,160.00 | |
| | **LOT 80** | | | | | |
| * | M. I. Reqn. 3114 | | | | | |
| | Cable, Electric, heat and flame-resisting, as follows: | | | | | |
| | **TYPE** | | | | | |
| 4. | TTHFA-15 | 1,500 | feet | $ .380 | $ 570.00 | |
| | **LOT 80A** | | | | | |
| * | Norf. Reqn. 304 | | | | | |
| | Cable, and Wire as follows: | | | | | |
| 1. | MUFF-4 | 5,388 | feet | $ .235 | $1,266.18 | |
| 2. | MUFF-6 | 29,500 | feet | .308 | 9,086.00 | |
| 3. | VHFF-10 | 12,426 | feet | .454 | 5,641.40 | |
| 4. | BRI-4(41) | 42,000 | feet | .0114 | 478.80 | |
| | | TOTAL LOT 80A | | | $16,472.38 | |

(a)  The prices listed above are based on the Contractor's estimated cost of performing this contract in which there has been included an amount of $37,147.21 to cover contingencies such as increase in cost of labor and materials.

(b)  Promptly following completion of the last delivery hereunder the Contractor will submit to the Contracting Officer a statement of all costs incurred by it with respect to the contingencies mentioned in (a) above. On the basis of such statement and such additional data as the Contracting Office may request, the Contractor and the Contracting Officer shall negotiate such reduction in the contract price as may be appropriate. Following agreement, the amount of such reduction shall be set forth in a memorandum which shall be signed by the Contracting Officer and Contractor.

Any reduction in the total contract price set forth in such memorandum shall be promptly refunded by the Contractor to the Government. In the event of failure to agree, the amount of such deduction shall be determined in accordance with the Article entitled "Disputes".

## Price Redetermination

The prices stated in this contract shall be applicable to all shipments made by the contractor prior to October 1, 1943. Prior to October 1, 1943, and prior to the beginning of each three months' period thereafter, the prices for all shipments to be made during the ensuing three months shall be redetermined by negotiation between the contractor and the contracting officer and the prices so revised for each such period shall be incorporated into this contract by amendment.

## REELS

Unless otherwise specified, the reels used in the delivery of the cable shall be good, substantial reels, suitable for repeated use, commonly known as returnable reels

The cost of the reels on which the cable is delivered is included in the contract price.

The Government may return to the factory at the Government's expense empty reels originally furnished under this contract. The contractor will use such returned reels in making future shipments under this contract or other contracts for similar material whenever such reels are available at the time first needed in production.

Immediately such returned reels are re-shipped by the contractor, the contractor will make refund to the Government of the value of reels so used in accordance with the prices listed below. The amount credited for reels which (in the contractor's opinion) require repairs, shall be the amount indicated for said reels less the cost of repairs.

| SIZES | UNIT PRICES |
|-------|-------------|
| 24"   | $4.00       |
| 30"   | 7.00        |
| 36"   | 12.00       |
| 42"   | 18.00       |
| 48"   | 25.00       |
| 54"   | 32.00       |
| 60"   | 41.00       |
| 66"   | 53.00       |
| 72"   | 64.00       |
| 78"   | 90.00       |
| 84"   | 95.00       |

Only the value as salvage shall be paid by the contractor for the return of reels which in the contractor's opinion are not worth repairing.

The contractor's obligation to accept returned reels under the foregoing provisions, other than empty reels in transit, shall terminate upon the declaration of an armistice, or the cessation of hostilities, or upon the giving of notice by the contractor that the number of returned Navy reels on hand exceeds 75% of the backlog of Navy orders for which the reels ordinarily would be used.

In the event the number of returned reels in the custody of the contractor exceeds at any time 100% of the backlog of Navy orders, the Navy will, on demand of the contractor, promptly remove all such excess reels from the contractor's property.

Empty reels to be shipped to Phelps-Dodge Copper Products Corp.
                              Habirshaw Cable and Wire Div.
                              Yonkers, New York.

## FREIGHT CHARGES

The Government will reimburse the Contractor for any amounts paid for freight charges on shipments made by the Contractor under Letter of Intent NXss-18589. The contractor shall present separate invoices, approved by the Resident Inspector of Naval Material for such amounts.

SPECIFICATIONS:  Applicable to Lots 75,76,78 and 80 only-

All cable shall be in accordance with BUREAU OF SHIPS AD INTERIM SPECIFICATION 15-C-1 (INT) for CABLE, ELECTRIC, INSULATED (SHIPBOARD USE) dated July 1, 1942, Remnants will be accepted at the price reduction (in percentages) appearing in Table XLV of Specification 15-C-1 (INT), provided the amount of such remnants shall not exceed twenty (20) percent of the total quantity of the contract, and that the cable complies in all other respects with the specification requirements and is acceptable to the Naval activity for which intended.

In addition to the above specification, Type SDGA cables shall also be in accordance with the following details:

TYPE SDGA:

The type SDGA cable shall be suitable for continuous operation at a maximum copper temperature of 90 degrees Centigrade.  The cable shall be furnished on reels in lengths of 1,000 feet with a tolerance of plus or minus ten percent (10%).

Construction:  Type SDGA cable shall be made in accordance with Table  A herein and the following:

First:  The conductor, before insulating, shall conform to the standard Table IV of Specification 15-C-1 (INT) as designated in the third column of Table A.

Second:  A wall of felted asbestos, compressed and impregnated with a neutral insulating cement, to form a continuous and homogeneous layer (C-11). A suitable thin separator (C-23), at manufacturer's option.

Third:  A wall of varnished cambric insulation (C-7).  A suitable thin separator (C-23) at the manufacturer's option, provided the total wall thickness does not exceed 0.004 inch.

Fourth:  A wall of felted asbestos applied as in "Second" above (C-11). This wall of felted asbestos may be omitted at the manufacturer's option. Provided the thickness of felted asbestos applied next to the conductor under "Second" above and or the thickness of varnished cambric under "Third" above and or impervious sheath under "Fifth" below are increased so that the specified overall dimensions and tolerances of the finished cable are adhered to.  A suitable thin separator (C-23) may be applied at the manufacturer's option over this asbestos wall, if used, or over the varnished cambric if the asbestos is omitted.

Fifth:  An impervious sheath (C-21).  Manufacturer's identification shall be included under the impervious sheath.

Sixth:  Basket weave metal armoring (C-17).  This armoring shall be sutiably imbedded in the underlying impervious sheath.  The overall dimensions of the finished cable shall not exceed the value shown in the last column of Table A nor be less than 92-1/2 percent of these dimensions.

Seventh:  Painting (C-18).

Thickness of Varnished Cambric:  The requirements of Paragraph C-6h of Specification 15-C-1 (INT), are modified to permit less than three thicknesses of varnished cambric, provided the minimum thickness of varnished cambric at any point is not less than one-half of the specified total thickness of varnished wall.

Qualification Tests:  Paragraph H-2 of Specification 15-C-1 (INT), shall apply with the first sentence modified to the following:

"The right is reserved to reject any tenders on brands of Type SDGA cable which do not use an impervious sheath of the same type and manufacture as used on Heat and Flame Resistant "(HF)" Electric cables which have been subjected to the required tests and found satisfactory."

Page 5

Cold Bend:  The finished cable shall satisfactorily meet the cold bend test (0 degrees Centigrade, 32 degrees Fahrenheit) specified in Paragraph F-12 of Specification 15-C-1 (INT).

Flame Resistance:  The finished cable shall meet the flame tests specified in paragraph F-23 of Specification 15-C-1 (INT).

Dielectric Strength:  The dielectric strength shall be not less than 1,000 volts, alternating current, on full length reels, to be shipped.

Drip and Exudation:  The finished cable shall meet the drip and exudation tests specified in paragraph (F-11 and F-13) of Specification 15-C-1 (INT).

Insulation Resistance:  The insulation resistance between conductor and ground, at 15.5 degrees Centigrade on full reel lengths to be shipped, per 100 feet, shall be not less than the following:

3IGA 1,000 12 megohms

### TABLE A

| Type | Area | Standard Copper Conductor Number (Table IV) | Diameter Over Tinned asbestos (C-10) | Diameter Over Varnished Cambric and Acetate Tape if used (C-6) | Diameter Over Second Felted Asbestos (c-10) | Diameter over Impervious Sheath (C-21) | Diameter over Total Armoring |
|---|---|---|---|---|---|---|---|
| 3IGA | 400 | 414,020 | 400(127) | 0.792 | 0.854 | The thickness of this | 1.194 | 1.264 |
| 3IGA | 500 | 521,970 | 500(127) | 0.833 | 0.945 | felted wall shall be | 1.285 | 1.355 |
| 3IGA | 650 | 657,860 | 650(127) | 0.986 | 1.048 | such as to permit str- | 1.388 | 1.458 |
| 3IGA | 800 | 829,310 | 800(127) | 1.101 | 1.163 | ict adherence of the | 1.503 | 1.573 |
| 3IGA | 1000 | 1,046,000 | 1000(127) | 1.237 | 1.299 | finished cable to the | 1.639 | 1.709 |
| 3IGA | 1300 | 1,314,000 | 1300(127) | 1.386 | 1.466 | specified overall | 1.786 | 1.876 |
| 3IGA | 1600 | 1,662,000 | 1600(127) | 1.540 | 1.620 | dimensions | 1.940 | 2.030 |
| 3IGA | 2000 | 2,067,000 | 2000(127) | 1.718 | 1.798 | | 2.136 | 2.206 |

See Table IV for Standard Conductors the following sizes:

| Standard size designation of per conductor | Number of Strands | Nominal Strand Diameter | Diameter over Stranded Conductor | Area of Stranded Conductor | Ohms per foot Stranded at 25 degrees Centigrade | Weight per foot |
|---|---|---|---|---|---|---|
| 2000 (127) | 127 | 1275 | 1.658 | 2,067,000 | 0.0 00062 | 7.49 |

| TYPE | WEIGHT PER 1,000 feet |
|---|---|
| 3IGA 1000 | 4021 |
| 3IGA 2000 | 7639 |

REELS

Labels must be securely fastened on each reel and each label must be protected by a transparent compound to prevent deterioration of the markings.

Each reel shall be plainly marked with the number and date of contract, the type and size of cable, the length of cable, and the item number.

TESTS

Except as specified herein, the tests of the electric cable shall be made in accordance with the requirements of Specification 15-C-1 (INT).

8

Applicable to Lots 78 and 80 only:

Each conductor of the TTHFA cable under these lots shall be made of stranded wire having a total approximate area of 642 circular mils. The exterior dimension of the finished cable however, shall be in strict accordance with 15-C-1 (INT).

Applicable to Lot 80A only:

Item 1.    Four conductor shielded cable. - The cable shall be made up in accordance with Type MHFF of Specification 15-C-1 (INT) dated July 1, 1942, except for the following modifications:

FIRST.    The unit conductor shall be Type SRI-4(41).
SECOND.   The diameter over the wall of felted asbestos or of glass fibers shall be 0.155 in.
THIRD.    The diameter over the braid shall not exceed 0.190 inch.
FOURTH.   The assembly of four grouped conductors shall be covered with a close braid of coated copper wire, each wire being 0.0063 inch in diameter.
FIFTH.    The over-all diameter of the finished cable shall be not greater than 0.6315 inch.

Item 2.    Six conductor shielded cable. - The cable shall be made up in accordance with Type MHFF of Specification 15-C-1 (INT) dated July 1,1942, except for the following modifications:

FIRST.    The unit conductor shall be Type SRI-4 (41).
SECOND.   The diameter over the wall of felted asbestos or of glass fiber shall be 0.155 inch.
THIRD.    The diameter over the braid shall not exceed 0.190 inch.
FOURTH.   The assembly of six grouped conductors shall be covered with a close braid of coated copper wire, each wire being 0.0063 inch in diameter.
FIFTH.    Six conductor shielded cable X overall diameter of the finished cable not greater than 0 point 750 inch nor less than 0 point 720 inch.

Item 3.    Ten conductor shielded cable. - The cable shall be made up in accordance with Type MHFF of Specification 15-C-1 (INT) dated July 1, 1942, except for the following modifications:

FIRST.    The unit conductor shall be Type SRI-4 (41).
SECOND.   The diameter over the wall of felted asbestos or of glass fibers shall be 0.155 inch.
THIRD.    The diameter over the braid shall not exceed 0.190 inch.
FOURTH.   The assembly of ten grouped conductors shall be covered with a close braid of coated copper wire, each wire being 0.0063 inch in diameter.
FIFTH.    Ten conductor shielded cable X overall diameter finished cable not greater than 0 point 888 inch nor less than 0 point 858 inch.

Item 4.    Wire - Single conductor, synthetic resin insulated, 4,141 CM specifications 15-C-1 (INT) dated 1 July 1942.

The above four items are to be furnished in commerical lengths, each shipment plainly marked showing the Contract Number and the Item number.

DUPLICATION OF DESIGN:

The contract is on the express condition that the Government has the right without further compensation to the contractor, to construct or have constructed for Government use according to the design or drawings, plans and specifications forming a part of this contract any number of articles or parts, and to use and/or sell said articles or parts according to law as condemned material.

9

The contractor guarantees that the cable furnished conforms to specifications and is of first class material and workmanship throughout, and agrees to replace (1) any length of cable failing under tests specified or during normal and proper use within one year of date of installation (the commencement of such year in any event to be not more than six months from date of shipment of cable), and (2) any length of cable failing within two years from date of installation (with above limitation as to commencement of the two years) which shows defects in material or workmanship, provided in each case that written notice of such failure is given to contractor. All replacements under provisions of this guarantee shall be made free of charge f.o.b. delivery point given in original contract. Lengths of cable which have been replaced under provisions of this guarantee shall become property of the contractor and shall be returned to contractor's mill by Government f.o.b. original delivery point.

All shipments by the contractor shall be marked by the contractor in accordance with the provisions of "Navy Shipment Marking Handbook" issued by the Navy Department, Bureau of Supplies and Accounts, dated 1 May 1943 and printed by the United States Government Printing Office.

### DELIVERIES

The cable shall be delivered, f.o.b. cars at or near contractor's works. Yonkers, New York, 900,000 feet within 125 days after date of contract, and the balance at the rate of 500,000 feet per month until completion of deliveries. for shipment on Government Bills of Lading to be issued by the Inspector at the Contractor's plant. Unless shipping instructions have been received from the Inspector when the release is authorized the material shall be marked for the Supply Officer-in-Command, Naval Supply Depot, Mechanicsburg, Pa.

### Payment

Invoices to be dated as of date of shipment except that invoices shall be rendered on any material unshipped after thirty days from date it shall be offered for inspection and against such invoices payment shall be made in accordance with the following:

Payments will be made as the work progresses, at the end of each calendar month, upon presentation of invoices approved by the Naval Inspector for material assembled and in the possession of the contractor, and for work actually performed, but only to the extent of seventy-five per cent (75 per cent) of such invoices, provided that the aggregate amount of such payment does not exceed seventy-five per cent (75 per cent) of the contract price.

Twenty-five per cent (25 per cent) of the contract price of each item will be paid upon delivery and acceptance of such item. Any remaining balance of the contract price will be paid upon the satisfactory completion of all deliveries to be made and services to be performed by the contractor hereunder.

### SUBMISSION OF INVOICES AND PLACE OF PAYMENT

Submit invoices, in duplicate, to Naval Inspector.

Public vouchers will be prepared and payment made by Disbursing Officer, Third Naval District, Federal Office Building, 90 Church Street, New York, New York.

### PRIORITY

Army Navy Munitions Board Preference Rating AA-1 has been assigned this contract.

### LOCATION FOR INSPECTION

Place of Manufacture and location of the articles to be inspected is Yonkers, New York.

Inspection will be made by Inspector of Naval Material, New York, N.Y.

This contract supersedes Letter of Intent NXss 18589 dated 27 November, 1942, and constitutes the entire agreement between the parties.  Any accepted deliveries and payments made under said Letter of Intent shall constitute and be considered accepted deliveries and payments under this contract.

FP                            1477PSC                        3-12-43

FEDERAL EXCISE TAXES --

(a)  Except as otherwise indicated in this contract, the prices stated herein exclude all Federal excise taxes in effect at the date of this contract and directly applicable to the completed supplies or work covered hereby, and upon the request of the contractor, the Government will issue appropriate tax exemption certificates with respect to such excluded Federal excise taxes.

(b)  The prices stated herein include all other Federal taxes in effect at the date of this contract and incurred in performance hereof, including (i) all Federal excise taxes upon or with respect to materials entering into the production of such supplies or work, or used or consumed in connection with the production thereof, (ii) all Federal excise taxes upon transportation charges, and (iii) all other Federal taxes in effect at the date of this contract. If, after the date of this contract, the Federal Government shall impose or increase the rate of any tax, duty, impost, excise or sale, use, transportation, occupational, gross receipts tax, or any other similar tax or charge, other than a tax upon the income of the contractor, directly applicable to the supplies or work covered hereby or to the materials used in the production of such supplies or work, or to the importation, transportation, production, processing, manufacture, construction, sale or use of such supplies, work or materials, which tax or charge must be borne by the contractor because of a specific contractual obligation or by operation of law, then (1) the prices stated herein will be accordingly increased and  any amount due to the contractor as a result of the increase in such prices will be charged to the Government and entered upon invoices as a separate item, or (2) at its option, the Government in lieu of payment of such increase will issue to the contractor appropriate tax exemption certificates or furnish other proof of exemption with respect to such tax or charge.

(c)  If the contractor is relieved from the payment of any Federal tax or charge or portion thereof included in the prices stated herein, by reason of the decrease or elimination of such tax, the contractor shall promptly submit to the Contracting Officer a statement showing the amount of such decrease or elimination, and the prices shall be adjusted to reflect such decrease or elimination as agreed to, or in the event of failure to agree, as determined by the Contracting Officer, and the contract shall be modified accordingly.

1                            AA

12

F.P.                                    ALT. #1                        9-10-42

SECTION   Termination –

(a) This contract may be terminated by the Government in whole or in part whenever

(1) The contracting officer shall after the commencement of performance determine that termination is for the best interest of the Government; or

(2) The contractor refuses or fails to make delivery of the articles or materials to be furnished under this contract in accordance with specifications, schedules and drawings within the time specified in this contract, or within any extension of such time, and such refusal or failure is not due to an excusable delay as hereinafter defined; or

(3) The contractor makes any defaults in performance under this contract other than those covered by subparagraph (2) hereof, and fails to proceed to cure such defaults within a period of 10 days after receipt from the contracting officer of a Notice of Default specifying the default.

Termination shall be effected by delivery to the contractor of a Notice of Termination specifying the cause of termination, the extent to which performance of the contract shall be terminated, and the date upon which termination shall become effective which date shall not be earlier than 10 days after the date of receipt of the Notice of Termination.

(b) After receipt of notice of termination, contractor shall (1) terminate work on the contract on the date and to the extent specified in the Notice of Termination; (2) submit to the contracting officer within ten days after receipt of Notice of Termination or such further period as may be specified by the contracting officer a list of all unperformed orders and subcontracts relating to this contract; (3) place no further orders for materials or facilities except as may be necessary for completion of such portions of the contract as may not be terminated or as directed by the contracting officer; (4) cancel and terminate all orders and subcontracts not necessary for the performance of any work required to be performed under the Notice of Termination; (5) assign to the Government all of the right, title and interest of the contractor under such orders or subcontracts as the contracting officer may direct; (6) transfer title to and deliver to the Government in the manner and at the times directed by the contracting officer, such of the plans, drawings, materials, fabricated parts, work in process and completed work relating to the performance of this contract as the contracting officer may direct; (7) complete performance of such part of the contract as shall not have been terminated by the Notice of Termination; and (8) take such action as the contracting officer may direct for the protection and preservation of the property in the possession of the contractor and in which the Government has an interest.

(c) In addition to the remedies otherwise provided the Government may, with respect to contracts terminated for the causes set forth in paragraphs (a)(2) or (a)(3) hereof, purchase in the open market or otherwise obtain supplies of a character similar to those called for by the contract and in a quantity which, together with the articles hitherto completed and delivered to and accepted by the Government, shall not exceed the quantity called for under the contract.   If the cost to the Government of articles so procured exceeds the price for such articles under this contract, the contractor shall be liable for such excess.

(d) After termination of this contract in the manner provided in this article, the Government within a reasonable time shall pay to the contractor the following amount;

(1) For articles completed and delivered and accepted by the Government, a sum equivalent to the aggregate price for such articles computed in accordance with the unit price specified in the contract;

(2) For work performed on uncompleted articles in process and materials on hand a sum determined as follows:

(A) Where the contract has been terminated for the causes set forth in paragraph (a)(1) hereof the total of (i) a percentage of the contract price, reduced by the amount of any payments under (1) above, equal to the percentage of completion of such uncompleted articles at the time of termination or in the event of inability between the Government and the contractor to agree as to the percentage of the completion, the cost of work performed under this contract other than work performed on articles completed and delivered and accepted by the Government, plus a sum not less than 1½% nor more than 6% of such cost as determined by agreement between the contractor and the contracting officer, (ii) the purchase price of unworked and unprocessed materials on hand owned by contractor and purchased for performance of this contract (iii) any reasonable expense incidental to termination under paragraph (b) hereof of orders or subcontracts and (iv) any other reasonable expense incidental to termination of this contract that may be agreed upon between the parties.

(Cont'd)                                              1172-P

1172-P

F.P.                             TERMIN. CL. (ALT. #1) - Contd.

       (B) Where the contract has been terminated for any of the causes set forth in paragraphs (a)(2) or (a)(3) hereof, the cost of plans, drawings, materials, fabricated parts and work in process transferred to the Government in accordance with the directions of the contracting officer.

     (3) The reasonable cost of the preservation and protection of property as required under paragraph (b) hereof.

The total sum to be paid the contractor under this paragraph (d) shall not exceed the contract price for such work if completed.

     (e) The obligation of the Government to make any of the payments required under paragraph (d) hereof shall be subject to (1) any unsettled claims against the contractor for labor or materials, (2) deductions for the excess cost of articles purchased in accordance with paragraph (c) hereof, (3) any claim which the Government may have against the contractor, (4) deductions for any advance payments, progress payments, unit payments or partial payments made to the contractor under or in connection with this contract, and (5) reasonable deductions by the Government on account of defects in the materials or workmanship of completed or partially completed work delivered hereunder or other defaults under this contract.

     (f) For the purpose of paragraph (d)(2) hereof the cost of work performed shall be determined in accordance with the Explanation of Principles for Determination of Costs under Government Contracts promulgated by the War Department and the Navy Department April, 1942. Such cost shall include as of the date of termination the cost of materials in process and the expenses of the contractor incurred in the placing of orders for materials not worked on or in process but excluding the purchase price of such materials not worked on or in process. The contractor shall make available to the Government at all reasonable times at the office of the contractor all of its books, records, documents, and other evidence bearing on the cost to the contractor of the work in process.

     (g) Excusable Delays.—The contractor shall not be charged with any liability for failure or delay in making deliveries when such failure or delay (herein called an Excusable Delay) of the contractor in making deliveries is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including but not restricted to (1) acts of God or of the public enemy, (2) acts of the Government of the United States or any state or political subdivision thereof, (3) fires, floods, explosions, earthquakes, or other catastrophes, (4) epidemics, (5) quarantine restrictions, (6) strikes, (7) freight embargoes, (8) unusually severe weather, (9) inability of the contractor to obtain equipment or material when the contracting officer determines that such inability is due to the operation of Governmental priorities, preferences or allocations of equipment or material, or (10) delays of a subcontractor or supplier in furnishing material owing to one or more of the foregoing causes, unless the contracting officer shall determine that the materials or supplies to be furnished under the subcontract are procurable from other sources, and shall have ordered the contractor to procure such materials or supplies from other sources. If the contractor shall fail to notify the contracting officer in writing of the cause of any such excusable failure or delay within ten (10) days from the date it appears that such cause will delay deliveries under this contract or within such longer period as the contracting officer or his duly authorized representative, shall, prior to the date of final settlement of the contract, specify for the giving of such notice, the contractor shall lose all right to an extension of time for delivery by reason of such cause. Promptly on receipt of such notice, the contracting officer shall ascertain the facts and extent of failure or delay, and if the contracting officer shall find that the failure or delay was occasioned by any one or more of the said causes, he shall revise the delivery schedule accordingly. The finding of fact of the contracting officer shall be final and conclusive, subject only to appeal within thirty (30) days by the contractor to the Secretary of the Navy or his duly authorized representative, whose decision on such appeal, as to the facts of the failure or delay, shall be final and conclusive.

P.

LIENS AND IDENTIFICATION.—

(a) Lien on Property under Contract.—Any and all partial or advance payments made hereunder shall be secured, when made, by a lien in favor of the Government upon the articles and things contracted for on account of all payments so made and on all material and other property acquired for or allocated to the performance of this contract, except to the extent that the Government, by virtue of any other provision of this contract, or otherwise, shall have valid title to such articles, things, materials or other property as against other creditors of the contractor. If for any reason such property is not identified by marking or segregation, the Government shall be deemed to have a lien upon any mass of property of which such property constitutes a part to the extent of the portion of such mass represented by such property. Said lien is hereby established and made paramount to all other liens under the provisions of an Act approved August 22, 1911 (Public No. 41, 62nd Congress; 37 Stat. 32; 34 U.S.C. 582).

(b) Identification of Property Subject to Lien.—The contractor agrees that, to the extent determined necessary and practical by the Naval Inspector charged with the duty of inspecting the material under this contract, it will identify by marking or segregation all property which is subjected to a lien in favor of the Government by any provision of this contract in such a way as to indicate that it is subject to such lien and that it has been allocated to this contract. In any event the contractor shall maintain adequate accounting control over such property on its books and records.

INSURANCE.—

In the event that any partial or advance payments are made to the contractor and in the event that the contractor shall procure or maintain insurance upon any materials, parts, assemblies, sub-assemblies, supplies, equipment and other property upon which a lien exists in favor of the Government pursuant to the provisions of this contract, the policy or policies shall contain a loss payable clause making losses payable to the Secretary of the Navy or order. Any payments thereunder shall inure to the benefit of the Government to the extent of any loss suffered by the Government and to the contractor as to any remaining balance. The foregoing provisions shall not be deemed to require that the contractor procure or maintain any such insurance.

A-3

15

F.P.                              1171-P                          11-16-42

RENEGOTIATION PURSUANT TO SECTION 403 OF THE 6TH SUPPLEMENTAL NATIONAL DEFENSE APPROPRIA-
TION ACT, 1942, AS AMENDED.

(a) Upon the written request of the Secretary of the Navy at such period or
periods when in the judgment of the Secretary of the Navy the profits accruing to the
contractor under this contract can be determined with reasonable certainty, the contract
price shall be renegotiated to eliminate therefrom such amount as is found as a result of
such renegotiation to represent excessive profits.

(b) Any profits found as a result of such renegotiation to be excessive and not
eliminated through reductions in the contract price hereunder or otherwise, shall, as the
Secretary of the Navy may direct, (1) be retained by the Government from amounts otherwise
due the contractor, or (2) be repaid by the contractor to the Government, if such excessive
profits have been paid to the contractor.

(c) The contractor shall require the insertion of the following provisions in
each subcontract for an amount in excess of $100,000 directly entered into by the contract-
or under this contract:

(1) Upon the written request of the Secretary of the Navy at such period or
periods when in the judgment of the Secretary the profits accruing under this con-
tract can be determined with reasonable certainty, the contract price shall be re-
negotiated by the Secretary of the Navy and _____
                                                        (Subcontractor)
to eliminate therefrom such amount as is found as a result of such renegotiation to
represent excessive profits.

(2) Any profits found as a result of such renegotiation to be excessive and
not eliminated through reductions in the contract price hereunder or otherwise,
shall, as the Secretary of the Navy may direct, (i) be retained by _____
_____ for the Government, or (ii) be repaid by
        (Contractor)
_____ _____ to the Government, if such excessive
        (Subcontractor)
profits have been paid to _____.
                                        (Subcontractor)

(3) _____ is hereby relieved from any lia-
                (Contractor)
bility to _____ on account of any amount
                        (Subcontractor)
retained or repaid pursuant to paragraph (2) above.

(4) _____ shall, upon the direction of the
                (Subcontractor)
Secretary of the Navy, require the insertion in any subcontract made hereunder,
of contract provisions conforming substantially to the provisions of this Section.

(5) Any renegotiation under this Section shall be conducted pursuant to the pro-
visions of Section 403 of the Sixth Supplemental National Defense Appropriation Act,
1942, as amended.

(d) Any profits under any subcontract hereunder which are found as a result of
renegotiation to be excessive and which the contractor is directed by the Secretary of the
Navy to withhold from payments otherwise due the subcontractor and actually unpaid at the
time of receipt of such direction, shall, as the Secretary of the Navy may direct, (1) be
retained by the Government from amounts otherwise due the contractor, or (2) be repaid by
the contractor to the Government.

(e) Any renegotiation under this Section shall be conducted pursuant to the pro-
visions of Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942,
as amended.

(f) For the purpose of this Section,

(1) the term "Secretary of the Navy" shall be deemed to include any authorized
representative of the Secretary of the Navy, and

(2) the term "subcontract" means any purchase order or agreement to perform
all or any part of the work or to make or furnish any article, required for the
performance of another contract or subcontract, unless exempted from the provi-
sions of Section 403, as amended, under subsection (i) thereof. The term "article",
as used in this definition, includes any material, part, assembly, machinery, equip-
ment, or other personal property.

(g) The contractor agrees that it will keep records and books of account showing
the cost of performing this contract, in accordance with sound accounting practice. The
contracting officer and his authorized representatives shall at all reasonable times have
access to all records, books of account and original evidences of cost of the contractor per-
taining to this contract. The contractor shall preserve all such records, books of account
and original evidences of cost for a period of three years after the completion or other ter-
mination of this contract and, if it is determined to renegotiate the price herein, for such
additional period as may be necessary.

1                                                    D

1183-P1                          10-17-42

PATENTS.—

      The contractor shall hold and save the Government, its officers, agents, servants, and employees, harmless from patent liability of any nature or kind, including costs and expenses, for or on account of any patented or unpatented invention made or used in the performance of this contract, including the use or disposal thereof by or on behalf of the Government:  Provided, That the foregoing shall not apply to inventions covered by applications for United States Letters Patent which, on the date of execution of this contract, are being maintained in secrecy under the provisions of Title 35, U. S. Code (1940 ed.), Section 42, as amended.

1                          E



Case 4:07-cv-02824-SBA   Document   HABIRSHAW   Filed 09/21/2007   Page 18 of 28

# CABLE AND WIRE DIVISION

## PHELPS DODGE COPPER PRODUCTS CORPORATION

Date 12-31-42

Our Number

Customer's No. NX55-1

M.S. Navy

Ship to See below

Shipping Date

Promise

via

Letter of Intent dated 11/27/42

F. O. B. Factory Freight Allowed to

Negotiation 2208-B

| Lot | Item | Type | Feet | | Destination |
|-----|------|------|------|------|-------------|
| 75 | 70 | SRIB-3(7) | 32,000 | 8209 1 | Philadelphia, Pa. |
| 75 | 3 (P) | DHFA-3 | 285,000 | 8210 2 | Brooklyn, N.Y. |
| 75 | 5 (P) | 9 | 250,000 | 8211 3 | " |
| 75 | 7 (P) | 23 | 182,000 | 8212 4 | " |
| 75 | 11 (P) | THFA-14 | 122,000 | 8213 5 | " |
| 75 | 13 (P) | FHFA-3 | 540,000 | 8214 6 | " |
| 28 | 1 (P) | TTHFA-1 | 270,000 | 8215 7 | " |
| 75 | 27 (P) | MHFF-14 | 183,000 | 8216 8 | " |
| 75 | 15 (P) | MHFA-7 | 114,000 | 8217 9 | " |
| 75 | 16 (P) | 10 | 196,000 | 8218 10 | " |
| 75 | 18 (P) | 19 | 201,000 | 8219 11 | " |
| 75 | 19 (P) | 22 | 99,000 | 8220 12 | " |
| 75 | 43 (P) | DHFA-50 | 61,500 | 8221 13 | " |
| 75 | 46 (P) | 125 | 28,000 | 8222 14 | " |
| 75 | 47 | 200 | 6,080 | 8223 15 | " |
| 75 | 52 (P) | THFA-60 | 65,000 | 8224 16 | " |
| 28 | 5 | TTHFA-15 | 111,000 | 8225 17 | " |
| 80 | 5 | 15 | 1,500 | 8226 18 | Mare Island, Calif. |
| 75 | 74 | SDGA-1000 | 20,000 | 8227 19 | Norfolk (Portsmouth) Va. |
| 76 | 50 | 1000 | 20,000 | 8228 20 | Mare Island, Calif. |
| 76 | 56 (P) | 1000 | 9,000 | 8229 21 | Puget Sound (Bremerton) Wash. |
| 75 | 76 (P) | 2000 | 1,000 | 8230 22 | Norfolk (Portsmouth) Va. |
| 76 | 58 | 2000 | 20,000 | 8231 23 | Puget Sound (Bremerton) Wash. |

For Supply Officers as above

8209/42

8231/42

Customer's No.

Signature

See P. (2)

Bill _U S Navy_    Date _12/31/42_

Ship to

Shipping Date

Via

Our Number

Customer's No. _NX ss-18589_

Promise

F. O. B. Factory Freight Allowed  to

_Inspection Schedule_
_Start in 60 days_
_700,000 ft per week_

_Priority    AA-1 (Cert. Q-112750 attached)_

_End Use - later_

_Inspection - By INM-NY_

_Walsh - Healey Act applies_

_Terms    ½ % 10 days_

_Specification    See copy of_
_Negotiation 2208-B at factory_

_250,427# Copper only required Feb. '43_

**WAR ORDER**

Customer's No. _____    Signature _G B Martin_

| | |
|---|---|
| SHIPPING DATE | TERMS - 1/2 of 1% 10 days net 30 D.O.I.<br>2% 15 prox. net end prox. month. |
| ROUTE VIA        SEE ORDER | *See order* |
| F.O.B. FACTORY FRT. ~~ALLOWED TO~~ DEST.<br>REVISED REEL CLAUSE EFFECTIVE<br>JUNE 16th APPLIES | (COMMISSION<br>(<br>(<br>( |
| MARKS           SEE ORDER | |
| SALESMAN    *Wash territory* | (1) CLAUSE ON RUBBER EXCISE TAX APPLIES |
| REFERENCE CODE NO. — | (2) CLAUSE ON ANY ADDITIONAL TAXES<br>APPLIES |
| SPECIFICATIONS   *see order* | (3) 30 DAY PRICE CLAUSE APPLIES |
| INSPECTED BY | |
| ROYALTY      —      *NONE* | |
| PREFERENCE RATING    *AA1* | |

| ROUTINE | INITIALED | DATE |
|---|---|---|
| EDITED | | 1/11 |
| CHECKED | | |
| POSTED | | |
| RELEASED | | 1/11 |
| CREDIT<br>APPROVED | | 1/12 |
| LBS. CU | 57858. | .12¢ |

PREFERENCE RATING ORDER

SERIAL NO.

EXTRA CHARGE FOR CUTTING

CERTIFICATE & USE FORM ATTACHED

END USE   *later*

*item SDGA -* (24)
*BAL -* (22)

*Refer to Serial No 266
for copper contents*

**WAR ORDER**

(This Form May Not be Reproduced)

PD-8A
2/2/42

**ORIGINAL**

War Production Board

Serial No. **Q  112750**

## PREFERENCE RATING CERTIFICATE

1. **Issued to** Phelps Dodge Copper Products Corporated
   Habirshaw Cable and Wire Division

2. **Address** 40 Wall Street
   New York  New York

3. Related contract number of initiating Government Agency **NXss-18589 Letter of Intent dated 11/27/42**

4. Government Agency which placed contract **U S Navy  Bureau of Supplies and Accounts**
   (Bureau of Ships)  Washington D C

5. **Items Covered by This Certificate**—List for each item:

| REQUIRED DELIVERY DATE | QUANTITY EACH SHIPMENT | VALUE EACH SHIPMENT | DESCRIPTION |
|---|---|---|---|
| Between 26 January 1943 and 23 February 1943 | 2,817,000 ft. | $1,793,870.70 | Heat and flame resisting cable |
| | | | INSPECTION REQUIRED |
| | | | The Inspector of Naval Material 30 Church Street New York  New York |

DEC 16 1942

**APPROVED FOR ISSUANCE**

WPB SIGNING OFFICER                    DISTRICT

6. **Authentication:** I hereby certify that the items specified in this Certificate are essential for the completion of the government contract cited herein, and that the quantities and Required Delivery Date(s) specified are not greater nor earlier than necessary for completion on time of said contract.

_____
(Signature and title of authorized official of contractor)

_____
(Date)

MARSHALL J BEVERLEY  Lt SC USNR
By direction of Paymaster General Navy
10 December 1942

7. Preference Rating [ **AA-1** ] (ANMB Code No. _____)
   is hereby assigned to the items in the quantities covered by this Certificate.  If this Certificate covers machine tools, cite Urgency Standing No. (if any) _____

This Certificate is not valid unless Authentication is signed by the Contractor to whom issued and countersigned by the appropriate United States Government Official.

(E.O. 9024, Jan. 16, 1942; 7 F. R. 329; E.O. 9040, Jan. 24, 1942; 7 F. R. 527; Sec. 2(a), Public No. 671, 76th Congress, Third Session, as amended by Public No. 89, 77th Congress, First Session.)

_____
Director of Industry Operations.

**ORIGINAL TO BE ISSUED TO AND RETAINED BY CONTRACTOR**

NAVY DEPARTMENT                    NXss-18589 (SPN-6)
Bureau of Supplies and Accounts
WASHINGTON, D.C.


9 December 1942


Phelps Dodge Copper Products Corp.
Habirshaw Cable and Wire Division
40 Wall Street
New York, New York


S i r s :

By the Navy Department's Letter of Intent NXss-18589
dated 27 November 1942, you were advised of an anticipated order for
heat and flame resisting cable.

It is hereby proposed to modify this Letter of Intent
to provide for the following additional material:

Quantity

1.  Four conductor shielded cable. - The cable shall
    be made up in accordance with Type MHFF of
    Specification 15Cl (INT) dated July 1, 1942,
    except for the following modifications:

    FIRST:   The unit conductor shall be
             Type SRI-4(41).
    SECOND:  The diameter over the wall
             of felted asbestos or of
             glass fibers shall be 0.155 in.
    THIRD:   The diameter over the braid
             shall not exceed 0.190 inch.
    FOURTH:  The assembly of four grouped
             conductors shall be covered
             with a close braid of coated
             copper wire, each wire being
             0.0063 inch in diameter.
    FIFTH:   The overall diameter of the
             finished cable shall be not
             greater than 0.6315 inch.

    Stock No. (L)15-C-100904                         5,388 feet.

2.  Six conductor shielded cable. - The cable shall
    be made up in accordance with Type MHFF of
    Specification 15Cl (INT) dated July 1, 1942,
    except for the following modifications:

Phelps Dodge Copper Products Corp.                    NXss-18589 (SPN-6)
Habirshaw Cable and Wire Division

Quantity

FIRST:   The unit conductor shall be
         Type SRI-4(41).
SECOND:  The diameter over the wall
         of felted asbestos or of
         glass fiber shall be 0.155 inch.
THIRD.   The diameter over the braid
         shall not exceed 0.190 inch.
FOURTH.  The assembly of six grouped
         conductors shall be covered with
         a close braid of coated copper
         wire, each wire being 0.0063 inch
         in diameter.
FIFTH:   The over-all diameter of the
         finished cable shall be not
         greater than 0.6515 inch.

     Stock No. (L)15-C-100906                          29,500 ft.

3.       Ten conductor shielded cable. – The cable
         shall be made up in accordance with Type
         MHFF of Specification 15C1(INT) dated
         July 1, 1942, except for the following
         modifications:

FIRST:   The unit conductor shall be
         Type SRI-4(41).
SECOND:  The diameter over the wall of
         felted asbestos or of glass
         fibers shall be 0.155 inch.
THIRD.   The diameter over the braid
         shall not exceed 0.190 inch.
FOURTH:  The assembly of ten grouped
         conductors shall be covered
         with a close braid of coated
         copper wire, each wire being
         0.0063 inch in diameter.
FIFTH.   The over-all diameter of the
         finished cable shall be not
         greater than 0.7885 inch nor
         less than 0.7000 inch.

     Stock No. (L)15-C-100910                          12,426 Ft.

                          -2-

Phelps Dodge Copper Products Corp.                    NXss-18589 (SPN-6)
Habirshaw Cable and Wire Division

                                                                    Quantity

    4.  Wire - Single conductor, synthetic resin
        insulated, 4,141 CM Spec 15C1 (INT) dated
        1 July 1942.

        Stock No. (L)15-W-2000                            42,000 Ft.

        <u>SPECIFICATIONS:</u>  Items 1 to 4 Incl.
        Above items to be furnished in
        commercial lengths, and to be first
        class in material and workmanship.

        Each shipment to be plainly marked to show:

            1.  Contract Number.
            2.  Item Number.

        A Preference rating of AA-1, (PRP 32220-D) will apply.
Delivery is to be made f.o.b. factory.  Contractor shall use best
efforts to effect delivery early in January 1943.  Appropriation
chargeable will be Naval Stock Fund.

        All other terms and conditions of the original Letter of
Intent are to remain in full force and effect:

        If the foregoing is acceptable to you, please so indicate
by signing the enclosed three copies of this letter and return them
to the Purchasing Officer immediately, thereby constituting this an
amendment to Letter of Intent NXss-18589 of 27 November 1942.

                            Respectfully

ACCEPTED: <u>FEBRUARY 25, 1943</u>              /s/ C G JAQUETTE
                                                     Purchasing Officer
PHELPS DODGE COPPER PRODUCTS CORP.                   Bureau of Supplies and Accounts
HABIRSHAW CABLE AND WIRE DIV.


By _____
    H.T.BRINTON.    VICE PRESIDENT
        (Title)

C O P Y

NXss-18589
(N-2-K-2)

NAVY DEPARTMENT
OFFICE OF INSPECTOR OF NAVAL MATERIAL
90 CHURCH ST., NEW YORK, N. Y.

January 29, 1943

Subject:    Approval of Expenditures under Letter
of Intent dated 11/27/42 for Contract
NXss-18589.

Reference:
(a)    Phelps Dodge Copper Products Corp.
ltr HTB:AR REM dated 1/26/43 to INM NY.
(b)    Photostatic copy of Letter of Intent
NXss-18589 S-2208-B (SPN-6) dated
11/27/42 to Phelps Dodge Copper Products
Corp.

Gentlemen:

Reference (a) requests this office
to approve expenditures in the sum of $854,400.00
necessary to produce cable required in reference (b).

In compliance with paragraph (b) of
reference (b), you may use this letter as your authority
to proceed at once with the expenditure of $854,400.00
contingent upon your having accepted the terms of the
associated Letter of Intent.

Very truly yours,

/s/ H. L. BRINSER
Rear Admiral, USN

Phelps Dodge Copper Products Corp.
40 Wall Street
New York City

Att: M. T. Brinton

Telephone REctor 2-4460

NAVY DEPARTMENT
OFFICE OF INSPECTOR OF NAVAL MATERIAL

May 10, 1943

30 Church St., New York, N. Y.

Subject:    Letter of Intent, Contract NXss-19589
            S-2203-B, dated November 27, 1942 - Approval
            of Expenditures

Reference:  (a)  Phelps Dodge Copper Prods.Corp.
                 ltr.NFG:RS of 5/4/43 to INM NY

Gentlemen:

        Reference (a) requests this office to approve
the expenditure of $842,400.00 in connection with the perform-
ance of work covered by the subject Letter of Intent.

        In accordance with the request contained in
reference (a) you may use this letter as your authorization
for the expenditure of $842,400.00 under the subject contract
for the purchase of the following listed items:

| Material | Quantity | Maximum Price |
|---|---|---|
| Copper | 313,000 lbs. | $133,000.00 |
| Varnish Cambric | 47,000 lbs. | 59,400.00 |
| Asbestos | 234,000 lbs. | 155,000.00 |
| Sheath Materials | 548,000 lbs. | 348,000.00 |
| Wire | 136,000 lbs. | 72,000.00 |
| Saturants | 475,000 lbs. | 175,000.00 |
| Tapes & Braids | 45,000 lbs. | 40,000.00 |
| Total | | $842,400.00 |

        Your attention is invited to the fact that all
expenditures authorized by this office are subject to detailed
review and audit for the purpose of ultimately arriving at al-
lowable expenditures under the subject Letter of Intent.

                                Very truly yours,

                                N. L. SKINNER
                                Rear Admiral, USN





Phelps Dodge Copper Products Corp.
Habirshaw Cable & Wire Division
40 Wall Street
New York, N. Y.
Attention:  Mr. E. F. Gordon

# HABIRSHAW
## CABLE AND WIRE DIVISION
### PHELPS DODGE COPPER PRODUCTS CORPORATION

Date 6/4/43

Our Number

Customer's No. NX ss-18589

Bill

Ship to  *U S Navy*

Shipping Date

Via

Promise

F.O.B. Factory Freight Allowed to

*Change order*

*Cable on above contract to be coded as follows :—*

| LOT | ITEM | TYPE | ORDER FOOTAGE | USN- 6.90 | USN 2.80 | ORIGINAL DESTINATIONS |
|---|---|---|---|---|---|---|
| 75 | 70 | SRIB-3(7) | 32,000 | 32,000 | | Philadelphia |
| 75 | 3 (P) | DHFA-3 | 285,000 | 285,000 | | Brooklyn |
| 75 | 5 (P) | — 9 | 250,000 | 250,000 | | " |
| 75 | 7 (P) | — 23 | 184,000 | 184,000 | | " |
| 75 | 11 (P) | THFA-14 | 188,000 | 188,000 | | " |
| 75 | 13 (P) | THFA-3 | 540,000 | 540,000 | | " |
| 78 | 1 (P) | TTHFA-1 | 270,000 | 270,000 | | " |
| 75 | 27 (P) | MHFF-14 | 183,000 | 183,000 | | " |
| 75 | 15 (P) | MHFA-7 | 114,000 | 114,000 | | " |
| 75 | 16 (P) | — 10 | 196,000 | 196,000 | | " |
| 75 | 18 (P) | — 19 | 201,000 | 201,000 | | " |
| 75 | 19 (P) | — 22 | 99,000 | 99,000 | | " |
| 75 | 43 (P) | DHFA-50 | 61,500 | 61,500 | | " |
| 75 | 46 (P) | — 178 | 78,000 | 78,000 | | " |
| 75 | 48 | 400 | 6,000 | 6,000 | | " |
| 75 | 52 (P) | THFA-60 | 65,000 | 65,000 | | " |
| 78 | 5 | TTHFA-15 | 111,000 | 111,000 | | " |
| 80 | 4 | — 15 | 1,500 | | 1,500 | Mare Island |
| 75 | 14 | SDGA-1000 | 20,000 | | 20,000 | Norfolk, Va |
| 76 | 50 | — 1000 | 20,000 | | 20,000 | Mare Island |
| 76 | 56 (P) | — 1000 | 9,000 | | 9,000 | Puget Sound |
| 75 | 76 (P) | — 2000 | 1,000 | | 1,000 | Norfolk Va |
| 76 | 58 | — 2000 | 20,000 | | 20,000 | Puget Sound |

Customer's No.  NX55-18589

Signature  RC de Chester

ADDRESS NAVY DEPARTMENT,
BUREAU OF SHIPS; REFER TO
FILE No.

NXs-18589 (772b)

# NAVY DEPARTMENT
## BUREAU OF SHIPS
### WASHINGTON, D. C.

D.O. 9011/42



JUN 24 1943

From:
To:     The Chief of the Bureau of Ships
        Phelps Dodge Copper Products Corporation,
        Habirshaw Cable and Wire Division,
        Yonkers, New York

VIA:    THE INSPECTOR OF NAVAL MATERIAL, NEW YORK

SUBJECT:  Contract NXs-18589 – Cable – Phelps Dodge Copper
          Products Corporation, Contractor

   1.       The maximum diameter of the ten conductor shielded
cable under the subject contract has been changed to 0.888 inch.
It has now been determined that this item will be suitable for
Navy use in short or random lengths down to a minimum length of
100 ft.

   2.       It is requested that the Bureau be notified in
the event any appreciable quantities in lengths shorter than
100 ft. are accumulated due to manufacturing difficulties.

                                        W. P. Curtiss Jr.

                              # 210

Copy to:
BUSANDA
NYNOR

          Date: 6/30/43  1st Endorsement   File NXs-18589
          From: Inspector of Naval Material    (N3-FS)  W. P. Curtiss, Jr.
                30 Church Street, New York          By direction of
                                                    ... of Bureau

             1. Forwarded

                    H. P. Salembier
                    Lieut.(jg) USNR
                    For I. N. M.