

**Public Law 91 - 596**
**91st Congress, S. 2193**
**December 29, 1970**
**As amended by Public Law 101-552,**
**§3101, November 5, 1990**

## *An Act*

To assure safe and healthful working conditions for working men and women; by authorizing enforcement of the standards developed under the Act; by assisting and encouraging the States in their efforts to assure safe and healthful working conditions; by providing for research, information, education, and training in the field of occupational safety and health; and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Occupational Safety and Health Act of 1970."

### CONGRESSIONAL FINDINGS AND PURPOSE

## Section 2.

The Congress finds that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments.

**(b)** The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources -

**(1)** by encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment, and to stimulate employers and employees to institute new and to perfect existing programs for providing safe and healthful working conditions;

**(2)** by providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions;

**(3)** by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions under the Act;

**(4)** by building upon advances already made through employer and employee initiative for providing safe and healthful working conditions;

**(5)** by providing for research in the field of occupational safety and health, including the psychological factors involved, and by developing innovative methods, techniques, and approaches for dealing with occupational safety and health problems;

**(6)** by exploring ways to discover latent diseases, establishing causal connections between diseases and work in environmental conditions, and conducting other research relating to health problems, in recognition of the fact that occupational health standards present problems often different from those involved in occupational safety;

**(7)** by providing medical criteria which will assure insofar as practicable that no employee will suffer diminished health, functional capacity, or life expectancy as a result of his work experience;

**(8)** by providing for training programs to increase the number and competence of personnel engaged in the

1

field of occupational safety and health;

**(9)**  by providing for the development and promulgation of occupational safety and health standards;

**(10)** by providing an effective enforcement program which shall include a prohibition against giving advance notice of any inspection and sanctions for any individual violating this prohibition;

**(11)**  by encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the States to assist in identifying their needs and responsibilities in the area of occupational safety and health, to develop plans in accordance with the provisions of this Act, to improve the administration and enforcement of State occupational safety and health laws, and to conduct experimental and demonstration projects in connection therewith;

**(12)** by providing for appropriate reporting procedures with respect to occupational safety and health which procedures will help achieve the objectives of this Act and accurately describe the nature of the occupational safety and health problem;

**(13)** by encouraging joint labor management efforts to reduce injuries and disease arising out of employment.


## DEFINITIONS

## Section 3.

For the purposes of this Act -

**(1)**  The term "Secretary" means the Secretary of Labor.

**(2)** The term "Commission" means the Occupational Safety and Health Review Commission established under this Act.

**(3)**  The term "commerce" means trade, traffic, commerce, transportation, or communication among the several States, or between a State and anyplace outside thereof, or within the District of Columbia, or a possession of the United States (other than the Trust Territory of the Pacific Islands), or between points in the same State but through a point outside thereof.

**(4)** The term "person" means one or more individuals, partnerships,associations, corporations, business trusts, legal representatives, or any organized group of persons.

**(5)** The term "employer" means a person engaged in a business affecting commerce who has employees, but does not include the United States or any State or political subdivision of a State  **(6)**  The term "employee" means an employee of an employer who is employed in a business of his employer which affects commerce.

**(7)**  The term "State" includes a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, and the Trust Territory of the Pacific Islands.

**(8)**  The term "occupational safety and health standard" means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment.

**(9)**  The term "national consensus standard" means any occupational safety and health standard or modification there of which (1), has been adopted and promulgated by a nationally recognized standards-producing organization under procedures where by it can be determined by the Secretary that persons interested and affected by the scope or provisions of the standard have reached substantial agreement on its adoption, (2) was formulated in a manner which afforded an opportunity for diverse views to be considered and (3) has been designated as such a standard by the Secretary, after consultation with other appropriate Federal agencies.

**(10)** The term "established Federal standard" means any operative occupational safety and health standard established by any agency of the United States and presently in effect, or contained in any Act of Congress in force on the date of enactment of this Act.

**(11)** The term "Committee" means the National Advisory Committee on Occupational Safety and Health established under this Act.

**(12)** The term "Director" means the Director of the National Institute for Occupational Safety and Health.

**(13)** The term "Institute" means the National Institute for Occupational Safety and Health established under this Act.

**(14)** The term "Workmen's Compensation Commission" means the National Commission on State Workmen's Compensation Laws established under this Act.

## APPLICABILITY OF THIS ACT

## Section 4.

**(a)**  This Act shall apply with respect to employment performed in a workplace in a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, American Samoa, Guam, the Trust Territory of the Pacific Islands, Wake Island, Outer Continental Shelf Lands defined in the Outer Continental Shelf Lands Act, Johnston Island, and the Canal Zone. The Secretary of the Interior shall, by regulation, provide for judicial enforcement of this Act by the courts established for areas in which there are no United States district courts having jurisdiction.

**(b)**     **(1)** Nothing in this Act shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 274 of the Atomic Energy Act of 1954, as amended (42 U.S.C. 2021), exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

**(2)** The safety and health standards promulgated under the Act of June 30, 1936, commonly known as the Walsh-Healey Act (41 U.S.C. 35 et seq.), the Service Contract Act of 1965 (41 U.S.C. 351 et seq.), Public Law 91-54, Act of August 9, 1969 (40 U.S.C. 333), Public Law 85-742, Act of August 23, 1958 (33 U.S.C. 941), and the National Foundation on Arts and Humanities Act (20 U.S.C. 951 et seq.) are superseded on the effective date of corresponding standards, promulgated under this Act, which are determined by the Secretary to be more effective.  Standards issued under the laws listed in this paragraph and in effect on or after the effective date of this Act shall be deemed to be occupational safety and health standards issued under this Act, as well as under such other Acts.

**(3)**   The Secretary shall, within three years after the effective date of this Act, report to the Congress his recommendations for legislation to avoid unnecessary duplication and to achieve coordination between this Act and other Federal laws.

**(4)** Nothing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

## DUTIES

## Section 5.

**(a)**  Each employer -

**(1)**  shall furnish to each of his employees employment and a place of  employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

**(2)**  shall comply with occupational safety and health standards promulgated under this Act.

**(b)**  Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct.

## OCCUPATIONAL SAFETY AND HEALTH STANDARDS

## Section 6.

**(a)**  Without regard to chapter 5 of title 5, United States Code, or to the other subsections of this section, the Secretary shall, as soon as practicable during the period beginning with the effective date of this Act and ending two years after such date, by rule promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees.  In the event of conflict among any such standards, the Secretary shall promulgate the standard which assures the greatest protection of the safety or health of  the affected employees.

**(b)**  The Secretary may by rule promulgate, modify, or revoke any occupational safety or health standard in the following manner:

**(1)**  Whenever the Secretary, upon the basis of  information submitted to him in writing by an interested person, a representative of any organization of employers or employees, a nationally recognized standards-producing organization, the Secretary of Health, Education, and Welfare, the National Institute for Occupational Safety and Health, or a State or political subdivision, or on the basis of information developed by the Secretary or other wise available to him, determines that a rule should be promulgated in order to serve the objectives of this Act, the Secretary may request the recommendations of an advisory committee appointed under section 7 of this Act.  The Secretary shall provide such an advisory committee with any proposals of  his own or of the Secretary of Health, Education, and Welfare, together with all pertinent factual information developed by the Secretary or the Secretary of  Health, Education, and Welfare, or other wise available, including the results of research, demonstrations, and experiments.  An advisory committee shall submit to the Secretary its recommendations regarding the rule to be promulgated within ninety days from the date of its appointment or within such longer or shorter period as may be prescribed by the Secretary, but in no event for a period which is longer than two hundred and seventy days.

**(2)** The Secretary shall publish a proposed rule promulgating, modifying, or revoking an occupational safety or health standard in the Federal Register and shall afford interested persons a period of thirty days after publication to submit written data or comments.  Where an advisory committee is appointed and the Secretary determines that a rule should be issued, he shall publish the proposed rule within sixty days after the submission of the advisory committee's recommendations or the expiration of the period prescribed by the Secretary for such submission.

**(3)** On or before the last day of the period provided for the submission of written data or comments under paragraph (2), any interested person may file with the Secretary written objections to the proposed rule, stating the grounds there for and requesting a public hearing on such objections. Within thirty days after the last day for filing such objections, the Secretary shall publish in the Federal Register a notice specifying the occupational safety or health standard to which objections have been filed and a hearing requested, and specifying a time and place for such hearing.

**(4)**  Within sixty days after the expiration of the period provided for the submission of written data or comments under paragraph (2), or within sixty days after the completion of any hearing held under paragraph (3), the Secretary shall issue a rule promulgating, modifying, or revoking an occupational safety or health standard or make a determination that a rule should not be issued.  Such a rule may contain a provision delaying its effective date for such period (not in excess of ninety days) as the Secretary determines may be necessary to insure that affected employers and employees will be informed of the existence of the standard and of  its terms and that employers affected are given an opportunity to familiarize themselves and their employees with the existence of the requirements of the standard.

**(5)** The Secretary, in promulgating standards dealing with toxic materials or harmful physical agents under this subsection, shall set the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to the hazard dealt with by such standard for the period of his

working life.  Development of standards under this subsection shall be based upon research, demonstrations, experiments, and such other information as may be appropriate.  In addition to the attainment of the highest degree of health and safety protection for the employee, other considerations shall be the latest available scientific data in the field, the feasibility of the standards, and experience gained under this and other health and safety laws.  Whenever practicable, the standard promulgated shall be expressed in terms of objective criteria and of the performance desired.

**(6)**   **(A)**   Any employer may apply to the Secretary for a temporary order granting a variance from a standard or any provision thereof  promulgated under this section.  Such temporary order shall be granted only if the employer files an application which meets the requirements of clause (B) and establishes that (i) he is unable to comply with a standard by its effective date because of unavailability of professional or technical personnel or of materials and equipment needed to come into compliance with the standard or because necessary construction or alteration of facilities cannot be completed by the effective date, (ii) he is taking all available steps to safeguard his employees against the hazards covered by the standard, and (iii) he has an effective program for coming into compliance with the standard as quickly as practicable.  Any temporary order issued under this paragraph shall prescribe the practices, means, methods, operations, and processes which the employer must adopt and use while the order is in effect and state in detail his program for coming into compliance with the standard.  Such a temporary order may be granted only after notice to employees and an opportunity for a hearing:  Provided, That the Secretary may issue one interim order to be effective until a decision is made on the basis of the hearing.  No temporary order may be in effect for longer than the period needed by the employer to achieve compliance with the standard or one year, which ever is shorter, except that such an order may be renewed not more that twice (I) so long as the requirements of this paragraph are met and (II) if an application for renewal is filed at least 90 days prior to the expiration date of the order.  No interim renewal of an order may remain in effect for longer than 180 days.

**(B)**   An application for  temporary order under this paragraph (6) shall contain:

    **(i)** a specification of the standard or portion there of from which the employer seeks a variance,

    **(ii)** a representation by the employer, supported by representations from qualified persons having first hand knowledge of the facts  represented, that he is unable to comply with the standard or portion there of and a detailed statement of the reasons therefor,

    **(iii)** a statement of the steps he has taken and will take (with specific dates) to protect employees against the hazard covered by the  standard,

    **(iv)** a statement of when he expects to be able to comply with the  standard and what steps he has taken and what steps he will take (with  dates specified) to come into compliance with the standard, and

    **(v)** a certification that he has informed his employees of the  application by giving a copy there of to their authorized representative,  posting a statement giving a summary of the application and specifying  where a copy may be examined at the place or places where notices to  employees are normally posted, and by other appropriate means.  A description of how employees have been informed shall be contained in the certification.  The information to employees shall also inform them of their right to petition the Secretary for a hearing.

**(C)**   The Secretary is authorized to grant a variance from any standard or portion there of whenever he determines, or the Secretary of Health, Education, and Welfare certifies, that such variance is necessary to permit an employer to participate in an experiment approved by him or the Secretary of Health, Education, and Welfare designed to demonstrate or validate new and improved techniques to safeguard the health or safety of workers.

**(7)** Any standard promulgated under this subsection shall prescribe the use of  labels or other appropriate forms of warning as are necessary to insure that employees are apprised of all hazards to which they are exposed, relevant symptoms and appropriate emergency treatment, and proper conditions and precautions of safe use or exposure.  Where appropriate, such standard shall also prescribe suitable protective equipment

and control or technological procedures to be used in connection with such hazards and shall provide for monitoring or measuring employee exposure at such locations and intervals, and in such manner as may be necessary for the protection of employees. In addition, where appropriate, any such standard shall prescribe the type and frequency of medical examinations or other tests which shall be made available, by the employer or at his cost, to employees exposed to such hazards in order to most effectively determine whether the health of such employees is adversely affected by such exposure. In the event such medical examinations are in the nature of research, as determined by the Secretary of Health, Education, and Welfare, such examinations may be furnished at the expense of the Secretary of Health, Education, and Welfare. The results of such examinations or tests shall be furnished only to the Secretary or the Secretary of Health, Education, and Welfare, and, at the request of the employee, to his physician. The Secretary, in consultation with the Secretary of Health, Education, and Welfare, may by rule promulgated pursuant to section 553 of title 5, United States Code, make appropriate modifications in the foregoing requirements relating to the use of labels or other forms of warning, monitoring or measuring, and medical examinations, as may be warranted by experience, information, or medical or technological developments acquired subsequent to the promulgation of the relevant standard.

**(8)**Whenever a rule promulgated by the Secretary differs substantially from an existing national consensus standard, the Secretary shall, at the same time, publish in the Federal Register a statement of the reasons why the rule as adopted will better effectuate the purposes of this Act than the national consensus standard.

**(c)**    **(1)**The Secretary shall provide, without regard to the requirements of chapter 5, title 5, United States Code, for an emergency temporary standard to take immediate effect upon publication in the Federal Register if he determines (A) that employees are exposed to grave danger from exposure to substances or agents determined to be toxic or physically harmful or from new hazards, and (B) that such emergency standard is necessary to protect employees from such danger.

**(2)** Such standard shall be effective until superseded by a standard promulgated in accordance with the procedures prescribed in paragraph (3) of this subsection.

**(3)** Upon publication of such standard in the Federal Register the Secretary shall commence a proceeding in accordance with section 6(b) of this Act, and the standard as published shall also serve as a proposed rule for the proceeding. The Secretary shall promulgate a standard under this paragraph no later than six months after publication of the emergency standard as provided in paragraph (2) of this subsection.

**(d)**    Any affected employer may apply to the Secretary for a rule or order for a variance from a standard promulgated under this section. Affected employees shall be given notice of each such application and an opportunity to participate in a hearing. The Secretary shall issue such rule or order if he determines on the record, after opportunity for an inspection where appropriate and a hearing, that the proponent of the variance has demonstrated by a preponderance of the evidence that the conditions, practices, means, methods, operations, or processes used or proposed to be used by an employer will provide employment and places of employment to his employees which are as safe and healthful as those which would prevail if he complied with the standard. The rule or order so issued shall prescribe the conditions the employer must maintain, and the practices, means, methods, operations, and processes which he must adopt and utilize to the extent they differ from the standard in question. Such a rule or order may be modified or revoked upon application by an employer, employees, or by the Secretary on his own motion, in the manner prescribed for its issuance under this subsection at any time after six months from its issuance.

**(e)**    Whenever the Secretary promulgates any standard, makes any rule, order, or decision, grants any exemption or extension of time, or compromises, mitigates, or settles any penalty assessed under this Act, he shall include a statement of the reasons for such action, which shall be published in the Federal Register.

**(f)**    Any person who may be adversely affected by a standard issued under this section may at any time prior to the

sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit where in such person resides or has his principal place of business, for a judicial review of such standard. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Secretary. The filing of such petition shall not, unless otherwise ordered by the court, operate as a stay of the standard. The determinations of the Secretary shall be conclusive if supported by substantial evidence in the record considered as a whole.

**(g)** In determining the priority for establishing standards under this section, the Secretary shall give due regard to the urgency of the need for mandatory safety and health standards for particular industries, trades, crafts, occupations, businesses, workplaces or work environments. The Secretary shall also give due regard to the recommendations of the Secretary of Health, Education, and Welfare regarding the need for mandatory standards in determining the priority for establishing such standards.

## ADVISORY COMMITTEES; ADMINISTRATION

## Section 7.

**(a)**   **(1)** There is hereby established a National Advisory Committee on Occupational Safety and Health consisting of twelve members appointed by the Secretary, four of whom are to be designated by the Secretary of Health, Education, and Welfare, without regard to the provisions of title 5, United States Code, governing appointments in the competitive service, and composed of representatives of management, labor, occupational safety and occupational health professions, and of the public. The Secretary shall designate one of the public members as Chairman. The members shall be selected upon the basis of their experience and competence in the field of occupational safety and health.

**(2)** The Committee shall advise, consult with, and make recommendations to the Secretary and the Secretary of Health, Education, and Welfare on matters relating to the administration of the Act. The Committee shall hold no fewer than two meetings during each calendar year. All meetings of the Committee shall be open to the public and a transcript shall be kept and made available for public inspection.

**(3)** The members of the Committee shall be compensated in accordance with the provisions of section 3109 of title 5, United States Code.

**(4)** The Secretary shall furnish to the Committee an executive secretary and such secretarial, clerical, and other services as are deemed necessary to the conduct of its business.

**(b)** An advisory committee may be appointed by the Secretary to assist him in his standard setting functions under section 6 of this Act. Each such committee shall consist of not more than fifteen members and shall include as a member one or more designees of the Secretary of Health, Education, and Welfare, and shall include among its members an equal number of persons qualified by experience and affiliation to present the view point of the employers involved, and of persons similarly qualified to present the view point of the workers involved, as well as one or more representatives of health and safety agencies of the States. An advisory committee may also include such other persons as the Secretary may appoint who are qualified by knowledge and experience to make a useful contribution to the work of such committee, including one or more representatives of professional organizations of technicians or professionals specializing in occupational safety or health, and one or more representatives of nationally recognized standards-producing organizations, but the number of persons so appointed to any such advisory committee shall not exceed the number appointed to such committee as representatives of Federal and State agencies. Persons appointed to advisory committees from private life shall be compensated in the same manner as consultants or experts under section 3109 of title 5, United States Code. The Secretary shall pay to any State which is the employer of a member of such a committee who is a representative of the health or safety agency of that State, reimbursement sufficient to cover the actual cost to the State resulting from such representative's

membership on such committee.  Any meeting of such committee shall be open to the public and an accurate record shall be kept and made available to the public.  No member of such committee (other than representatives of employers and employees) shall have an economic interest in any proposed rule.

**(c)**  In carrying out his responsibilities under this Act, the Secretary is authorized to -

>   **(1)**  use, with the consent of any Federal agency, the services, facilities, and personnel of such agency, with or without reimbursement,  and with the consent of any State or political subdivision thereof,  accept and use the services, facilities, and personnel of any agency of  such State of subdivision with reimbursement; and
>   **(2)** employ experts and consultants or organizations there of as authorized by section 3109 of title 5, United States Code, except that contracts for such employment may be renewed annually; compensate individuals so employed at rates not in excess of the rate specified at the time of service for grade G-18 under section 5332 of title 5, United States Code, including travel time, and allow them while away  from their homes or regular places of business, travel expenses (including per diem in lieu of subsistence) as authorized by section 5703 of title 5, United States Code, for persons in the Government  service employed intermittently, while so employed.

## INSPECTIONS, INVESTIGATIONS, AND RECORDKEEPING

## Section 8.

**(a)**  In order to carry out the purposes of this Act, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized -

>   **(1)** to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or  environment where work is performed by an employee of an employer; and
>   **(2)**  to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable  manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials  therein, and to question privately any such employer, owner, operator, agent or employee.

**(b)**   In making his inspections and investigations under this Act the Secretary may require the attendance and testimony of witnesses and the production of evidence under oath.  Witnesses shall be paid the same fees and mileage that are paid witnesses in the courts of the United States.  In case of a contumacy, failure, or refusal of any person to obey such an order, any district court of the United States or the United States courts of any territory or possession, within the jurisdiction of which such person is found, or resides or transacts business, upon the application by the Secretary, shall have jurisdiction to issue to such person an order requiring such person to appear to produce evidence if, as, and when so ordered, and to give testimony relating to the matter under investigation or in question, and any failure to obey such order of the court may be punished by said court as a contempt there of.

**(c)**    **(1)**  Each employer shall make, keep and preserve, and make available to the Secretary or the Secretary of Health, Education, and Welfare, such records regarding his activities relating to this Act as the Secretary, in cooperation with the Secretary of Health, Education, and Welfare,may prescribe by regulation as necessary or appropriate for the enforcement of this Act or for developing information regarding the causes and prevention of occupational accidents and illnesses. In order to carry out the provisions of this paragraph such regulations may include provisions requiring employers to conduct periodic inspections.  The Secretary shall also issue regulations requiring that employers, through posting of notices or other appropriate means, keep their employees informed of their protections and obligations under this Act, including the provisions of applicable standards.

>   **(2)**  The Secretary, in cooperation with the Secretary of Health, Education and Welfare, shall issue regulations

requiring employers to maintain accurate records of, and to make periodic reports on, work-related deaths, injuries and illnesses other than minor injuries requiring only first aid treatment and which do not involve medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job.

**(3)** The Secretary, in cooperation with the Secretary of Health, Education, and Welfare, shall issue regulations requiring employers to maintain accurate records of employee exposures to potentially toxic materials or harmful physical agents which are required to be monitored or measured under section 6. Such regulations shall provide employees or their representatives with an opportunity to observe such monitoring or measuring, and to have access to the records there of. Such regulations shall also make appropriate provision for each employee or former employee to have access to such records as will indicate his own exposure to toxic materials or harmful physical agents. Each employer shall promptly notify any employee who has been or is being exposed to toxic materials or harmful physical agents in concentrations or at levels which exceed those prescribed by an applicable occupational safety and health standard promulgated under section 6, and shall inform any employee who is being thus exposed of the corrective action being taken.

**(d)** Any information obtained by the Secretary, the Secretary of Health, Education and Welfare, or a State agency under this Act shall be obtained with a minimum burden upon employers, especially those operating small businesses. Unnecessary duplication of efforts in obtaining information shall be reduced to the maximum extent feasible.

**(e)** Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) for the purpose of aiding such inspection. Where there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

**(f)**    **(1)** Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon the request of the person giving such notice, his name and the names of individual employees referred to there in shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.

**(2)** Prior to or during any inspection of a workplace, any employees or representative of employees employed in such workplace may notify the Secretary or any representative of the Secretary responsible for conducting the inspection, in writing, of any violation of this Act which they have reason to believe exists in such workplace. The Secretary shall, by regulation, establish procedures for informal review of any refusal by a representative of the Secretary to issue a citation with respect to any such alleged violation and shall furnish the employees or representative of employees requesting such review a written statement of the reasons for the Secretary's final disposition of the case.

**(g)**    **(1)** The Secretary and Secretary of Health, Education, and Welfare are authorized to compile, analyze, and publish, either in summary or detailed form, all reports or information obtained under this section.

**(2)** The Secretary and the Secretary of Health, Education, and Welfare shall each prescribe such rules and

regulations as he may deem necessary to carry out their responsibilities under this Act, including rules and regulations dealing with the inspection of an employer's establishment.

## CITATIONS

### Section 9.

**(a)**  If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 5 of this Act, of any standard, rule or order promulgated pursuant to section 6 of this Act, or of any regulations prescribed pursuant to this Act, he shall with reasonable promptness issue a citation to the employer.  Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the Act, standard, rule, regulation, or order alleged to have been violated.  In addition, the citation shall fix a reasonable time for the abatement of the violation. The Secretary may prescribe procedures for the issuance of a notice in lieu of a citation with respect to de minimis violations which have no direct or immediate relationship to safety or health.

**(b)**  Each citation issued under this section, or a copy or copies thereof, shall be prominently posted, as prescribed in regulations issued by the Secretary, at or near each place a violation referred to in the citation occurred.

**(c)**  No citation may be issued under this section after the expiration of six months following the occurrence of any violation.

## PROCEDURE FOR ENFORCEMENT

### Section 10.

**(a)**  If, after an inspection or investigation, the Secretary issues a citation under section 9(a), he shall, within a reasonable time after the termination of such inspection or investigation, notify the employer by certified mail of the penalty, if any, proposed to be assessed under section 17 and that the employer has fifteen working days within which to notify the Secretary that he wishes to contest the citation or proposed assessment of penalty.  If, within fifteen working days from the receipt of the notice issued by the Secretary the employer fails to notify the Secretary that he intends to contest the citation or proposed assessment of penalty, and no notice is filed by any employees or representative of employees under subsection (c) within such time, the citation and the assessment, as proposed, shall be deemed a final order of the Commission and not subject to review by any court or agency.

**(b)**  If the Secretary has reason to believe that an employer has failed to correct a violation for which a citation has been issued within the period permitted for its correction (which period shall not begin to run until the entry of a final order by the Commission in the case of any review proceedings under this section initiated by the employer in good faith and not solely for delay or avoidance of penalties), the Secretary shall notify the employer by certified mail of such failure and of the penalty proposed to be assessed under section 17 by reason of such failure, and that the employer has fifteen working days within which to notify the Secretary that he wishes to contest the Secretary's notification or the proposed assessment of penalty.  If, within fifteen working days from the receipt of notification issued by the Secretary, the employer fails to notify the Secretary that he intends to contest the notification or proposed assessment of penalty, the notification and assessment, as proposed, shall be deemed a final order of the Commission and not subject to review by any court or agency.

**(c)**  If an employer notifies the Secretary that he intends to contest a citation issued under section 9(a) or notification issued under subsection(a) or (b) of this section, or if, within fifteen working days of the issuance of a citation under section 9(a), any employee or representative of employees files a notice with the Secretary alleging

that the period of time fixed in the citation for the abatement of the violation is unreasonable, the Secretary shall immediately advise the Commission of such notification, and the Commission shall afford an opportunity for a hearing (in accordance with section 554 of title 5, United States Code,but without regard to subsection (a) (3) of such section). The Commission shall there after issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty, or directing other appropriate relief, and such order shall become final thirty days after its issuance. Upon a showing by an employer of a good faith effort to comply with the abatement requirements of a citation, and that abatement has not been completed because of factors beyond his reasonable control, the Secretary, after an opportunity for a hearing as provided in this subsection, shall issue an order affirming or modifying the abatement requirements in such citation. The rules of procedure prescribed by the Commission shall provide affected employees or representatives of affected employees an opportunity to participate as parties to hearings under this subsection.

## JUDICIAL REVIEW

## Section 11.

**(a)**  Any person adversely affected or aggrieved by an order of the Commission issued under subsection (c) of section 10 may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office, or in the Court of Appeals for the District of Columbia Circuit, by filing in such court within sixty days following the issuance of such order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission and to the other parties, and there upon the Commission shall file in the court the record in the proceeding as provided in section 2112 of title 28, United States Code. Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined there in, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified. The commencement of proceedings under this subsection shall not, unless ordered by the court, operate as a stay of the order of the Commission. No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be made a part of the record. The Commission may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive, and its recommendations, if any, for the modification or setting a side of its original order. Upon the filing of the record with it, the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of title 28, United States Code. Petitions filed under this subsection shall be heard expeditiously.

**(b)**  The Secretary may also obtain review or enforcement of any final order of the Commission by filing a petition for such relief in the United States court of appeals for the circuit in which the alleged violation occurred or in which the employer has its principal office, and the provisions of subsection (a) shall govern such proceedings to the extent applicable. If no petition for review, as provided in subsection (a), is filed within sixty days after service of the Commission's order, the Commission's findings of fact and order shall be conclusive in connection with any

petition for enforcement which is filed by the Secretary after the expiration of such sixty-day period.  In any such case, as well as in the case of a noncontested citation or notification by the Secretary which has become a final order of the Commission under subsection (a) or (b) of section 10, the clerk of the court, unless otherwise ordered by the court, shall forthwith enter a decree enforcing the order and shall transmit a copy of such decree to the Secretary and the employer named in the petition.  In any contempt proceeding brought to enforce a decree of a court of appeals entered pursuant to this subsection or subsection (a),the court of appeals may assess the penalties provided in section 17, in addition to invoking any other available remedies.

**(c)**  **(1)**  No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.

**(2)** Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of  this subsection may,within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination.  Upon receipt of such complaint,the Secretary shall cause such investigation to be made as he deems appropriate.  If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person.  In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

**(3)** Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph 2 of this subsection.

## THE OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

## Section 12.

**(a)**  The Occupational Safety and Health Review Commission is hereby established.  The Commission shall be composed of three members who shall be appointed by the President, by and with the advice and consent of the Senate, from among persons who by reason of training, education, or experience are qualified to carry out the functions of the Commission under this Act.  The President shall designate one of the members of the Commission to serve as Chairman.

**(b)**  The terms of members of the Commission shall be six years except that (1) the members of the Commission first taking office shall serve, as designated by the President at the time of appointment, one for a term of two years, one for a term of four years, and one for a term of six years,and (2) a vacancy caused by the death, resignation, or removal of a member prior to the expiration of the term for which he was appointed shall be filled only for the remainder of such unexpired term.  A member of the Commission may be removed by the President for inefficiency, neglect of duty, or malfeasance in office.

**(c)**  **(1)**  Section 5314 of title 5, United States Code, is amended by adding at the end thereof the following new paragraph:

"(57) Chairman, Occupational Safety and Health Review Commission."

**(2)** Section 5315 of title 5, United States Code, is amended by adding at the end there of the following new paragraph:

"(94) Members, Occupational Safety and Health Review Commission."

**(d)**  The principal office of the Commission shall be in the District of Columbia.  Whenever the Commission deems

that the convenience of the public or of the parties may be promoted, or delay or expense may be minimized, it may hold hearings or conduct other proceedings at any other place.

**(e)** The Chairman shall be responsible on behalf of the Commission for the administrative operations of the Commission and shall appoint such hearing examiners and other employees as he deems necessary to assist in the performance of the Commission's functions and to fix their compensation in accordance with the provisions of chapter 51 and subchapter III of chapter 53 of title 5, United States Code, relating to classification and General Schedule pay rates: Provided, That assignment, removal and compensation of hearing examiners shall be in accordance with sections 3105, 3344, 5362, and 7521 of title 5, United States Code.

**(f)** For the purpose of carrying out its functions under this Act, two members of the Commission shall constitute a quorum and official action can be taken only on the affirmative vote of at least two members.

**(g)** Every official act of the Commission shall be entered of record, and its hearings and records shall be open to the public. The Commission is authorized to make such rules as are necessary for the orderly transaction of its proceedings. Unless the Commission has adopted a different rule, its proceedings shall be in accordance with the Federal Rules of Civil Procedure.

**(h)** The Commission may order testimony to be taken by deposition in any proceedings pending before it at any state of such proceeding. Any person may be compelled to appear and depose, and to produce books, papers, or documents, in the same manner as witnesses may be compelled to appear and testify and produce like documentary evidence before the Commission. Witnesses whose depositions are taken under this subsection, and the persons taking such depositions, shall be entitled to the same fees as are paid for like services in the courts of the United States.

**(i)** For the purpose of any proceeding before the Commission, the provisions of section 11 of the National Labor Relations Act (29 U.S.C.161) are hereby made applicable to the jurisdiction and powers of the Commission.

**(j)** A hearing examiner appointed by the Commission shall hear, and make a determination upon, any proceeding instituted before the Commission and any motion in connection there with, assigned to such hearing examiner by the Chairman of the Commission, and shall make a report of any such determination which constitutes his final disposition of the proceedings. The report of the hearing examiner shall become the final order of the Commission within thirty days after such report by the hearing examiner, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.

**(k)** Except as otherwise provided in this Act, the hearing examiners shall be subject to the laws governing employees in the classified civil service, except that appointments shall be made without regard to section 5108 of title 5, United States Code. Each hearing examiner shall receive compensation at a rate not less than that prescribed for G-16 under section 5332 of title 5, United States Code.

## PROCEDURES TO COUNTERACT IMMINENT DANGERS

## Section 13.

**(a)** The United States district courts shall have jurisdiction, upon petition of the Secretary, to restrain any conditions or practices in anyplace of employment which are such that a danger exists which could reasonably be expected to cause death or serious physical harm immediately or before the imminence of such danger can be eliminated through the enforcement procedures otherwise provided by this Act. Any order issued under this section may require such steps to be taken as may be necessary to avoid, correct, or remove such imminent danger

and prohibit the employment or presence of any individual in locations or under conditions where such imminent danger exists, except individuals whose presence is necessary to avoid, correct, or remove such imminent danger or to maintain the capacity of a continuous process operation to resume normal operations without a complete cessation of operations, or where a cessation of operations is necessary, to permit such to be accomplished in a safe and orderly manner.

**(b)**  Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order pending the outcome of an enforcement proceeding pursuant to this Act.  The proceeding shall be as provided by Rule 65 of the Federal Rules, Civil Procedure, except that no temporary restraining order issued without notice shall be effective for a period longer than five days.

**(c)**  Whenever and as soon as an inspector concludes that conditions or practices described in subsection (a) exist in any place of employment, he shall inform the affected employees and employers of the danger and that he is recommending to the Secretary that relief  be sought.

**(d)**  If the Secretary arbitrarily or capriciously fails to seek relief under this section, any employee who may be injured by reason of such failure, or the representative of such employees, might bring an action against the Secretary in the United States district court for the district in which the imminent danger is alleged to exist or the employer has its principal office, or for the District of Columbia, for a writ of mandamus to compel the Secretary to seek such an order and for such further relief as may be appropriate.

## REPRESENTATION IN CIVIL LITIGATION

### Section 14.
Except as provided in section 518(a) of title 28, United States Code, relating to litigation before the Supreme Court, the Solicitor of Labor may appear for and represent the Secretary in any civil litigation brought under this Act but all such litigation shall be subject to the direction and control of the Attorney General.

## CONFIDENTIALITY OF TRADE SECRETS

### Section 15.
All information reported to or otherwise obtained by the Secretary or his representative in connection with any inspection or proceeding under this Act which contains or which might reveal a trade secret referred to in section 1905 of title 18 of the United States Code shall be considered confidential for the purpose of that section, except that such information may be disclosed to other officers or employees concerned with carrying out this Act or when relevant in any proceeding under this Act.  In any such proceeding the Secretary, the Commission, or the court shall issue such orders as may be appropriate to protect the confidentiality of trade secrets.

## VARIATIONS, TOLERANCES, AND EXEMPTIONS

### Section 16.
The Secretary, on the record, after notice and opportunity for a hearing may provide such reasonable limitations and may make such rules and regulations allowing reasonable variations, tolerances, and exemptions to and from any or all provisions of this Act as he may find necessary and proper to avoid serious impairment of the national defense.  Such action shall not be in effect for more than six months without notification to affected employees and an opportunity being afforded for a hearing.

## PENALTIES

### Section 17.

**(a)** Any employer who willfully or repeatedly violates the requirements of section 5 of this Act, any standard, rule, or order promulgated pursuant to section 6 of this Act, or regulations prescribed pursuant to this Act, may be assessed a civil penalty of not more than $70,000 for each violation, but not less than $5,000 for each willful violation.

**(b)** Any employer who has received a citation for a serious violation of the requirements of section 5 of this Act, of any standard, rule, or order promulgated pursuant to section 6 of this Act, or of any regulations prescribed pursuant to this Act, shall be assessed a civil penalty of up to $7,000 for each such violation.

**(c)** Any employer who has received a citation for a violation of the requirements of section 5 of this Act, of any standard, rule, or order promulgated pursuant to section 6 of this Act, or of regulations prescribed pursuant to this Act, and such violation is specifically determined not to be of a serious nature, may be assessed a civil penalty of up to $7,000 for each violation.

**(d)** Any employer who fails to correct a violation for which a citation has been issued under section 9 (a) within the period permitted for its correction (which period shall not begin to run until the date of the final order of the Commission in the case of any review proceeding under section 10 initiated by the employer in good faith and not solely for delay or avoidance of penalties), may be assessed a civil penalty of not more than $7,000 for each day during which such failure or violation continues.

**(e)** Any employer who willfully violates any standard, rule, or order promulgated pursuant to section 6 of this Act, or of any regulations prescribed pursuant to this Act, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or by both.

**(f)** Any person who gives advance notice of any inspection to be conducted under this Act, without authority from the Secretary or his designees, shall, upon conviction, be punished by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both.

**(g)** Who ever knowingly makes any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained pursuant to this Act shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months, or by both.

**(h)**    **(1)**  Section 1114 of title 18, United States Code, is hereby amended by striking out "designated by the Secretary of Health, Education, and Welfare to conduct investigations, or inspections under the Federal Food, Drug, and Cosmetic Act" and inserting in lieu there of "or of the Department of Labor assigned to perform investigative, inspection, or law enforcement functions".

**(2)** Not withstanding the provisions of sections 1111 and 1114 of title 18, United States Code, whoever, in violation of the provisions of section 1114 of such title, kills a person while engaged in or on account of the performance of  investigative, inspection, or law enforcement functions added to such section 1114 by paragraph (1) of this subsection, and who would otherwise be subject to the penalty provisions of such section 1111, shall be punished by imprisonment for any term of years or for life.

**(i)**  Any employer who violates any of the posting requirements, as prescribed under the provisions of this Act, shall be assessed a civil penalty of up to $7,000 for each violation.

**(j)**   The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.

**(k)**  For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

**(l)**  Civil penalties owed under this Act shall be paid to the Secretary for deposit into the Treasury of the United States and shall accrue to the United States and may be recovered in a civil action in the name of the United States brought in the United States district court for the district where the violation is alleged to have occurred or where the employer has its principal office.

## STATE JURISDICTION AND STATE PLANS

## Section 18.

**(a)**  Nothing in this Act shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 6.

**(b)**   Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 6 shall submit a State plan for the development of such standards and their enforcement.

**(c)**   The Secretary shall approve the plan submitted by a State under subsection (b), or any modification thereof, if such plan in his judgement -

    **(1)** designates a State agency or agencies as the agency or agencies  responsible for administering the plan throughout the State,

    **(2)** provides for the development and enforcement of safety and health  standards relating to one or more safety or health issues, which  standards (and the enforcement of which standards) are or will be at  least as effective in providing safe and healthful employment and places  of employment as the standards promulgated under section 6 which relate  to the same issues, and which standards, when applicable to products  which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce,

    **(3)**   provides for a right of entry and inspection of all workplaces subject to the Act which is at least as effective as that provided in  section 8, and includes a prohibition on advance notice of inspections,

    **(4)**  contains satisfactory assurances that such agency or agencies  have or will have the legal authority and qualified personnel necessary  for the enforcement of such standards,

    **(5)**  gives satisfactory assurances that such State will devote  adequate funds to the administration and enforcement of such standards,

    **(6)**  contains satisfactory assurances that such State will, to the  extent permitted by its law, establish and maintain an effective and  comprehensive occupational safety and health program applicable to all  employees of public agencies of the State and its political  subdivisions, which program is as effective as the standards

contained in an approved plan, **(7)** requires employers in the State to make reports to the Secretary in the same manner and to the same extent as if the plan were not in effect, and

**(8)** provides that the State agency will make such reports to the Secretary in such form and containing such information, as the Secretary shall from time to time require.

**(d)** If the Secretary rejects a plan submitted under subsection (b), he shall afford the State submitting the plan due notice and opportunity for a hearing before so doing.

**(e)** After the Secretary approves a State plan submitted under subsection (b), he may, but shall not be required to, exercise his authority under sections 8, 9, 10, 13, and 17 with respect to comparable standards promulgated under section 6, for the period specified in the next sentence. The Secretary may exercise the authority referred to above until he determines, on the basis of actual operations under the State plan, that the criteria set forth in subsection (c) are being applied, but he shall not make such determination for at least three years after the plan's approval under subsection (c). Upon making the determination referred to in the preceding sentence, the provisions of sections 5 (a) (2), 8 (except for the purpose of carrying out subsection (f) of this section), 9, 10, 13, and 17, and standards promulgated under section 6 of this Act, shall not apply with respect to any occupational safety or health issues covered under the plan, but the Secretary may retain jurisdiction under the above provisions in any proceeding commenced under section 9 or 10 before the date of determination.

**(f)** The Secretary shall, on the basis of reports submitted by the State agency and his own inspections make a continuing evaluation of the manner in which each State having a plan approved under this section is carrying out such plan. When ever the Secretary finds, after affording due notice and opportunity for a hearing, that in the administration of the State plan there is a failure to comply substantially with any provision of the State plan (or any assurance contained therein), he shall notify the State agency of his withdrawal of approval of such plan and upon receipt of such notice such plan shall cease to be in effect, but the State may retain jurisdiction in any case commenced before the withdrawal of the plan in order to enforce standards under the plan when ever the issues involved do not relate to the reasons for the withdrawal of the plan.

**(g)** The State may obtain a review of a decision of the Secretary with drawing approval of or rejecting its plan by the United States court of appeals for the circuit in which the State is located by filing in such court within thirty days following receipt of notice of such decision a petition to modify or set aside in whole or in part the action of the Secretary. A copy of such petition shall forthwith be served upon the Secretary, and there upon the Secretary shall certify and file in the court the record upon which the decision complained of was issued as provided in section 2112 of title 28, United States Code. Unless the court finds that the Secretary's decision in rejecting a proposed State plan or with drawing his approval of such a plan is not supported by substantial evidence the court shall affirm the Secretary's decision. The judgment of the court shall be subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28,United States Code.

**(h)** The Secretary may enter into an agreement with a State under which the State will be permitted to continue to enforce one or more occupational health and safety standards in effect in such State until final action is taken by the Secretary with respect to a plan submitted by a State under subsection (b) of this section, or two years from the date of enactment of this Act, whichever is earlier.

## FEDERAL AGENCY SAFETY PROGRAMS AND RESPONSIBILITIES

### Section 19.

**(a)** It shall be the responsibility of the head of each Federal agency to establish and maintain an effective and comprehensive occupational safety and health program which is consistent with the standards promulgated under

section 6.  The head of each agency shall (after consultation with representatives of the employees thereof)

**(1)** provide safe and healthful places and conditions of employment,  consistent with the standards set under section 6;

**(2)** acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to  protect employees;

**(3)**  keep adequate records of all occupational accidents and illnesses  for proper evaluation and necessary corrective action;

**(4)** consult with the Secretary with regard to the adequacy as to form  and content of records kept pursuant to subsection (a)(3) of this  section; and

**(5)**   make an annual report to the Secretary with respect to  occupational accidents and injuries and the agency's program under this  section.  Such report shall include any report submitted under section  7902(e)(2) of title 5, United States Code.

**(b)**  The Secretary shall report to the President a summary or digest of reports submitted to him under subsection (a)(5) of this section, together with his evaluations of and recommendations derived from such reports. The President shall transmit annually to the Senate and the House of  Representatives a report of the activities of Federal agencies under this section.

**(c)**  Section 7902 (c) (1) of title 5, United States Code, is amended by inserting after "agencies" the following: "and of labor organizations representing employees".

**(d)**   The Secretary shall have access to records and reports kept and filed by Federal agencies pursuant to subsections (a) (3) and (5) of this section unless those records and reports are specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy, in which case the Secretary shall have access to such information as will not jeopardize national defense or foreign policy.

## RESEARCH AND RELATED ACTIVITIES

## Section 20.

**(a)**    **(1)**   The Secretary of Health, Education, and Welfare, after consultation with the Secretary and with other appropriate Federal departments or agencies, shall conduct (directly or by grants or contracts) research, experiments, and demonstrations relating to occupational safety and health, including studies of psychological factors involved, and relating to innovative methods, techniques, and approaches for dealing with occupational safety and health problems.

**(2)**   The Secretary of Health, Education, and Welfare shall from time to time consult with the Secretary in order to develop specific plans for such research, demonstrations, and experiments as are necessary to produce criteria, including criteria identifying toxic substances, enabling the Secretary to meet his responsibility for the formulation of safety and health standards under this Act; and the Secretary of Health, Education, and Welfare, on the basis of such research, demonstrations, and experiments and any other information available to him, shall develop and publish at least annually such criteria as will effectuate the purposes of this Act.

**(3)**   The Secretary of Health, Education, and Welfare, on the basis of such research, demonstrations, and experiments, and any other information available to him, shall develop criteria dealing with toxic materials and harmful physical agents and substances which will describe exposure levels that are safe for various periods of employment, including but not limited to the exposure levels at which no employee will suffer impaired health or functional capacities or diminished life expectancy as a result of his work experience.

**(4)**   The Secretary of Health, Education, and Welfare shall also conduct special research, experiments, and demonstrations relating to occupational safety and health as are necessary to explore new problems, including

those created by new technology in occupational safety and health, which may require ameliorative action beyond that which is otherwise provided for in the operating provisions of this Act. The Secretary of Health, Education, and Welfare shall also conduct research into the motivational and behavioral factors relating to the field of occupational safety and health.

**(5)**  The Secretary of Health, Education, and Welfare, in order to comply with his responsibilities under paragraph (2), and in order to develop needed information regarding potentially toxic substances or harmful physical agents, may prescribe regulations requiring employers to measure, record, and make reports on the exposure of employees to substances or physical agents which the Secretary of Health, Education, and Welfare reasonably believes may endanger the health or safety of employees. The Secretary of Health, Education, and Welfare also is authorized to establish such programs of medical examinations and tests as may be necessary for determining the incidence of occupational illnesses and the susceptibility of employees to such illnesses. Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those who object there to on religious grounds, except where such is necessary for the protection of the health or safety of others. Upon the request of any employer who is required to measure and record exposure of employees to substances or physical agents as provided under this subsection, the Secretary of Health, Education, and Welfare shall furnish full financial or other assistance to such employer for the purpose of defraying any additional expense incurred by him in carrying out the measuring and recording as provided in this subsection.

**(6)**  The Secretary of Health, Education, and Welfare shall publish within six months of enactment of this Act and there after as needed but at least annually a list of all known toxic substances by generic family or other useful grouping, and the concentrations at which such toxicity is known to occur. He shall determine following a written request by any employer or authorized representative of employees, specifying with reasonable particularity the grounds on which the request is made, whether any substance normally found in the place of employment has potentially toxic effects in such concentrations as used or found; and shall submit such determination both to employers and affected employees as soon as possible. If the Secretary of Health, Education, and Welfare determines that any substance is potentially toxic at the concentrations in which it is used or found in a place of employment, and such substance is not covered by an occupational safety or health standard promulgated under section 6, the Secretary of Health, Education, and Welfare shall immediately submit such determination to the Secretary, together with all pertinent criteria.

**(7)** Within two years of enactment of the Act, and annually there after the Secretary of Health, Education, and Welfare shall conduct and publish industry wide studies of the effect of chronic or low-level exposure to industrial materials, processes, and stresses on the potential for illness, disease, or loss of functional capacity in aging adults.

**(b)**  The Secretary of Health, Education, and Welfare is authorized to make inspections and question employers and employees as provided in section 8 of this Act in order to carry out his functions and responsibilities under this section.

**(c)**  The Secretary is authorized to enter into contracts, agreements, or other arrangements with appropriate public agencies or private organizations for the purpose of conducting studies relating to his responsibilities under this Act. In carrying out his responsibilities under this subsection, the Secretary shall cooperate with the Secretary of Health, Education, and Welfare in order to avoid any duplication of efforts under this section.

**(d)**  Information obtained by the Secretary and the Secretary of Health, Education, and Welfare under this section shall be disseminated by the Secretary to employers and employees and organizations thereof.

**(e)**  The functions of the Secretary of Health, Education, and Welfare under this Act shall, to the extent feasible, be delegated to the Director of the National Institute for Occupational Safety and Health established by section 22 of this Act.

## TRAINING AND EMPLOYEE EDUCATION

## Section 21.

**(a)**   The Secretary of Health, Education, and Welfare, after consultation with the Secretary and with other appropriate Federal departments and agencies, shall conduct, directly or by grants or contracts (1) education programs to provide an adequate supply of qualified personnel to carry out the purposes of this Act, and (2) informational programs on the importance of and proper use of adequate safety and health equipment.

**(b)**   The Secretary is also authorized to conduct, directly or by grants or contracts, short-term training of personnel engaged in work related to his responsibilities under this Act.

**(c)**   The Secretary, in consultation with the Secretary of Health, Education, and Welfare, shall (1) provide for the establishment and supervision of programs for the education and training of employers and employees in the recognition, avoidance, and prevention of unsafe or unhealthful working conditions in employments covered by this Act, and (2) consult with and advise employers and employees, and organizations representing employers and employees as to effective means of preventing occupational injuries and illnesses.

## NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH

## Section 22.

**(a)**   It is the purpose of this section to establish a National Institute for Occupational Safety and Health in the Department of Health, Education, and Welfare in order to carry out the policy set forth in section 2 of this Act and to perform the functions of the Secretary of Health, Education, and Welfare under sections 20 and 21 of this Act.

**(b)**   There is hereby established in the Department of Health, Education,and Welfare a National Institute for Occupational Safety and Health.  The Institute shall be headed by a Director who shall be appointed by the Secretary of Health, Education, and Welfare, and who shall serve for a term of six years unless previously removed by the Secretary of Health, Education, and Welfare.

**(c)**   The Institute is authorized to -
    **(1)**  develop and establish recommended occupational safety and health  standards; and
    **(2)**  perform all functions of the Secretary of Health, Education, and  Welfare under sections 20 and 21 of this Act.

**(d)**   Upon his own initiative, or upon the request of the Secretary of Health, Education, and Welfare, the Director is authorized (1) to conduct such research and experimental programs as he determines are necessary for the development of criteria for new and improved occupational safety and health standards, and (2) after consideration of the results of such research and experimental programs make recommendations concerning new or improved occupational safety and health standards.  Any occupational safety and health standard recommended pursuant to this section shall immediately be forwarded to the Secretary of Labor, and to the Secretary of Health, Education, and Welfare.

**(e)**   In addition to any authority vested in the Institute by other provisions of this section, the Director, in carrying out the functions of the Institute, is authorized to -
    **(1)**  prescribe such regulations as he deems necessary governing the manner in which its functions shall be carried out;
    **(2)** receive money and other property donated, bequeathed, or devised, without condition or restriction other than that it be used for the  purposes of the Institute and to use, sell, or other wise dispose of such  property

for the purpose of carrying out its functions;

**(3)** receive (and use, sell, or otherwise dispose of, in accordance with paragraph (2)), money and other property donated, bequeathed, or devised to the Institute with a condition or restriction, including a condition that the Institute use other funds of the Institute for the purposes of the gift;

**(4)** in accordance with the civil service laws, appoint and fix the compensation of such personnel as may be necessary to carry out the provisions of this section;

**(5)** obtain the services of experts and consultants in accordance with the provisions of section 3109 of title 5, United States Code;

**(6)** accept and utilize the services of voluntary and noncompensated personnel and reimburse them for travel expenses, including per diem, as authorized by section 5703 of title 5, United States Code;

**(7)** enter into contracts, grants or other arrangements, or modifications there of to carry out the provisions of this section, and such contracts or modifications there of may be entered into without performance or other bonds, and without regard to section 3709 of the Revised Statutes, as amended (41 U.S.C. 5), or any other provision of law relating to competitive bidding;

**(8)** make advance, progress, and other payments which the Director deems necessary under this title without regard to the provisions of section 3648 of the Revised Statutes, as amended (31 U.S.C. 529); and

**(9)** make other necessary expenditures.

**(f)** The Director shall submit to the Secretary of Health, Education, and Welfare, to the President, and to the Congress an annual report of the operations of the Institute under this Act, which shall include a detailed statement of all private and public funds received and expended by it, and such recommendations as he deems appropriate.

## GRANTS TO THE STATES

## Section 23.

**(a)** The Secretary is authorized, during the fiscal year ending June 30,1971, and the two succeeding fiscal years, to make grants to the States which have designated a State agency under section 18 to assist them -

**(1)** in identifying their needs and responsibilities in the area of occupational safety and health, **(2)** in developing State plans under section 18, or

**(3)** in developing plans for -

**(A)** establishing systems for the collection of information concerning the nature and frequency of occupational injuries and diseases;

**(B)** increasing the expertise and enforcement capabilities of their personnel engaged in occupational safety and health programs; or

**(C)** otherwise improving the administration and enforcement of State occupational safety and health laws, including standards there under, consistent with the objectives of this Act.

**(b)** The Secretary is authorized, during the fiscal year ending June 30,1971, and the two succeeding fiscal years, to make grants to the States for experimental and demonstration projects consistent with the objectives set forth in subsection (a) of this section.

**(c)** The Governor of the State shall designate the appropriate State agency for receipt of any grant made by the Secretary under this section.

**(d)** Any State agency designated by the Governor of the State desiring a grant under this section shall submit an application therefore to the Secretary.

**(e)** The Secretary shall review the application, and shall, after consultation with the Secretary of Health, Education, and Welfare, approve or reject such application.

**(f)** The Federal share for each State grant under subsection (a) or (b)of this section may not exceed 90 percentum of the total cost of the application. In the event the Federal share for all States under either such subsection is not the same, the differences among the States shall be established on the basis of objective criteria.

**(g)** The Secretary is authorized to make grants to the States to assist them in administering and enforcing programs for occupational safety and health contained in State plans approved by the Secretary pursuant to section 18 of this Act. The Federal share for each State grant under this subsection may not exceed 50 percentum of the total cost to the State of such a program. The last sentence of subsection (f) shall be applicable in determining the Federal share under this subsection.

**(h)** Prior to June 30, 1973, the Secretary shall, after consultation with the Secretary of Health, Education, and Welfare, transmit a report to the President and to the Congress, describing the experience under the grant programs authorized by this section and making any recommendation she may deem appropriate.

STATISTICS

## Section 24.

**(a)** In order to further the purposes of this Act, the Secretary, in consultation with the Secretary of Health, Education, and Welfare, shall develop and maintain an effective program of collection, compilation, and analysis of occupational safety and health statistics. Such program may cover all employments whether or not subject to any other provisions of this Act but shall not cover employments excluded by section 4 of the Act.The Secretary shall compile accurate statistics on work injuries and illnesses which shall include all disabling, serious, or significant injuries and illnesses, whether or not involving loss of time from work, other than minor injuries requiring only first aid treatment and which do not involve medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job.

**(b)** To carry out his duties under subsection (a) of this section, the Secretary may -

**(1)** promote, encourage, or directly engage in programs of studies, information and communication concerning occupational safety and health statistics;

**(2)** make grants to States or political subdivisions there of in order to assist them in developing and administering programs dealing with occupational safety and health statistics; and

**(3)** arrange, through grants or contracts, for the conduct of such research and investigations as give promise of furthering the objectives of this section.

**(c)** The Federal share for each grant under subsection (b) of this section may be up to 50 percentum of the State's total cost.

**(d)** The Secretary may, with the consent of any State or political subdivision there of, accept and use the services, facilities, and employees of the agencies of such State or political subdivision, with or without reimbursement, in order to assist him in carrying out his functions under this section.

**(e)** On the basis of the records made and kept pursuant to section 8(c) of this Act, employers shall file such reports with the Secretary as he shall prescribe by regulation, as necessary to carry out his functions under this Act.

**(f)** Agreements between the Department of Labor and States pertaining to the collection of occupational safety and health statistics already in effect on the effective date of this Act shall remain in effect until superseded by grants or contracts made under this Act.

## AUDITS

### Section 25.

**(a)**  Each recipient of a grant under this Act shall keep such records as the Secretary or the Secretary of Health, Education, and Welfare shall prescribe, including records which fully disclose the amount and disposition by such recipient of the proceeds of such grant, the total cost of the project or under taking in connection with which such grant is made or used, and the amount of that portion of the cost of the project or under taking supplied by other sources, and such other records as will facilitate an effective audit.

**(b)**  The Secretary or the Secretary of Health, Education, and Welfare, and the Comptroller General of the United States, or any of their duly authorized representatives, shall have access for the purpose of audit and examination to any books, documents, papers, and records of the recipients of any grant under this Act that are pertinent to any such grant.

## ANNUAL REPORT

### Section 26.

Within one hundred and twenty days following the convening of each regular session of each Congress, the Secretary and the Secretary of Health, Education, and Welfare shall each prepare and submit to the President for transmittal to the Congress a report upon the subject matter of this Act, the progress toward achievement of the purpose of this Act, the needs and requirements in the field of occupational safety and health, and any other relevant information.  Such reports shall include information regarding occupational safety and health standards, and criteria for such standards, developed during the preceding year; evaluation of standards and criteria previously developed under this Act, defining areas of emphasis for new criteria and standards; an evaluation of the degree of observance of applicable occupational safety and health standards, and a summary of inspection and enforcement activity undertaken; analysis and evaluation of research activities for which results have been obtained under governmental and nongovernmental sponsorship; an analysis of major occupational diseases; evaluation of available control and measurement technology for hazards for which standards or criteria have been developed during the preceding year; description of cooperative efforts undertaken between Government agencies and other interested parties in the implementation of this Act during the preceding year; a progress report on the development of an adequate supply of trained manpower in the field of occupational safety and health, including estimates of future needs and the efforts being made by Government and others to meet those needs; listing of all toxic substances in industrial usage for which labeling requirements, criteria, or standards have not yet been established; and such recommendations for additional legislation as are deemed necessary to protect the safety and health of the worker and improve the administration of this Act.

## NATIONAL COMMISSION ON STATE WORKMEN'S COMPENSATION LAWS

### Section 27.

**(a)**    **(1)**  The Congress hereby finds and declares that -

**(A)**  the vast majority of American workers, and their families, are dependent on workmen's compensation for their basic economic security in  the event such workers suffer disabling injury or death in the course of  their employment; and that the full protection of American workers from job-related injury or death requires an adequate, prompt, and equitable system of workmen's compensation as well as an effective program of  occupational health and safety regulation; and

**(B)**in recent years serious questions have been raised concerning the  fairness and adequacy of present workmen's compensation laws in the light of the growth of the economy, the changing nature of the labor force, increases in medical knowledge, changes in the hazards associated  with various types of

employment, new technology creating new risks to health and safety, and increases in the general level of wages and the cost of living.

(2) The purpose of this section is to authorize an effective study and objective evaluation of State workmen's compensation laws in order to determine if such laws provide an adequate, prompt, and equitable system of compensation for injury or death arising out of or in the course of employment.

**(b)** There is hereby established a National Commission on State Workmen's Compensation Laws.

**(c)** **(1)** The Workmen's Compensation Commission shall be composed of fifteen members to be appointed by the President from among members of State workmen's compensation boards, representatives of insurance carriers, business, labor, members of the medical profession having experience in industrial medicine or in workmen's compensation cases, educators having special expertise in the field of workmen's compensation, and representatives of the general public. The Secretary, the Secretary of Commerce, and the Secretary of Health, Education, and Welfare shall be ex officio members of the Workmen's Compensation Commission:

**(2)** Any vacancy in the Workmen's Compensation Commission shall not affect its powers.

**(3)** The President shall designate one of the members to serve as Chairman and one to serve as Vice Chairman of the Workmen's Compensation Commission.

**(4)** Eight members of the Workmen's Compensation Commission shall constitute a quorum.

**(d)** **(1)** The Workmen's Compensation Commission shall undertake a comprehensive study and evaluation of State workmen's compensation laws in order to determine if such laws provide an adequate, prompt, and equitable system of compensation. Such study and evaluation shall include, without being limited to, the following subjects: (A) the amount and duration of permanent and temporary disability benefits and the criteria for determining the maximum limitations there on, (B) the amount and duration of medical benefits and provisions insuring adequate medical care and free choice of physician, (C) the extent of coverage of workers, including exemptions based on numbers or type of employment, (D) standards for determining which injuries or diseases should be deemed compensable, (E) rehabilitation, (F) coverage under second or subsequent injury funds, (G) time limits on filing claims, (H) waiting periods, (I) compulsory or elective coverage, (J) administration, (K) legal expenses, (L) the feasibility and desirability of a uniform system of reporting information concerning job-related injuries and diseases and the operation of workmen's compensation laws, (M) the resolution of conflict of laws, extraterritoriality and similar problems arising from claims with multistate aspects, (N) the extent to which private insurance carriers are excluded from supplying workmen's compensation coverage and the desirability of such exclusionary practices, to the extent they are found to exist, (O) the relationship between workmen's compensation on the one hand, and old-age, disability, and survivors insurance and other types of insurance, public or private, on the other hand, (P) methods of implementing the recommendations of the Commission.

**(2)** The Workmen's Compensation Commission shall transmit to the President and to the Congress not later than July 31, 1972, a final report containing a detailed statement of the findings and conclusions of the Commission, together with such recommendations as it deems advisable.

**(e)** **(1)** The Workmen's Compensation Commission or, on the authorization of the Workmen's Compensation Commission, any subcommittee or members there of, may, for the purpose of carrying out the provisions of this title, hold such hearings, take such testimony, and sit and act at such times and places as the Workmen's Compensation Commission deems advisable. Any member authorized by the Workmen's Compensation Commission may administer oaths or affirmations to witnesses appearing before the Workmen's Compensation Commission or any subcommittee or members thereof.

**(2)** Each department, agency, and instrumentality of the executive branch of the Government, including independent agencies, is authorized and directed to furnish to the Workmen's Compensation Commission, upon request made by the Chairman or Vice Chairman, such information as the Workmen's Compensation Commission deems necessary to carry out its functions under this section.

**(f)** Subject to such rules and regulations as may be adopted by the Workmen's Compensation Commission, the Chairman shall have the power to -

**(1)** appoint and fix the compensation of an executive director, and such additional staff personnel as he deems necessary, without regard to  the provisions of title 5, United States Code, governing appointments in the competitive service, and without regard to the provisions of chapter 51 and subchapter III of chapter 53 of such title relating to classification and General Schedule pay rates, but at rates not in excess of the maximum rate for G-18 of the General Schedule under section 5332 of such title, and

(2) procure temporary and intermittent services to the same extent as is authorized by section 3109 of title 5, United States Code.

**(g)** The Workmen's Compensation Commission is authorized to enter into contracts with Federal or State agencies, private firms, institutions, and individuals for the conduct of research or surveys, the preparation of reports, and other activities necessary to the discharge of its duties.

**(h)** Members of the Workmen's Compensation Commission shall receive compensation for each day they are engaged in the performance of their duties as members of the Workmen's Compensation Commission at the daily rate prescribed for G-18 under section 5332 of title 5, United States Code, and shall be entitled to reimbursement for travel, subsistence, and other necessary expenses incurred by them in the performance of their duties as members of the Workmen's Compensation Commission.

**(i)** There are hereby authorized to be appropriated such sums as may be necessary to carry out the provisions of this section.

**(j)** On the ninetieth day after the date of submission of  its final report to the President, the Workmen's Compensation Commission shall cease to exist.

## ECONOMIC ASSISTANCE TO SMALL BUSINESSES

## Section 28.

**(a)** Section 7(b) of the Small Business Act, as amended, is amended -

**(1)** by striking out the period at the end of "paragraph (5)" and inserting in lieu thereof "; and"; and;

**(2)** by adding after paragraph (5) a new paragraph as follows:  "(6)  to make such loans (either directly or in cooperation with banks or other lending institutions through agreements to participate on an immediate or deferred basis) as the Administration may determine to be necessary or appropriate to assist any small business concern in effecting additions to or alterations in the equipment, facilities, or methods of operation of such business in order to comply with the applicable standards promulgated pursuant to section 6 of the Occupational Safety and Health Act of 1970 or standards adopted by a State pursuant to a plan approved under section 18 of the Occupational Safety and Health Act of 1970, if  the Administration determines that such concern is likely to suffer substantial economic injury without assistance under this paragraph."

**(b)** The third sentence of  section 7(b) of the Small Business Act, as amended, is amended by striking out "or (5)" after "paragraph  (3)"  and inserting a comma followed by "(5) or (6)".

**(c)** Section 4 (c) (1) of the Small Business Act, as amended, is amended by inserting "7 (b) (6)," after "7 (b) (5),".

**(d)** Loans may also be made or guaranteed for the purposes set forth in section 7 (b) (6) of the Small Business Act, as amended, pursuant to the provisions of section 202 of the Public Works and Economic Development Act of 1965, as amended.

## ADDITIONAL ASSISTANT SECRETARY OF LABOR

### Section 29.

**(a)** Section 2 of the Act of April 17, 1946 (60 Stat. 91) as amended (29 U.S.C. 553) is amended by -

(1) striking out "four" in the first sentence of such section and inserting in lieu thereof "five"; and

(2) adding at the end there of the following new sentence, "One of such Assistant Secretaries shall be an Assistant Secretary of Labor for Occupational Safety and Health.".

**(b)** Paragraph (20) of section 5315 of title 5, United States Code, is amended by striking out "(4)" and inserting in lieu there of "(5)".

## ADDITIONAL POSITIONS

### Section 30.

Section 5108(c) of title 5, United States Code, is amended by -

(1) striking out the word "and" at the end of paragraph (8);

(2) striking out the period at the end of paragraph (9) and inserting in lieu there of a semicolon and the word "and"; and

(3) by adding immediately after paragraph (9) the following new paragraph:

"(10)(A) the Secretary of Labor, subject to the standards and procedures prescribed by this chapter, may place an additional twenty-five positions in the Department of Labor in G-16, 17, and 18 for the purposes of carrying out his responsibilities under the Occupational Safety and Health Act of 1970;

"(B) the Occupational Safety and Health Review Commission, subject to the standards and procedures prescribed by this chapter, may place ten positions in G-16, 17, and 18 in carrying out its functions under the Occupational Safety and Health Act of 1970."

## EMERGENCY LOCATOR BEACONS

### Section 31.

Section 601 of the Federal Aviation Act of 1958 is amended by inserting at the end thereof a new subsection as follows:

"Emergency Locator Beacons

"(d)(1) Except with respect to aircraft described in paragraph (2) of this subsection, minimum standards pursuant to this section shall include a requirement that emergency locator beacons shall be installed -

"(A) on any fixed-wing, powered aircraft for use in air commerce the manufacture of which is completed, or which is imported into the United States, after one year following the date of enactment of this subsection; and

"(B) on any fixed-wing, powered aircraft used in air commerce after three years following such date.

"(2) The provisions of this subsection shall not apply to jet-powered aircraft; aircraft used in air transportation (other than air taxis and charter aircraft); military aircraft; aircraft used solely for training purposes not involving flights more than twenty miles from its base; and aircraft used for the aerial application of chemicals."

## SEPARABILITY

### Section 32.

If any provision of this Act, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Act, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

## APPROPRIATIONS

### Section 33.

There are authorized to be appropriated to carry out this Act for each fiscal year such sums as the Congress shall deem necessary.

## EFFECTIVE DATE

### Section 34.

This Act shall take effect one hundred and twenty days after the date of its enactment.

Approved December 29, 1970.
Amended November 5, 1990.

LEGISLATIVE HISTORY:

HOUSE REPORTS:  No. 91-1291 accompanying H.R. 16785 (Comm. on Education and Labor) and No. 91-1765 (Comm. of Conference).

SENATE REPORT:  No. 91-1282 (Comm. on Labor and Public Welfare).

CONGRESSIONAL RECORD, Vol. 116 (1970):
     Oct. 13, Nov. 16, 17, considered and passed Senate.
     Nov. 23, 24, considered and passed House, amended, in lieu of H.R.      16785.
     Dec. 16, Senate agreed to conference report.
     Dec. 17, House agreed to conference report.

**Presidential Documents**
**Executive Order 12196. February 26, 1980**
**Occupational Safety and Health Programs for Federal Employees**

By the authority vested in me as President by the Constitution and statutes of the United States of America, including Section 7902(c) of Title 5 of the United States Code and in accord with Section 19 of the Occupational Safety and Health Act of 1970, as amended (29 U.S.C. 668), it is ordered:

**1-1  Scope of this Order.**

1-101.  This order applies to all agencies of the Executive Branch except military personnel and uniquely military equipment, systems, and operations.

1-102.  For the purposes of this order, the term "agency" means an Executive department, as defined in j U.S.C. 101, or any employing unit or authority of the Federal government, other than those of the judicial and legislative branches. Since section 19 of the Occupational Safety and Health Act ("the Act") covers all Federal employees, however, the Secretary of Labor ("the Secretary") shall cooperate and consult with the heads of agencies in the legislative and judicial branches of the government to help them adopt safety and health programs.

**1-2.  Heads of Agencies.**

1-201.  The head of each agency shall:

(a)     Furnish to employees places and conditions of employment that are free from recognized hazards that are causing or are likely to cause death or serious physical harm.

(b)     Operate an occupational safety and health program in accordance with the requirements of this order and basic program elements promulgated by the Secretary.

(c)     Designate an agency official with sufficient authority to represent the interest and support of

the agency head to be responsible for the management and administration of the agency occupational safety and health program.

(d)     Comply with all standards issued under section 6 of the Act, except where the Secretary approves compliance with alternative standards. When an agency head determines it necessary to apply a different standard, that agency head shall, after consultation with appropriate occupational safety and health committees where established, notify the Secretary and provide justification that equivalent or greater protection will be assured by the alternate standard.

(e)     Assure prompt abatement of unsafe or unhealthy working conditions. Whenever an agency

cannot promptly abate such conditions, it shall develop an abatement plan setting forth a timetable for abatement and a summary of interim steps to protect employees. Employees exposed to the conditions shall be informed of the provisions of the plan. When a hazard cannot be abated without assistance of the General Services Administration or other Federal lessor agency, an agency shall act with the lessor agency to secure abatement.

(f)    Establish procedures to assure that no employee is subject to restraint, interference, coercion,
        discrimination or reprisal for filing a report of an unsafe or unhealthy working condition, or other participation in agency occupational safety and health program activities.

(g)    Assure that periodic inspections of all agency workplaces are performed by personnel with equipment and competence to recognize hazards.

(h)    Assure response to employee reports of hazardous conditions and require inspections within
        twenty-four hours for imminent dangers, three working days for potential serious conditions, and twenty working days for other conditions. Assure the right to anonymity of those making the reports.

(i)    Assure that employee representatives accompany inspections of agency workplaces.

(j)    Operate an occupational safety and health management information system, which shall include the maintenance of such records as the Secretary may require.

(k)    Provide safety and health training for supervisory employees, employees responsible for conducting occupational safety and health inspections, all members of occupational safety and health committees where established, and other employees.

(1)    Submit to the Secretary an annual report on the agency occupational safety and health program that includes information the Secretary prescribes.

## 1-3. Occupational Safety and Health Committees.

1-301.  Agency heads may establish occupational safety and health committees. If committees are established, they shall be established at both the national level and, for agencies with field or regional offices, other appropriate levels. The committees shall be composed of representatives of management and an equal number of nonmanagement employees or their representatives. Where there are exclusive bargaining representatives for employees at the national or other level in an agency, such representatives shall select the appropriate nonmanagement members of the committee.

1-302.  The committees shall, except where prohibited by law,

(a)    Have access to agency information relevant to their duties, including information on the nature and hazardousness of substances in agency workplaces.

2

(b)     Monitor performance, including agency inspections, of the agency safety and health programs
>       at the level they are established.

(c)     Consult and advise the agency on the operation of the program.

1-303.  A Committee may request the Secretary of Labor to conduct an evaluation or inspection pursuant to this order if half of a Committee is not substantially satisfied with an agency's response to a report of hazardous working conditions.

## 1-4.  Department of Labor.

1-401.  The Secretary of Labor shall:

(a)     Provide leadership and guidance to the heads of agencies to assist them with their occupational safety and health responsibilities.

(b)     Maintain liaison with the Office of Management and Budget in matters relating to this order
>       and coordinate the activities of the Department with those of other agencies that have responsibilities or functions related to Federal employee safety and health, including the Office of Personnel Management, the Department of Health, Education, and Welfare, and the General Services Administration.

(c)     Issue, subject to the approval of the Director of the Office of Management and Budget, and in
>       consultation with the Federal Advisory Council on Occupational Safety and Health, a set of basic program elements. The program elements shall help agency heads establish occupational safety and health committees and operate effective occupational safety and health programs, and shall provide flexibility to each agency head to implement a program consistent with its mission, size and organization. Upon request of an agency head, and after consultation with the Federal Advisory Council on Occupational Safety and Health, the Secretary may approve alternate program elements.

(d)     Prescribe recordkeeping and reporting requirements.

(e)     Assist agencies by providing training materials, and by conducting training programs upon request and with reimbursement.

(f)     Facilitate the exchange of ideas and information throughout the government about occupational safety and health.

(g)     Provide technical services to agencies upon request, where the Secretary deems necessary, and with reimbursement. These services may include studies of accidents, causes of injury and illness, identification of unsafe and unhealthful working conditions, and means to abate hazards.

(h)     Evaluate the occupational safety and health programs of agencies and promptly submit reports to the agency heads. The evaluations shall be conducted through such scheduled headquarters or field reviews, studies or inspections as the Secretary deems necessary, at least annually for the larger or more hazardous agencies or operations, and as the Secretary deems appropriate for the smaller or less hazardous agencies.

(i)     Conduct unannounced inspections of agency workplaces when the Secretary determines necessary if an agency does not have occupational safety and health committees; or in response to reports of unsafe or unhealthful working conditions, upon request of occupational safety and health committees under Section 1-3; or, in the case of a report of an imminent danger, when such a committee has not responded to an employee who has alleged to it that the agency has not adequately responded to a report as required in 1-201 (h). When the Secretary or his designee performs an inspection and discovers unsafe or unhealthy conditions, a violation of any provisions of this order, or any safety or health standards adopted by an agency pursuant to this order, or any program element approved by the Secretary, he shall promptly issue a report to the head of the agency and to the appropriate occupational safety and health committee, if any. The report shall describe the nature of the findings and may make recommendations for correcting the violation.

(j)     Submit to the President each year a summary report of the status of the occupational safety

and health of Federal employees, and, together with agency response, evaluations of individual agency progress and problems in correcting unsafe and unhealthful working conditions, and recommendations for improving their performance.

(k)     Submit to the President unresolved disagreements between the Secretary and agency heads,

with recommendations.

(1)     Enter into agreements or other arrangements as necessary or appropriate with the National Institute for Occupational Safety and Health and delegate to it the inspection and investigation authority provided under this section.

## 1-5.  The Federal Advisory Council on Occupational Safety ant Health.

1-501. The Federal Advisory Council on Occupational Safety and Health, established pursuant to Executive Order No. 11612, is continued. It shall advise the Secretary in carrying out responsibilities under this order. The Council shall consist of sixteen members appointed by the Secretary, of whom eight shall be representatives of Federal agencies and eight shall be representatives of labor organizations representing Federal employees. The members shall serve three-year terms with the terms of five or six members expiring each year, provided this Council is renewed every two years in accordance with the Federal Advisory Committee Act. The members currently serving on the Council shall be deemed to be its initial members under this order and their terms shall expire in accordance with the terms of their appointment.

1-502. The Secretary, or a designee, shall serve as the Chairman of the Council, and shall prescribe rules for the conduct of its business.

1-503. The Secretary shall make available necessary office space and furnish the Council necessary equipment, supplies, and staff services, and shall perform such functions with respect to the Council as may be required by the Federal Advisory Committee Act, as amended (5 U.S.C. App. I).

**1-6.  General Services Administration.**

1-601.  Within six months of the effective date of this order the Secretary of Labor and the Administrator of the General Services Administration shall initiate a study of conflicts that may exist in their standards and other requirements affecting Federal employee safety and health, and shall establish a procedure for resolving conflicting standards for space leased by the General Services Administration.

1-602.  In order to assist the agencies in carrying out their duties under Section 19 of the Act and this order the Administrator shall:

(a)      Upon request, require personnel of the General Services Administration to accompany the Secretary or an agency head on any inspection or investigation conducted pursuant to this order of a facility subject to the authority of the General Services Administration.

(b)      Assure prompt attention to reports from agencies of unsafe or unhealthy conditions of facilities subject to the authority of the General Services Administration; where abatement cannot be promptly effected, submit to the agency head a timetable for action to correct the conditions; and give priority in the allocation of resources available to the Administrator for prompt abatement of the conditions.

(c)      Procure and provide safe supplies, devices, and equipment, and establish and maintain a product safety program for those supplies, devices, equipment and services furnished to agencies, including the issuance of Material Safety Data Sheets when hazardous substances are furnished them.

**1-7.  General Provisions.**

1-701.  Employees shall be authorized official time to participate in the activities provided for by this order.

1-702.  Nothing in this order shall be construed to impair or alter the powers and duties of the Secretary or heads of other Federal agencies pursuant to Section 19 of the Occupational Safety and Health Act of 1970, Chapter 71 of Title 5 of the United States Code, Sections 7901, 7902, and 7903 of Title 5 of the United States Code, nor shall it be construed to alter any other provisions of law or Executive Order providing for collective bargaining agreements and related procedures, or affect the responsibilities of the Director of Central Intelligence to protect intelligence sources and methods (50 U.S.C. 403(d) (3) ).

1-703. Executive Order No. 11807 of September 28, 1974, is revoked.

    1-704.  This order is effective July 1, 1980.
JIMMY CARTER
The White House,
February 26, 1980.

[Filed with the Office of the Federal Register, 11:39 a.m., February 26, 1980]