UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCT
LIABILITY LITIGATION (NO. VI)         MDL Docket No. 875

---

This Document Relates to:

HELEN HUTCHISON, etc., et al.,
v.
A.W. CHESTERTON COMPANY, et al.

Northern District of California
Oakland Division
Docket No. C 07-02824 SBA
(CTO-281)

---

**OBJECTIONS AND RESPONSE TO
PLAINTIFFS' *NEW* MOTION TO REMAND TO STATE COURT**

I.   PRELIMINARY STATEMENT

Prior to the transfer of this action from the Northern District of California to this Court as part of MDL No. 875, plaintiffs filed a motion to remand to state court. Defendant Phelps Dodge Industries, Inc. (PDI) filed preliminary opposition statements noting procedural developments and thereafter filed, with the above case caption, its brief and declarations in opposition to plaintiffs' motion. Because these documents are case-specific to *Hutchison*, PDI e-filed its opposition in the *Hutchison* case, using the electronic case filing (ECF) system of the Northern District of California, and forwarded chambers copies of the moving and opposition papers for consideration by this Court. Plaintiffs' motion is pending.

1

PDI has learned that plaintiffs have now filed a *new* motion to remand to state court, e-filing their *Hutchison*-specific moving papers in the ECF docket of the Eastern District of Pennsylvania for *In re: Asbestos Product Liability Litigation (No. VI)*. *See* MDL No. 875, docket entries 4870 (filed 10/15/2007) and 4878 (filed 10/17/2007).

As discussed below, PDI objects on grounds that plaintiffs' new motion is procedurally improper for several reasons—including plaintiffs' failure to serve PDI. PDI submits that the re-filing (and re-submission of chambers copies) of voluminous opposition papers would be an unnecessary and wasteful exercise.

Plaintiffs' *new* memorandum of points and authorities is essentially identical to plaintiffs' original supporting memorandum. The new memorandum has a table of contents, a few minor wording changes, and plaintiffs' account (at 2-3) of the procedural posture of the *Hutchison* case. The only substantive addition is plaintiffs' argument (at 7-9) that the records of PDI's predecessor, Phelps Dodge Copper Products Corporation (PDCPC), do not show the "superior knowledge" of the United States Navy but rather a collaborative relationship with "Phelps Dodge." For reasons discussed below, this argument is a non-sequitur, of no consequence to PDI's government contractor defense and the pending motion to remand to state court.

If, for any reason, the re-filing of a completely new set of opposition papers would be of any use to the Court, PDI respectfully requests that the Court so advise PDI, and PDI would then gladly file new opposition papers.

## II.   PLAINTIFFS' NEW MOTION IS PROCEDURALLY IMPROPER

Plaintiffs improperly filed their *new* motion in this Court's ECF docket for MDL No. 875. *Cf.* attached Exhibit 1 (*Hutchison* docket entry 18: notice from MDL

2

Docketing Clerk to N.D. Cal. Clerk to "continue to process the litigation in your court, . . .."). Plaintiff's motion is specific to the *Hutchison* case.

Plaintiffs are apparently under the misimpression that because *Hutchison* has been transferred as a tag-along action, any case-specific moving and opposition papers e-filed in the Northern District of California's ECF docket for *Hutchison* must be disregarded. *See* new memo. at 3 & n.1. Plaintiffs erroneously argue that PDI's previously filed opposition papers (filed prior to plaintiffs' *new* motion to remand) are premature "and should not be considered by this Court." *Id.*

PDI respectfully submits that plaintiffs' attempt to proceed by filing a new motion is improper. Plaintiffs cannot unilaterally withdraw and re-file a motion that has been briefed and is pending before the Court. In addition, requiring PDI to re-file in the *Hutchison* ECF docket (and re-submit chambers copies) of voluminous opposition papers would be an unnecessary and wasteful exercise. In preparing its opposition papers, PDI endeavored to limit the volume of paper filed by submitting exemplars and excerpts of Navy procurement contracts and Navy specifications, but the materials presented are still substantial, including several volumes of exhibits.

PDI also objects that plaintiffs did not serve their new motion on PDI. Because plaintiffs did not e-file their new motion in the ECF system of the Northern District of California, PDI's counsel did not receive automatic electronic service copies of plaintiffs' new moving papers (including the amended papers). Conspicuously absent from the service lists attached to plaintiffs' proofs of service by mail (of their new motion and their amended supporting papers) are any references to PDI and its counsel.

PDI still has not obtained a copy of the supporting declaration and exhibits referenced in MDL No. 875, docket entry 4870, but not filed electronically. PDI has only obtained the amended declaration and exhibits that were e-filed several days later. As compared with plaintiffs' original motion to remand, the materials added by the amended declaration and exhibits appear directed to plaintiffs' new argument that certain records of "Phelps Dodge" do not show the "superior knowledge" of the United States Navy but rather a collaborative relationship with "Phelps Dodge." As discussed below, this argument simply misses the point of the matters at issue in the government contractor defense and the removal jurisdiction of this Court.

### III. PLAINTIFFS' ADDITIONAL ARGUMENT IS OF NO CONSEQUENCE TO THEIR MOTION TO REMAND TO STATE COURT

In their new memorandum (at 7-9), plaintiffs argue that certain "Phelps Dodge" documents do not show the "superior knowledge" of the United States Navy but rather a collaborative relationship with "Phelps Dodge."[1] Plaintiffs appear to argue that private manufacturers knew as much as the Navy about how to develop improved shipboard cable. Regardless, cooperative action between the Navy and PDCPC in no way undermines PDI's government contractor defense to plaintiffs' claims.

---

[1] Plaintiffs' reference to "Phelps Dodge" is potentially misleading because plaintiffs' erroneously define "Phelps Dodge" as "Phelps Dodge/Cyprus Amax Minerals Company." *See* new memo. at 1:13-14. No such entity exists, and no such entity has been served with the summons and complaint in this case. Plaintiffs' complaint names numerous fictitiously-named "Doe" defendants. *See* amended declaration of Yvonne Huggins-McLean, Exhibit A (pdf page 6 of 50). Plaintiffs amended their complaint to sue Phelps Dodge Industries, Inc. (PDI) in place of Doe 11. *See id.* (pdf page 34 of 50). The summons was served on PDI. *See id.* (pdf page 2 of 50). PDI is the entity that removed this action to federal court. *See id.*, Exhibit B. The documents submitted by plaintiffs (*id.*, Exhibit D) appear to be a mix of Navy Bureau of Ships and PDCPC materials from various years between 1949 and 1962.

For purposes of the third prong of the defense, set forth in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988), the "knowledge" at issue is *not* knowledge about how to make better shipboard cable. Rather, the "knowledge" at issue concerns knowledge of health hazards. The third prong of *Boyle* is whether the supplier warned the United States about any dangers in the use of the equipment that were known to the supplier but not to the United States. *Id.* (It is not necessary that the Navy had "superior" knowledge.)

As set forth in PDI's opposition to plaintiff's principal motion to remand, the declaration of Dr. Betts establishes in great detail that at all relevant times the Navy had superior knowledge as to health hazards of asbestos. This point was recognized in a recent decision citing the colorable showing of a government contractor defense in the course of denying a similar motion to remand to state court. *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 2007 WL 2705757, *3 (D. Conn., Sep. 17, 2007).

> The third prong of the military contractor defense requires GE to show that, at the time of Machnik's alleged exposure to asbestos, GE did not fail to warn the Navy of any dangers associated with asbestos that were known to GE but not to the Navy. *Boyle*, 487 U.S. at 512, 108 S.Ct. 2510. GE satisfies this element through the affidavit of Lawrence Stilwell Betts, which establishes that the Navy "was well aware of the health hazards associated with the use of asbestos from the early 1920s" through a review of available military documents and other relevant publications. [Citation.] Further, Betts's affidavit provides a basis for concluding that the Navy, and not military contractors, was in the best position to know of the health hazards related to asbestos. [Citations.]

*Id.*

Furthermore, the first prong of the government contractor defense, set forth in *Boyle*, 487 U.S. at 512, is whether the United States approved reasonably precise

5

specifications. The government need not think up the specifications on its own (with or without any cooperation from private industry). The specifications need not be mandatory. Rather, it is enough that the government "approved" reasonably precise specifications. *Id.*

Nothing in the materials cited by plaintiffs suggests in the least that the Navy did not approve its shipboard cable specifications—which the Navy itself promulgated. Nor does anything in the materials cited by plaintiffs suggest in the least that in supplying electrical shipboard cable to the Navy, PDCPC could have failed to comply with the Navy specifications then in effect. Indeed, plaintiffs quote one document for the point that the Navy Bureau of Ships advised industry that industry's comments would be considered "when the spec for this cable is written." *See* new memo. at 9:4-7.

The 1956 Cable Comparison Guide cited by plaintiffs is not a substitute for the detailed specifications for the manufacture of different types of electrical shipboard. Examples of the specifications themselves have been provided with PDI's opposition to the motion to remand to state court. The transmittal memorandum for the Cable Comparison Guide references several Navy procurement specifications then in effect. *See* amended declaration of Yvonne Huggins-McLean, Exhibit D at CT002391. By its terms, the Cable Comparison Guide provides a summary compilation of many types of cables to assist the "Naval Activities Concerned" in selecting comparable alternate or replacement cable if the cable called for in the original ship design is unavailable or obsolete. *See id.* at CT002391- CT002392.

If anything, the materials presented by plaintiffs affirm the Navy's involvement in reviewing and approving the cable designs ultimately prescribed by the specifications

that the Navy itself promulgated. Taken together with the materials previously submitted by PDI, the evidence establishes that in the working relationship between the Navy and PDCPC—and private cable manufacturers generally—notwithstanding consultation with private industry, the Navy ultimately determined what products it wanted for its ships, approved and promulgated its own specifications, and required that suppliers provide products in conformance with Navy specifications.

In opposition to plaintiffs' motion to remand, PDI has noted that during World War II, the government furnished some of the equipment used by PDCPC to produce Navy shipboard cable. *See* declaration of William Daniels, ¶ 7. Attached as Exhibits 2, 3, and 4 are copies of several government contracts pursuant to which PDCPC's industrial plant facilities were modified to keep pace with the production ordered by the Navy. In each contract, PDCPC's principal obligations were to obtain approvals from the Navy Department for development of facilities, to complete facilities in accordance with those approvals, and to use those facilities to do work ordered by the Navy Department. *See* attached Exhibits 2-4, each at Art. 1(a)(i)-(ii) & (b). *See also id.* at Art. 10(a) (priority of Navy orders).

Whenever PDCPC supplied the Navy with asbestos-containing shipboard cable, it did so in conformance with precise specifications approved by the Navy, including explicit specifications for the use of asbestos. The Navy had superior knowledge concerning the potential health hazards of asbestos. None of the materials newly presented by plaintiffs contradict the comprehensive showing of each element of the government contractor defense set forth in PDI's opposition to the motion to remand to state court.

## IV. CONCLUSION

Regardless of how the Court treats plaintiffs' new motion to remand to state court, PDI has shown that it properly removed this action to federal court under 28 U.S.C. § 1442(a)(1). This Court has jurisdiction. Accordingly, PDI respectfully requests that plaintiffs' motion to remand to state court be denied.

DATED: November 1, 2007

Respectfully,

*/s/ Paul R. Johnson*
Paul R. Johnson

Robert D. Eassa
  robert.eassa.service@filicebrown.com
Paul R. Johnson
  paul.johnson.service@filicebrown.com
Filice Brown Eassa & McLeod LLP
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel: (510) 444-3131
Fax: (510) 839-7940

Attorneys for Defendant
Phelps Dodge Industries, Inc.